F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   ' JAN 2 4 2019   ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

HUAWEI TECHNOLOGIES CO., LTD.,
HUAWEI DEVICE USA INC.,
SKYCOM TECH CO. LTD.,
WANZHOU MENG,
       also known as "Cathy Meng" and
       "Sabrina Meng,"



               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 18-457 (S-2) (AMD)
(T. 18, U.S.C., §§ 371, 981(a)(1)(C),
982(a)(1), 982(a)(2), 982(b)(1), 1343,
1344, 1349, 1512(k), 1956(h), 2 and
3551 et seq.; T. 21, U.S.C., § 853(p); T.
28, U.S.C., § 2461(c); T. 50, U.S.C.,
§§ 1702, 1705(a) and 1705(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

      At all times relevant to this Superseding Indictment, unless otherwise

indicated:

I.    The Defendants

         1.    The defendant HUAWEI TECHNOLOGIES CO., LTD. ("HUAWEI")

was a global networking, telecommunications and services company headquartered in

Shenzhen, Guangdong, in the People's Republic of China ("PRC").   HUAWEI was owned

by a parent company ("Huawei Parent"), an entity whose identity is known to the Grand

Jury, registered in Shenzhen, Guangdong, in the PRC.   As of the date of the filing of this

Superseding Indictment, HUAWEI was the largest telecommunications equipment manufacturer in the world.

2.      HUAWEI operated numerous subsidiaries throughout the world, including in the United States.   One U.S. subsidiary was the defendant HUAWEI DEVICE USA INC. ("HUAWEI USA"), whose headquarters were in Plano, Texas.

3.      The defendant SKYCOM TECH CO. LTD. ("SKYCOM") was a corporation registered in Hong Kong whose primary operations were in Iran.   SKYCOM functioned as HUAWEI's Iran-based subsidiary.   As of 2007, Huawei Parent owned SKYCOM through a subsidiary ("Huawei Subsidiary 1"), an entity whose identity is known to the Grand Jury.   In or about November 2007, Huawei Subsidiary 1 transferred its shares of SKYCOM to another entity ("Huawei Subsidiary 2"), an entity whose identity is known to the Grand Jury, and which was purportedly a third party in the transaction but was actually controlled by HUAWEI.   Following this transfer of SKYCOM shares from Huawei Subsidiary 1 to Huawei Subsidiary 2, HUAWEI falsely claimed that SKYCOM was one of HUAWEI's local business partners in Iran, as opposed to one of HUAWEI's subsidiaries or affiliates.

4.      The defendant WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng," was a citizen of the PRC.   From at least in or about 2010, MENG served as Chief Financial Officer of HUAWEI.   Between approximately February 2008 and April 2009, MENG served on the SKYCOM Board of Directors.   More recently, MENG also served as Deputy Chairwoman of the Board of Directors for HUAWEI.



II.     The Victim Financial Institutions

7.      Financial Institution 1, an entity whose identity is known to the Grand Jury, was a multinational banking and financial services company, which operated subsidiaries throughout the world, including in the United States and in Eurozone countries. Its United States-based subsidiary ("U.S. Subsidiary 1"), an entity whose identity is known to the Grand Jury, was a federally chartered bank, the deposits of which were insured by the Federal Deposit Insurance Company ("FDIC").   Among the services offered by Financial Institution 1 to its clients were U.S.-dollar clearing through U.S. Subsidiary 1 and other financial institutions located in the United States, and Euro clearing through Financial Institution 1 subsidiaries and other financial institutions located in Eurozone countries. Between approximately 2010 and 2014, Financial Institution 1 and U.S. Subsidiary 1 cleared more than $100 million worth of transactions related to SKYCOM through the United States. In or about 2017, Financial Institution 1 verbally communicated to HUAWEI representatives that it was terminating its banking relationship with HUAWEI.

8.      Financial Institution 2, an entity whose identity is known to the Grand Jury, was a multinational banking and financial services company, which operated subsidiaries throughout the world, including in the United States and in Eurozone countries.

Among the services offered by Financial Institution 2 to its clients were U.S.-dollar clearing through a Financial Institution 2 subsidiary and other financial institutions located in the United States, and Euro clearing through Financial Institution 2 subsidiaries and other financial institutions located in Eurozone countries.

9.    Financial Institution 3, an entity whose identity is known to the Grand Jury, was a multinational banking and financial services company, which operated subsidiaries throughout the world, including in the United States and in Eurozone countries. Among the services offered by Financial Institution 3 to its clients were U.S.-dollar clearing through Financial Institution 3 subsidiaries and other financial institutions located in the United States, and Euro clearing through Financial Institution 3 subsidiaries and other financial institutions located in Eurozone countries.

10.    Financial Institution 4, an entity whose identity is known to the Grand Jury, was a multinational banking and financial services company operating subsidiaries throughout the world, including in the United States and in Eurozone countries.   Among the services offered by Financial Institution 4 to its clients were U.S.-dollar clearing through Financial Institution 4 subsidiaries and other financial institutions located in the United States, and Euro clearing through Financial Institution 4 subsidiaries and other financial institutions located in Eurozone countries.   A subsidiary of Financial Institution 4 ("U.S. Subsidiary 4"), an entity whose identity is known to the Grand Jury, was a financial institution organized in the United States offering banking and financial services throughout the world.   U.S. Subsidiary 4 offered HUAWEI and its affiliates banking services and cash management services, including for accounts in the United States.

III.    The SKYCOM Fraud Scheme

11.    Even though the U.S. Department of the Treasury's Office of Foreign Assets Control's ("OFAC") Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560, proscribed the export of U.S.-origin goods, technology and services to Iran and the Government of Iran, HUAWEI operated SKYCOM as an unofficial subsidiary to obtain otherwise prohibited U.S.-origin goods, technology and services, including banking services, for HUAWEI's Iran-based business while concealing the link to HUAWEI. HUAWEI could thus attempt to claim ignorance with respect to any illegal act committed by SKYCOM on behalf of HUAWEI, including violations of the ITSR and other applicable U.S. law.   In addition, contrary to U.S. law, SKYCOM, on behalf of HUAWEI, employed in Iran at least one U.S. citizen ("Employee 1"), whose identity is known to the Grand Jury.

12.    Since in or about July 2007, HUAWEI repeatedly misrepresented to the U.S. government and to various victim financial institutions, including Financial Institutions 1, 2, 3 and 4, and their U.S. and Eurozone subsidiaries and branches (collectively, the "Victim Institutions"), that, although HUAWEI conducted business in Iran, it did so in a manner that did not violate applicable U.S. law, including the ITSR.   In reality, HUAWEI conducted its business in Iran in a manner that violated applicable U.S. law, which includes the ITSR.

13.    For example, in or about July 2007, agents with the Federal Bureau of Investigation ("FBI") interviewed the founder of HUAWEI ("Individual-1"), whose identity is known to the Grand Jury, in New York, New York.   Individual-1 stated, in sum and substance, that he was willing to provide information about HUAWEI.

14.     During the interview, amongst other things, Individual-1 falsely stated, in substance and in part, that HUAWEI did not conduct any activity in violation of U.S. export laws and that HUAWEI operated in compliance with all U.S. export laws. Individual-1 also falsely stated, in substance and in part, that HUAWEI had not dealt directly with any Iranian company.   Individual-1 further stated that he believed HUAWEI had sold equipment to a third party, possibly in Egypt, which in turn sold the equipment to Iran.

15.     Additionally, HUAWEI repeatedly misrepresented to Financial Institution 1 that HUAWEI would not use Financial Institution 1 and its affiliates to process any transactions regarding HUAWEI's Iran-based business.   In reality, HUAWEI used U.S. Subsidiary 1 and other financial institutions operating in the United States to process U.S.-dollar clearing transactions involving millions of dollars in furtherance of HUAWEI's Iran-based business.   Some of these transactions passed through the Eastern District of New York.

16.     In or about late 2012 and early 2013, various news organizations, including Reuters, reported that SKYCOM had sold and attempted to sell embargoed U.S.-origin goods to Iran in violation of U.S. law, and that HUAWEI in fact owned and operated SKYCOM.   In December 2012, Reuters published an article purporting to contain a HUAWEI official statement addressing and denying those allegations.   In January 2013, Reuters published a second article purporting to contain a HUAWEI official statement, again addressing and denying the Iran allegations.   The purported statements by HUAWEI in these articles were relied on by the Victim Institutions in determining whether to continue their banking relationships with HUAWEI and its subsidiaries

17.   Following publication of the December 2012 and January 2013 Reuters articles, various HUAWEI representatives and employees communicated to the Victim Institutions and to the public that the allegations regarding HUAWEI's ownership and control of SKYCOM were false and that, in fact, HUAWEI did comply with applicable U.S. law, which includes the ITSR.   Based in part on these false representations, the Victim Institutions continued their banking relationships with HUAWEI and its subsidiaries and affiliates.

18.   For example, in or about June 2013, the defendant WANZHOU MENG requested an in-person meeting with a Financial Institution 1 executive (the "Financial Institution 1 Executive"), whose identity is known to the Grand Jury.   During the meeting, which took place on or about August 22, 2013, MENG spoke in Chinese, relying in part on a PowerPoint presentation written in Chinese.   Upon request by the Financial Institution 1 Executive, MENG arranged for an English-language version of the PowerPoint presentation to be delivered to Financial Institution 1 on or about September 3, 2013.

19.   In relevant part, the PowerPoint presentation included numerous misrepresentations regarding HUAWEI's ownership and control of SKYCOM and HUAWEI's compliance with applicable U.S. law, including that (1) HUAWEI "operates in Iran in strict compliance with applicable laws, regulations and sanctions of UN, US and EU"; (2) "HUAWEI's engagement with SKYCOM is normal business cooperation"; (3) the defendant WANZHOU MENG's participation on the Board of Directors of SKYCOM was to "help HUAWEI to better understand SKYCOM's financial results and business performance, and to strengthen and monitor SKYCOM's compliance"; and (4) "HUAWEI

subsidiaries in sensitive countries will not open accounts at [Financial Institution 1], nor have business transactions with [Financial Institution 1]." These statements were all false.

20.     In early 2014, several months after the meeting with Financial Institution 1 Executive, the defendant WANZHOU MENG traveled to the United States, arriving at John F. Kennedy International Airport, which is located in the Eastern District of New York.   When she entered the United States, MENG was carrying an electronic device that contained a file in unallocated space—indicating that the file may have been deleted—containing the following text:

> Suggested Talking Points
>
> The core of the suggested talking points regarding Iran/Skycom: Huawei's operation in Iran comports with the laws, regulations and sanctions as required by the United Nations, the United States and the European Union. The relationship with Skycom is that of normal business cooperation. Through regulated trade organizations and procedures, Huawei requires that Skycom promises to abide by relevant laws and regulations and export controls. Key information 1: In the past — ceased to hold Skycom shares 1, With regards to cooperation:   Skycom was established in 1998 and is one of the agents for Huawei products and services. Skycom is mainly an agent for Huawei.

Other text in the same file appeared to refer to a document announcing the appointment of Huawei employees that was "signed by MENG Wanzhou," the defendant.

21.     Based in part on the false representations made by the defendant WANZHOU MENG and others, Financial Institution 1 continued its banking relationship with HUAWEI and its subsidiaries and affiliates.

22.     Had the Victim Institutions known about HUAWEI's repeated violations of the ITSR, they would have reevaluated their banking relationships with HUAWEI, including the provision of U.S.-dollar and Euro clearing services to HUAWEI.

IV.    HUAWEI's Continued Scheme to Defraud Financial Institutions

23.    In or about 2017, Financial Institution 1 decided to terminate its global relationship with HUAWEI because of risk concerns regarding HUAWEI's business practices.  During a series of meetings and communications, Financial Institution 1 repeatedly communicated to HUAWEI that the decision to terminate its banking relationship with HUAWEI had been made by Financial Institution 1 alone, and was not a mutual decision with HUAWEI.

24.    After learning of Financial Institution 1's decision to terminate its relationship with HUAWEI, HUAWEI took steps to secure and expand its banking relationships with other financial institutions, including U.S. Subsidiary 4.  In doing so, HUAWEI employees made material misrepresentations to U.S. Subsidiary 4, among other financial institutions, regarding the reason for the termination of its relationship with Financial Institution 1 and the party responsible for the termination, claiming that HUAWEI, not Financial Institution 1, had initiated the termination.  Specifically, in meetings and correspondence with representatives of U.S. Subsidiary 4, HUAWEI employees, ███████████ ██████████████████████████████████, falsely represented that HUAWEI was considering terminating its relationship with Financial Institution 1 because HUAWEI was dissatisfied with Financial Institution 1's level of service.  HUAWEI's misrepresentation that it had decided to terminate its relationship with Financial Institution 1 was communicated to various components of U.S. Subsidiary 4, including in New York City.

25.    Based in part on these false representations and omissions made by the defendants HUAWEI, █████████████████████, among other HUAWEI employees, U.S. Subsidiary 4 undertook to expand its banking relationship with HUAWEI

and its subsidiaries and affiliates, and continued to maintain its existing banking relationship with HUAWEI globally, including in the United States.   Had the defendants told U.S. Subsidiary 4 the truth about Financial Institution 1's decision to terminate its relationship with HUAWEI, U.S. Subsidiary 4 would have reevaluated its relationship with HUAWEI and its subsidiaries and affiliates.

V.     The Scheme to Obstruct Justice

26.     In or about 2017, HUAWEI and HUAWEI USA became aware of the U.S. government's criminal investigation of HUAWEI and its affiliates.   In response to the investigation, HUAWEI and HUAWEI USA made efforts to move witnesses with knowledge about HUAWEI's Iran-based business to the PRC, and beyond the jurisdiction of the U.S. government, and to destroy and conceal evidence in the United States of HUAWEI's Iran-based business.

COUNT ONE
(Conspiracy to Commit Bank Fraud)

27.     The allegations contained in paragraphs one through 22 are realleged and incorporated as if set forth fully in this paragraph.

28.     In or about and between November 2007 and May 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, SKYCOM and WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng," together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud U.S. Subsidiary 1, a financial institution, and to obtain moneys, funds, credits and other property owned by and under the custody and control of said financial institution, by means of one or more materially false and fraudulent

pretenses, representations and promises, contrary to Title 18, United States Code, Section
1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT TWO
(Conspiracy to Commit Bank Fraud)

29.    The allegations contained in paragraphs one through 25 are realleged
and incorporated as if set forth fully in this paragraph.

30.    In or about and between August 2017 and the date of the filing of this
Superseding Indictment, both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants HUAWEI, ███████████████
██████████████████████████████████████ together with
others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud
U.S. Subsidiary 4, a financial institution, and to obtain moneys, funds, credits and other
property owned by and under the custody and control of said financial institution, by means
of one or more materially false and fraudulent pretenses, representations and promises,
contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT THREE
(Conspiracy to Commit Wire Fraud)

31.    The allegations contained in paragraphs one through 22 are realleged
and incorporated as if set forth fully in this paragraph.

32.    In or about and between November 2007 and May 2015, both dates
being approximate and inclusive, within the Eastern District of New York and elsewhere, the
defendants HUAWEI, SKYCOM and WANZHOU MENG, also known as "Cathy Meng"

and "Sabrina Meng," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Victim Institutions, and to obtain money and property from the Victim Institutions, by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT FOUR
(Bank Fraud)

33.    The allegations contained in paragraphs one through 22 are realleged and incorporated as if set forth fully in this paragraph.

34.    In or about and between November 2007 and May 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, SKYCOM and WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng," together with others, did knowingly and intentionally execute a scheme and artifice to defraud U.S. Subsidiary 1, a financial institution, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of said financial institution, by means of one or more materially false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

13

## COUNT FIVE
(Bank Fraud)

35.     The allegations contained in paragraphs one through 25 are realleged and incorporated as if set forth fully in this paragraph.

36.     In or about and between August 2017 and the date of the filing of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, ██████████ ██████████████████████████████████████████████ together with others, did knowingly and intentionally execute a scheme and artifice to defraud U.S. Subsidiary 4, a financial institution, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of said financial institution, by means of one or more materially false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

## COUNT SIX
(Wire Fraud)

37.     The allegations contained in paragraphs one through 22 are realleged and incorporated as if set forth fully in this paragraph.

38.     In or about and between November 2007 and May 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI, SKYCOM and WANZHOU MENG, also known as "Cathy Meng" and "Sabrina Meng," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Victim Institutions, and to obtain money and property from the Victim Institutions, by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did

transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: the defendants HUAWEI, SKYCOM and MENG, together with others, (a) made, and caused to be made, a series of misrepresentations through email communications, written communications otherwise conveyed through the wires, and oral communications made with knowledge that the oral communications would be memorialized and subsequently transmitted through the wires, about, among other things, the relationship between HUAWEI and SKYCOM, HUAWEI's compliance with U.S. and U.N. laws and regulations, and the kinds of financial transactions in which HUAWEI engaged through the Victim Institutions; and (b) as a result of the misrepresentations, caused a series of wires to be sent by financial institutions from outside of the United States through the United States.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT SEVEN
(Conspiracy to Defraud the United States)

39.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if set forth fully in this paragraph.

40.     In or about and between July 2007 and the date of the filing of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI and SKYCOM, together with others, did knowingly and willfully conspire to defraud the United States by impairing, impeding, obstructing and defeating, through deceitful and dishonest means, the lawful governmental functions and operations of OFAC, an agency of the United States, in the

enforcement of economic sanctions laws and regulations administered by that agency and the issuance by that agency of appropriate licenses relating to the provision of financial services.

41.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants HUAWEI and SKYCOM, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

a.     On or about July 11, 2007, Individual-1 stated to FBI agents that HUAWEI did not conduct any activity in violation of U.S. export laws, that HUAWEI operated in compliance with all U.S. export laws, that HUAWEI had not dealt directly with any Iranian company and that he believed HUAWEI had sold equipment to a third party, possibly in Egypt, which in turn sold the equipment to Iran.

b.     On or about September 13, 2012, a Senior Vice President of HUAWEI testified before U.S. Congress that HUAWEI's business in Iran had not "violated any laws and regulations including sanction-related requirements."

c.     On or about September 17, 2012, the Treasurer of HUAWEI met with a principal of U.S. Subsidiary 4, an individual whose identity is known to the Grand Jury, in New York, New York, and informed U.S. Subsidiary 4 that HUAWEI and its global affiliates did not violate any applicable U.S. law.

d.     On or about July 24, 2013, SKYCOM caused U.S. Subsidiary 1 to process a U.S.-dollar clearing transaction of $52,791.08.

e.     On or about July 24, 2013, SKYCOM caused a bank located in the Eastern District of New York ("Bank 1"), an entity whose identity is known to the Grand Jury, to process a U.S.-dollar clearing transaction of $94,829.82.

f.    On or about August 20, 2013, SKYCOM caused Bank 1 to process a U.S.-dollar clearing transaction of $14,835.22.

g.    On or about August 28, 2013, SKYCOM caused Bank 1 to process a U.S.-dollar clearing transaction of $32,663.10.

h.    On or about April 11, 2014, SKYCOM caused a bank located in the United States ("Bank 2"), an entity whose identity is known to the Grand Jury, to process a U.S.-dollar clearing transaction of $118,842.45.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT EIGHT
(Conspiracy to Violate IEEPA)

42.    The allegations contained in paragraphs one through 22 are realleged and incorporated as if set forth fully in this paragraph.

43.    Through the International Emergency Economic Powers Act ("IEEPA"), the President of the United States was granted authority to address unusual and extraordinary threats to the national security, foreign policy or economy of the United States. 50 U.S.C. § 1701(a).   Under IEEPA, it was a crime to willfully violate, attempt to violate, conspire to violate or cause a violation of any license, order, regulation or prohibition issued pursuant to the statute.   50 U.S.C. §§ 1705(a) and 1705(c).

44.    To respond to the declaration by the President of a national emergency with respect to Iran pursuant to IEEPA, which was most recently continued in March 2018 (83 Fed. Reg. 11,393 (Mar. 14, 2018)), OFAC issued the ITSR.   Absent permission from OFAC in the form of a license, these regulations prohibited, among other things:

    a.    The exportation, reexportation, sale or supply from the United States, or by a U.S. person, wherever located, of any goods, technology or services to Iran and the Government of Iran (31 C.F.R. § 560.204);

    b.    Any transaction by a U.S. person, wherever located, involving goods, technology or services for exportation, reexportation, sale or supply, directly or indirectly, to Iran or the Government of Iran (31 C.F.R. § 560.206); and

    c.    Any transaction by a U.S. person, or within the United States, that evaded or avoided, had the purpose of evading or avoiding, attempted to violate, or caused a violation of any of the prohibitions in the ITSR (31 C.F.R. § 560.203).

    45.    The ITSR prohibited providing financial services, including U.S. dollar-clearing services, to Iran or the Government of Iran.   31 C.F.R. §§ 560.204, 560.427. In addition, the prohibition against the exportation, reexportation, sale or supply of services applied to services performed on behalf of a person in Iran or the Government of Iran, or where the benefit of such services was otherwise received in Iran, if the services were performed (a) in the United States by any person; or (b) outside the United States by a United States person, including an overseas branch of an entity located in the United States.   31 C.F.R. § 560.410.

    46.    In or about and between November 2007 and November 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI and SKYCOM, together with others, did knowingly and willfully conspire to cause the export, reexport, sale and supply, directly and indirectly, of goods, technology and services, to wit: banking and other financial services from the United States to Iran and the Government of Iran, without having first obtained the required OFAC

license, contrary to Title 31, Code of Federal Regulations, Sections 560.203, 560.204 and 560.206.

(Title 50, United States Code, Sections 1705(a), 1705(c) and 1702; Title 18, United States Code, Sections 3551 et seq.)

## COUNT NINE
### (IEEPA Violations)

47. The allegations contained in paragraphs one through 22 and 43 through 45 are realleged and incorporated as if fully set forth in this paragraph.

48. In or about and between November 2007 and November 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI and SKYCOM, together with others, did knowingly and willfully cause the export, reexport, sale and supply, directly and indirectly, of goods, technology and services, to wit: banking and other financial services from the United States to Iran and the Government of Iran, without having first obtained the required OFAC license, contrary to Title 31, Code of Federal Regulations, Sections 560.203, 560.204 and 560.206.

(Title 50, United States Code, Sections 1705(a), 1705(c) and 1702; Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT TEN
### (Conspiracy to Violate IEEPA)

49. The allegations contained in paragraphs one through 22 and 43 through 45 are realleged and incorporated as if fully set forth in this paragraph.

50. In or about and between 2008 and 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants

HUAWEI and SKYCOM, together with others, did knowingly and willfully conspire to

cause the export, reexport, sale and supply, directly and indirectly, of goods, technology and

services, to wit: telecommunications services provided by Employee 1, a U.S. citizen, to Iran

and the Government of Iran, without having first obtained the required OFAC license,

contrary to Title 31, Code of Federal Regulations, Sections 560.203, 560.204 and 560.206.

   (Title 50, United States Code, Sections 1705(a), 1705(c) and 1702; Title 18,

United States Code, Sections 3551 et seq.)

## COUNT ELEVEN
### (IEEPA Violation)

  51. The allegations contained in paragraphs one through 22 and 43 through

45 are realleged and incorporated as if fully set forth in this paragraph.

  52. In or about and between 2008 and 2014, both dates being approximate

and inclusive, within the Eastern District of New York and elsewhere, the defendants

HUAWEI and SKYCOM, together with others, did knowingly and willfully cause the

export, reexport, sale and supply, directly and indirectly, of goods, technology and services,

to wit: telecommunications services provided by Employee 1, a U.S. citizen, to Iran and the

Government of Iran, without having first obtained the required OFAC license, contrary to

Title 31, Code of Federal Regulations, Sections 560.203, 560.204 and 560.206.

   (Title 50, United States Code, Sections 1705(a), 1705(c) and 1702; Title 18,

United States Code, Sections 2 and 3551 et seq.)

## COUNT TWELVE
### (Money Laundering Conspiracy)

  53. The allegations contained in paragraphs one through 22 and 43 through

45 are realleged and incorporated as if fully set forth in this paragraph.

54.     In or about and between November 2007 and November 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI and SKYCOM, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds, to wit: wire transfers, from one or more places in the United States to and through one or more places outside the United States and to one or more places in the United States from and through one or more places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: conspiracy to violate IEEPA, in violation of Title 50, United States Code, Section 1705, all contrary to Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT THIRTEEN
### (Conspiracy to Obstruct Justice)

55.     The allegations contained in paragraphs one through 22 and 26 are realleged and incorporated as if fully set forth in this paragraph.

56.     In or about and between January 2017 and the date of the filing of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HUAWEI and HUAWEI USA, together with others, did knowingly, intentionally and corruptly conspire to obstruct, influence and impede an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York, contrary to Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH SIX

57.     The United States hereby gives notice to the defendants charged in

Counts One through Six that, upon their conviction of such offenses, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which

requires any person convicted of such offenses to forfeit any property constituting, or derived

from, proceeds obtained directly or indirectly as a result of such offenses.

58.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21,

United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS EIGHT THROUGH ELEVEN AND THIRTEEN

59.     The United States hereby gives notice to the defendants charged in Counts Eight through Eleven and Thirteen that, upon their conviction of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

60.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TWELVE

61.    The United States hereby gives notice to the defendants charged in Count Twelve that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

62.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

24

other property of the defendants up to the value of the forfeitable property described in this

forfeiture allegation.

     (Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21,

United States Code, Section 853(p))

                                                  A TRUE BILL

                                               FOREPERSON

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

DEBORAH L. CONNOR / lmb
CHIEF
MONEY LAUNDERING
AND ASSET RECOVERY SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

JAY I. BRATT / sbrk
CHIEF
COUNTERINTELLIGENCE AND
EXPORT CONTROL SECTION
NATIONAL SECURITY DIVISION
U.S. DEPARTMENT OF JUSTICE

F. # 2017R05903
FORM DBD-34
JUN. 85

No. 

# UNITED STATES DISTRICT COURT
### EASTERN *District of* NEW YORK
### CRIMINAL DIVISION

---

### THE UNITED STATES OF AMERICA

*vs.*

HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA
INC., SKYCOM TECH CO. LTD., WANZHOU MENG, also known
as "Cathy Meng" and "Sabrina Meng," ████████████████

Defendants.

---

### SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 982(a)(1), 982(a)(2),
982(b)(1)1343, 1344, 1349, 1512(k), 1956(h), 2 and 3551
*et seq.*; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c);
T. 50, U.S.C., §§ 1702, 1705(a) and 1705(c))

---

*A true bill.*

████████████████  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                              *Foreperson*

---

*Filed in open court this* _ _ _ _ _ _ _ _ *day of* _ _ _ _ *A.D. 20* _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                              *Clerk*

---

*Bail, $* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

---

*Alexander A. Solomon, David K. Kessler, Julia Nestor, and Sarah
Evans, Assistant U.S. Attorneys (718) 254-7000*