AAS:DKK/JN/SME/KTF
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -                                                        18 CR 457 (S-2) (AMD)

HUAWEI TECHNOLOGIES CO. LTD., et al.,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE GOVERNMENT'S REDACTED MOTION TO DISQUALIFY JAMES M. COLE AS COUNSEL FOR THE DEFENDANTS IN THIS CASE

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

ALEXANDER A. SOLOMON
JULIA NESTOR
DAVID K. KESSLER
KAITLIN T. FARRELL
SARAH M. EVANS
Assistant U.S. Attorneys
(Of Counsel)

DEBORAH L. CONNOR
Chief
Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C., 20005

LAURA M. BILLINGS
CHRISTIAN J. NAUVEL
Trial Attorneys

JAY I. BRATT
Chief
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C., 20530

THEA D. R. KENDLER
DAVID LIM
Trial Attorneys

## TABLE OF CONTENTS

(U) PRELIMINARY STATEMENT .................................................................................................. 1

(U) BACKGROUND .................................................................................................................. 3

I. [REDACTED] ........................................................................................................................ 3

II. (U) Cole's Role in the [REDACTED] Investigation During His Tenure as DAG .................. 3

III. (U) Cole's Representation of Huawei after Leaving the DOJ ............................................. 4

IV. [REDACTED] ...................................................................................................................... 7

(U) ARGUMENT ...................................................................................................................... 7

I. (U) Applicable Legal Framework ........................................................................................ 8

    A. (U) An Attorney May Not Represent a Party Adverse to a Former Client If There Is a Risk that the Attorney Could Use Client Confidences Against a Former Client .......... 9

    B. (U) Absent Full Knowledge, a Current Client Cannot Waive Any Actual or Potential Conflict Involving that Attorney ............................................................................. 16

II. (U) Cole's Prior Representation Is Substantially Related to this Case ................................. 17

    A. [REDACTED] Cole's Current Representation of Huawei Is Substantially Related to His Prior Representation of the United States in Its [REDACTED] Investigation [REDACTED] ......................................................................................................... 18

    B. [REDACTED] .................................................................................................... 21

III. (U) The Government's Interest in a Fair Trial and Just Verdict Will Be Prejudiced by Cole's Representation of the Defendants ......................................................................... 22

(U) CONCLUSION .................................................................................................................. 24

## (U) PRELIMINARY STATEMENT

[REDACTED] James M. Cole represented the United States in his capacity as Deputy Attorney General ("DAG") of the U.S. Department of Justice ("DOJ" or "the Department"), the nation's second-highest-ranking law enforcement official, from 2010 until 2015. During his representation of the United States, Cole personally supervised and participated in aspects of a [REDACTED] investigation [REDACTED]. Now in private practice, Cole has declared his intention to represent the defendants Huawei Technologies Co. Ltd. ("Huawei Tech") and Huawei Device USA, Inc. ("Huawei USA") (collectively, "Huawei") in this matter. Despite the obvious conflict of interest presented by Cole's representation of these entities in a prosecution by the United States when he previously represented the United States with respect to [REDACTED], Cole has refused to recuse himself from this matter. The government therefore submits this sealed classified memorandum of law in support of its motion for a ruling from this Court disqualifying Cole from representing any of the defendants in this case. The government will provide a redacted version of the motion to Cole and his counsel,[1] and attaches as Exhibit A a copy of the memorandum showing those redactions highlighted in yellow.[2]

---

[1] [REDACTED]

[2] (U) The government respectfully requests that the original and highlighted versions of this motion be filed under seal because a public proceeding would result in the unauthorized disclosure of classified information, which could reasonably be expected to cause serious damage to national security. Should the Court deny the government's application to seal these documents, the government seeks permission to withdraw them. The redactions in the version of the memorandum provided to Cole and his counsel were made to avoid disclosing classified information for which Cole does not have a clearance and/or a need-to-know [REDACTED]. Should the Court subsequently order that information that currently is redacted be provided to Cole, the government seeks permission to discuss revised redactions with the Court and/or to withdraw this motion entirely.

[REDACTED] As explained below, during the entire time that Cole was DAG, the government was conducting a [REDACTED] investigation [REDACTED]. Cole was briefed about that investigation [REDACTED].

[REDACTED] The [REDACTED] investigation [REDACTED] are directly implicated in the current [REDACTED] case. [REDACTED].

[REDACTED] Cole's continued representation of the defendants poses real and irresolvable conflicts of interest. First, the Court can have no confidence that Cole will not use, whether intentionally or not, information obtained in the [REDACTED] investigation [REDACTED] against the government, his former client. In fact, not only did Cole have access to privileged (and classified) factual information as a Department attorney that would give him an improper advantage in representing his current clients, but he will also, in representing those clients, likely attack [REDACTED]. Both the law and ethics rules protect a former client against such conduct by a former attorney. [REDACTED]. The government has not consented, and does not consent.

[REDACTED] Second, the government has an interest in a fair trial and obtaining a conviction that can be defended on appeal and from collateral attack. Those interests are at risk if Cole represents the defendants, because they cannot give the informed consent required to validly waive Cole's conflicts. Specifically, Cole cannot explain to his clients the numerous limitations on the kinds of information he can share and the actions he can take on behalf of Huawei in light of his prior work as DAG, [REDACTED], which the law and the rules of professional conduct governing attorneys prevent Cole from doing. Therefore, even if Huawei purported to waive any conflicts, a conviction or guilty plea in this matter would likely be vulnerable to a later claim of invalid waiver and ineffective assistance of counsel, to the government's prejudice.

(U) Given the serious unwaived and unwaivable conflicts at issue with Cole's representation, and given that the defendants are represented by other skilled counsel without any apparent conflicts, the Court should not permit Cole's representation of Huawei to continue.[3]

## (U) BACKGROUND

I.  [REDACTED]

   [REDACTED]

   [REDACTED]

   [REDACTED]

   [REDACTED]

   [REDACTED]

   [REDACTED]

II.  (U) COLE'S ROLE IN THE [REDACTED] INVESTIGATION DURING HIS TENURE AS DAG

   (U) On December 29, 2010, Cole received a recess appointment to the position of DAG. The United States Senate confirmed Cole in the position on June 28, 2011, and he resigned on January 8, 2015.[4]

---

[3] (U) The government does not presently seek to disqualify Cole's firm, Sidley Austin LLP ("Sidley"), from representing the defendants. However, because Cole's conflict is imputed to his firm, the firm is required to take steps to address that imputed conflict. See N.Y. Rules of Prof'l Conduct 1.11(b). [REDACTED]

[4] (U) According to the biography of Cole published on the Sidley website, Cole also served, among other roles, as the Deputy Chief of the Criminal Division's Public Integrity Section and as Special Counsel to the U.S. House of Representatives Ethics Committee to conduct its investigation of then-Speaker Newt Gingrich. See https://www.sidley.com/en/people/c/cole-james-m (last visited Jan. 31, 2019).

[REDACTED] During Cole's tenure as DAG, the Department was conducting a [REDACTED] investigation [REDACTED]. [REDACTED].

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

III.    (U) COLE'S REPRESENTATION OF HUAWEI AFTER LEAVING THE DOJ

(U) In April 2017, [REDACTED] served a grand jury subpoena on one of Huawei's U.S. affiliates, Huawei Technologies USA, seeking documents related to conduct in sanctioned countries by Huawei or any of its U.S. affiliates, including Huawei USA. Sidley was retained to represent Huawei Technologies USA Inc., Huawei USA, and Futurewei Technologies in responding to that subpoena, and it made several productions of documents to [REDACTED]. The cover letters from those productions were signed by a different attorney at Sidley, Robert Torreson, and copied to Cole, as well as attorneys at the law firms Kirkland & Ellis LLP and Locke Lord. Cole also was copied on at least one email enclosing a production cover letter. In late July 2017, Sidley was informed by [REDACTED] that the matter had been transferred to the U.S. Attorney's Office for the Eastern District of New York ("USAO-EDNY").

(U) In October 2018, more than one year later, Cole contacted the USAO-EDNY to ask for a meeting to discuss the Huawei investigation. The meeting lasted approximately ten minutes, during which time Cole (1) asked two questions related to [REDACTED]—which questions the

government answered—and (2) offered to answer questions the government might have. The government declined to ask questions at that time.

(U) On January 15, 2019, Cole co-signed a letter to DAG Rod Rosenstein on behalf of Huawei Tech and Huawei USA, stating that he represented these clients in the USAO-EDNY investigation and requesting—together with Huawei's counsel in the Western District of Washington ("WDWA")—extension of a statute of limitations tolling agreement in an investigation being conducted by the U.S. Attorney's Office in the WDWA. In this letter, Cole described a document production made by Huawei in response to the [REDACTED] grand jury subpoena, and noted the October 2018 meeting with USAO-EDNY.

[REDACTED] On January 22, 2019, after the arrest of the Huawei Chief Financial Officer ("CFO") Wanzhou Meng in Canada and Cole's letter to the current DAG, the DOJ and FBI met with Cole. The DOJ informed Cole that he had a conflict of interest in this case [REDACTED]. The DOJ did not provide Cole with classified information at that meeting, but the parties agreed to a follow-up meeting that would be governed by an NDA.

(U) On January 28, 2019, a superseding indictment was unsealed by this Court (the "Superseding Indictment") charging Huawei Tech with thirteen crimes occurring between November 2007 and the present. The conduct in part relates to Huawei Tech's activity in Iran and other sanctioned countries, including through Huawei's operation of an unofficial affiliate in Iran called Skycom. The charged conduct also relates to misrepresentations made by Huawei Tech and certain of its employees to financial institutions, including a U.S. financial institution. The charged conduct also includes a conspiracy to defraud the United States related to Huawei's efforts to deceive the United States Department of the Treasury's Office of Foreign Assets Control by, among other things, making misleading public statements before the House Permanent Select Committee

on Intelligence in 2012. The indictment charges Huawei Tech and Huawei USA with conspiracy to obstruct the grand jury investigation in EDNY.

[REDACTED]

(U) On January 29, 2019, the DOJ and FBI again met with Cole to discuss his conflict of interest. Because Cole no longer holds a security clearance, and in order to have a fulsome discussion, DOJ and FBI had Cole sign an NDA giving him one-time access to certain classified information.

[REDACTED]

(U) The information the government provided to Cole in January was limited in order to prevent further use and disclosure of the privileged and classified information discussed herein without knowing if Cole would recuse himself from the case.

[REDACTED] Cole indicated that he did not believe the information provided by the government at the meeting gave him a sufficient basis on which to determine whether he had a conflict of interest [REDACTED]. Cole also requested that he be permitted to consult with counsel about the conflict. The government agreed to provide one-time access to the same classified materials to Virginia Seitz, Sidley's general counsel and the attorney whom Cole selected to advise him. Cole and Seitz represented to the government that she would be walled off from representing the defendants.

(U) On February 26, 2019, the DOJ and FBI met with Cole and Seitz, each of whom signed an NDA and reviewed the same classified materials provided in the previous meeting. The parties then discussed the contours of potential conflicts of interest.

(U) On March 6, 2019, Cole declined to recuse himself, writing: "We have carefully considered the material you showed us and were unable to determine that I need to be disqualified

based on that information. We took the discussions seriously and are open to considering any further information you want to present that might relate to this issue."

(U) On March 13, 2019, Cole filed a motion to appear in this matter <u>pro hac vice</u>. At the arraignment of Huawei Tech and Huawei USA on March 14, 2019, the government informed Cole it would not oppose his <u>pro hac</u> motion for purposes of the arraignment. At the first status conference on April 4, 2019, the government indicated it would not oppose Cole's motion for the time being (although it advised the Court and Cole that it was evaluating whether to bring the instant motion to disqualify). On April 5, 2019, the Court granted Cole's motion to appear in this matter pro hac vice.

[REDACTED]

IV.   [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

(U) ARGUMENT

[REDACTED] Cole should be disqualified from representing Huawei Tech and Huawei USA in this case because of two different conflicts. First, having represented the government in his role as DAG in the DOJ's [REDACTED] investigation [REDACTED], Cole should not now be allowed to represent the defendants in a [REDACTED] matter brought by the DOJ that is substantially related in multiple respects to that [REDACTED] investigation. There is a significant risk that he will breach his duties of confidentiality and loyalty to the Department in the course of that representation. [REDACTED]. Cole's work on these related matters creates the real risk that

he will breach his duty of confidentiality to the DOJ by relying on information he obtained while representing the Department in the course of his representation of the defendants. Moreover, there is a risk that Cole will breach his duty of loyalty to the Department by making arguments on behalf of the defendants that contradict positions he previously took while representing the DOJ.

[REDACTED] Second, Cole's representation of the defendants jeopardizes the government's interest in having a fair trial and obtaining a conviction that can sustain appeal and collateral attack. Because Cole cannot provide the defendants the classified and confidential facts related to the government's investigation [REDACTED], any waiver of Cole's conflicts by the defendants would not be sufficiently informed to withstand later scrutiny.

I.  (U) APPLICABLE LEGAL FRAMEWORK

(U) The Sixth Amendment to the United States Constitution gives a criminal defendant the right to have the assistance of counsel for his defense. U.S. Const. amend. VI. The right to counsel under the Sixth Amendment entails a correlative right to representation that is free from conflicts of interest. Wood v. Georgia, 450 U.S. 261, 271 (1981). Although a defendant generally may waive his Sixth Amendment right to an unconflicted attorney, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988); United States v. Lussier, 71 F.3d 456, 461 (2d Cir. 1995).

(U) When deciding motions for disqualification, the Court must balance a defendant's right to counsel of its choice and "the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." United States v. Levy, 25 F.3d 146, 155 (2d Cir. 1994); see United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) ("[f]ederal

8

courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them").

(U) There are two kinds of conflicts that create grounds for disqualification at issue here: a conflict between an attorney and his former client, and a conflict between an attorney and his current client. Both conflicts are implicated here, and both could impact the government's interest in a fair and just outcome to this prosecution.

A.  (U) An Attorney May Not Represent a Party Adverse to a Former Client If There Is a Risk that the Attorney Could Use Client Confidences Against a Former Client

(U) An attorney may not "knowingly reveal a confidence of his client or use a confidence of his client to the disadvantage of the client." Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983). The risk that an attorney might use such confidences against his former client creates a "disqualifying taint" that a district court should remedy by disqualifying that attorney from a subsequent representation adverse to his former client. United States v. Prevezon Holdings Ltd., 839 F.3d 227, 241 (2d Cir. 2016).

(U) In order to guard against this risk, the Second Circuit has held that disqualification of an adverse party's counsel is warranted where: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client." Prevezon Holdings Ltd., 839 F.3d at 239 (citing Evans) ("substantial relationship" where attorneys intended to defend current client, alleged to have laundered the proceeds of a fraud scheme, by arguing that a former client had actually perpetrated the fraud, although attorneys had previously argued former client was a victim); accord United States v. DiTommaso, 817 F.2d 201, 219 (2d Cir. 1987) (Evans

9

test applies in criminal cases); see also N.Y. Rules of Prof'l Conduct 1.9(a). The purpose of the "substantial relationship" test is to prevent an attorney from using information gained from a former client to the detriment of that client in a subsequent representation. Even where the test is not met, however, disqualification is still warranted where an attorney "could use a [former] client's privileged information against that client." Prevezon Holdings Ltd., 839 F.3d at 241.

(U) Subsequent representations are "substantially related" if, among other things, they "involve the same transaction or legal dispute or if, under the circumstances, a reasonable lawyer would conclude that there is otherwise a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." N.Y. Rules of Prof'l Conduct 1.9, cmt. 3; see, e.g., Prevezon Holdings Ltd., 839 F.3d at 239 (a "substantial relationship" exists "where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation"); see Giambrone v. Meritplan Ins. Co., 117 F. Supp. 3d 259, 272–73 (E.D.N.Y. 2015) ("[D]isqualification has been granted or approved recently only when the issues involved have been identical or essentially the same . . . . The inquiry does not turn on whether the legal claims or underlying theories are similar, but rather whether the successive representations share common material factual issues."); Hickman v. Burlington Bio-Med. Corp.,371 F. Supp. 2d 225, 230 (E.D.N.Y. 2005) ("If there is present a common factual question, the substantial relationship test is satisfied."); Agilent Techs., Inc. v. Micromuse, Inc., No. 04 CIV. 3090 (RWS), 2004 WL 2346152, at *11 (S.D.N.Y. Oct. 19, 2004) ("Prior general business representation by the plaintiff's law firm of an entity related to the defendant on matters unrelated to the lawsuit at issue does not meet the high burden of establishing a conflict.").

(U) In determining whether a "substantial relationship" exists between two matters, courts have also considered, among other things, the breadth of the prior relationship, the extent to which the investigations are related, and the timing between the first and second matter. See, e.g., Hickman v. Burlington Bio-Med. Corp., 371 F. Supp. 2d 225, 230 (E.D.N.Y. 2005) ("Where an attorney's representation of a client is general in nature, he may be disqualified from representing an adverse party in later litigation, but only if the later litigation puts at issue the client's entire background."); United States v. Escobar-Orejuela, 910 F. Supp. 92, 99 (E.D.N.Y. 1995) (20-year "hiatus between the two prosecutions, which as stated arose out of unrelated investigations, minimizes the likelihood that [former government attorney] has, or is likely to have, privileged government information that could now be of use [in representing criminal defendant].").

(U) Once a substantial relationship between two cases is established, the moving party need not prove that the former attorney had access to relevant privileged information. Instead, "where the same individual lawyer participated in the prior and current representation, the movant is not required to make a specific showing that confidences were passed to counsel. Instead, the movant is entitled to the benefit of an irrebuttable [sic] presumption that confidences were shared." Prevezon Holdings Ltd., 839 F.3d at 240. In other words, the

> substantial relationship test removes the need for courts to make direct inquiry into whether confidential information was actually transmitted. After finding a substantial relationship exists . . . [t]he Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

Id. at 240-41. Indeed, disqualification has been warranted to avoid the "risk [of] the chance" that an attorney's "unconscious impressions might be influenced by [his former client's] confidential

information." <u>TufAmerica, Inc. v. Codigo Music LLC</u>, No. 11 CIV. 1434, 2013 WL 1903867, at *5 (S.D.N.Y. May 7, 2013) (disqualification of attorney sustained regardless "whether or not confidences were shared or either party recalls the confidences" because the current and former matter were substantially related). On the other hand, if there is even a "substantial risk" that confidential factual information from the prior representation would materially advance the client's position in the subsequent matter, the matters should be deemed "substantially related." N.Y. Rules of Prof'l Conduct 1.9, cmt. 3. And demonstrating "knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." <u>Id.</u>

(U) Courts in the Second Circuit have explicitly considered the relevant rules of professional conduct in analyzing whether an attorney should be disqualified because of the risk he might use confidences of his former client against that client in a subsequent representations. <u>See, e.g.</u>, <u>Evans</u>, 715 F.2d at 791; <u>United States v. Armaza</u>, 280 F. Supp. 2d 174, 182 (S.D.N.Y. 2003) (considering New York State Bar Rules of Professional Conduct in evaluating whether to disqualify defense attorney who had previously represented witness in criminal prosecution). Here, Cole also is bound by the New York State Bar Rules of Professional Conduct (the "NY Rules") in this case for several reasons.[10] First, "[a]ttorneys arguing before this Court [the EDNY] must abide by" the NY Rules.

_____

[10] (U) Cole is admitted to the bar in the District of Columbia. Pursuant to the Rules of Professional Conduct of the Bar of the District of Columbia ("DC Rules"), "a lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs." DC Rules § 8.5(a). As relevant to this matter, the DC Rules with respect to conflicts of interest are materially the same as the NY Rules. <u>See, e.g.</u>, DC Rules § 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.").

E.g., Pierce & Weiss, LLP v. Subrogation Partners LLC, 701 F. Supp. 2d 245, 251 (E.D.N.Y. 2010). Moreover, "[f]or conduct in connection with a matter pending before a tribunal, the rules to be applied shall be the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise." DC Rules § (b)(1). Here, Cole's representation will be "in connection with a matter pending before" a tribunal in New York—the EDNY—and EDNY's local rules do not provide for Cole to be governed by rules of professional conduct other than New York's. As a result, although he may be subject to other rules of professional conduct, including those in the District of Columbia, Cole's conduct in this matter will be governed by the NY Rules.

(U) Rule 1.9 of the NY Rules provides that "[a] a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." NY Rules 1.9(a). Rule 1.11(a) applies that principal more specifically in the context of former government employees: "a lawyer who has formerly served as a public officer or employee of the government: (1) shall comply with Rule 1.9(c); and (2) shall not represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation." As the District of Columbia Court of Appeals explained with respect to a similar rule in the District, the limitations on former government lawyer's future representations are "meant to induce a former government lawyer considering a representation to err well on the side of caution." In re Sofaer, 728 A.2d 625, 628 (D.C. 1999).

(U) In addition, concerns about conflicts involving former government attorneys are particularly significant because "the public is generally more concerned about government

improprieties than about private improprieties." <u>United States v. Philip Morris Inc.</u>, 312 F. Supp. 2d 27, 44–45 (D.D.C. 2004). As a result, even the appearance of impropriety related to the former government attorney "is more severe" than for a non-government attorney "because the public is likely to be more critical of this potential misuse of information." <u>Id.</u> Any "alleged ethical violation is likely to come under particularly acute scrutiny" in a case, such as this one, where there is "public interest in both the subject matter of the case and the huge amount of resources devoted to the litigation." <u>Id.</u>

(U) Rule 1.9(c) in turn requires that a "lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client, except as these Rules would permit or require with respect to a current client or when the information has become generally known; or (2) reveal confidential information of the former client protected by Rule 1.6 except as these Rules would permit or require with respect to a current client."

(U) Rule 1.9 recognizes that "[a]fter the termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest." NY Rules 1.9, cmt. 1. Under the rule, for example, "a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of a former client," and a "lawyer who has prosecuted an accused person could not properly represent that person in a subsequent civil action against the government concerning the same transaction." <u>Id.</u>

(U) Rule 1.6 governs the confidentiality of information, and applies "not only to matters communicated in confidence by the client, which are protected by the attorney-client privilege, but also to all information gained during and relating to the representation, whatever its source." As a

result, a government lawyer has an obligation not to use or disclose what he or she learned while employed at the Department to the detriment of the United States.

(U) As to the duty of loyalty, "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests," including his own. NY Rules 1.7(a)(1). "Concurrent conflicts of interest . . . can arise from the lawyer's responsibilities to another client, a former client, or a third person, or from a lawyer's own interests." Id., cmt. 1. The rule specifically contemplates that, in addition to concurrent conflicts, "a lawyer's duties of loyalty and independence may be adversely affected by responsibilities to former clients under Rule 1.9 . . . ." Id., cmt. 9.

(U) Finally, courts have recognized that an attorney cannot cure the kind of conflict of interest discussed herein by constructing an artificial barrier in his own head in order to avoid the risk of relying on information obtained during a prior representation. See NCK Org. Ltd. v. Bregman, 542 F.2d 128, 135 (2d Cir. 1976) ("Requiring attorneys to abstain from representation involving potential disclosure of former clients' confidences also frees lawyers from the difficult task of erecting Chinese walls in their own minds between what is confidential and what is not, and forwards 'the public's interest in maintaining the highest standards of professional conduct and the scrupulous administration of justice.'"); cf. In re Namenda Direct Purchaser Antitrust Litig., No. 15 CIV. 7488 (CM), 2017 WL 3613663, at *6 (S.D.N.Y. Aug. 21, 2017) (quoting Auto-Kaps, LLC v. Clorox Co., No. 15 CIV. 1737 (BMC), 2016 WL 1122037, at *4 (E.D.N.Y. Mar. 22, 2016)) ("An expert cannot build a Chinese wall in his own mind, despite his best efforts to do so."). Such a contention is particularly suspect when raised only in response to a challenge from the government. See Papanicolaou v. Chase Manhattan Bank, N.A., 720 F. Supp. 1080, 1087 (S.D.N.Y. 1989) ("This

15

Court doubts whether any Chinese walls, which are meant to be preemptive, can ever function effectively when erected in response to a motion, and not prior to the arising of the conflict.").

B.  (U) Absent Full Knowledge, a Current Client Cannot Waive Any Actual or Potential Conflict Involving that Attorney

(U) Where a court determines that a conflict of interest exists between an attorney and his current client that is not so severe as to require disqualification automatically, a court may permit the attorney to continue representing that client only if the client makes a "knowing and intelligent waiver of his right to conflict-free counsel." United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); accord United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003). Informed consent "requires that each affected client be aware of the relevant circumstances, including the material and reasonably foreseeable ways that the conflict could adversely affect the interests of that client." Filippi v. Elmont Union Free Sch. Dist. Bd. Of Educ., 722 F. Supp. 2d 295, 311 (E.D.N.Y. 2010). A client must be given sufficient information fully to understand that potential conflict before any waiver could be "knowing and intelligent." See, e.g., United States v. Armedo-Sarmiento, 524 F.2d 591, 593 (2d Cir. 1975) ("The district judge should fully explain to [defendants] the nature of the conflict . . ."); see generally United States v. Curcio, 680 F.2d 881, 888 (2d Cir. 1982) ("The first task of the trial court is to alert the defendants to the substance of the dangers of representation by an attorney having divided loyalties in as much detail as the court's experience and its knowledge of the case will permit."). If counsel cannot apprise his client of the full extent of the conflict— because doing so would require divulging privileged or confidential information—then the client cannot make a "knowing and intelligent waiver." United States v. Pappa, 37 F. App'x 551, 554 (2d Cir. 2002) (client could not make "knowing and intelligent" waiver where "attorney-client privilege precluded [current defense counsel] from divulging all of the details of the conflicts . . . and because [defense counsel's] explanation of the conflict indicated there was 'more here than meets the eye'").

16

(U) A district court has "substantial latitude in refusing waivers of conflicts of interest," not only "in those rare cases where an actual conflict may be demonstrated before trial" but also "in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 162–63. This discretion is necessary because "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict. . . . Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." Id.

(U) Moreover, the government has an independent interest in ensuring that waivers of conflict of interest are sufficiently informed. Where defense counsel operates with a conflict of interest, the government's interest in a conviction that can withstand appellate scrutiny and collateral attack is prejudiced. An insufficient waiver can be the basis of a successful collateral attack on an otherwise valid conviction. See Levy, 25 F.3d at 152 ("a defendant has suffered ineffective assistance of counsel . . . if his attorney has (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance"). "In the disqualification situation, any doubt is to be resolved in favor of disqualification." Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975).

II.     (U) COLE'S PRIOR REPRESENTATION IS SUBSTANTIALLY RELATED TO THIS CASE

[REDACTED] Cole cannot represent Huawei without compromising his duties of confidentiality and loyalty to his former client, the Department of Justice, because the instant prosecution of Huawei Tech and Huawei USA is [REDACTED] "substantially related" to [REDACTED] the [REDACTED] investigation [REDACTED] in which Cole personally and substantially participated. NY Rules § 1.11(a)(2). Cole's current representation conflicts with two

17

aspects of his prior work for the Department. First, the defendants' defenses, discovery requests, and strategy in this case already implicate aspects of the [REDACTED] investigation on which Cole was briefed during his tenure as DAG. [REDACTED]. Cole has privileged information [REDACTED] that he would not have but for his representation of the Department, which he can exploit to the defendants' advantage. [REDACTED].

    A.    [REDACTED] Cole's Current Representation of Huawei Is Substantially Related to His Prior Representation of the United States in Its [REDACTED] Investigation [REDACTED]

[REDACTED] Cole's prior representation of the Department in the [REDACTED] investigation is substantially related to his current representation of [REDACTED] Huawei Tech and Huawei USA, in this case.

[REDACTED]

[REDACTED] Obviously, Cole's knowledge and actions with respect to [REDACTED] during his five-year tenure as DAG—including about [REDACTED]—are substantially related to the selective prosecution defenses that Huawei intends to raise. In particular, there is a "substantial risk" that Cole could use "confidential factual information" obtained while serving as DAG to "materially advance" Huawei's current defense strategy. See, e.g., NY Rules § 1.9, cmt. 3 ("substantial relationship" applies where there is "a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter").

[REDACTED] There are other examples of defense actions that are substantially related to Cole's prior representation. [REDACTED] Under the case law, there is a presumption that such requests, and similar follow-up requests or litigation, are influenced by information Cole learned

during his representation of the government in the [REDACTED] investigation.[13]  See Prevezon

Holdings Ltd., 839 F.3d at 240 ("[W]here the same individual lawyer participated in the prior and

current representation . . . the movant is entitled to the benefit of an irrebuttable presumption that

confidences were shared.").   As a second example, Cole may seek to cross-examine law

enforcement agents about actions taken during the time period in which he served as DAG

[REDACTED].  See United States v. Ostrer, 597 F.2d 337, 340 (2d Cir. 1979) (disqualification of

former government lawyer in part because "privileged information obtained in the course of the

former representation may be used to impeach of discredit important Government witnesses in a

closely related matter").  All of these defense actions squarely put at issue facts that Cole learned

as DAG and were relevant to his representation of the United States in its investigation

[REDACTED].

(U) These examples also demonstrate, as the Second Circuit has recognized, that the harm

to the government from Cole's continued representation of the defendants extends beyond the risk

that he will "overtly use[] confidences" obtained from the government.  See Prevezon Holdings

Ltd., 839 F.3d at 238.  There is also a risk that Cole, "while not explicitly using confidences, may

use such confidences to guide [his] defense of [Huawei] in other ways."  Id.  As the court held in

Prevezon, that latter risk, alone, is grounds for disqualification.  Id.

[REDACTED]

---

[13] The entire Cole Discovery Request raises concerns about Cole's representation of the
Huawei entities, because there is no way to know whether its content was influenced by knowledge
Cole collected during his prior representation of the United States as DAG.

(U) The commentary to the applicable ethical rule counsels in favor of disqualification. Cases are "substantially related" where there is a "substantial risk that confidential factual information that would normally be obtained in the prior representation would materially advance the client's position in the subsequent matter."[16]  NY Rules § 1.9 cmt. 3.  As examples, the commentary provides that "a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce." Id.  "Similarly, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations . . . ." Id. Those examples are particularly instructive because, in neither of those cases is there necessarily any overlap in the statutes, laws, or causes of action at issue in the "matters,"  Rather, it is the obvious relevance of information obtained during the first matter to the second matter that compels disqualification.

[REDACTED]  Similarly, the substantial relationship between the  [REDACTED] investigation and this case fits squarely in the set of cases in which an attorney has been disqualified given the risk of using information obtained from a former client.  For example, in Prevezon

---

[16] "A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter," but where the former client does establish "knowledge of [relevant] specific facts," that will "ordinarily . . . preclude such a representation."  NY Rules § 1.9, cmt. 3.  This is because the "substantial relationship" test is not itself an ethical duty, but rather the rule established to protect the "continuing duties with respect to confidentiality and conflicts of interest." Id. cmt. 1.  It follows, therefore, that where the former client can establish directly that its former counsel was actually exposed to relevant, confidential information, or will necessarily face a conflict of interest, it need not expose to view the precise factual relationship between the former and current matters to demonstrate the need for disqualification.

Holdings, an attorney sought to defend an entity accused of fraud through a "defense strategy" of proving that a former client, whom he had previously characterized as a victim of the fraud, had committed the fraud. 839 F.3d at 241. The Second Circuit held that the attorney should have been disqualified because he was "in a position where he could use [the former client's] privileged information against [the former client]." Id. [REDACTED].

[REDACTED] And the relationship between the [REDACTED] investigation [REDACTED] and this case is far closer than in cases where disqualification was denied. [REDACTED] But here, [REDACTED] the government—although not required to do so—has identified specific confidential information from Cole's prior representation that Cole had and can use to the detriment of his former client.

[REDACTED]

[REDACTED] But here, Cole should be disqualified because he was personally and substantially involved in a [REDACTED] investigation [REDACTED] that exposed him to relevant, privileged factual information [REDACTED] and strategic information about that investigation. As the District of Columbia Court of Appeals explained, the prohibition of a government attorney's involvement in a "substantially related" matter in private practice is "meant to induce a former government lawyer considering a representation to err well on the side of caution." In re Sofaer, 728 A.2d at 628. Unfortunately, we are well past the point of caution, and the Court should disqualify Cole.

B.    [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

21

[REDACTED]

[REDACTED]

[REDACTED]

III.    <u>(U) THE GOVERNMENT'S INTEREST IN A FAIR TRIAL AND JUST VERDICT WILL BE PREJUDICED BY COLE'S REPRESENTATION OF THE DEFENDANTS</u>

(U) Separate and apart from the protection of its own privileged and classified information, the government has an interest in "ensuring a just verdict and a fair trial" in this case. <u>Levy</u>, 25 F.3d at 155. That interest will be prejudiced if Cole represents the defendants, because the defendants will not be able adequately to waive any conflict created by Cole's role. As a result, any conviction would likely be vulnerable to an appeal or collateral attack based on a claim of ineffective assistance of counsel.

(U) As explained above, Cole is in possession of information he learned as DAG that relates to his representation of his current clients but that he cannot reveal, let alone use, in that representation. This dynamic creates a conflict of interest given that Cole cannot give his clients his undivided loyalty. <u>See</u> NY Rules § 1.7(a)(2). The conflict could arguably be resolved by obtaining a knowing and intelligent waiver of any potential conflict from Huawei. <u>See Jones</u>, 381 F.3d at 119; <u>see also</u> NY Rules § 1.7(b)(4). Here, however, because of the classified nature of the conflict, Cole cannot provide his clients with more than the most cursory description of the conflict—that he knows something related to his current representation of Huawei that he cannot share or use—because he is not authorized to share any more information with his clients.

[REDACTED]

(U) The limited information Cole could share is far short of what would be required for Cole's clients to waive the potential conflict at issue here knowingly and intelligently. <u>See, e.g.</u>, <u>Pappa</u>, 37 F. App'x at 554 (statement by a Federal Defender representing defendant that the Federal

22

Defenders had previously represented a potential government witness, but not divulging "all of the details of the conflicts," was insufficient to allow a knowing and intelligent waiver of a potential conflict); Armedo-Sarmiento, 524 F.2d at 593 ("The district judge should fully explain to [defendants] the nature of the conflict . . .") (emphasis added). Because Cole's clients cannot knowingly and intelligently determine whether to waive their conflict, any representation by Cole would taint the trial process and any ultimate conviction, to the prejudice of the government. As a result, Cole should be disqualified.

## (U) CONCLUSION

(U) For the foregoing reasons, the government respectfully requests that the Court grant its

motion to disqualify Cole.

Dated: Brooklyn, New York
      May 2, 2019

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

By:        <u>   /s/ David K. Kessler   </u>
                  Alexander A. Solomon
                  Julia Nestor
                  David K. Kessler
                  Kaitlin T. Farrell
                  Sarah M. Evans
                  Assistant U.S. Attorneys
                  (718) 254-7000

                  Thea D. R. Kendler
                  David Lim
                  Trial Attorneys
                  Counterintelligence and Export
                         Control Section
                  National Security Division

                  Laura M. Billings
                  Christian J. Nauvel
                  Trial Attorneys
                  Money Laundering and Asset
                         Recovery Section
                  Criminal Division

cc:    Clerk of the Court (AMD)