UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

       - v. -                                           18 CR 457 (S-2) (AMD)

HUAWEI TECHNOLOGIES CO.
LTD., *et al.*,

                        Defendants.
_____

### REPLY MEMORANDUM PURSUANT TO L. CRIM. R. 49.1(C) IN SUPPORT OF HUAWEI'S MOTION FOR THE COURT TO REVIEW THE GOVERNMENT'S REDACTIONS TO THE MOTION TO DISQUALIFY COUNSEL

Although the Government is a uniquely powerful litigant, it is still just a litigant. Indeed, the Government has relied on its role as former client, not sovereign, in seeking to have James M. Cole—Huawei's chosen counsel—disqualified from the case. Yet despite this, the Government is repeatedly asking the Court to endorse its litigating positions without authority or supporting logic, as though the Government's preferences have the force of law.

This was initially the case when the Government moved to disqualify Huawei's counsel simply by *declaring* that there is a substantial relationship between the instant matter and some unidentified matter that Mr. Cole was briefed about while he was Deputy Attorney General, while simultaneously seeking to preclude Huawei from contesting the motion by redacting *every* part of the supposed factual basis for that motion (without prior permission of the Court). And it is true again now, when the Government has responded to Huawei's motion to review and lift some portion of the Government's redactions by filing a terse opposition that is long on casual declarations of entitlement to its preferences and short on legal or logical authority for why this

Court should permit an *ex parte* procedure that has never been permitted in connection with any disqualification motion before. This unprecedented maneuver is especially alarming in light of the stakes—an improper disqualification could not be appealed until after judgment, *see Flanagan v. United States*, 465 U.S. 259 (1984), and at that time it would automatically constitute reversible error, *see United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).

Most striking about the Government's opposition is the Government's apparent concession that there is no precedent for the secret, *ex parte* procedure the Government proposes. As Huawei observed in its motion, "[e]very former client that seeks disqualification necessarily has some interest in confidentiality," and yet *every* prior case appears to "involve[] some description of the work the former client claimed justified the disqualification of the lawyer in question," and *no* prior case appears to have proceeded by permitting "the former client . . . to submit *every* fact justifying disqualification on an *ex parte* basis." (Mot. at 5, 7 (emphasis in original).) In its opposition, the Government neither argues nor cites any case to the contrary. Put simply, taking a defendant's lawyer away without telling it the basis or letting it contest that basis would be a first, and the Government does not say otherwise.[1]

Moreover, although the Government contends that it has, in fact, provided Huawei with the supposed basis for disqualification, it has not. While the Government is correct that its motion "explains that the conflict arises from a specific investigation in which Cole was involved in his role as DAG" (Opp. at 3), that "explanation" says nothing. It is no more than a loose

---

[1] An *ex parte* procedure should be viewed with great skepticism in *any* context, let alone one where a criminal defendant's Sixth Amendment rights are at issue. "The value of a judicial proceeding … is substantially diluted where the process is *ex parte*, because the Court does not have available the fundamental instrument for judicial judgment: an adversary proceeding in which both parties may participate." *Carroll v. President & Comm'rs of Princess Anne,* 393 U.S. 175, 183 (1968).

characterization of the legal standard, *see United States v. Escobar-Orejuela*, 910 F. Supp. 92, 99 (E.D.N.Y. 1995) (requiring a "*substantial* relationship between the subject matter of [the prior representation] and the issues in the present prosecution") (emphasis in original), not an articulation of the actual basis for disqualification. It is the same as telling a defendant who has not been supplied the agent's affidavit detailing the factual basis for a search warrant's issuance that he nonetheless has all the information he needs to evaluate the legality of the warrant because a single sentence on the face of the warrant "explains" that the warrant was issued based on "probable cause." Absent some factual detail, Huawei is in no position to contest the Government's assertion that Mr. Cole previously worked on a matter that would require his disqualification here. Put differently, this issue requires a "searching fact-specific inquiry," *Escobar-Orejuela*, 910 F. Supp. at 94, and yet the Government wants to exclude the party whose Sixth Amendment rights are at stake from having any meaningful opportunity to participate.

The Government's repeated suggestion that the basis for Mr. Cole's disqualification is obvious even without explanation is likewise meritless. The Government attempts to impugn Mr. Cole by suggesting that this situation is Mr. Cole's fault because "Cole chose to represent Huawei, in spite of his previous work as DAG." (Opp. at 2.) What the Government neglects to mention is that Mr. Cole stepped down as DAG in January 2015, more than two years before the first grand jury subpoena in this case was served in April 2017 (*see* Govt. Mot. to Disqualify at 4). Similarly, the press has reported that this case arose from an internal bank investigation that took place "in late 2016 and 2017." Karen Freifeld & Steve Stecklow, HSBC PROBE HELPED LEAD TO U.S. CHARGES AGAINST HUAWEI CFO, Reuters, Feb. 26, 2019 (available at https://www.reuters.com/article/us-huawei-hsbc-exclusive/exclusive-hsbc-probe-helped-lead-to-us-charges-against-huawei-cfo-idUSKCN1QF1IA). In light of the timing, the supposed need for

3

disqualification is non-obvious and turns not on Mr. Cole having been DAG, but on something he supposedly was told more than two years prior to the opening of the grand jury investigation that led to this prosecution.[2] Even if he was briefed on something that somehow relates to the later investigation that produced this case, there is no reason to believe that the issue could not be addressed with appropriate prophylactic measures instead of disqualification. But the Government wants to have Huawei's constitutionally protected choice of counsel overridden without even telling Huawei anything about what the issue is.

As to the type of information that Huawei is seeking, the Government avoids engaging on the question by setting up a strawman that flatly misrepresents Huawei's position. The Government tells the Court that "the defendants suggest that the government may try to disqualify Cole . . . only if it first provides Huawei with . . . privileged information." (Opp. at 1 (emphasis in original).) The Government should be more careful in its arguments. Huawei could hardly have been clearer in its motion that that is *not* its position. As it explained in its motion: "Huawei is not asking for access to anything privileged. It is asking for non-privileged

---

[2] The Government is also off base in its implication that Mr. Cole has improperly revealed information about the classified version of the disqualification motion that the Government showed him. The information is what Mr. Cole has put in his public declaration, and it is not improper. He has explained that: he "ha[s] no recollection" of any facts that would call for his disqualification; when the Government met with him to discuss the purported basis for its disqualification motion, "[i]t did not provide [him] with any particulars of the facts that it asserts were presented to [him] while [he] serv[ed] as DAG, how those facts relate to this case, or whether any of those facts would be used in this case"; and "since that time," including in the classified version of the motion he was shown, the Government "has provided [him] with no further information." (Cole Decl. at ¶¶ 4, 6.) And it is both silly and hypocritical for the Government to claim that Mr. Cole was prohibited from publicly observing simply that the version of the motion he was shown did not lift many of the redactions contained in the publicly filed version. (Opp. at 2.) In almost the same breath in which they imply that Mr. Cole transgressed by publicly discussing the comparative level of redactions, the prosecutors offer their *own* public observations on the *exact same subject*. (Opp. at 2 (claiming that the version of the motion shown to Mr. Cole was "significantly less redacted" than the publicly filed version).)

4

facts sufficient to understand and evaluate the Government's claim that the subject of Mr. Cole's prior representation as DAG is substantially related to this matter." (Mot. at 7 n.2; *see also id*. at 8 n.3 ("A former client is not require to reveal privileged information[.]").) Settled law and the precedent of every prior disqualification case make clear that some amount of detail about the subject of the prior representation can be revealed and considered in this context without implicating privilege. *See, e.g., United States v. Ostrer*, 597 F.2d 337, 339 (2d Cir. 1979) (affirming disqualification after describing in detail defense counsel's prior involvement as a prosecutor in relevant investigation and prosecution and relationship between that work and new matter); *Escobar-Orejuela*, 910 F. Supp. at 94 (denying disqualification after "conduct[ing] a searching fact-specific inquiry of counsel to flush out the nature and scope of [the competing] interests in the context of the prior and current prosecutions."). To the extent there is information that should be kept non-public or classified, Huawei already explained that it "has no objection to the Government revealing the information only in a sealed filing" or "subject to whatever protections are needed" (Mot. at 12, 13), including potentially restricting the information to attorneys' eyes only. In its opposition, the Government ignored entirely Huawei's suggestion of these possibilities.

The Government similarly misrepresents Huawei's position when it disputes Huawei's *supposed* contention that Huawei's "Sixth Amendment rights . . . 'trump' the government's need to protect its former attorney from disclosing privileged information to the defendants." (Opp. at 1.) The Government well knows that Huawei has said nothing of the sort. Huawei did not contend that its Sixth Amendment rights trump any legitimate ground for disqualification. To the contrary, Huawei acknowledged that the Sixth Amendment "right to counsel of choice is not absolute." (Mot. at 4.) What Huawei *actually* said in the portion of its motion that the

5

Government mischaracterizes is that "Huawei's Sixth Amendment right to counsel and Due Process right to participate in every meaningful stage of the case against it plainly trumps the Government's mere desire (far from a right) *to pursue this legal conflict issue ex parte and in total secrecy*." (Mot. at 8 n.3 (emphasis added).)

As to that argument—that Huawei's Fifth and Sixth Amendment rights to know and contest the supposed basis for disqualification trump the Government's desire for total secrecy—the Government has little to say. Indeed, the only time the Government can bring itself to mention the Sixth Amendment is when attempting to dismiss its application, announcing that "the defendants' Sixth Amendment interest weighs even less" because even if Mr. Cole is disqualified "the defendants will still be represented by the numerous other attorneys whom the defendants have chosen." (Mot. at 2 n.1.) The Government cites nothing to support this proposition, which cuts directly against the Supreme Court's admonition that the Sixth Amendment "commands[] not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Gonzalez-Lopez*, 548 U.S. at 146. And, in fact, courts have expressly rejected the Government's argument. *See United States v. Laura*, 607 F.2d 52, 58 (3d Cir. 1979) (right at issue was not diminished where defendant still had a chosen lawyer from her defense team after another was disqualified, because defendant "wished to retain both attorneys," the "choice is hers to make and not the court's," and court would not impose "burden" of making defendant "prov[e] the importance of [the disqualified attorney's] assistance"); *Lainfiesta v. Artuz*, 2000 WL 1459800, at *1 & n.10 (S.D.N.Y. 2000) ("Within limits, a defendant has the right to . . . select a particular attorney, *or attorneys*, to assist with [his or her] defense.") (emphasis added) (citing *Laura*).

6

Whatever other lawyers Huawei may have retained, Mr. Cole is its chosen lead counsel. The Government cannot pretend that disqualifying him—and doing so without giving Huawei any opportunity to know and contest the reason—would not have significant Sixth Amendment implications. And as noted in Huawei's motion, an unjustified disqualification of a defendant's counsel is structural error that requires automatic reversal of any resulting conviction. *Gonzalez-Lopez*, 548 U.S. at 148 ("Where the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants[.]").

Finally, and tellingly, the Government simply ignores the bulk of Huawei's argument about the self-serving methodology and facial overbreadth of the redactions in the Government's disqualification motion. Huawei observed in its motion that after promising to "leave surrounding text" around its redactions "as much as possible" (Mot. Ex. B at 2 n.1), the Government instead redacted entire strings of paragraphs and sentences, leaving no surrounding text. (Mot. at 10-11.) The Government has decided not to respond to that point or explain why it did what it did. Huawei also pointed out that although it is impossible to know what is under most of the redactions, there were several facially inexplicable ones, including the redaction of the district from which a grand jury subpoena issued, and the redaction of the entirety of several sentences or paragraphs that appear to involve nothing more than distinguishing prior precedent. (Mot. at 9-10.) The Government has decided not to respond to that point or explain why it did what it did.[3] Huawei also questioned why the government removed paragraphs of text entirely,

---

[3] The Government observes in passing that Huawei likely already knows what was redacted in two of the identified instances. (Mot. at 4.) That is a non-sequitur. It explains why the improper redaction of those two particular items might be harmless, not why the Government

rather than using "word-by-word and line-by-line black-bar redactions over existing test as was done in the Special Counsel's report on Russian interference in the 2016 Presidential election," which would have lent itself to the exercise of sparing individual words from redaction to the greatest extent possible and allowing Huawei and the public to see how much text was actually redacted. (Mot. at 10.) Again, the Government has decided not to respond to that point or explain why it did what it did.

Ultimately, as Huawei has previously pointed out, the Government's disqualification motion evinced an "attitude of indifference by the Government to the Sixth Amendment rights at stake in its motion to strip Huawei of its choice of counsel." (Mot. at 10.) The Government's opposition to Huawei's motion for this Court to review the redactions in the Government's disqualification is more of the same. The Government cannot point to any precedent for its attempt to proceed *ex parte* and without disclosing to the defendant *any* of the facts that purportedly justify disqualification of its chosen counsel. It does not seriously try to explain why it should be allowed to do so. In opposing Huawei's motion for more information about the supposed basis for disqualification, the Government misrepresents Huawei's position multiple times. And the Government ignores entirely the specific deficiencies that Huawei has identified in the way the redactions were implemented.

---

decided to make them; something that is all the more curious (and that the Government does not bother to explain) if the Government now asserts that it was fully aware in those instances that it was concealing something Huawei already knew. Huawei already made clear that it is not contending that "the specific words under any of th[e] particular redactions" it cited are "necessarily critical." (Mot. at 10.) The point of the examples is that even in the few instances where Huawei can infer what has been redacted, the level of redaction appears unnecessary, suggesting that unnecessary redaction is likely present throughout. (*Id*.) The Government has offered no response to that point.

Accordingly, for the foregoing reasons, and for those in Huawei's motion, Huawei respectfully submits that the Court should review the Government's disqualification motion and order the lifting of redactions—subject to whatever protections are needed—in order to permit Huawei as much access as possible to the information that the Government has advanced to strip Huawei of its Sixth Amendment right to choice of counsel, and at least enough to reasonably permit it to oppose the Government's motion.

Respectfully submitted,

/s/ Michael A. Levy  
James M. Cole  
Michael A. Levy  
SIDLEY AUSTIN LLP  
787 Seventh Avenue  
New York, NY 10019  
Tel: 212-839-7341  
Email: mlevy@sidley.com  

/s/ David Bitkower  
David Bitkower  
JENNER & BLOCK LLP  
1099 New York Avenue, NW  
Washington, D.C. 20001  
Tel: 202-639-6048  
Email: dbitkower@jenner.com  

*Counsel for Defendants Huawei Technologies Co., Ltd. and Huawei Device USA, Inc.*