**SIDLEY**                                                    **JENNER&BLOCK**ʟʟᴘ

April 3, 2020

**UNREDACTED VERSION
FILED UNDER SEAL**

**VIA ECF**

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 4GN
Brooklyn, NY 11201

Re:   *United States v. Huawei Technologies Co., Ltd., et al.*, **18 CR 457 (S-3) (AMD)**;
      <u>Application to Discuss Discovery Materials with Witness</u>

Dear Judge Donnelly:

      Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc. (collectively, "Huawei"), respectfully seek the Court's authorization, pursuant to the protective order entered by the Court on June 10, 2019 ("Protective Order"), *see* ECF No. 57, to discuss the Discovery Materials on a limited basis with co-defendant Meng Wanzhou.

      Under the Protective Order, Huawei is generally authorized to review discovery with its own employees or with potential witnesses. Those provisions safeguard Huawei's constitutional right to prepare its defense. The discovery in this case concerns conduct stretching back 21 years and already encompasses nearly one million documents, with more discovery still to be produced. If Defense Counsel were barred from discussing those documents with knowledgeable witnesses, it would cripple Huawei's ability to investigate and rebut the government's allegations.[1]

      That proposition should be uncontroversial, yet in negotiating the Protective Order, the government insisted on carving out for a future day Huawei's ability to discuss discovery materials with the Huawei officer who figures most prominently in the events charged in the Indictment, Huawei Chief Financial Officer ("CFO") Meng Wanzhou. Absent those restrictions, Ms. Meng

---

[1] All capitalized terms have the same meaning as in the Protective Order.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 2

likely would have been among the very first Huawei officers with whom Defense Counsel would have sought to discuss discovery. The Indictment alleges that Huawei is guilty of fraud because in 2013 Ms. Meng, acting as CFO, supposedly misled HSBC about Huawei's relationship to an entity called Skycom.[2] Other counts of the Indictment allege that Huawei conspired with Ms. Meng to defraud multiple banks by lying about Huawei's connections to Skycom. Ms. Meng is the only Huawei officer mentioned by name in the Indictment, and she is mentioned no fewer than 17 times.

After diligent efforts that lasted the better part of a year, Huawei and the government have failed to reach agreement on the company's ability to review discovery materials with its CFO. Instead, the government agreed that Huawei and Ms. Meng could discuss a total of approximately ▮ documents, and could do so only pursuant to extreme security measures reminiscent of terrorism or gangland retaliation cases. The government's principal explanation, however, is not that the materials are *sensitive*—the government has refused to permit discussion of essentially every document it has produced, and not just those documents meeting the government's indefensibly low bar for "Sensitive Discovery Material." Rather, the government contends that *Ms. Meng* is not entitled to view the discovery because, after she was seized at the airport by Canadian officials at the request of the U.S. government, she chose to exercise her rights under the Canadian Constitution and Canadian law.

The government's argument is a non sequitur. Ms. Meng's rights—whatever they are—are not at issue in this Application. Huawei is seeking to vindicate its *own* right to discuss the evidence with an essential witness. Huawei's right to prepare its defense cannot be diminished because a co-defendant is challenging legal positions taken by the United States in another court. The burden is on the government to demonstrate good cause to restrict Huawei's ability to discuss discovery with Ms. Meng. It has not done so because there is no good reason to deprive Huawei of its abilty to defend itself by barring Huawei from discussing the government's evidence with the Huawei official whose alleged actions are the basis of much of the government's claims against Huawei. The government's concerns are also baseless because Ms. Meng's Canadian counsel could be barred from reviewing any discovery provided or using that discovery in a Canadian proceeding, just as they have been with respect to the ▮ documents that the government has allowed Huawei to share with Ms. Meng. The Court should therefore order that Huawei may discuss discovery produced by the government with Ms. Meng in order to prepare Huawei's defense. Huawei respectfully requests oral argument on this Application.

---

[2] All references to the Indictment refer to the Third Superseding Indictment unsealed on February 13, 2020. *See* ECF No. 126.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 3

# BACKGROUND

**A. The Indictment, Ms. Meng, And The Extradition Proceedings.**

Ms. Meng has been the CFO of Huawei since 2010. She is also the daughter of Huawei's founder and CEO, Ren Zhengfei. The Indictment alleges that she and Huawei conspired to mislead multiple banks between 2007 and 2015 about Huawei's relationship with Skycom, a company operating in Iran and for which Ms. Meng publicly served as a Director. Indictment ¶¶ 5, 99-100, 103-04.

In addition to those conspiracy counts, the Indictment appears to allege that Huawei is vicariously liable for a fraudulent scheme that Ms. Meng supposedly carried out against HSBC. *Id*. ¶¶ 105-06, 109-10. According to the Indictment, in 2013, Ms. Meng personally presented a PowerPoint presentation to HSBC containing false information about Huawei's relationship with Skycom, as part of a criminal effort to continue to obtain commercial banking services from HSBC. *Id*. ¶¶ 76-79. According to the Indictment, HSBC then relied on those representations in continuing its banking relationship with Huawei. *Id*. ¶¶ 71, 79.

In addition to the charges involving the PowerPoint presentation, the Indictment contains a number of other allegations of financial wrongdoing by Huawei during Ms. Meng's tenure as CFO, or concerning Skycom. For example, it alleges that several years later, Huawei personnel were dishonest with other banks about the reason Huawei no longer had a banking relationship with HSBC; that it made and conspired to make illegal dollar-denominated payments; and that it illegally employed and conspired to employ a U.S. citizen in Iran. *Id*. ¶¶ 1-5, 64-86, 107-08, 114-26.

On December 1, 2018, Ms. Meng, a Chinese citizen, was arrested by Canadian authorities in Vancouver International Airport while transferring between flights en route to a conference in Mexico. The arrest was made pursuant to a Canadian extradition warrant issued at the request of the U.S. Department of Justice. The Indictment was sealed at that time, and Ms. Meng had no prior notice she was being charged with any crime.

Extradition proceedings were initiated against Ms. Meng in the British Columbia Supreme Court. Ms. Meng, via Canadian counsel, has challenged her arrest and extradition as unlawful on Canadian constitutional and treaty-based grounds. In December 2019, the Canadian Supreme Court found that Ms. Meng's objections to extradition were substantial enough to warrant compelling the Canadian authorities to make additional disclosure and require a hearing. *See* Reuters, *Huawei's CFO Wins Canada Court Fight To See More Documents On Her Arrest* (Dec. 10, 2019), https://www.reuters.com/article/us-usa-huawei-tech-canada/huaweis-cfo-wins-canada-court-fight-to-see-more-documents-on-her-arrest-idUSKBN1YE2NW.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 4

### B. The June 10, 2019 Protective Order

On June 10, 2019, the Court entered the Protective Order that generally governs the use of discovery in this case. As relevant here, the Protective Order allows Defense Counsel to discuss Discovery Materials with Huawei's own officers and directors, Huawei employees needed to assist in the defense, and other potential witnesses. Protective Order ¶¶ 1 n.1, 5. At the time the Protective Order was negotiated, however, the government refused to stipulate to any order permitting Defense Counsel to discuss any of its evidence, in any circumstance, with Ms. Meng. The Protective Order thus contains a carve-out stating that the parties would negotiate such terms at a later time:

> Without waiving any future rights or arguments, the parties will promptly seek to negotiate, in good faith, a separate agreement governing disclosure of Discovery Materials to co-defendant Wanzhou Meng and her counsel. Pending such agreement or further order of the Court, notwithstanding any other provision in this Protective Order, no Discovery Materials shall be disclosed to co-defendant Meng or her counsel.

*Id.* ¶ 1 n.1.

### C. The March 12, 2020 Supplemental Protective Order

After a period of extended negotiation, the government agreed to allow Defense Counsel to discuss an extremely limited category of Discovery Materials (███████████████████████████████████████████████████████████) with Ms. Meng and her U.S. counsel at Steptoe & Johnson LLP. That agreement is embodied in a March 12, 2020 Supplemental Protective Order ("SPO"), which the parties expressly agreed does not "limit[] the right of the parties . . . to seek additional relief from the Court." SPO at 1.

Under the SPO, Defense Counsel may share "Agreed Discovery Materials," consisting solely of documents that Ms. Meng had previously sent or received herself. Even with respect to that narrow category, the SPO strictly limits the use and handling of Agreed Discovery Materials: all discussions must take place in the presence of Huawei's U.S. counsel; Ms. Meng and her own U.S. counsel are not permitted to retain any Agreed Discovery Materials; none of the Agreed Discovery Materials (or any work product derived or prepared from the discovery) may be discussed with Ms. Meng's Canadian counsel representing her in the Canadian extradition proceedings; and Agreed Discovery Materials may be used "only for the limited purpose of assisting [Huawei] in defending itself against the charges in [this] case and any superseding indictment," and specifically not in Ms. Meng's extradition proceedings in Canada. *See* SPO ¶¶ 4-7.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 5

### DISCUSSION

The government has not shown good cause to bar Huawei from discussing ███ of the Discovery Materials in this case with Ms. Meng. Accordingly, this Court should hold that Huawei is allowed to discuss Discovery Materials with Ms. Meng.[3]

**A. Legal Standard**

The Sixth Amendment entitles a criminal defendant to a "meaningful opportunity to present a complete defense." *United States v. Fishenko*, No. 12-CV-626, 2014 WL 5587191, at *1 (E.D.N.Y. Nov. 3, 2014) (quoting *Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006)). In preparing that defense, the defendant cannot be barred from sharing discovery with relevant persons, absent "good cause" shown by the government. *See* Fed. R. Crim. P. 16; *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002) (refusing to impose blanket ban on sharing of discovery in case involving terrorism allegations, and holding that courts must "weigh impact" of restriction on a "defendant's due process right to prepare and present a full defense at trial"); *United States v. Johnson*, 314 F. Supp. 3d 248, 257 (D.D.C. 2018) (rejecting government's proposed terms in protective order that would forbid defense counsel from sharing evidence with defendant and third parties).

Good cause exists "where a party shows that disclosure will result in a clearly defined, specific and serious injury." *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)). "A finding of harm 'must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" *Id.* (citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *see also Smith*, 985 F. Supp. 2d at 528 (same). The government always bears the burden of justifying good cause for a restriction on discovery. *Johnson*, 314 F. Supp. 3d at 257.

---

[3] This Application seeks to share both DM and SDM documents with Ms. Meng and her U.S. counsel. The Protective Order contemplates that Huawei may share Discovery Materials, including SDM, with a prospective witness or company official in connection with defending the case. *See supra* at 1, 3-4. Ms. Meng is both a prospective witness and a relevant company official. While SDM cannot normally be shown to witnesses or officials outside the United States, Ms. Meng is under house arrest in Canada. There is no meaningfully greater security risk as between sharing in the United States and in Canada, particularly given Ms. Meng's confinement and the terms of the SPO, which further severely restrict dissemination of information.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 6

### B. Huawei Has A Significant Need To Discuss Discovery Materials With Ms. Meng.

Huawei has a straightforward, and constitutionally protected, need to discuss the discovery with Ms. Meng. As related above, the government's Indictment rests in substantial part on allegations that Huawei conspired with or otherwise acted with Ms. Meng in carrying out fraudulent schemes over the course of a decade. It similarly appears to rest on the theory that Huawei is vicariously liable for Ms. Meng's conduct on the company's behalf.

Huawei cannot have a "meaningful opportunity" to test the evidence speaking to these charges without discussing that evidence with Ms. Meng. *Fishenko*, 2014 WL 5587191, at *1 (quoting *Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006)). To take just one example, the government asserts that Huawei is guilty of fraud because in 2013 Ms. Meng, in her capacity as CFO, presented a PowerPoint deck to HSBC that misled the bank about the relationship between Huawei and Skycom. But the discovery reveals . It is essential in preparing its defense that Huawei be able to discuss that evidence with Ms. Meng; to develop further the context of the allegedly misleading representations; and more generally to use the evidence to explore her recollections about Huawei's interactions with HSBC and other banks.

The government may respond that it has no objection to Ms. Meng discussing the case with Huawei, only to her seeing the evidence. But that is no substitute. This is not a trial about a discrete event or relationship that any witness could easily recall; it is a trial about an alleged raft of conspiracies beginning in *1999* and involving one of the world's largest companies, multiple international banks, and already nearly one million documents. To hold that Huawei cannot discuss the government's actual evidence with a witness would violate Huawei's "due process right to prepare and present a full defense" by effectively depriving the company of any opportunity to realistically discuss the facts. *Lindh*, 198 F. Supp. 2d at 742.

### C. The Government Cannot Establish Good Cause To Bar Huawei From Discussing Discovery Materials With Ms. Meng.

The reason for the government's attempt to prevent Huawei from discussing the evidence with Ms. Meng is no secret, and it does not remotely establish the "good cause" required under the law to impose a blanket ban on Huawei discussing more than ▇▇▇ of the Discovery Materials with a witness at the heart of the case.

The government has taken the position that it is improper for Huawei to discuss the discovery with Ms. Meng because Ms. Meng is challenging the authority of the United States to bring her across the Canadian border to New York for trial. That argument misses the point.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 7

Huawei's request to discuss the evidence is not premised on Ms. Meng's right to see that evidence; it is premised on Huawei's rights as a criminal defendant. Nothing about Ms. Meng's decision to challenge her extradition in Canadian court bears any relation to *Huawei's* right to mount a defense in U.S. federal court. Put differently, Ms. Meng's decision to exercise her rights is not "good cause" to compromise Huawei's rights. Huawei has the independent right to prepare its defense wholly apart from the government's dispute with Ms. Meng. *Lindh*, 198 F. Supp. 2d at 741-42 (good cause inquiry "must take account of the impact [discovery restrictions] might have on a *defendant's* due process right to prepare and present a full defense at trial" (emphasis added)).

To the extent that the government's concern is that Ms. Meng will misuse the discovery to advance her extradition case, that concern is even more ill-founded. For one thing, it is strange to hear the government argue that its case for extradition would be weakened if the Canadian courts learned of the discovery that the government seeks to bar Huawei from sharing. One would expect that the relevant evidence has already been provided to the Canadian government in furtherance of the Justice Department's treaty obligations and Ms. Meng's Canadian constitutional rights.

But more importantly, the government's concerns are beside the point, because Huawei and Ms. Meng have already agreed in the SPO to stringent conditions that would preclude any use of the discovery in the Canadian extradition proceedings. The SPO includes a bar on Ms. Meng retaining any Discovery Materials or work product; a bar on the use of Discovery Materials in the extradition proceeding; a bar on discussing the Discovery Materials with any other third party, including Ms. Meng's Canadian counsel; and a requirement that Huawei, Ms. Meng, and her U.S. counsel all certify that they will abide by those restrictions. *See supra* at 4. To the extent that the Court permits Huawei to discuss the discovery with Ms. Meng as a general matter, it can simply adopt those same procedural restrictions as a framework.

\*\*\*

The government has not come close to establishing the good cause needed to restrict Huawei's discussion of discovery with Ms. Meng. This Court should therefore hold that Huawei may share the discovery with Ms. Meng, and if necessary, condition such sharing on the same terms that Agreed Discovery Materials may be shared under the SPO.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 8

Respectfully submitted,

| /s/ Michael A. Levy | /s/ David Bitkower |
|---|---|
| Thomas C. Green | David Bitkower |
| Mark D. Hopson | Matthew S. Hellman |
| Michael A. Levy | JENNER & BLOCK LLP |
| SIDLEY AUSTIN LLP | 1099 New York Avenue, NW |
| 787 Seventh Avenue | Washington, D.C. 20001 |
| New York, NY 10019 | Tel.: 202-639-6048 |
| Tel.: 212-839-5300 | Email: dbitkower@jenner.com |
| Email: mlevy@sidley.com | |

*Counsel for Defendants Huawei Technologies Co., Ltd., Huawei Device USA Inc.,
Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*