

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AAS:JN/DKK/SME
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 7, 2020

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Huawei Technologies Co., Ltd., et al.
      Criminal Docket No. 18-00457 (S-3) (AMD)

Dear Judge Donnelly:

   The government respectfully submits this response in opposition to the motion filed by defendants Huawei Technologies Co., Ltd. ("Huawei Tech"), Huawei Device Co., Ltd., Huawei Device USA Inc. ("Huawei Device USA"), and Futurewei Technologies, Inc. (collectively, "Huawei") to share all Rule 16 material and any Brady disclosures with codefendant Meng Wanzhou (the "Motion" or "Mot."). See ECF No. 145. Good cause exists to limit Huawei's ability to provide discovery to Meng, a third party who is a fugitive from justice and beyond the reach of this Court. Furthermore, Huawei, which has actively helped Meng fight extradition, has failed to show its Sixth Amendment right to prepare a defense requires providing any more materials to Meng than are permitted under the current protective orders.

I. Background

   In December 2018, Meng was arrested in Canada pursuant to an extradition request from the U.S. government based on fraud charges filed against her in this district. Since Meng's arrest, she has resisted extradition to the United States both in the Canadian extradition proceedings and in public statements by her lawyers. Meng also has made repeated requests through the extradition process for discovery, including records from the U.S. government. In January 2019, a grand jury in this district returned a superseding indictment charging Huawei with various crimes, including financial fraud charges in which Huawei and Meng are named codefendants.

   In June 2019, the Court approved a protective order for discovery in this matter (the "Huawei Protective Order"). (ECF No. 55.) That protective order limits the way in which

discovery materials produced by the government to Huawei may be made public or provided to the media. In addition, under the protective order, discovery designated "Sensitive Discovery Material" ("SDM") can be reviewed in the United States but cannot be transported or reviewed in other countries. As discussed in the government's prior briefing about the Huawei Protective Order, SDM is afforded these protections to address concerns that could not adequately be addressed were the materials moved outside the United States and beyond the reach of this Court.[1] The Huawei Protective Order does not prevent Huawei from reviewing SDM in the United States, or from discussing topics implicated by SDM outside the United States.

The Huawei Protective Order explicitly prevents Huawei from providing any discovery materials, including SDM, to Meng. If such materials were provided to Meng, neither the government nor the Court would be able to enforce the protections in the Huawei Protective Order against Meng, who is not a party before this Court or subject to the Court's jurisdiction. In December 2019, attorneys from Steptoe & Johnson LLP ("Steptoe") were added as defense counsel under the Huawei Protective Order. The parties agreed that a separate Steptoe team, which represents Meng in the instant prosecution, would not have access to discovery in this case. (See ECF No. 110.)

In March 2020, the government agreed to a supplemental protective order that allowed Huawei to share with Meng discovery materials that she had previously sent or received (the "Meng Protective Order"). (ECF No. 137.) The Meng Protective Order represented the government's effort to accommodate Huawei's purported interest in interviewing Meng in preparing its own defense to the charges in this case. The Meng Protective Order prohibits sharing any other discovery material with Meng.

While contemporaneously seeking to share discovery with Meng, Huawei has taken measures to assist Meng in opposing her extradition to the United States. Among other things, Huawei has provided Meng with documents from the People's Republic of China and sought records in the United States, pursuant to Federal Rule of Criminal Procedure 16 and the Freedom of Information Act, that could be used to assist Meng in her efforts to prevent her extradition to the United States.

Despite the accommodation reflected in the Meng Protective Order, and the fact that Meng remains a fugitive from justice in Canada, beyond the reach of this Court, Huawei filed the instant motion in April 2020, seeking to share all discovery materials, including Rule 16 materials as well as any Brady disclosures, with Meng.

---

[1] Concurrent with this opposition, the government is also filing an opposition to the defendant's motion to re-designate certain SDM, and that opposition further addresses the bases for the protections afforded SDM.

2

II. Legal Standard

>The Federal Rules of Criminal Procedure provide in pertinent part:
>
>At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

Fed. R. Crim. P. 16(d)(1). "The specificity required in a showing of good cause varies with the scope and complexity of a case. Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotations omitted). The Advisory Committee Notes to the 1966 Amendments to the Rules make clear that "[a]mong the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, the protection of information vital to the national security, and the protection of business enterprises from economic reprisals."

   A decision to withhold discovery under Rule 16(d)(1) is left to the sound discretion of the district court, and will not be disturbed on appeal absent a showing that "the substantial rights of the defendant have been prejudiced." United States v. Coiro, 785 F. Supp. 326, 330 (E.D.N.Y. 1992) (Glasser, J.); see also In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); United States v. Delia, 944 F.2d 1010, 1018 (2d Cir. 1991) (noting that because the language of Rule 16(d)(1) "is . . . permissive," the district court may "limit or otherwise regulate discovery had pursuant to the Rule").

   Under Second Circuit law, persons such as Meng, who resist extradition to the United States to face charges, are fugitives from justice. See United States v. Catino, 735 F.2d 718, 722 (2d Cir. 1984) (rejecting argument that "a non-fugitive cannot become a fugitive by virtue of his resistance to extradition" and holding that "intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending"); see also Schuster v. United States, 765 F.2d 1047, 1050 (11th Cir. 1985) (defendant "established her status as a fugitive from this nation's criminal process, particularly as of the moment she chose to resist extradition"). By virtue of the status as fugitives, such fugitives are not entitled to criminal discovery. See In re Extradition of Zhenly Ye Gon, 613 F. Supp. 2d 92, 102 (D.D.C. 2009) ("Additionally, it cannot be suggested that an American defendant is entitled to discovery before a preliminary hearing or before the presentation of evidence against him to a grand jury. Yet, if a defendant whose extradition [from the United States] is sought gets such discovery, he would be accorded a right that is not available to him under American law."); United States v. Nabepanha, 200 F.R.D. 480, 483 (S.D. Fla. 2001) (denying request for discovery of defendant who refused to return to United States after learning of criminal charges against him); Bd. of Governors of Fed. Reserve Sys. v. Mahfouz, No. 92 CIV. 5096 (MGC), 1992 WL 183556, at *1 (S.D.N.Y. July 23, 1992) ("The

3

disentitlement doctrine prevents a defendant from enjoying the benefits of the legal system while simultaneously flouting that system by . . . 'constructively fleeing' by resisting extradition . . .").

III. Argument

The Meng Protective Order does not restrict the defendants' own ability to review discovery material or to develop its defense based upon that material. To the contrary, the order is narrowly tailored: it merely limits the extent to which Huawei can share discovery with a single third party who is a fugitive from justice. The Motion should be denied because there is good cause for those limitations: Meng is a fugitive from justice and beyond the reach of this Court. The Meng Protective Order represents a reasonable effort to accommodate Huawei's interest in speaking with Meng to aid in its own defense.[2] Nothing more is warranted.

A. Meng Is Not Entitled to Discovery

Huawei does not argue that Meng has any right to discovery in this matter. Nor could it. As a fugitive who is fighting extradition to the United States, Meng is not entitled to discovery. Huawei's providing her with discovery now would improperly allow her "to preview or test the strength of the government's evidence without being subject to the court's jurisdiction," Nabepanha, 200 F.R.D. 480, 483 (S.D. Fla. 2001), "a right that is not available to [her] under American law," In re Extradition of Zhenly Ye Gon, 613 F. Supp. at 102. Although Huawei states that, by fighting extradition, Meng is simply "cho[osing] to exercise her rights" under Canadian law (Mot. at 2), United States law makes clear that Meng is a fugitive from justice and, as such, is not entitled to government disclosures. See, e.g., Catino, 735 F.2d at 722.

B. Huawei's Sixth Amendment Rights Do Not Require Sharing More Discovery with Meng

Huawei contends that it must be able to show Meng <u>all</u> discovery materials in this case, including SDM, in order to vindicate its Sixth Amendment right to prepare its defense. (Mot. at 5-6.) But Huawei has not shown that preparing its defense requires sharing any additional discovery with Meng, let alone sharing all discovery material with her.

As an initial matter, Huawei does not even attempt to justify its request to show Meng discovery that does not relate to the crimes with which she is charged. For example, there is no legitimate justification for sharing with Meng evidence of Huawei Tech and Huawei Device USA's obstruction of justice in 2018.[3] Yet Huawei's motion seeks to share just such materials.

---

[2] There is no reason to believe that Meng, who is fighting extradition to the United States, would ever serve as a trial witness for Huawei in the United States. Indeed, Huawei has not actually stated that Meng, who is represented by separate U.S. counsel, is even willing to meet with and be interviewed by Huawei's attorneys.

[3] Huawei claims that "[t]his is not a trial about a discrete event or relationship that any witness could easily recall; it is a trial about an alleged raft of conspiracies beginning in *1999*

4

Nor has Huawei identified any prejudice to its defense to the fraud charges that do involve Meng. Under the Meng Protective Order, Huawei can discuss any topics with Meng, can share all documents previously in Huawei's possession, and can review all of the documents produced by the government that were sent to or from Meng.

Notably, the only concrete example of purported prejudice that Huawei cites does not even involve Meng. Huawei asserts that it needs to ask Meng about discovery suggesting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [^4] (Mot. at 6.) But Huawei does not explain why it must discuss with Meng evidence about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ let alone provide her with the documents reflecting ▮▮▮▮▮▮▮▮▮▮▮▮.[^5] Additionally, Huawei may have its own records of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ separate and apart from discovery provided in this case, which it can share with Meng. In any event, Huawei is permitted to discuss these issues with Meng under the Meng Protective Order. Huawei is simply prohibited from sharing specific materials that Meng never previously reviewed.

Huawei's request, in a footnote, to show Meng SDM (Mot. at 5 n.3.), is similarly troubling. SDM consists of documents Meng has never seen, and they largely reflect conversations in which she did not participate. Moreover, SDM is sensitive, as addressed in the government's prior briefing and concurrently filed opposition to the defendants' motion to de-designate certain SDM. There is no legitimate reason for providing Meng with these materials in Canada.

---

and involving one of the world's largest companies " (Mot. at 6.) However, Meng's role is limited to a single course of conduct, that is, misrepresentations related to Iran made to financial institutions during a seven-year period from 2007 to 2014. Similarly, Huawei's protest that this case involves "conduct stretching back 21 years" ignores that Meng's conduct is not implicated across all of those 21 years. (Mot. at 1.)

[^4]: Huawei suggests that this evidence contradicts the allegations in the indictment that Meng "misled" a financial institution about Huawei's relationship with Skycom. However, the evidence does not actually show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Moreover, to the extent Huawei is suggesting that a financial institution should have deduced the true relationship between Huawei and Skycom, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, such an argument is not a defense to fraud. See, e.g., United States v. Corsey, 723 F.3d 366, 373-74 (2d Cir. 2013) (reliance by victim not element of mail or wire fraud); Bank of China, New York Branch v. NBM LLC, 359 F.3d 171, 178 (2d Cir. 2004) ("In a criminal bank fraud prosecution, the Government need not prove that any individual or institution relied on the defendant's purported misrepresentations . . . .").

[^5]: Because certain portions of Huawei's motion that discuss SDM are redacted in its public filing, the government has filed publicly a redacted version of this response, and seeks leave to file the unredacted response under seal.

Huawei's Sixth Amendment arguments are particularly unconvincing given Huawei's ongoing efforts to assist Meng in opposing extradition, particularly by providing her with documentary materials. To be clear, the government does not gainsay a corporation's decision to use lawful means to help one of its chief executives contest extradition. But, having chosen to aid Meng in opposing her extradition to the United States, where she would have access to the documents at issue, Huawei cannot now claim that it is unable to properly prepare its defense because it is prevented from providing those documents to Meng because of her fugitive status. This is especially true where, as set forth in more detail below, Meng could easily use discovery materials from this case to improperly challenge the extradition process by attempting to convert an extradition hearing into a criminal trial in which the U.S. government is not a party, leaving the U.S. government with no proper course of redress.

    C.    <u>Granting Huawei's Request Would Undermine the Important Interests Protected by the Protective Order</u>

Huawei's request to provide discovery, including SDM, to Meng in Canada would undermine the Huawei Protective Order and could be misused in the extradition process.

<u>First</u>, the Huawei Protective Order imposes certain restrictions on all discovery, including by limiting the ways in which discovery material can be made public or provided to the media. In addition, the order generally prohibits review of SDM—which includes sensitive internal discussions among employees of victim financial institutions—outside of the United States, even by Huawei. The order is enforceable against Huawei and its counsel because they are parties to this case and, in large part, located in the United States. But all of the protections in the Huawei Protective Order would be undermined if Huawei is allowed to provide additional discovery to Meng because no enforcement mechanism can compel Meng to abide by the limitations in the Huawei Protective Order while she is Canada. Meng has not yet subjected herself to this Court's jurisdiction. If, for example, Meng chose to provide or describe SDM to the press in an effort to chill witnesses who would appear in her (or Huawei's) prosecution in the United States, there would be no recourse against her in the United States.

<u>Second</u>, if Huawei were permitted to provide discovery materials to Meng in Canada, then Meng could selectively use such materials in her ongoing effort to challenge extradition in Canada in order to resist prosecution before this Court. Meng could, for example, cite material out of context in an effort to misrepresent the government's case. The Canadian court system, in which the U.S. government does not participate, is an improper forum to litigate the merits of a U.S. criminal prosecution.[6] Huawei's reassurance that Meng cannot "us[e] that

---

[6] Huawei incorrectly suggests that "[o]ne would expect that the relevant evidence has already been provided to the Canadian government in furtherance of the Justice Department's treaty obligations and Ms. Meng's Canadian constitutional rights." (Mot. at 7.) The United States government need not produce its entire case to a foreign government in support of an extradition request, as the extradition proceeding before a foreign court is not a dress-rehearsal trial. See <u>Collins v. Loisel</u>, 259 U.S. 309, 316 (1922); <u>Austin v. Healey</u>, 5 F.3d 598, 605 (2d Cir.1993) ("[T]he foreign government is not required to present its entire case . . . . The evidence presented need only 'support a reasonable belief that [the fugitive] was guilty of the crime[s]

discovery in a Canadian proceeding" under the Meng Protective Order (Mot. at 2, 7) rings hollow, because, as discussed, there exists no enforcement mechanism to deter or punish Meng or her counsel for any violation of the order unless and until she is extradited to the United States.

In arguing that the government's concerns do not constitute "good cause" for limiting Huawei's ability to provide discovery to Meng, Huawei relies on a series of inapplicable cases. (See Mot. at 5, 7.) None of the cases cited by Huawei involves a situation in which a defendant sought to share discovery with a fugitive outside the United States, let alone a fugitive whom the defendant has helped fight extradition. Rather, in all of those cases, a court held there was not "good cause" to restrict discovery from certain persons in the United States, none of whom were fugitives from justice, let alone fugitives aided by the defendants. See United States v. Lindh, 198 F. Supp. 2d 739, 743 (E.D. Va. 2002) (allowing the sharing of "protected unclassified information" with unidentified "potential witnesses," including individuals already detained by the U.S. government); see also United States v. Johnson, 314 F. Supp. 3d 248, 257 (D.D.C. 2018) (allowing the disclosure of sensitive video footage only to persons related to the case); United States v. Smith, 985 F. Supp. 2d 506, 515–16 (S.D.N.Y. 2013) (affirming protective order that allowed disclosure of confidential information to investigators, paralegals, and others helping defense counsel).

In sum, the Meng Protective Order is based on good cause: preventing Meng from undermining the Huawei Protective Order or misusing discovery in the extradition process. Accordingly, the Court should reject the defendants' motion to share additional materials with Meng.

---

charged.'") (citations omitted), cert. denied, 510 U.S. 1165 (1994); see also In re Extradition of Singh, 124 F.R.D. 571, 579 (D.N.J. 1987) (stating that extradition proceedings should not be a "dress rehearsal trial").

IV.     Conclusion

        The Meng Protective Order represents a reasonable effort to accommodate Huawei's right to prepare its defense while protecting against efforts to undermine the Huawei Protective Order and the extradition process. No further accommodation is required. The Motion should be denied.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/ David K. Kessler
Alexander A. Solomon
Julia Nestor
David K. Kessler
Sarah Evans
Assistant U.S. Attorneys
(718) 254-7000

DEBORAH L. CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division
U.S. Department of Justice

Laura Billings
Christian J. Nauvel
Trial Attorneys

JAY I. BRATT
Chief, Counterintelligence and Export
Control Section
National Security Division, U.S. Department of Justice

Thea D. R. Kendler
David Lim
Trial Attorneys

Cc: All defense counsel (by ECF and by Email)