UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    - v. –

HUAWEI TECHNOLOGIES CO., LTD,
*et al.*,

             Defendants.

---

18 CR 457 (S-3) (AMD) (CLP)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW #2 IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE TRADE SECRET CHARGES (COUNTS 2 AND 3)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

LEGAL STANDARD......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.      The Trade Secret Charges (Counts 2–3) Should Be Dismissed as Impermissibly
        Duplicitous............................................................................................................... 5

        A.      The Trade Secret Charges Allege Six Unrelated Events, Five of Which
                Would Be Time-Barred If Charged Separately. ....................................... 5

        B.      The Trade Secret Charges Are Each Impermissibly Duplicitous. ........... 7

        C.      The Duplicitous Nature of the Trade Secret Charges Will Prejudice
                Defendants. ............................................................................................ 11

II.     The Trade Secret Charges Should Be Dismissed as to Company 1, Company 2,
        and Company 3 for Violation of Due Process. ............................................... 14

        A.      The Government Delayed Nearly Twenty Years Before Bringing Charges. ....... 14

        B.      The Delay Has Prejudiced the Defense. ............................................... 16

        C.      The Government's Delay is Unjustifiable. ............................................ 18

        CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Betterman v. Montana,*
    578 U.S. 437 (2016)....................................................................................16, 18

*Grunewald v. United States,*
    353 U.S. 391 (1957)......................................................................................7, 12

*Toussie v. United States,*
    397 U.S. 112 (1970)..........................................................................................12

*United States v. Abakporo,*
    959 F. Supp. 2d 382 (S.D.N.Y. 2013)..............................................................14

*United States v. Alkins,*
    925 F.2d 541 (2d Cir. 1991)...............................................................................8

*United States v. Birney,*
    686 F.2d 102 (2d Cir. 1982).............................................................................16

*United States v. Broce,*
    488 U.S. 563 (1989)........................................................................................3, 8

*United States v. Caldwell,*
    589 F.3d 1323 (10th Cir. 2009) .........................................................................9

*United States v. Castro,*
    829 F.2d 1038 (11th Cir. 1987) .....................................................................9, 11

*United States v. Desimone,*
    119 F.3d 217 (2d Cir. 1997).................................................................................8

*United States v. Elsbery,*
    602 F.2d 1054 (2d Cir. 1979)............................................................................18

*United States v. Eppolito,*
    543 F.3d 25 (2d Cir. 2008).......................................................................8, 10, 11

*United States v. Gabriel,*
    920 F. Supp. 498 (S.D.N.Y. 1996) ..............................................................7, 12

*United States v. Gordon,*
    844 F.2d 1397 (9th Cir. 1988) ...........................................................................8

*United States v. Greenberg*,
   2022 WL 827304 (S.D.N.Y. 2022)....................................................................8

*United States v. Gross*,
   165 F. Supp. 2d 372 (E.D.N.Y. 2001) ...................................................16, 19, 20

*United States v. Hardy*,
   762 F. Supp. 1403 (D. Haw. 1991) ...................................................................7

*United States v. Hoo*,
   825 F.2d 667 (2d Cir. 1987).............................................................................20

*United States v. Johansen*,
   56 F.3d 347 (2d Cir. 1995)................................................................................7

*United States v. Jordan*,
   629 F. Supp. 3d 49 (E.D.N.Y. 2022) ...............................................................18

*United States v. Korfant*,
   771 F.2d 660 (2d. Cir. 1985)....................................................................8, 9, 10

*United States v. Langella*,
   776 F.2d 1078 (2d Cir. 1985)..........................................................................15

*United States v. Lovasco*,
   431 U.S. 783 (1977)...........................................................................4, 14, 15

*United States v. Margiotta*,
   646 F.2d 729 (2d Cir. 1981)............................................................................11

*United States v. Marion*,
   404 U.S. 307 (1971)................................................................12, 15, 16, 18

*United States v. Marlinga*,
   2005 WL 513494 (E.D. Mich. 2005) ...............................................................14

*United States v. Mermelstein*,
   487 F. Supp. 2d 242 (E.D.N.Y. 2007) ..............................................................4

*United States v. Munoz-Franco*,
   986 F. Supp. 70 (D.P.R. 1997)..........................................................................7

*United States v. Rigas*,
   490 F.3d 208 (2d Cir. 2007)..............................................................................5

*United States v. Rubin*,
   609 F.2d 51 (2d Cir. 1979)...............................................................................20

*United States v. Sabath*,
  990 F. Supp. 1007 (N.D. Ill. 1998) ...................................................................................19

*United States v. Santiago*,
  987 F. Supp. 2d 465 (S.D.N.Y. 2013)...............................................................................20

*United States v. Scully*,
  108 F. Supp. 3d 59 (E.D.N.Y. 2015) ..................................................................................5

*United States v. Sturdivant*,
  244 F.3d 71 (2d Cir. 2001)......................................................................................3, 5, 11

*United States v. Thomas*,
  274 F.3d 655 (2d Cir. 2001)................................................................................................4

*United States v. Weisberg*,
  2011 WL 4345100 (E.D.N.Y. 2011)...................................................................................4

**Statute & Rule**

18 U.S.C. § 3282(a) ..............................................................................................................7, 15

Fed. R. Crim. P. 8(a) ..................................................................................................................3

Defendants Huawei Technologies Co., Ltd.; Huawei Device Co., Ltd.; Huawei Device USA Inc; and Futurewei Technologies, Inc. (collectively, "Huawei") respectfully move for an order dismissing the trade secret charges (Counts 2–3) of the Third Superseding Indictment ("S3 Indict."). Counts 2 and 3 are each impermissibly duplicitous because each at most charges multiple conspiracies as a single count. Counts 2–3 should also be dismissed for the independent reason that they violate due process because of the government's long and prejudicial delay in bringing charges that relate to decades-old commercial disputes.

**PRELIMINARY STATEMENT**

In the trade secret charges, the government improperly seeks to bundle together multiple disparate commercial disputes and criminalize them decades after the events allegedly occurred and after the disputes were civilly resolved. The government alleges that Huawei Technologies Co., Ltd., Huawei Device, Huawei Device USA, and Futurewei entered into two related decades-long conspiracies purportedly designed "to operate and grow the worldwide business of HUAWEI and its parents, global affiliates and subsidiaries through the deliberate and repeated misappropriation of intellectual property." S3 Indict. ¶ 8. Count Two alleges a single twenty-year conspiracy to steal trade secrets "of companies headquartered or with offices in the United States," *id.,* and Count Three alleges a single wire-fraud conspiracy based on alleged fraudulent statements pertaining to the trade secret-related conduct charged in Count Two. The Indictment does not identify any individual among any of the hundreds of thousands employed by Huawei who purportedly entered into an agreement encompassing all of the conduct alleged in the Indictment. Instead the government charges the existence of these long running conspiratorial agreements by patching together six isolated events occurring across a twenty-year period.

But these events are no more than commonplace trade secret disputes that every sophisticated technology company faces in this competitive industry. Practically every major

technology company—including two of the alleged victims here (Companies 1 and 2)—has been accused by some number of private plaintiffs of similar acts of trade secret misappropriation, and the government's consistent approach has been to allow such private disputes to be resolved in civil suits between the private parties. According to the legal analytics database Lex Machina, thousands of civil trade secret cases are brought each year, and since 2006, there have been over 20,000 federal trade secret lawsuits. The vast majority were settled or dismissed. But 488 of them resulted in damages judgments totaling $4.76 billion, and 152 of those included a finding of willfulness.

Many companies have been repeat defendants, facing at least as many trade secret suits as the five civil trade secret cases at issue in the S3 Indictment (plus the sixth incident that did not result in any litigation at all). Per Lex Machina, twenty-nine companies have faced five or more civil trade secret cases in federal court in the past twenty years. Some other companies have been sued more than ten times. Across those cases, the government's consistent approach—including in cases involving similar allegations, proven misconduct, and judgments orders of magnitude larger than anything Huawei has ever faced—was to stand aside and allow the civil disputes to be fought out between private parties. None of these other companies has been charged, let alone has the government attempted—as it does in this Indictment—to transmute its ordinary history of civil trade secret disputes into some overarching, twenty-year-long conspiracy. That tactic has been reserved for Huawei alone. And it is fatal to Counts Two and Three. At bottom, the government's charging theory alleges a single, twenty-year conspiracy, supposedly originally formed in 2000, before two of the alleged subsidiary co-conspirators— Huawei Device and Huawei Device USA—even existed. The asserted conspiracy allegedly aimed generally to steal trade secrets from companies headquartered or with offices in the United

States, including the named six companies. But the indictment on its face belies any such sweeping, overarching agreement—instead, at most, it alleges multiple, individual, isolated events, each targeting a different company and different technology, often separated by years-long gaps in time, and none of which depended for its success in any way on any of the others. The Court should dismiss the trade secret charges as duplicitous as a matter of law.

The reason for the government's improper charging decision is obvious: If each of the six distinct alleged events were charged separately, the statute of limitations would long ago have expired on all but one. The law, however, precludes the government from attempting to evade the statute of limitations through such pleading artifice: An "indictment is impermissibly duplicitous" when it "combines two or more distinct crimes," including distinct conspiracies, "into one count" and "the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001); *see* Fed. R. Crim. P. 8(a). The trade secret charges are improper under this standard because they combine distinct alleged crimes into each of Counts Two and Three in a manner that prejudices Huawei.

To support a charge of a single conspiracy, the government must show that Huawei entered into a single agreement to commit the offenses alleged in the Indictment. *United States v. Broce*, 488 U.S. 563, 570–71 (1989). The government's allegations on their face do not support such a finding. The six alleged vignettes differ dramatically: each occurred over different timeframes, some with years-long gaps in between; each purportedly targeted a different technology company and different technologies; and each involved different means of effecting the alleged theft. Put simply, the Government's allegations lack the mortar to assemble these vignettes into a single structure.

The government's impermissible charging decision will substantially harm Huawei in presenting its defense. The muddling of multiple conspiracies into one creates a substantial risk of juror confusion and places Huawei at risk of facing subsequent prosecutions for the same offenses, in violation of the Double Jeopardy Clause of the Fifth Amendment. Moreover, by assembling twenty years of conduct into a single offense, the government circumvents the statute of limitations that otherwise precludes it from prosecuting Huawei for all but one of the alleged events. Absent dismissal, Huawei must defend itself against decades-old allegations for which exculpatory evidence becomes more difficult to assemble with each passing day.

The trade secret counts must also be dismissed for the independent reason that the government's delay in bringing those charges has prejudiced Huawei in violation of the Due Process Clause of the Fifth Amendment. *See United States v. Lovasco*, 431 U.S. 783, 790 (1977). Here, the government waited nearly twenty years before bringing charges based on certain conduct underlying these Counts. This delay had no apparent proper, investigatory purpose and has caused actual prejudice to the Defendants' case due to missing crucial evidence. Those allegations must be dismissed.

## **LEGAL STANDARD**

An indictment must set forth facts that, if "taken as true, are sufficient to establish a violation of the charged offense." *United States v. Weisberg*, 2011 WL 4345100, at *1 (E.D.N.Y. 2011). If a charge within an indictment "fails to allege each material element of the offense, it fails to charge that offense" and should therefore be dismissed. *United States v. Thomas*, 274 F.3d 655, 665 (2d Cir. 2001) (citation omitted). Further, a charge in an indictment may be dismissed in part, to the extent one or more theories advanced by the government fails to state an offense. *See, e.g.*, *United States v. Mermelstein*, 487 F. Supp. 2d 242, 256–59 (E.D.N.Y. 2007). In considering a motion to dismiss, the court must "accept all the factual allegations in the

4

indictment as true," but should not "look beyond the face of the indictment [or] draw inferences as to proof to be adduced at trial." *United States v. Scully*, 108 F. Supp. 3d 59, 117 (E.D.N.Y. 2015). Additional allegations made outside of the complaint, such as through a bill of particulars, "cannot save an invalid indictment." *United States v. Rigas*, 490 F.3d 208, 237 (2d Cir. 2007) (quoting *Russell v. United States*, 369 U.S. 749, 770 (1962)).

## ARGUMENT

### I.    The Trade Secret Charges (Counts 2–3) Should Be Dismissed as Impermissibly Duplicitous.

An "indictment is impermissibly duplicitous" where it "combines two or more distinct crimes into one count" and "the defendant is prejudiced thereby." *Sturdivant*, 244 F.3d at 75. The trade secret counts run afoul of these requirements. The Court should dismiss both counts as impermissibly duplicitous.

#### A.    The Trade Secret Charges Allege Six Unrelated Events, Five of Which Would Be Time-Barred If Charged Separately.

The government alleges that, over the course of two decades, Defendants engaged in a single conspiracy to misappropriate intellectual property. S3 Indict. ¶ 8. But, on their face, the allegations in the Indictment describe six distinct events, each purportedly targeting a different company and a different alleged trade secret (if any trade secret at all), five of which would be time-barred if charged separately:

Company 1: Between 2000 until December 2002, Huawei and Futurewei allegedly hired, or attempted to hire, employees of Company 1 to misappropriate copyrighted source code, command line interface, and operating manuals for internet routers, then sold products containing such source code. S3 Indict. ¶¶ 18, 24, 96(a).

Company 2: Between 2000 and March 2003, Huawei allegedly targeted an engineer employed by Company 2 for recruitment. The employee allegedly engaged in efforts to

misappropriate technology for use in wireless networks, and provided to Huawei a confidential Company 2 document containing technical specifications. *Id.* ¶¶ 27, 96(b).

Company 3: In 2004, a Huawei employee allegedly took unauthorized photographs of the circuitry inside Company 3's "networking device" at a trade show in Chicago, Illinois. *Id.* ¶ 28.

Company 4: Five years later, in 2009, Futurewei allegedly entered into a non-disclosure agreement with Company 4 so that Huawei and Futurewei could misappropriate antenna-related technology that provides cellular telephone and data services. *Id.* ¶¶ 30–34, 96(d). Allegedly relying on this misappropriated technology, Huawei later filed a provisional patent application with the United States Patent & Trademark Office. *Id.* ¶¶ 33, 96(d).

Company 5: Three years after that, in 2012 and 2013, employees of Huawei, Huawei Device, and Huawei Device USA allegedly used a series of confidentiality agreements with Company 5 to gain access to its facilities and misappropriate technology associated with a mechanical arm that Company 5 used to test cellphones. *Id.* ¶¶ 35–40. The government alleges that in 2013 and 2014, Huawei and Huawei Device USA made misstatements to Company 5 regarding the unauthorized actions of their employees. *Id.* ¶¶ 41–42.

Company 6: Between 2013 and 2018, Huawei allegedly "devised a scheme to misappropriate technology" from Company 6, a developer of architecture for memory hardware. *Id*. ¶ 45. The government alleges that Huawei induced Company 6 to share its technology pursuant to an "oral" confidentiality agreement and expressions of interest in a commercial relationship. *Id.* ¶ 47. The government also alleges that Huawei used a proxy (a university professor), who did not disclose his affiliations with Huawei, to obtain samples of Company 6's products for use in reverse engineering efforts. *Id.* ¶¶ 50–57.

Five of these six alleged trade secret theft vignettes would be time-barred if charged separately. The trade secret charges carry a five-year statute of limitations. *See* 18 U.S.C. § 3282(a). To avoid that restriction, the government thus latches onto a selection of overt acts within the limitations period to bootstrap charges based on decades-old, unrelated alleged conduct. Tellingly, the only overt acts alleged that are within the limitations period pertain solely to the "Company 6" vignette.

Further, the government does not make any meaningful attempt to tie the alleged Company 6 overt acts to the five other charged schemes that fall outside the limitations period. *See* S3 Indict. ¶ 96. And yet, these Company 6 overt acts are the only allegations in the Indictment that make the remaining trade secret allegations even arguably timely—and only because they are charged alongside the Company 6 allegations as component parts of a single, unitary conspiracy. That charging strategy cannot stand. *Cf. Grunewald v. United States*, 353 U.S. 391, 402 (1957) ("Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases….").

**B.    The Trade Secret Charges Are Each Impermissibly Duplicitous.**

The Indictment on its face reveals that the trade secret charges, although charged as single conspiracies, in fact at most encompass multiple alleged conspiracies and are therefore impermissibly duplicitous. Although the question of whether conduct constitutes a single conspiracy is typically reserved for the jury, *see United States v. Johansen*, 56 F.3d 347, 350–51 (2d Cir. 1995), courts have dismissed a conspiracy charge when it is obviously duplicitous from the face of the indictment. *See United States v. Munoz-Franco*, 986 F. Supp. 70, 71–72 (D.P.R. 1997); *United States v. Hardy*, 762 F. Supp. 1403, 1410 (D. Haw. 1991); *cf. United States v. Gabriel*, 920 F. Supp. 498, 503–08 (S.D.N.Y. 1996) (expressing concern about rubber-stamping

a charge of a single conspiracy where the government's allegations plainly indicate that multiple conspiracies existed).

A conspiracy requires that the government allege "that two or more persons agreed to participate in a joint venture intended to commit an unlawful act." *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir. 1997). A "single agreement to commit several crimes constitutes one conspiracy"; however, "multiple agreements to commit separate crimes constitute multiple conspiracies." *Broce*, 488 U.S. at 570–71. To prove the existence of a single conspiracy, the government must show that each "alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Eppolito*, 543 F.3d 25, 47 (2d Cir. 2008) (quoting *United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000)). This requires "sufficient proof of mutual dependence and assistance." *Id.* at 48. In contrast, "[m]ultiple conspiracies exist where" distinct sets of co-conspirators "operat[e] independently of each other." *United States v. Alkins*, 925 F.2d 541, 554 (2d Cir. 1991) (quoting *United States v. Barlin¸* 686 F.2d 81, 89 (2d Cir. 1982)); *see also United States v. Gordon*, 844 F.2d 1397, 1401 (9th Cir. 1988) ("The relevant factors in determining the existence of such an 'overall agreement' are the nature of the scheme, the identity of the participants, the quality, frequency and duration of each conspirator's transactions, and the commonality of times and goals."); *cf. United States v. Greenberg*, 2022 WL 827304, at *11 (S.D.N.Y. 2022) (analyzing several factors to determine whether a single conspiracy existed for duplicity purposes, including "the overlap of time," "the existence of common overt acts," and "the geographic scope of the alleged conspiracies or location where overt acts occurred," without deciding whether those factors are controlling) (citing *United States v. Korfant*, 771 F.2d 660, 662 (2d. Cir. 1985)). These factors

support concluding that the trade secret charges, although charged as single conspiracies, on their face at most allege multiple conspiracies.

As described above, each of the six alleged trade secret vignettes involves entirely different Victim Companies, different alleged trade secrets, different individuals, different methods, and different, often widely disjointed timeframes over a span of twenty years. Nowhere does the Indictment identify any individual at any of the corporate defendants who allegedly entered into a single overarching conspiracy encompassing all these vignettes. The government fails to connect these distinct events into a single overall conspiracy beyond its bare allegation of a general corporate scheme to operate and grow Huawei's business. *See United States v. Castro*, 829 F.2d 1038, 1045–46 (11th Cir. 1987) (two schemes do not constitute a single conspiracy despite having "a similar illegal objective" of fraudulently obtaining cash for a co-conspirator's companies), *modified on other grounds on denial of reh'g*, 837 F.2d 441 (11th Cir. 1988).

The substantial temporal gaps in the government's allegations, in particular, weigh in favor of finding that the government fails to allege a single conspiracy. *Cf. Korfant*, 771 F.2d at 662 (considering the "overlap of time" as a relevant consideration); *see also United States v. Caldwell*, 589 F.3d 1323, 1330–31 (10th Cir. 2009) (considering one-year gap between acts by alleged conspirators in concluding that the "the single continuous conspiracy alleged in the indictment" had been "sever[ed]" "into two separate conspiracies"). Whereas some of the alleged vignettes occurred entirely before 2005, *see, e.g.*, S3 Indict. ¶¶ 18–29, 96(a)–(b) (Companies 1–3), others took place nearly ten years later, in 2012 and 2013, *id.* ¶¶ 35–58, 96(f)–(j) (Companies 5–6). And the alleged conspiracy encompasses long periods of dormancy during which there is no allegation that anything happened at all. For example, the government alleges that, in July 2004, a single Huawei employee took unauthorized photos of Company 3's circuit board at a

9

trade show in Chicago. *Id.* ¶ 28. The next alleged vignette, involving Company 4, purportedly took place *more than five years later. Id.* ¶ 30. Another nearly three-year period elapsed before the next vignette, which allegedly took place in August 2012. *Id.* ¶ 36. The Indictment contains no allegation—other than an amorphous and perpetual goal of growing the business through misconduct—that ties these isolated incidents together across these long temporal recesses, as illustrated by the graphic below. This is fatal to the government's claim of a single conspiracy. *See Eppolito*, 543 F.3d at 47 ("The essence of the crime of conspiracy … is the agreement" (quoting *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006)).



The vignettes also involve different means of alleged deception and thus lack any "similarity of operation." *Korfant*, 771 F.2d at 662. Although the government alleges that the early vignettes focused on the recruitment of competitor companies' employees, the more recent allegations describe attempts to deceive competitors directly.[1] *Compare* S3 Indict. ¶ 18 (alleging

---

[1] The inconsistency between Counts 2 and 3 demonstrates the government's own belief that the later vignettes are meaningfully different from the earlier vignettes, supporting a finding that there is no single overarching conspiracy. The government contends that Defendants entered into an agreement to misappropriate trade secrets beginning in approximately 2000, S3 Indict. ¶ 95, then, almost a decade later, entered into another agreement (beginning in 2009) to commit wire fraud related to the same conduct, *id.* ¶ 98. The government thus itself distinguishes the later vignettes from the earlier ones. Yet the government alleges that both the trade secret theft and the related wire fraud conspiracies were part of a broad scheme to grow Huawei's business "through

(*continued on next page*)

that Huawei and Futurewei "hired or attempted to hire Company 1 employees and directed these employees to misappropriate Company 1 source code on behalf of defendants") *with id.* ¶ 36 (alleging that Defendants' employees abused restricted access to trade secrets obtained through confidentiality agreements to misappropriate Company 5's technology).

Despite describing each isolated vignette with some level of detail, the government does not allege any specific fact supporting the core of what it charges: an all-encompassing single conspiracy. The government must establish that the alleged conspirators *agreed* to participate in a collective venture directed toward a common goal, and the various pieces and participants were *mutually dependent* on each other. *Eppolito*, 543 F.3d at 47–48. But the government fails to allege that any specific individual was even aware of each alleged vignette, or that anyone contemplated that their agreement would encompass this broad sweeping conspiracy. And, although the government alleges that each of the vignettes "had, broadly speaking, a similar illegal objective"—*i.e.*, to grow Huawei's worldwide business—it offers no allegation that any vignette "depended on, was aided by, or had an operational interest in the success of the other[s]." *Castro*, 829 F.2d at 1045–46. Even accepting the Indictment's allegations as true on a motion to dismiss, the facts alleged in the Indictment establish the opposite of what is required. At best, each of the trade secret charges alleges not one conspiracy but several.

### C.    The Duplicitous Nature of the Trade Secret Charges Will Prejudice Defendants.

The Court should dismiss the trade secret counts because their duplicitous nature would result in substantial prejudice to Defendants at trial. *See Sturdivant*, 244 F.3d at 75; *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) (relevant policy considerations include "avoiding

---

the deliberate and repeated misappropriation of intellectual property" of U.S. companies. *Id.* ¶ 8. The government cannot have it both ways.

the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution").

For example, absent dismissal, Defendants will be forced to defend themselves at trial against alleged theft events for which the statute of limitations has long since expired. Statues of limitations are designed, in part, "to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time." *Toussie v. United* States, 397 U.S. 112, 114–15 (1970). A statute of limitations is supposed to create "predictability by specifying a limit beyond which there is an *irrebuttable presumption* that a defendant's right to a fair trial would be prejudiced." *United States v. Marion*, 404 U.S. 307, 322 (1971) (emphasis added). For these reasons, courts have long raised concerns about the prejudicial impact of charging decisions that improperly knit distinct conspiracies together to evade a statute of limitations bar. *See, e.g.*, *Grunewald v. United States*, 353 U.S. 391 (1957); *Gabriel*, 920 F. Supp. at 506–07.

In *Grunewald*, for example, the Supreme Court rejected the government's attempt to rely on a defendant's subsequent attempts to cover up an earlier conspiracy to satisfy its obligation to prove an overt act during the limitations period. 353 U.S. at 403–04. As Judge Rakoff later recognized in *Gabriel*, it was "the policy of the statute of limitations in preventing a defendant from having to defend against stale and ancient charges" "that gave rise to *Grunewald* itself." *Gabriel*, 920 F. Supp. at 507. Cases that implicate those concerns may be "especially appropriate" for dismissal prior to trial. *See id.*

12

This case presents the same concerns that animated the Court's decision in *Grunewald*. The government's cobbling together of disparate vignettes to charge a single conspiracy represents a clear effort to evade the constraints of the statute of limitations. If the government is permitted to proceed with the trade secret charges as alleged, Defendants will be forced to defend against allegations stretching back more than two decades, for which the documentary and testimonial evidence necessary to mount a defense has long since been lost. *See infra* II.B.

The threat of prejudice does not stop there. Because of the duplicitous nature of the trade secret charges, if convicted, Defendants will be unable to determine from the jury's verdict whether it was unanimous as to the same conspiracy, or even as to any one of the standalone vignettes. That ambiguity would raise double jeopardy concerns should the government attempt to prosecute one or more Defendant for conduct encompassed by the single conspiracy charged here.

That concern is not merely hypothetical. The government *is* prosecuting Defendants for the same conduct in a separate proceeding; it has charged two Defendants, Huawei Device Co., Ltd. and Huawei Device USA, Inc., with a separate trade secret conspiracy in the Western District of Washington. Indictment, *United States v. Huawei Device Co.*, No. 19-cr-00010-RSM (W.D. Wash. Jan. 16, 2019). Dkt. 1. In that case, the government alleges that the two Defendants engaged in standalone conspiracy relating solely to the Company 5 vignette. *Id.* ¶¶ 1–50. Thus, even if jury acquits the Defendants of the conspiracy alleged here, they will be forced to defend themselves against near-identical charges in a different jurisdiction. Moreover, the government's decision to charge this conduct as a standalone conspiracy in a separate proceeding fundamentally undercuts its contention that the same conduct is part of the single conspiracy alleged here. *See supra* note 1.

At bottom, the egregious nature of the government's charge threatens to deprive Defendants of any chance of a fair trial. The government's duplicitous trade secret charges should therefore be dismissed.[2]

## II.    The Trade Secret Charges Should Be Dismissed as to Company 1, Company 2, and Company 3 for Violation of Due Process.

In the alternative, the trade secret allegations in the Third Superseding Indictment that are based on acts that allegedly occurred two decades ago must be dismissed. The government's delay in bringing these charges has caused actual prejudice to Defendants' case because crucial evidence is now unavailable; and because the delay had no apparent proper, investigatory purpose. The Due Process Clause of the Fifth Amendment protects defendants from such unreasonable delay in bringing an indictment and requires dismissal of these stale allegations. *See Lovasco*, 431 U.S. at 790.

### A.    The Government Delayed Nearly Twenty Years Before Bringing Charges.

The government alleges that (1) Huawei stole source code for routers from Company 1, *in or around 2000*, S3 Indict. ¶¶ 18–24; (2) Huawei engaged in a conspiracy to misappropriate Company 2's base station technology through an employee of Company 2 *between 2000 and 2003*, *id.* ¶¶ 25–27, 96(b); and (3) a Huawei employee acting on behalf of Huawei attempted to misappropriate Company 3's intellectual property at a trade show *in 2004*, *id.* ¶ 28. Despite the well-publicized civil cases involving the same allegations related to Company 1 and 2, and

---

[2] If the Court is not inclined to dismiss the trade secret counts, Defendants alternatively request that that Court enter an order requiring the government to reformulate Counts 2 and 3 of the Indictment such that they properly charge each vignette as a standalone conspiracy to the extent not barred by the statute of limitations. *See United States v. Abakporo*, 959 F. Supp. 2d 382, 391 (S.D.N.Y. 2013) (directing government to "separate[e] … two conspiracies into two separate counts" where the indictment was impermissibly duplicitous); *United States v. Marlinga*, 2005 WL 513494, at *7 (E.D. Mich. 2005) (ordering government to reformulate a duplicitous conspiracy charge).

contemporaneous reporting to the FBI of the allegations related to Company 3, the government did not bring charges at any of those times. Nor did it even bring charges related to these allegations when it filed the original Indictment or the First or Second Superseding Indictment. It did not do so until the Third Superseding Indictment in 2020.

Notably, Congress has concluded such delay would be *per se* prejudicial for the substantive crime of trade secret theft, assigning that offense a five-year statute of limitations. *See* 18 U.S.C. § 3282(a). That limitations period had run several times over by the time the government filed the Third Superseding Indictment. *See Marion*, 404 U.S. at 322 (charges brought beyond the statute of limitations carry an "irrebuttable presumption that a defendant's right to a fair trial would be prejudiced"). The government attempts to avoid that irrebuttable presumption of prejudice by charging these acts as a conspiracy instead—namely a conspiracy comprised of six wholly separate sets of allegations, multiple of which have long since been resolved civilly with the alleged victims. *See supra* I.A.

The government's use of a conspiracy charge to bootstrap these long-stale allegations and circumvent the protections of the limitations period demonstrates the importance of the Due Process Clause as a backstop where the government brings charges within the limitations period but its unjustified delay nonetheless causes actual prejudice. *See Lovasco*, 431 U.S. at 789. In such cases, dismissal is warranted where "the delay resulted in actual prejudice" to the defense and the "reasons for the delay were improper." *United States v. Langella*, 776 F.2d 1078, 1083 (2d Cir. 1985). Although statutes of limitations are the "primary" guardrails for potentially prejudicial pre-indictment delay, they are not and cannot be the only source of protection against "having to defend … against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-

15

distant past." *Marion*, 404 U.S. at 323. Under the Due Process Clause, courts may also act to protect procedural fairness and individual liberty if the government improperly delayed its charging decision. This is exactly the kind of case that merits such a remedy.

### B.    The Delay Has Prejudiced the Defense.

Dismissal is required because the delay has caused the Defendants specific, definite harm to their ability to defend this case. *See United States v. Birney*, 686 F.2d 102, 105–06 (2d Cir. 1982). As described below, the delay has caused a "loss of documentary or testimonial evidence that would have been available to the defense had the charges been brought more promptly." *United States v. Gross*, 165 F. Supp. 2d 372, 380 (E.D.N.Y. 2001); *see also Betterman v. Montana*, 578 U.S. 437, 444 (2016) (explaining prejudice could arise from delay where "the passage of time 'may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself'") (quoting *Marion*, 404 U.S. at 321).

Company 1: The twenty years between the alleged theft of Company 1's source code and the Indictment has caused the loss of key evidence, namely Company 1's original source code from the time of the incident. The government has not produced any native version of the code, and thus the defense cannot challenge whether the code actually constituted a trade secret.

In addition, because of the delay, multiple witnesses with knowledge related to these allegations are no longer available. First, the neutral expert who submitted a report in the civil case, which the government selectively quotes in the Indictment, *see* S3 Indict. ¶ 23, is deceased and cannot be examined by the Defendants relating to his report. Second, the government alleges that the Defendants "hired or attempted to hire Company 1 employees" as a way to gain access to Company 1's proprietary information. *Id.* ¶ 18. But another witness, a former Company 1 employee who provided a declaration in the civil case regarding Huawei's alleged attempts to

16

recruit him, is also deceased and cannot be questioned about these prior statements. The unavailability of these witnesses prejudices Huawei's ability to mount a defense to these charges.

Company 2: Huawei is likewise prejudiced in mounting a fulsome defense to the allegations related to Company 2 due to the extensive pre-indictment delay. The government alleges that, between 2000 and 2003, Huawei engaged in a conspiracy to misappropriate Company 2's base station technology through a Company 2 employee. *Id.* ¶¶ 27, 96(b). A two-decade-long delay necessarily hinders Huawei's ability to rebut the government's allegations without access to the full scope of documentary evidence and the fresh recollection of witnesses that would have been available twenty years ago.

Company 3: The extreme delay has also prejudiced Huawei's ability to negate the government's theory related to Company 3. The government alleges that in 2004, a Huawei employee acting on behalf of Huawei ("Individual-3"), attempted to misappropriate Company 3's intellectual property at a trade show. *Id.* ¶ 28. Company 3 reported the incident when it occurred and gave multiple pieces of potential evidence to the FBI, including photographs that would have shown the model name of the allegedly stolen device and the employee's interest in mechanical structure instead of circuit boards. Huawei has received nothing in discovery from the government related to this alleged incident (aside from two letters between Huawei and Company 3), indicating that this evidence is no longer available. Huawei cannot defend the case without reviewing this evidence. For example, if Huawei had access to the photographs showing the model name of the device, it could help demonstrate whether the device was publicly available (and therefore not a trade secret) at the relevant time.

The government's delay has thus resulted in the loss of key evidence and testimony that is crucial for Huawei's defense.

## C.    The Government's Delay is Unjustifiable.

The allegations related to these three oldest alleged trade secret schemes must be dismissed because the prejudicial delay was due to "unjustifiable Government conduct." *United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir. 1979). Delay is unjustifiable where the government "intentionally delayed to gain some tactical advantage over [the accused] or to harass them," *Marion*, 404 U.S. at 325, or where the government is "reckless" with regard to the prejudice that delay would cause the defendant. *See Betterman*, 578 U.S. at 441 (the "Due Process Clause may be violated, for instance, by prosecutorial delay that is 'tactical' or 'reckless'" (citing *Lovasco*, 431 U.S. at 795 & n.17)); *United States v. Jordan*, 629 F. Supp. 3d 49, 54 (E.D.N.Y. 2022) ("intentional or reckless" delay). The significant pre-indictment delay in this case can only be the result of such intentional or reckless government conduct.

First, the available evidence shows that the government's delay cannot be attributed to any justifiable investigatory purpose. Justifiable "investigative delay" is "delay caused by a prosecutor waiting until she 'is completely satisfied that [she] should prosecute and will be able promptly to establish guilt beyond a reasonable doubt.'" *Jordan*, 629 F. Supp. 3d at 54 (alterations in original) (quoting *Lovasco*, 431 U.S. at 795). The government waited twenty years to bring these charges, yet for the alleged Company 1 and Company 2 schemes, the government ultimately alleged nothing beyond the unproven allegations in the underlying, and long-resolved, civil cases.[3] The government cannot plausibly contend that it needed nearly two decades to further investigate before bringing charges when those charges allege nothing more than the civil complaint filed years earlier. Similarly, for the alleged Company 3 scheme, although there was

---

[3] In order not to reveal the identities of the companies that the indictment identifies only by pseudonyms, defendants are not citing the dockets of these two cases in this brief. Defendants will supply the citations directly to Chambers upon request.

18

no prior civil case, the single paragraph of factual allegations in the indictment contains no more information than was known by the government in 2004 when Company 3's General Counsel forwarded the incident to the FBI.[4] No action was taken against Huawei then, and there is no plausible argument that there was an investigatory purpose in waiting to bring those charges two decades later. *See Gross*, 165 F. Supp. 2d at 385 (rejecting the government's contention that an indictment was "the result of six years of investigation" where the indictment "was premised on the same claims which comprised [three] previous civil complaints against Defendants, all three of which were dismissed many years earlier").

In the absence of an investigatory purpose, it can be inferred that the government decided to bring these stale trade secret charges only when it did to gain a tactical advantage over the Defendants. *See United States v. Sabath*, 990 F. Supp. 1007, 1018 (N.D. Ill. 1998) ("[T]he absence of any legitimate investigatory reason for the long preindictment delay is strong circumstantial evidence of bad faith under *Lovasco*'s either-or scheme of investigative vs. non-investigative delay."). Given the very public nature of the civil cases and the government's policy to focus on Chinese corporations and Huawei in particular, it would be implausible to think that the government was not aware of the alleged facts that underlie the trade secret charges when it brought the sanctions charges in 2018. These newly added charges turn what was a technical case about alleged sanctions violations into a sprawling case implicating wholly unrelated conduct.

At the very least, the government was reckless toward or consciously disregarded the prejudice to the Defendants' case that such a lengthy delay has created. The government was plainly aware that key witnesses could be unavailable and key evidence could be missing twenty

---

[4] DOJ_HUAWEI_A_0122410629.

years after the alleged thefts, but it plowed forward nonetheless, in reckless disregard of the Defendants' rights to a fair trial on the government's allegations.

Accordingly, the trade secret charges should be dismissed as to Company 1, Company 2, and Company 3.[5]

## **CONCLUSION**

For the foregoing reasons, Huawei respectfully requests that the Court dismiss Counts 2 and 3 of the Third Superseding Indictment.

---

[5] In the alternative, Defendants request that the Court hold a hearing and order discovery related to the reasons the government delayed bringing the allegations. *See, e.g.*, *Gross*, 165 F. Supp. 2d at 384 (finding that the government's "evidence" at a "hearing before th[e] Court"—including live testimony by AUSAs and a "chronology of investigative activity on the case"—gave "no indication whatsoever" that the "six years were used for the type of 'careful investigation' deemed acceptable by the Second Circuit"); *United States v. Santiago*, 987 F. Supp. 2d 465, 467–84 (S.D.N.Y. 2013) (describing extensive evidence provided by the government, developed at a hearing, related to the reasons for the preindictment delay); *see also United States v. Rubin*, 609 F.2d 51, 66 (2d Cir. 1979) (noting hearing held by the district court); *United States v. Hoo*, 825 F.2d 667, 668–69 (2d Cir. 1987) (noting AUSA testified before district court as to purpose of delay).

Dated:  November 8, 2024                    Respectfully submitted,

/s/ Douglas A. Axel                        /s/ David Bitkower
Douglas A. Axel                            David Bitkower
Michael A. Levy                            Matthew S. Hellman
Jennifer Saulino                           JENNER & BLOCK LLP
Daniel Rubinstein                          1099 New York Avenue, NW
Ellyce R. Cooper                           Washington, D.C. 20001
Frank Volpe                                Tel: 202-639-6048
Melissa Colón-Bosolet                      Email: dbitkower@jenner.com
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
Tel.: 212-839-5300
Email: daxel@sidley.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co. Ltd.,
and Futurewei Technologies, Inc.*