UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- v. –<br><br>HUAWEI TECHNOLOGIES CO., LTD, *et al.*,<br><br>　　　　　　　Defendants. | 18 CR 457 (S-3) (AMD) (CLP)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW #4 IN SUPPORT OF DEFENDANT HUAWEI TECHNOLOGIES CO. LTD.'S MOTION TO DISMISS SANCTIONS-RELATED CHARGES (COUNTS 10, 11, 12 & 15)**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

LEGAL STANDARD................................................................................................................ 2

ARGUMENT .............................................................................................................................. 2

    I.    The Dollar-Clearing Sanctions Charges (Counts 11–12) Fail To State An Offense Under IEEPA..............................................................................................2

        A.    The Indictment Fails to State an Offense of Supplying Dollar-Clearing Services "to Iran." ...........................................................................4

        B.    Huawei Lacked Fair Notice that Non-U.S. Businesses Could Violate IEEPA If Their Banks Chose to Clear Transactions Through the United States ...........................................................................5

            1.    The Statute and Regulations Failed to Make Reasonably Clear that the Alleged Conduct Could Constitute a Criminal Violation. ........................................................................................ 6

            2.    At All Relevant Times, OFAC's Guidance Established that Huawei's Non-U.S. Business Conduct Was Not Subject to IEEPA. ...................................................................................................... 7

            3.    OFAC's Enforcement Practices Likewise Indicated that the Alleged Conduct Did Not Subject Defendants to Criminal Liability under the ITSR. ............................................................... 9

        II.    Count 15's Money Laundering Conspiracy Charge Rests on Count 11 as the Specified Unlawful Activity and Therefore Should Also Be Dismissed. ......................................................................................................10

        III.    The Charged Conspiracy to Defraud the United States (Count 10) Rests on an Impermissible Reading of the Statute.....................................11

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ciminelli v. United States*,
  598 U.S. 306 (2023)..................................................................................................................12

*Cleveland v. United States*,
  531 U.S. 12 (2000)..............................................................................................................11, 12

*Connally v. Gen. Constr. Co.*,
  269 U.S. 385 (1926)..................................................................................................................14

*Exxon Mobil Corp. v. Mnuchin*,
  430 F. Supp. 3d 220 (N.D. Tex. 2019) .......................................................................................6

*Johnson v. United States*,
  576 U.S. 591 (2015)....................................................................................................................6

*Kelly v. United States*,
  590 U.S. 391 (2020)..................................................................................................................11

*Marinello v. United States*,
  584 U.S. 1 (2018).................................................................................................................12, 14

*McDonnell v. United States,*
  579 U.S. 550 (2016)..................................................................................................................14

*McNally v. United States*,
  483 U.S. 350 (1987)..................................................................................................................11

*Ortiz v. N.Y.S. Parole in Bronx, N.Y.*,
  586 F.3d 149 (2d Cir. 2009).......................................................................................................6

*Skilling v. United States*,
  561 U.S. 358 (2010)..................................................................................................................14

*United States v. Alfonso*,
  143 F.3d 772 (2d Cir. 1998)........................................................................................................4

*United States v. All Funds on Deposit in United Bank of Switz.*,
  2003 WL 56999 (S.D.N.Y. 2003)...............................................................................................7

*United States v. Atilla*,
  966 F.3d 118 (2d Cir. 2020).........................................................................................11, 13, 15

*United States v. Bareno-Burgos*,
 739 F. Supp. 772 (E.D.N.Y. 1990) ..................................................................................6

*United States v. Coplan*,
 703 F.3d 46 (2d Cir. 2012) ............................................................................................11

*United States v. Full Play Grp., S.A.*,
 690 F. Supp. 3d 5 (E.D.N.Y. 2023) ...............................................................................10

*United States v. Klein*,
 247 F.2d 908 (2d Cir. 1957) ..........................................................................................11

*United States v. Kosinski*,
 976 F.3d 135 (2d Cir. 2020) ..........................................................................................10

*United States v. Laurent*,
 861 F. Supp. 2d 71 (E.D.N.Y. 2011) ...............................................................................4

*United States v. Matthews*,
 787 F.2d 38 (2d Cir. 1986) ..............................................................................................5

*United States v. Mermelstein*,
 487 F. Supp. 2d 242 (E.D.N.Y. 2007) .............................................................................2

*United States v. Nejad*,
 2019 WL 6702361 (S.D.N.Y. 2019) ................................................................................5

*United States v. Perez*,
 575 F.3d 164 (2d Cir. 2009) ............................................................................................4

*United States v. Rigas*,
 490 F.3d 208 (2d Cir. 2007) ............................................................................................2

*United States v. Scully*,
 108 F. Supp. 3d 59 (E.D.N.Y. 2015) ...............................................................................2

*United States v. Thomas*,
 274 F.3d 655 (2d Cir. 2001) ............................................................................................2

*United States v. Weisberg*,
 2011 WL 4345100 (E.D.N.Y. 2011) ...............................................................................2

**Statutes**

18 U.S.C. § 371 ....................................................................................................................11

26 U.S.C. § 7212 ..................................................................................................................12

**Regulations**

31 C.F.R. § 560.204 ............................................................................................................. 3, 4, 7

31 C.F.R. § 560.206 ................................................................................................................ 3, 7

31 C.F.R. § 560.427(a) .................................................................................................................. 4

31 C.F.R. § 561.308 ...................................................................................................................... 9

**Other Authorities**

*Iran Nuclear Deal Oversight: Implementation and Its Consequences (Part II):*
  *Hearing Before H. Comm. on Foreign Affairs*, 114th Cong. (2016),
  https://tinyurl.com/28z53nbf .................................................................................................. 8

OFAC, *Basic Information on OFAC and Sanctions: Who Must Comply With*
  *OFAC Sanctions?* (Jan. 15, 2015), https://tinyurl.com/4eyjajsy ............................................. 8

OFAC, *Basic Information on OFAC and Sanctions: Who Must Comply With*
  *OFAC Regulation?* (Aug. 21, 2024), https://tinyurl.com/57m7nt7r ........................................ 8

OFAC, *Enforcement Information for July 27, 2017*,
  https://tinyurl.com/ukj47zz5 .................................................................................................... 9

OFAC, *OFAC Regulations for the Financial Community* (Jan. 24, 2012),
  https://tinyurl.com/ywmuvsjd .................................................................................................. 8

Roberto Gonzalez et al., *OFAC's Settlement With CSE Global Breaks New*
  *Ground*, Law360 (July 31, 2017), https://tinyurl.com/3m74hpfp ............................................ 9

*Settlement Agreement between OFAC and TransTel* (July 19, 2017),
  https://tinyurl.com/22mzvps8 ................................................................................................... 9

## PRELIMINARY STATEMENT

Defendant Huawei Technologies Co., Ltd. ("Huawei") respectfully moves for an order dismissing Counts 10, 11, 12, and 15 of the Third Superseding Indictment, in whole or in part, on the following grounds:

1.  The dollar-clearing sanctions charges (Counts 11 and 12) fail to state an offense under the International Emergency Economic Powers Act ("IEEPA"). Alternatively, Counts 11 and 12 violate due process because the statute and regulations fail to give fair notice that a bank's non-U.S. customer commits a crime if the bank elects in its sole discretion to route the customer's transaction in a manner that violates U.S. sanctions law—particularly where, as here, statutory interpretation and guidance issued by Office of Foreign Assets Control ("OFAC") at the time of the alleged offenses was directly to the contrary.

2.  The money laundering charge (Count 15) is predicated on the flawed IEEPA conspiracy charge in Count 11 as the specified unlawful activity and, accordingly, must be dismissed with the IEEPA charges.

3.  The *Klein* conspiracy charge of conspiring to impair, impede, obstruct, or defeat the governmental functions and operations of OFAC in violation of 18 U.S.C. § 371 (Count 10) fails to allege that money or property was the object of the supposed scheme to defraud, and, in addition, fails to allege that a specific pending investigation was the object of the supposed scheme. Those elements are required by the statute, and their absence means the count must be dismissed. Moreover, if those elements are not required by § 371, the statute is unconstitutionally vague.

Accordingly, for the reasons set forth in more detail below, Counts 10, 11, 12, and 15 should be dismissed.

1

## LEGAL STANDARD

An indictment must set forth facts that, if "taken as true, are sufficient to establish a violation of the charged offense." *United States v. Weisberg*, 2011 WL 4345100, at *1 (E.D.N.Y. 2011). If a charge "fails to allege each material element of the offense, it fails to charge that offense" and should be dismissed. *United States v. Thomas*, 274 F.3d 655, 665 (2d Cir. 2001). Further, a charge in an indictment may be dismissed in part, to the extent one or more theory advanced by the government fails to state an offense. *See, e.g.*, *United States v. Mermelstein*, 487 F. Supp. 2d 242, 256–59 (E.D.N.Y. 2007). In considering a motion to dismiss, the court must "accept all the factual allegations in the indictment as true," but should not "look beyond the face of the indictment [or] draw inferences as to proof to be adduced at trial." *United States v. Scully*, 108 F. Supp. 3d 59, 117 (E.D.N.Y. 2015). Additional allegations made outside the complaint, such as in a bill of particulars, "cannot save an invalid indictment." *United States v. Rigas*, 490 F.3d 208, 237 (2d Cir. 2007).

## ARGUMENT

**I.    The Dollar-Clearing Sanctions Charges (Counts 11–12) Fail To State An Offense Under IEEPA.**

Counts 11 and 12 of the Indictment allege that, from 2007 to 2014, Huawei "cause[d]" and "conspire[d] to cause" the export, reexport, sale, and supply to Iran of U.S. banking services in violation of the Iranian Transactions and Sanctions Regulations ("ITSR") that were promulgated under IEEPA. S3 Indict. ¶¶ 64–67, 114–120. More specifically, Counts 11 and 12 allege various financial transactions supposedly related to Huawei's operations in Iran, all of which have been identified by the government in response to Huawei's request for a bill of particulars, *see* Dkt. 271, and none of which began *or* ended at banks in Iran. Counts 11 and 12 allege that these transactions represent instances of Huawei "knowingly and willfully caus[ing]"

2

and "conspir[ing] to cause" U.S. banks to supply financial services "to Iran" in violation of the ITSR because Huawei's *banks* chose to pass Huawei's transactions through correspondent banks located in the United States. S3 Indict. ¶¶ 64–67, 118, 120. It is not a violation of the ITSR for Huawei, as a foreign company operating abroad, to supply goods or services to Iran—violations must involve the provision of something "to Iran" "from the United States" or "by a United States person," 31 C.F.R. §§ 560.204, 560.206. In each of these instances, therefore, the charge is that Huawei "caused" someone else—namely, a U.S. bank—to supply services "to Iran." These counts should be dismissed for two reasons.

*First*, the Indictment alleges that the U.S.-based dollar-clearing services that sat in the middle of otherwise foreign transactions that neither began nor ended in Iran were somehow supplied from the United States "to Iran." But the benefit of any dollar-clearing services performed in the United States was received by the foreign banks that initiated or received the payments in question, since they were the ones who invoked the assistance of the U.S.-located banks to get the transactions done. And none of those initiating or receiving banks were Iranian or were located in Iran. At most, even if one could say the benefit was received not just by the transacting banks but by the bank customers on whose behalf the banks processed the transactions, none of them were Iranian either. A service connected with a transaction that did not in any way touch Iran cannot be provided "to Iran."

*Second*, Huawei—which is a foreign company that conducted the transactions in question using accounts at non-U.S., non-Iranian banks—did not have fair notice that the transactions could fall within IEEPA's proscriptions simply because Huawei's banks chose to route the transactions through the United States. The attempt to pursue criminal sanctions based on those transactions violates the Due Process Clause.

3

### A. The Indictment Fails to State an Offense of Supplying Dollar-Clearing Services "to Iran."

Counts 11 and 12 must be dismissed because, even accepting the government's allegations for purposes of this motion, the dollar-clearing services purportedly provided by the U.S. banks were not supplied, directly or indirectly, "to Iran [or] the Government of Iran." S3 Indict. ¶¶ 118, 120. The Indictment tracks ITSR Section 204, which prohibits the supply "from the United States, or by a United States person" of any "services to Iran or the Government of Iran." 31 C.F.R. § 560.204. Section 427 of the ITSR explains that this prohibition includes the "transfer of funds, directly or indirectly, from the United States or by a U.S. person, wherever located, to Iran or the Government of Iran," as well as the "provision, directly or indirectly, to Iran or the Government of Iran of … banking services." 31 C.F.R. § 560.427(a).

The government's bill of particulars response, which identifies all of the transactions underlying the charges, shows that the government accepts that the alleged transactions did not involve any "transfer of funds" to Iran; none was sent to or from a bank account in Iran, and none passed through an account in Iran at any point. *See* Dkt. 271.[1] Nor did the U.S. banks that performed dollar-clearing in the middle of these transactions provide any "banking service" to Iran. The alleged dollar-clearing was a service provided *by* banks *to* banks outside of Iran—specifically, it was a service that U.S. banks provided to overseas banks, permitting overseas-sending banks and overseas-receiving banks to transfer U.S. dollars from one to the other. There is no allegation that any overseas bank involved at either end of any transaction was Iranian, and

---

[1] Because "the government has made … a full proffer of the evidence it intends to present at trial," the court can go beyond the allegations in the Indictment on this particular point and consider "[t]he sufficiency of the evidence." *United States v. Laurent*, 861 F. Supp. 2d 71, 109 (E.D.N.Y. 2011); *United States v. Perez*, 575 F.3d 164, 166–67 (2d Cir. 2009); *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998).

4

the transactions identified by the government in response to a request for a bill of particulars involve no Iranian banks. *See id.* Accordingly, no dollar-clearing service was provided "*to Iran.*"

Even if the customers on whose behalf the banks were performing the transactions could be considered indirect recipients of the U.S.-based dollar-clearing services that sat in the middle of their attempts to transfer money from one to the other, not a single customer involved in any transaction identified by the government was Iranian. Unlike in *United States v. Nejad*, 2019 WL 6702361, at *4 (S.D.N.Y. 2019), where payments were transferred through "shell companies" for an "Iranian-incorporated entity to whom the funds were owed [and] ultimately stood to benefit," the parties to the payments alleged here were Huawei (a Chinese company), Skycom (a Hong Kong company), or other non-Iranian parties. S3 Indict. ¶¶ 1, 4; Dkt. 271. There was no "benefit" from the dollar-clearing services to Iran, *see* S3 Indict. ¶ 117; none of the banks, payees, or payors associated with the subject transactions were Iranian.

      **B.**      **Huawei Lacked Fair Notice that Non-U.S. Businesses Could Violate IEEPA If Their Banks Chose to Clear Transactions Through the United States.**

Even if the transactions underlying Counts 11 and 12 somehow fell within ITSR's prohibitions, Huawei did not have fair notice that it could be subject to criminal liability as a non-U.S. person under those regulations when the banks opted to route the payments through the United States. "When a person of ordinary intelligence has not received fair notice that his contemplated conduct is forbidden, prosecution for such conduct deprives him of due process." *United States v. Matthews*, 787 F.2d 38, 49 (2d Cir. 1986). Consistent with due process, courts may not apply "a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 158–59 (2d Cir. 2009); *see also United States v. Bareno-Burgos*, 739 F. Supp. 772, 783 (E.D.N.Y. 1990) ("due process precludes" the application of a regulation with criminal

5

penalties "without prior fair warning to the public of the conduct prohibited or required"). This is "a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law." *Johnson v. United States*, 576 U.S. 591, 595–96 (2015).

Likewise, in the administrative agency context, if "by reviewing the regulations and other public statements issued by the agency" a person is unable to "identify, with ascertainable certainty, the standards with which the agency expects parties to conform," then the agency has not "fairly notified [that person] of the agency's interpretation." *Exxon Mobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220, 230–43 (N.D. Tex. 2019) (cleaned up) (finding $2,000,000 OFAC civil penalty violated due process because neither the text of the regulation nor public statements by OFAC provided fair notice that Exxon's conduct was prohibited).

The government violated those fundamental principles here. The Indictment alleges that Huawei was a foreign company doing Iran-related business outside the United States using bank accounts outside the United States. The Indictment alleges that Huawei violated IEEPA when foreign banks chose to route Huawei's transactions with non-Iranian counterparts through correspondent banks in the United States, merely because the transactions allegedly related to work in Iran. Neither the text of IEEPA nor of the ITSR nor any of OFAC's guidance or enforcement practices gave fair notice to Huawei during the period of the alleged transactions that it had a legal obligation to prevent its non-U.S. banks from routing such payments through the United States.

   **1.  The Statute and Regulations Failed to Make Reasonably Clear that the Alleged Conduct Could Constitute a Criminal Violation.**

The IEEPA statute and accompanying OFAC regulations failed to make it "reasonably clear at the time of the charged conduct" that the alleged conduct could constitute a criminal violation. In particular, the ITSR does not make it "reasonably clear" that Huawei, as a foreign

6

person, could be subject to IEEPA for sending funds related to services performed in Iran from foreign banks to foreign recipients. The Indictment alleges that Huawei violated Sections 204 and 206 of the ITSR. S3 Indict. ¶¶ 118, 120. Section 204 of the ITSR bars the supply of services to Iran "*from the United States*, or by a *United States person*, wherever located." 31 C.F.R. § 560.204 (emphasis added). By its express terms, Section 204 "reaches domestic activities by anyone, whether or not a 'U.S. person,'" and "foreign activities when conducted by a 'U.S. person'"—but it does not reach foreign activities conducted by foreign persons, even those doing business with Iran. *United States v. All Funds on Deposit in United Bank of Switz.*, 2003 WL 56999, at *2 (S.D.N.Y. 2003). Section 206 is likewise limited to barring any "United States person, wherever located," from engaging in prohibited acts with respect to Iran. 31 C.F.R. § 560.206(a). By their plain terms, those do not apply to foreign companies like Huawei operating outside the United States.

### 2. At All Relevant Times, OFAC's Guidance Established that Huawei's Non-U.S. Business Conduct Was Not Subject to IEEPA.

Consistent with the plain text of the regulations, at the time of the payments underlying the alleged violations—November 2007 to November 2014—OFAC's position was that a foreign remitter of U.S. dollar-denominated payments to a foreign recipient was not subject to the ITSR. In a 2012 guidance document, "OFAC Regulations for the Financial Community," OFAC defined the "universe which must comply with OFAC regulations" to include:

> American citizens and permanent resident aliens wherever they are located; individuals and entities located in the United States (including all foreign branches, agencies, rep offices, etc.); corporations organized under U.S. law, including foreign branches; and … entities owned or controlled by any

7

of the above, the most important being foreign organized subsidiaries of U.S. corporations.[2]

OFAC published similar guidance on its website, defining "[w]ho must comply with OFAC regulations" to include U.S. persons, persons within the United States, U.S. incorporated entities and their foreign branches, foreign subsidiaries of U.S. companies, and foreign persons in possession of U.S.-origin goods.[3] Huawei fits none of those categories. Only later, well after the timeframe of the allegations here, did OFAC expand its guidance to include non-U.S. persons as subject to certain sanctions prohibitions.[4]

In 2016, the Acting Undersecretary of the Treasury Department and former OFAC Director testified to a Congressional committee about IEEPA's limited reach with respect to foreign transactions:

> [S]anctions in the U.S. control what U.S. actors can do and what they cannot do. It governs the conduct of U.S. actors anywhere they reside in the world.… [A] branch of a U.S. bank in Europe, in East Asia has to behave like a U.S. person here in Washington or here in New York.… *[These] sanctions, on the other hand, do not control the actions of non-U.S. persons—whether or not the currency they are using is the dollar*, euro, the pound or the yen.[5]

Taken together, OFAC's consistent guidance during the relevant period established that the relevant ITSR prohibitions applied to U.S. persons and subsidiaries of U.S. companies—not

---

[2] OFAC, *OFAC Regulations for the Financial Community* (Jan. 24, 2012) at 3–4, https://tinyurl.com/ywmuvsjd.

[3] OFAC, *Basic Information on OFAC and Sanctions: Who Must Comply With OFAC Regulation?* (Jan. 15, 2015), https://tinyurl.com/4eyjajsy.

[4] Compare *id.* with OFAC, *Basic Information on OFAC and Sanctions: Who Must Comply With OFAC Regulation?* (Aug. 21, 2024), https://tinyurl.com/57m7nt7r.

[5] *Iran Nuclear Deal Oversight: Implementation* and *Its Consequences (Part II): Hearing Before H. Comm. on Foreign Affairs*, 114th Cong. 27 (2016) (statement of Adam Szubin, Acting Under Sec'y, Off. of Terrorism & Fin. Intel., U.S. Dep't of Treasury) (emphasis added), https://tinyurl.com/28z53nbf.

8

to foreign companies like Huawei, even those transacting in U.S. dollars outside the United States.

### 3. OFAC's Enforcement Practices Likewise Indicated that the Alleged Conduct Did Not Subject Defendants to Criminal Liability under the ITSR.

Although the government charges Huawei with IEEPA violations for transactions between 2007 and 2014, there was not a single enforcement proceeding for Iran-related payments sent through U.S. correspondent banks until 2017. To that point, in response to such payments, OFAC and DOJ had only penalized foreign financial institutions ("FFIs")—defined by OFAC to include banks, money remitters, and other payment service providers remitting payments on behalf of others[6]—*not* their foreign customers. It was not until 2017—long after the final allegedly illegal transfer at issue here—that OFAC took its first enforcement action against a foreign non-financial institution for Iran-related payments passing through the United States, when it accused CSE TransTel Pte. Ltd., a Singaporean supplier of telecom gear, of remitting 104 wire payments processed through the United States that related to energy projects in Iran.[7] Before that action, OFAC enforced the ITSR only against the FFIs processing or facilitating the transfers, without parallel action against the foreign customers for requesting that FFIs remit to other foreign entities for Iran-related business.[8]

Given this consistent enforcement practice, combined with OFAC's guidance at the time of the relevant transactions (2007–2014), Huawei had no reason to believe it would violate

---

[6] OFAC defines FFI to include money service businesses generally, not limited to banks. *See* 31 C.F.R. § 561.308.

[7] *See* OFAC, Enforcement *Information for July 27, 2017*, https://tinyurl.com/ukj47zz5; *Settlement Agreement between OFAC & TransTel* (July 19, 2017), https://tinyurl.com/22mzvps8.

[8] Roberto Gonzalez et al., *OFAC's Settlement With CSE Global Breaks New Ground*, Law360 (July 31, 2017), https://tinyurl.com/3m74hpfp.

9

IEEPA by engaging in transactions with non-U.S. counterparties using non-U.S. banks relating to its non-U.S. business in Iran. In all events, it certainly cannot have been "reasonably clear" to foreign bank customers that they could face criminal liability if *their non-U.S. banks* chose to route those transactions through U.S. banks rather than through other financial centers outside the United States. Instead, the text of the IEEPA statute, the text of the ITSR regulation, and the language of OFAC's published guidance all conveyed to the public that they would *not* "cause" a criminal IEEPA violation by engaging in non-U.S. business transactions with non-U.S. banks that never touched Iran. The government's decision to prosecute Huawei for the very conduct the government said was lawful at the time when it occurred violates due process. Counts 11 and 12 should be dismissed.[9]

## II.   Count 15's Money Laundering Conspiracy Charge Rests on Count 11 as the Specified Unlawful Activity and Therefore Should Also Be Dismissed.

If the Court agrees that Counts 11 and 12 are fatally flawed and must be dismissed, as explained above, then the money laundering conspiracy charge (Count 15) should also be dismissed. The Indictment specifies that the "conspiracy to violate IEEPA" is the specified unlawful activity underlying the money laundering charge and incorporates by reference both the factual paragraphs underlying Count 11's conspiracy charge and the paragraphs (115 through 118) of Count 11 itself. S3 Indict. ¶¶ 125–26. Thus, because Count 15 is predicated on the conspiracy to violate IEEPA charged in Count 11, it rises and falls with Count 11. *See, e.g.*, *United States v. Full Play Grp., S.A.*, 690 F. Supp. 3d 5, 39–40 (E.D.N.Y. 2023) (money

---

[9] The government also cannot meet its burden of proof to show that Huawei "willfully" violated the law, as it must to establish criminal liability. "[T]o establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *United States v. Kosinski*, 976 F.3d 135, 154 (2d Cir. 2020) (citation omitted). That state of mind cannot be proved when the government was proclaiming during the relevant time period that conduct like that alleged in the Indictment was not subject to IEEPA.

10

laundering charges, "predicated on [insufficient] honest services wire fraud" charges, "also cannot be sustained"), appealed *sub nom.* on other grounds, *United States v. Lopez*, No. 23-7183 (2d Cir. Sept. 27, 2023).

### III. The Charged Conspiracy to Defraud the United States (Count 10) Rests on an Impermissible Reading of the Statute.

In Count 10, the government has charged Huawei with conspiring to defraud the United States in violation of 18 U.S.C. § 371. Section 371 criminalizes conspiracies "to defraud the United States, or any agency thereof in any manner or for any purpose." 18 U.S.C. § 371. The Indictment does not allege that Huawei conspired to deprive the United States of money or property, and thus fails to allege any "defraud[ing] of the United States." The government instead relies on the so-called *Klein* doctrine, whereby a defendant can "defraud the United States" through any conduct that interferes with or obstruct a lawful governmental function by dishonest means. *See United States v. Klein*, 247 F.2d 908, 916 (2d Cir. 1957).

Huawei recognizes that the Second Circuit held in *United States v. Coplan* that, under *Klein*, § 371 extends to conspiracies that do not seek to deprive the government of money or property. 703 F.3d 46 (2d Cir. 2012); *see also United States v. Atilla*, 966 F.3d 118, 130 (2d Cir. 2020) (citing *Coplan*). But *Coplan* expressed "considerable judicial skepticism" about that interpretation, 703 F.3d at 61, and subsequent Supreme Court case law (including *Ciminelli v. United States, see* Mem. of Law #3 in Support of Motion to Dismiss Counts 4–9) has confirmed that the Second Circuit's doubts were well-placed. As the Supreme Court recently reiterated, "the 'common understanding' of the words 'to defraud' … refer[s] 'to wronging one in his property rights.'" *Ciminelli v. United States*, 598 U.S. 306, 312 (2023) (quoting *Cleveland*, 531 U.S. at 19); *see also Kelly v. United States*, 590 U.S. 391, 399–403 (2020) (in scheme to defraud a public entity, the public entity's property needed to be the *object* of the scheme, not just an

11

incidental part of it); *Cleveland v. United States*, 531 U.S. 12, 23 (2000) (defrauding state government requires depriving state of something that is property in the state's hands, which a state-issued license was not); *McNally v. United States*, 483 U.S. 350, 356–58 (1987) (wire fraud statute does not encompass "schemes to … deprive individuals, the people, or the government of intangible rights" like the right to honest services). An interpretation of § 371 that makes it a crime to "defraud" the United States without any intent to obtain money or property from the United States, or deprive the United States of money or property, cannot be squared with the Supreme Court's consistently expressed understanding of what fraud is.

Moreover, even if § 371 reached schemes that do not target the government's money or property, the statute can only reach schemes that interfere with "specific, targeted" government "acts," such as a pending investigation, and not merely general agency operations. In *Marinello v. United States*, the Supreme Court determined that the offense at issue in that case, 26 U.S.C. § 7212, did not criminalize attempts to obstruct routine administrative proceedings "near-universally applied to all taxpayers." 584 U.S. 1, 4 (2018). According to the Supreme Court, the government's broader interpretation would turn several tax crimes that Congress had designated as misdemeanors—such as failure to keep required records—into felonies. *Id*. at 8–9. In addition, the interpretation would raise serious vagueness concerns and open the door to prosecutorial overreach. *Id*. at 6–8. To remedy these concerns, the Supreme Court held that the government was required to prove a "nexus" between the defendant's conduct and a specific government proceeding, such as an investigation or an audit. *Id*. at 9–13.

The same is true here. Sections 7212 and 371 are similarly worded and structured. Both prohibit interference with some government function through certain means. Section 371 prohibits interfering with the "lawful government functions" of the United States through fraud,

and § 7212 prohibits interfering with the "due administration" of the tax code "corruptly or by threat of force." Absent a nexus requirement, § 371 presents the same concerns about inadequate notice and prosecutorial overreach as § 7212. The U.S. government has myriad "lawful functions"—many more than are in the tax code examined in *Marinello*. No potential criminal defendant could possibly be on notice as to all those functions. And given the wide range of potential "lawful government functions" to impede—far more sweeping and omnipresent even than when the statute was enacted—§ 371 allows prosecutors to pick and choose when they want to criminalize conduct and when they do not, an unacceptable abuse of their power. Indeed, the unchecked *Klein* conspiracy doctrine is even more problematic than the statute at issue in *Marinello* because the scope of *Klein* reaches far beyond the tax context to cover conduct pertaining to any government agency. Huawei acknowledges that the Second Circuit has rejected this argument, *see Atilla,* 966 F.3d at 130–31, but preserves the argument for further review.

  Here, the Indictment fails to allege a specific investigation. Instead, it alleges in general terms that Huawei supposedly conspired to obstruct "the lawful governmental functions and operations of OFAC, an agency of the United States, in the enforcement of economic sanctions laws and regulations administered by that agency and the issuance by that agency of appropriate licenses relating to the provision of financial services." *See* S3 Indict. ¶ 112. The Indictment does not allege, however, that OFAC was engaged in any specific investigation, nor does it attempt to identify any alleged act or agreement that was specifically intended to obstruct any identifiable investigation.

  Finally, if § 371 does not contain these limitations, then it is unconstitutionally vague: it does not give potential defendants adequate notice that their conduct is illegal, and it would provide nearly unfettered discretion to prosecutors, whose free rein to target unpopular

13

defendants would undermine confidence in the justice system. There is virtually no limit to "deceitful" conduct that might be said to impede *some* government function: using hyperbole in lodging a complaint with a government agency; hiding behind the door when a census-taker knocks; falsely reporting the amount of exercise completed as part of a Presidential health initiative; and more. If "men of common intelligence must necessarily guess at [a statute's] meaning and differ as to its application," the law is impermissibly vague. *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

Moreover, the government's interpretation means there is no check on the discretion of law enforcement. As the Supreme Court has cautioned, "to rely upon prosecutorial discretion to narrow the otherwise wide-ranging scope of a criminal statute's highly abstract general statutory language places great power in the hands of the prosecutor … [and] risks undermining necessary confidence in the criminal justice system." *Marinello*, 584 U.S. at 11. Here, prosecutors would have unfettered discretion to determine the reach of § 371 given the myriad functions of the federal government.

In similar contexts, the Supreme Court has repeatedly recognized that statutes of this breadth would be unconstitutionally vague, and accordingly has applied narrowing constructions like those discussed above. For example, in *McDonnell v. United States*, the Court warned that the government's expansive reading of the honest services fraud statute, aside from being "inconsistent with both text and precedent, … raise[d] significant constitutional concerns." 579 U.S. 550, 574 (2016). The Court gave nearly identical reasoning for limiting the reach of criminal statutes in *Marinello*, 584 U.S. at 6–8, and *Skilling v. United States*, 561 U.S. 358, 403 (2010). In each of these cases, the Supreme Court resolved these vagueness concerns by rejecting and limiting an overly expansive reading of the statute. Again, although the Second Circuit has

14

previously rejected this argument, *Atilla*, 966 F.3d at 130–31, Huawei preserves it for further review: If the Court declines to limit the reach of § 371 as a matter of statutory interpretation, the statute is too vague for this count to withstand the requirements of the Due Process Clause.

## CONCLUSION

For the foregoing reasons, Huawei respectfully requests that the Court dismiss Counts 10, 11, 12, and 15 of the Third Superseding Indictment.

Dated:  November 8, 2024                                      Respectfully submitted,

/s/ Douglas A. Axel                                                      /s/ David Bitkower
Douglas A. Axel                                                           David Bitkower
Michael A. Levy                                                           Matthew S. Hellman
Jennifer Saulino                                                          JENNER & BLOCK LLP
Daniel Rubinstein                                                        1099 New York Avenue, NW
Ellyce R. Cooper                                                          Washington, D.C. 20001
Frank Volpe                                                                 Tel: 202-639-6048
Melissa Colón-Bosolet                                                Email: dbitkower@jenner.com
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
Tel.: 212-839-5300
Email: daxel@sidley.com

*Counsel for Huawei Technologies Co., Ltd.*

15