



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NJM:AAS/RMP/MAA/MS/CF/MJC
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 10, 2026

By ECF and Email

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    United States v. Huawei Technologies Co., Ltd., et al.
               Criminal Docket No. 18-457 (S-4) (AMD)

Dear Judge Donnelly:

        The government respectfully submits this motion, pursuant to Rule 17(c)(2) of the Federal Rules of Criminal Procedure, to quash the trial subpoenas that the defendants served on victim banks in or about April and May 2026 (the "Challenged Subpoenas").[1]  As discussed further below, the Challenged Subpoenas command banks that the government has identified as victims in this case to produce more than eight years of funds-transfer records—together with related fee information, correspondent banking agreements, and settlement instructions—for every transaction in which any of thirteen "Huawei Entit[ies]" was an originator or beneficiary.  The Challenged Subpoenas fail to comply with the provisions of Rule 17(c) and the relevant case law, comprise a quintessential fishing expedition that flouts the "strict standard" the Supreme Court established in *United States v. Nixon*, 418 U.S. 683 (1974), and improperly seek to convert Rule 17(c) into a vehicle for the broad pretrial discovery to which the defendants are not entitled.  For the reasons that follow, the Court should quash the Challenged Subpoenas.  Given the nature of these subpoenas and the breadth of the defendants' fishing expedition, the government believes it likely the defendants have served substantially similar subpoenas on other parties.  The government therefore also requests that the Court order that the defendants provide the government and the Court with (i) a full accounting of any other Rule 17(c) subpoenas served in the case, and (ii) a copy of any materials received in response to Rule 17(c) subpoenas.  In light of the September 8, 2026 trial date and the ease with which defendants can provide the requested information, the

---

[1]    Two such subpoenas are submitted via email concurrently with this motion.  The government also submits a similar subpoena served on a third bank (the "Third Bank"), which is no longer identified in the operative indictment as a "Victim Institution."  The government expects that the defendants served materially identical subpoenas to other banks.

government respectfully requests the Court direct the defendants to make such production within three business days of the entry of the Court's order.

## I.  Background

Outside counsel for two victim banks, as well as the Third Bank, advised the government that in April and May 2026, defense counsel in this case served the Challenged Subpoenas on them or their respective clients. Other than the identity of the recipient, the Challenge Subpoenas are materially identical. They command the respective banks to appear and testify at trial and to produce the documents described in an attached "Exhibit A."

The Challenged Subpoenas seek disclosure of broad swathes of irrelevant information, in terms defined in Exhibit A in the broadest conceivable manner. "All" and "Any" are each "construed as encompassing any and all," and "Related to" is defined through more than two dozen overlapping concepts. "Funds Transfers" is defined to reach "[a]ny electronic transfer of funds denominated in U.S. dollars" processed through Fedwire, SWIFT, CHIPS, the ISO 20022 MX format, "or other equivalent systems and formats," and "Huawei Entity" is defined to include thirteen separate corporate entities. The general instructions direct that "[q]uestions regarding the interpretation of these Requests should be resolved in favor of the broadest possible construction," and set a "Relevant Time Period" running from January 1, 2018 through March 31, 2026—a span of more than eight years, all but a few months of which post-dates the charged conspiracy and substantive fraud counts that relate to the victim banks.[2]

Against that backdrop, the five document requests seek, in substance: (1) documents sufficient to show "All Funds Transfers" processed by the respective bank during the Relevant Time Period in which any Huawei Entity was an originator or beneficiary; (2) documents sufficient to show the total fees the respective bank received in connection with those transfers; (3) documents reflecting "any" correspondent banking agreements between the respective bank and the non-U.S. originating and/or beneficiary banks identified in response to Request No. 1; (4) documents sufficient to show the respective bank's "standard or customary fees" for processing domestic and international funds transfers generally during the Relevant Time Period; and (5) documents sufficient to show "any" settlement service instructions or agreements among the originating, beneficiary, and/or intermediary banks for the transfers identified in Request No. 1.

The Challenged Subpoenas are not tethered to any identified item of trial evidence. The defendants have not proffered—certainly not to the government, nor, to the government's knowledge, to the Court or the victim bank recipients—any theory of admissibility for the body of hypothetical bank records they seek, nor explained how the requested materials could be relevant to any issue the jury will decide. The Challenged Subpoenas instead seek the wholesale production of non-party banks' transactional data and inter-bank agreements over a lengthy period that largely post-dates the plausibly related charges.

---

[2]  The subpoena to the Third Bank sets a "Relevant Time Period" of January 1, 2019, through March 31, 2026.

The defense did not disclose the Challenged Subpoenas to the government; the government only learned of the Challenged Subpoenas from counsel to the financial institutions on which they were served. Additionally, the defense has only recently begun to provide a small amount of reciprocal Rule 16 discovery to the government and has not provided any Rule 26.2 material, notwithstanding its representations that it is planning a substantial defense case and that the government has requested reciprocal discovery in every one of its Rule 16 production letters, and produced (early) thousands of pages of material pursuant to 18 U.S.C. § 3500.

II.      The Court Should Quash the Challenged Subpoenas

A. Applicable Law

Federal Rule of Criminal Procedure 17 provides that:

> [a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1); *see also United States v. Pierre*, No. 22-CR-19 (PGG), 2023 WL 7004460, at *15 (S.D.N.Y. Oct. 24, 2023). "Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *United States v. Nixon*, 418 U.S. 683, 702 (1974).

Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *Id.* at 700; *see also Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (same). Instead, because the rule's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence at trial." *United States v. Louis*, No. 04-CR-203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005). Accordingly, a defendant seeking documents pursuant to a Rule 17(c) subpoena bears the burden of satisfying the "strict standard" set forth by the Supreme Court in *Nixon*, namely of "specifically identifying the materials sought and showing that they are relevant and admissible." *United States v. Brown*, No. 95-CR-168 (AGS),1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995); *see also United States v. RW Prof'l Leasing Serv. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (citing *Nixon*, 418 U.S. at 699-700); *Louis*, 2005 WL 180885, at *5 (party seeking documents pursuant to a Rule 17(c) subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought" and establish both relevancy and admissibility (internal quotations omitted)).

A Rule 17(c) subpoena may not be used to conduct a "general 'fishing expedition.'" *Nixon*, 418 U.S. at 700. Indeed, precisely because the rule poses such a risk of abuse and misuse, courts are stringent in holding those seeking to obtain documents under Rule 17(c) to their burden of demonstrating that the documents sought are (1) relevant, (2) admissible, and (3) specifically identified. It is "insufficient" for a party to show only that the subpoenaed documents "are *potentially* relevant or *may be* admissible," *RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. at 162 (emphasis added); *see also Nixon*, 418 U.S. at 699-700 (requiring a showing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in

advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and not intended as a general 'fishing expedition'"). Requests accurately characterized as fishing expeditions "deserve[] to be quashed" on that basis alone. *United States v. Yian*, No. 94-R-719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995).

Rule 17(c)(2) permits a court to quash or modify a Rule 17(c) subpoena on a motion promptly made. The government has standing to move to quash a subpoena "based 'upon its interest in preventing undue lengthening of the trial, undue harassment of its witness[es], and prejudicial over-emphasis on [the witnesses'] credibility." *United States v. Giampa*, No. 92-CR-437 (PKL), 1992 WL 296440, at *3 (S.D.N.Y. Oct. 7, 1992) (quoting *United States v. Raineri*, 670 F.2d 702, 711 (7th Cir. 1982)); *see also United States v. Vasquez*, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009); *United States v. Nix*, 251 F. Supp. 2d 555, 561 (W.D.N.Y. 2017); *United States v. Nektalov*, No. 03-CR-828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004); *Yian*, 1995 WL 614563, at *2 (same). Indeed, where the Rule 17(c) subpoena principally seeks impeachment or material pursuant to 18 U.S.C. § 3500 for a government witness, because "[t]he government has an interest in controlling the timing of disclosures" of that material, those interests "are sufficiently strong and immediate . . . to confer standing." *United States v. Bergstein*, No. 16-CR-746 (PKC), 2017 WL 6887596, at *3 (S.D.N.Y. Dec. 28, 2017).

Moreover, even if the government did not have standing, "the Court has an independent duty to review the propriety of the subpoena . . . and whether the subpoena itself comports with the requirements of Rule 17." *Vasquez*, 258 F.R.D. at 72; *see also United States v. Coriaty*, No. 99-CR-1251 (DAB), 2000 WL 1099920, at *6 n.4 (S.D.N.Y. Aug. 7, 2000) (considering government's motion to quash third-party subpoena, notwithstanding defendant's objections on ground that government had no standing, because "it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose").

B. <u>Argument</u>

The Court should quash the Challenged Subpoenas because they are facially invalid, seek potentially broad swathes of information that is neither relevant nor admissible at trial, are an inappropriate attempt to circumvent the discovery process, and are otherwise legally insufficient. Additionally, the Court should quash the Challenged Subpoenas (and any other similar subpoenas issued by the defendants) as improper fishing expeditions that violate Rule 17(c).

1. <u>The Government Has Standing to Move to Quash</u>

As a threshold matter, the government has standing to move to quash the Challenged Subpoenas. The Challenged Subpoenas seek information from banks, most of which the government has identified as victims of the charged offenses, and representatives of which are potential government witnesses at trial. Accordingly, the government has an interest in preventing the improper disclosure of materials that concern those potential witnesses and in ensuring that they are not subject to undue harassment. *See Vasquez*, 258 F.R.D. at 71 ("[A] party whose legitimate interests are affected by a subpoena may move to quash that subpoena."); *United States*

4

*v. Carton*, No. 17-CR-680 (CM), 2018 WL 5818107, at *2 (S.D.N.Y. Oct. 19, 2018) (government had standing to move to quash subpoenas served on third parties); *Nektalov*, 2004 WL 1574721, at *1 (same). Separately, the government has a legitimate interest in preventing the defendants from using Rule 17(c) subpoenas to circumvent the requirements of Rule 16, Rule 26.2, and other applicable federal criminal discovery rules. *See Vasquez*, 258 F.R.D. at 71-72.

Finally, even if the government lacked the interests identified above—and it does not—the Court can and should review the Challenged Subpoenas pursuant to its independent obligation to ensure the propriety of a Rule 17(c) subpoena.

2. The Challenged Subpoenas Fail to Meet *Nixon*'s Requirements of Relevance, Admissibility, and Specificity

The Court should quash the Challenged Subpoenas because they fail to meet the *Nixon* standard for relevance, admissibility, and specificity.

*First*, the Challenged Subpoenas fail *Nixon*'s specificity requirement. The Challenged Subpoenas do not identify any particular, admissible document; instead, they demand broad sets of documents related to unidentified funds transfers—and "any" related fee records, correspondent banking agreements, and settlement instructions—across a sprawling eight-year period, almost entirely outside of the plausibly relevant charged period, defining nearly every operative term to reach "any and all" conceivable materials and instructing that any interpretive question be "resolved in favor of the broadest possible construction." These requests are overbroad and burdensome and should be quashed on their face. As courts in this Circuit have observed, this sort of request "smacks of a fishing expedition." *United States v. Nachamie*, 91 F. Supp. 2d 552, 564 (S.D.N.Y. 2000). Courts have found that "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 515 (S.D.N.Y. 2013); *see also United States v. Barnes*, 2008 U.S. Dist. LEXIS 125298, at *11 (S.D.N.Y. Apr. 1, 2008) (quashing motion that "blindly seeks 'all' documents and records that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence" because "[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'"); *RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. at 163-64 (rejecting as "overbroad and totally unreasonable" various requests calling for production of "[a]ll documents" noting it was likely to result in a "massive search for countless documents"); *United States v. Lopez*, No. 15-CR-252 (PKC), 2021 WL 4033886, at *2 (E.D.N.Y. Sept. 3, 2021) (quashing subpoena as overbroad, noting that use of the terms "all" and "any" undermined specificity, and reaffirming that "Rule 17(c) subpoenas are not tools of discovery" (internal quotation marks omitted)).

*Second*, to whatever extent the requests are not merely a fishing expedition but relate to some set of particular transactions (not identified in the Challenged Subpoenas) by or benefiting the defendants or their affiliate entities, the defendants presumably have access to their own records of such transactions. To whatever extent the requests are intended to capture any transaction underlying the charges in this case (notwithstanding the date range that mostly post-dates the charged conduct), the relevant records were produced by the government as Rule 16 discovery. Either way, the Challenged Subpoenas fail *Nixon*'s requirement that the requested information not be otherwise procurable. Rule 17(c) does not permit the defendants to demand

information that is already in their possession or otherwise available to them. Among other things, such requests pose an unnecessary burden on third parties including, in this case, parties that were victims of the defendants' crimes. *See United States v. Cognetta*, No. 18-CR-14 (VM), 2019 WL 4198544, at *2 (S.D.N.Y. Aug. 13, 2019) (citing *In re Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) and *Nixon*, 418 U.S. at 699-700); *United States v. Columbo*, No. 04-CR-273 (NRB), 2006 WL 2012511, at *15 (S.D.N.Y. July 18, 2006) ("[T]he requests set forth in the proposed subpoenas are excessively broad and burdensome and some of the requests seek documents that duplicate materials already produced by the Government.").

*Third*, the subpoenas fail *Nixon*'s relevance requirement. None of the five requests identifies a particular piece of admissible evidence, and, as far as the government is aware, there is no theory under which a non-party bank's bulk funds-transfer data, internal fee records, correspondent banking agreements, and inter-bank settlement instructions would be admissible at trial. A subpoena that does not reference specific admissible evidence but rather seeks overbroad categories of materials cannot satisfy *Nixon*. *See, e.g.*, *Mendinueta-Ibarro*, 956 F. Supp. 2d at 513-15.

Insofar as the defendants contend that such materials would be relevant to the charged financial fraud counts, they would be incorrect. The fact that the victim financial institutions may have processed correspondent banking transactions relating in some way to Huawei after the charged period is irrelevant to whether the defendants conspired to, or did, defraud those victim institutions. A victim can be defrauded and then continue a relationship with the fraudster for reasons entirely separate from the fraud. *See United States v. Corsey*, 723 F.3d 366, 373 n.3 (2d Cir. 2013) ("[A] misrepresentation is material if it is capable of influencing the decisionmaker, no matter what the victim decides to do."); *United States v. Litvak*, 889 F.3d 56, 66 (2d Cir. 2018) ("A finding of materiality, therefore, requires a showing only of importance, not 'actual reliance.'" (citation omitted)).

Moreover, such evidence would have no bearing on the materiality of the defendants' false statements to the victim institutions. Materiality is assessed from the objective standard of a reasonable decisionmaker, not the subjective standard of a particular victim. *See Neder v. United States*, 527 U.S. 1, 22 n.5 (1999) (a matter is material if "*a reasonable man* would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" (emphasis added; quotations and citation omitted)); *see also* ECF Nos. 559 (order by Judge Pollak, later adopted by this Court, finding that, because materiality is assessed from the objective perspective of a reasonable decisionmaker, prior enforcement proceedings against the victim banks did not bear on the materiality of the misstatements at issue in this case). Any decision by the victim banks to continue to process correspondent banking transactions involving Huawei or related entities is irrelevant to whether an objectively reasonable decisionmaker would have viewed the defendants' misrepresentations as material.

Even if such evidence had some bare relevance to materiality, it would fail Rule 403 balancing. The requested voluminous bank records would have minimal probative value, given that the transactions documented therein largely post-date the charged misconduct. And it would risk unfair prejudice to the government by extending and unduly delaying trial and by inviting the jury to improperly infer that, because the victim banks may have continued to be involved in some minimal business with the defendants—despite, with the exception of the Third Bank, otherwise

dropping Huawei as a client—the defendants should be excused from their efforts to defraud those institutions.

In sum, because the defendants have not—and on this record cannot—demonstrate the relevance and admissibility of the sweeping categories of records they seek, the Challenged Subpoenas fail *Nixon* on this ground as well.

III.     The Court Should Compel Disclosure of Other Rule 17(c) Subpoenas and All Materials Received Pursuant to Rule 17(c)

The defendants continue to withhold information they are required to disclose to the government.

Rule 17(c) expressly contemplates the provision to all parties of the opportunity to inspect documents produced before trial. *See* Fed. R. Crim. P. 17(c)(1) (providing that, "when the items arrive, the court may permit the parties and their attorneys to inspect all or part of [the subpoenaed documents]"); *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *9 (S.D.N.Y. May 17, 2018) (ordering defendants to make all items received pursuant to Rule 17 subpoenas available to the government); *United States v. Pena*, No. 16-CR-551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016). Notwithstanding the clarity of the law, the defendants have not made the government aware of any Rule 17(c) subpoenas, nor have the defendants provided the government with any materials received pursuant to Rule 17(c) subpoenas. Indeed, as noted above, the defendants have only just begun to provide Rule 16 disclosures and have provided no Rule 26.2 disclosures notwithstanding the government's repeated written requests for reciprocal discovery. It is the government's understanding that at least some of the recipients of the Challenged Subpoenas have not provided materials to the defendants, but that others have, and the government does not know how many additional Rule 17(c) subpoenas the defendants have served. It is well settled that Rule 17(c) is not a mechanism for the defendants to conduct backdoor discovery or to harass government witnesses.

As the government only learned of the Challenged Subpoenas after being informed by counsel to certain banks that received the subpoenas, the government respectfully requests that the Court order the defendants to immediately disclose all issued Rule 17(c) subpoenas and any responses received to date.

IV.    Conclusion

For the reasons set forth above, the Court should quash the Challenged Subpoenas, order the defendants to disclose the contents of any other Rule 17(c) subpoenas, and produce all materials received in response to any Rule 17(c) subpoenas.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By:    /s/ _____
Alexander A. Solomon
Meredith A. Arfa
Robert M. Pollack
Matthew Skurnik
Matthew F. Sullivan
Assistant United States Attorneys
(718) 254-7000


MARGARET A. MOESER
Chief, Money Laundering, Narcotics and
Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan J. Cohen
Jasmin Salehi Fashami
Trial Attorneys


CHRISTIAN NAUVEL
Acting Chief, Counterintelligence and
Export Control Section,
National Security Division,
U.S. Department of Justice

Christopher Fenton
Trial Attorney

Enclosures

cc:    Clerk of the Court (by ECF)
       Defense counsel (by ECF)