NJM:AAS/CF/TGS/MS/MFS
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

HUAWEI TECHNOLOGIES CO., LTD., ET AL.,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FILED UNDER SEAL**

18-CR-457 (S-4) (AMD)

# MEMORANDUM OF LAW IN SUPPORT OF THE
# GOVERNMENT'S OMNIBUS MOTION TO EXCLUDE EXPERT TESTIMONY

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

CHRISTIAN NAUVEL
Acting Chief
Counterintelligence and Export
Control Section
National Security Division
U.S. Department of Justice

ALEXANDER A. SOLOMON
MEREDITH A. ARFA
ROBERT M. POLLACK
MATTHEW SKURNIK
MATTHEW F. SULLIVAN
Assistant U.S. Attorneys
(Of Counsel)

TAYLOR G. STOUT
MORGAN J. COHEN
JASMIN SALEHI FASHAMI
Trial Attorneys

CHRISTOPHER FENTON
Trial Attorney

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iv

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD....................................................................................................... 3

ARGUMENT .................................................................................................................... 6

I.       ██████████ Testimony Should Be Excluded ................................................ 6

    A.  The Defendants Violated Rule 16(b)(1)(C)(iii) and Failed to Meet Their Burden to Demonstrate Reliability Under Daubert and Rule 702 ............................... 7

    B.  ████████ Opinions Are Not a Proper Subject for Expert Testimony ....................... 9

II.      ██████████████ Testimony Should Be Excluded........................................... 9

    A.  ███████████████ Opinions About OFAC's Priorities and How Foreign Companies Perceived Them Should Be Excluded ...................................... 11

    B.  ███████████████ Opinions About Foreign Countries' Sanctions Law Should Be Excluded...................................................................................... 14

        1.  Foreign Law Evidence Is Irrelevant, Confusing and a Waste of Time........... 14

        2.  The Defendants Did Not Comply with Rule 16(b)(1)(C)(iii), the Court's Order, or Rule 26.1 ................................................................. 16

    C.  ████████████████ Opinion About "U-turn" Authorization Is Irrelevant....... 17

    D.  ██████████████ Is Not a Sanctions Expert.................................................. 17

III.    ██████████ Testimony Should Be Excluded........................................... 21

IV.    ███████████ Testimony Should Be Excluded.......................................... 24

V.    Most of ██████████████ Testimony Should Be Excluded...................................... 26

    A.  ████████████ Opinion that the Defendants and Their Co-conspirators Did Not Actually Benefit from the Alleged Theft Is Inadmissible........................... 28

    B.  The Defendants Have Withheld Critical Information About ████████████ Opinions................................................................................................. 29

VI.    The Court Should Preclude █████████████ from Offering Certain Opinions ........ 29

A. ███████████████ Is Not Qualified to Offer the Expert Opinions the Defendants Intend to Elicit at Trial ................................................................ 32

B. The Defendants Failed to Meet Their Burden to Demonstrate Reliability Under Daubert and Rule 702 ............................................................. 33

C. ███████████████ Opinions Relating to ███████████ Are Not the Proper Subject of Expert Testimony .................................................... 34

VII. ███████████ Testimony Should Be Excluded ....................................... 35

A. ██████████ Is Not Qualified to Testify About the Damage and Repair of the Board or Reverse Engineering ASICs ................................... 36

B. The Defendants Failed to Meet Their Burden to Demonstrate Reliability Under Daubert and Rule 702 ............................................. 37

VIII. The Court Should Preclude ███████████████ from Offering Certain Opinions ........... 39

A. ███████████ Expert Disclosure Fails to Comply with Rule 16(b)(1)(C)(iii) and the Court's Order .................................................. 40

B. ███████████ Is Not Qualified to Offer an Expert Opinion About Trademark Examinations ........................................................... 41

C. ███████████ Is Not Qualified to Offer an Expert Opinion About ███████ Communications with the European Patent Office ........................ 41

D. ███████████ Proposed Testimony Regarding USPTO Examiners Exceeds the Scope of Proper Expert Testimony and Would Be Unfairly Prejudicial ............. 42

IX. The Court Should Preclude ███████████████ from Offering Certain Opinions ............... 44

A. ███████████ Expert Disclosure Fails to Comply with Rule 16(b)(1)(C)(iii) and the Court's Order ................................................. 45

B. ██████████ Should Be Precluded From Offering an Expert Opinion About ██████████ Patent Process .................................................. 46

C. The Court Should Exclude ███████████ Purported Expert Opinions Regarding ██████████ ..................................................... 46

D. ██████████ Should Be Precluded from Offering an Expert Opinion About ██████████ Use of NDAs ................................................. 47

X. The Court Should Preclude ███████████████ Proposed Testimony in Its Entirety .......... 48

A. ███████████ Expert Disclosure Fails to Comply with Rule 16(b)(1)(C)(iii) and the Court's Order ................................................. 48

B.   ████████ Testimony Regarding Facts About Which He Has No Firsthand Knowledge Should Be Precluded ................................................................. 49

XI.   The Court Should Preclude ████████ Proposed Testimony in its Entirety......... 50

A.   ████████ Testimony Would Be Irrelevant. ............................................. 51

B.   ████████ Testimony Is Improper .......................................................... 52

XII.   The Court Should Exclude ████████████ Proposed Testimony in Its Entirety ............................................................................................... 53

A.   The Court Should Exclude ████████ Proposed Testimony That ██ Disclosed Substantive Details About Its ████ ............................................ 55

B.   The Court Should Exclude ████████ Opinion That ██ Was Not Essential for Router Operations ........................................................... 56

C.   The Court Should Exclude ████████ Opinion that There is Not Much Room for Creative Expression in CLI ............................................... 57

D.   The Court Should Exclude ████████ Proposed Testimony Concerning Any Disk Huawei Claims It Received, His Allegation that ████ Was Leaked, and His Opinion that ██ Code Found in Huawei Code Came from Such Sources ................................................................... 58

E.   The Court Should Exclude ████████ Opinion that the Government's Disclosures for Its Expert Witnesses Do Not Establish that Huawei Had Access to ████ Source Code Beyond What Was Needed to Compile and Run ████ ................................................................................. 60

F.   Because the Court Should Exclude All of ████████ Proposed Opinions, the Court Should Exclude the Proposed Background Testimony .............................. 61

REQUEST FOR SEALING ................................................................................. 61

CONCLUSION ................................................................................................. 62

# TABLE OF AUTHORITIES

**Cases**

*523 IP LLC v. CureMD.com*,
  48 F. Supp. 3d 600 (S.D.N.Y. 2014) ........................................................................ 36, 37, 38

*Accent Delight Int'l Ltd. v. Sotheby's*,
  No. 18-CV-9011 (JMF), 2023 WL 2307179 (S.D.N.Y. Mar. 1, 2023) .............................. 35, 47

*Calltrol Corp. v. LoxySoft AB*,
  No. 18-CV-9026 (NSR), 2025 WL 2720984 (S.D.N.Y. Sept. 24, 2025) ................................ 32

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ...................................................................................... 4, 33, 34

*Fernandez v. Cent. Mine Equip. Co.*,
  670 F. Supp. 2d 178 (E.D.N.Y. 2009) ............................................................... 18, 37

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
  No. 12-CV-7372 (AT), 2020 WL 4251229 (S.D.N.Y. Feb. 19, 2020) .................................... 18

*Highland Cap. Mgmt, L.P. v. Schneider*,
  485 F.3d 690 (2d Cir. 2007) ........................................................................................ 9

*Highland Cap. Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) .................................................... 9, 46, 48, 50

*In re Fosamax Prods. Liab. Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009) ................................................................ 12, 25

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  No. 14-MD-2542 (VSB), 2025 WL 354671 (S.D.N.Y. Jan. 30, 2025) .............................. 35, 47

*In re Mirena IUD Prod. Liab. Litig.*,
  169 F. Supp. 3d 386 (S.D.N.Y. 2016) ............................................................. 13, 25, 43

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  638 F. Supp. 3d 227 (E.D.N.Y. 2022) ................................................................... 13

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) .......................................................... passim

*In re Zyprexa Prods. Liab. Litigation*,
  489 F. Supp. 2d 230 (E.D.N.Y. 2007) ................................................................... 13

*JBrick, LLC v. Chazak Kinder, Inc.*,
  No. 21-CV-2883 (HG) (CLP), 2023 WL 6372970 (E.D.N.Y. Sept. 28, 2023) ........... 19, 26, 36

iv

*Jensen v. Cablevision Sys. Corp.*,
   372 F. Supp. 3d 95 (E.D.N.Y. 2019) ................................................................. 35, 47

*Kewazinga Corp. v. Microsoft Corp.*,
   No. 18-CV-4500 (GHW), 2021 WL 4066597 (S.D.N.Y. Sept. 1, 2021) ................................. 12

*Learning Care Grp., Inc. v. Armetta*,
   No. 3:13-CV-1540 (VAB), 2016 WL 3248178 (D. Conn. June 12, 2016) ............................. 24

*LinkCo, Inc. v. Fujitsu Ltd.*,
   No. 00-CV-7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ............................. 47, 50

*Lugosch v. Pyramid Co.*,
   435 F.3d 110 (2d Cir. 2006) ................................................................. 62

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017) ................................................................. 36

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ................................................................. 15

*R.F.M.A.S., Inc. v. So*,
   748 F. Supp. 2d 244 (S.D.N.Y. 2010) ................................................................. 34

*Riegel v. Medtronic, Inc.*,
   451 F.3d 104 (2d Cir. 2006) ................................................................. 33

*S.E.C. v. Daifotis*,
   No. 11-CV-137 (WHA), 2012 WL 2051193 (N.D. Cal. June 7, 2012) .................. 12, 28, 35, 47

*United States v. Al Fawwaz*,
   No. 98-CR-1023 (LAK), 2015 WL 13484498 (S.D.N.Y. Feb. 17, 2015) ............................. 12

*United States v. Amodeo*,
   44 F.3d 141 (2d Cir. 1995) ................................................................. 62

*United States v. Aref*,
   533 F.3d 72 (2d Cir. 2008) ................................................................. 61

*United States v. Baker*,
   No. 14-CR-356 (ENV), 2016 WL 7176588 (E.D.N.Y. Dec. 8, 2016) ............................. 7, 29

*United States v. Banki*,
   No. 10-CR-08 (JFK), 2010 WL 1875690 (S.D.N.Y. May 10, 2010) ............................. 12, 15

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ................................................................. 22

v

*United States v. Brooks*,
No. 08 Cr. 35 (PKL) 2008 WL 2332371 (S.D.N.Y. June 4, 2008) .......................................... 23

*United States v. Cruz*,
363 F.3d 187 (2d Cir. 2004) ................................................................................................. 44

*United States v. Daskal*,
No. 21-CR-110 (NGG) (LB), 2023 WL 9424080 (E.D.N.Y. July 12, 2023)........................ 7, 29

*United States v. Dukagjini*,
326 F.3d 45 (2d Cir. 2003) ................................................................................................... 44

*United States v. Duvall*,
272 F.3d 825 (7th Cir. 2001) .................................................................................................. 5

*United States v. Feliciano*,
223 F.3d 102 (2d Cir. 2000) ................................................................................................. 44

*United States v. Hanjuan Jin*,
833 F. Supp. 2d 977 (N.D. Ill. 2012) .................................................................................... 28

*United States v. Hanjuan Jin*,
733 F.3d 718 (7th Cir. 2013) ................................................................................................ 28

*United States v. Jadusingh*,
No. 18-CR-257 (KAM), 2020 WL 207950 (E.D.N.Y. Jan. 14, 2020) .................................... 16

*United States v. Jones*,
965 F.3d 149 (2d Cir. 2020) ................................................................................................. 13

*United States v. Kaplan*,
490 F.3d 110 (2d Cir. 2007) ................................................................................................. 11

*United States v. Kaufman*,
No. 19-CR-504 (LAK), 2021 WL 4084523 (S.D.N.Y. Sept. 8, 2021)................................. 5, 61

*United States v. Kaufman*,
No. 21-2589, 2023 WL 1871669 (2d Cir. Feb. 10, 2023) ........................................................ 5

*United States v. Mejia*,
545 F.3d 179 (2d Cir. 2008) ................................................................................................... 9

*United States v. Ornelas*,
906 F.3d 1138 (9th Cir. 2018) ................................................................................................ 8

*United States v. Pena*,
No. 21-CR-176 (AMD), 2024 WL 4132379 (E.D.N.Y. Sept. 9, 2024) .................................... 4

*United States v. Rea,*
958 F.2d 1206 (2d Cir. 1992) ................................................................... 34

*United States v. Sabir,*
No. 05-CR-673 (LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007) ................................... 12

*United States v. Stewart,*
433 F.3d 273 (2d Cir. 2006) ................................................................. 23, 25

*United States v. Tin Yat Chin,*
371 F.3d 31 (2d Cir. 2004) ..................................................................... 23

*United States v. Tomasetta,*
No. 10-CR-1205 (PAC), 2011 WL 6382562 (S.D.N.Y. Dec. 12, 2011) ........................... 25, 56

*United States v. Tuzman,*
No. 15-CR-536 (PGG), 2017 WL 6527261 (S.D.N.Y. Dec. 18, 2017) ................................. 7

*United States v. Ulbricht,*
No. 14-CR-68 KBF, 2015 WL 413318 (S.D.N.Y. Feb. 1, 2015) ................................. passim

*United States v. Ulbricht,*
858 F.3d 71 (2d Cir. 2017) ...................................................................... 6

*United States v. Weiner,*
No. 22-CR-19 (PGG), 2024 WL 82729 (S.D.N.Y. Jan. 8, 2024) ................................. 5, 61

*United States v. Williams,*
506 F.3d 151 (2d Cir. 2007) .................................................................. 4, 5

*United States v. Zheng,*
113 F.4th 280 (2d Cir. 2024) ................................................................... 52

*Washington v. Kellwood Co.,*
105 F. Supp. 3d 293 (S.D.N.Y. 2015) .................................................. 18, 21, 33, 37

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,*
571 F.3d 206 (2d Cir. 2009) .................................................................... 38

**Federal Rules**

Fed. R. Crim. P. 16(b)(1)(C) ........................................................... 5, 16, 55

Fed. R. Crim. P. 16(d)(2) ....................................................................... 6

Fed. R. Crim. P. 26.1 .......................................................................... 16

Fed. R. Evid. 401. .............................................................................. 3

Fed. R. Evid. 402. ........................................................................................................ 3

Fed. R. Evid. 403. .................................................................................................... 3, 36

Fed. R. Evid. 702. .................................................................................................... 4, 42

Fed. R. Evid. 801 ...................................................................................................... 13

Fed. R. Evid. 802 ...................................................................................................... 13

**Other Authorities**

Fed. R. Crim. P. 16 Advisory Committee Notes ............................................................. 6

Fed. R. Evid. 702 Advisory Committee Notes ............................................................. 33

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion to exclude the expert opinions and testimony of the following proposed experts by the defense: ███████████████████████████████████████████████████, ████████████████████████████████████████████████████, and ████████████████ (the "Witnesses").

Expert testimony is proper where it is reliable and helps the jury understand a relevant issue that requires specialized knowledge.  Expert testimony could, under appropriate circumstances, be admissible as to some of the topics about which the defendants' experts propose to testify.  However, the defendants' approach is problematic in the most fundamental respects. *First*, many of the Witnesses are experts—but not on the topics about which the defendants would have them testify at trial.  *Second*, the defendants intend to improperly elicit from their proposed experts' opinions about the defendants' states of mind, as well as the state of mind of other actors, including government agencies and foreign companies, about whose thought processes the Witnesses have no admissible expert insight.  *Third*, in lieu of lay testimony from fact witnesses with personal knowledge, the defendants seek to substitute hired experts with no first-hand knowledge to vouch for the defendants' factual narrative for the jury.  *Fourth*, in violation of the Federal Rules of Evidence and this Court's order, the defendants continue to withhold basic information about many of their proposed experts and their expected testimony that would be necessary to assess the relevance and reliability of the proposed testimony.

The defendants' approach is improper.  It far exceeds the permissible scope of expert testimony, invades the province of the jury, and presents serious risks of consuming the Court and the jury's time with irrelevant, confusing, and misleading opinions about matters that

1

distract from the important questions presented, namely, those that directly relate to the elements of the crimes charged.   For these reasons, the Court should exclude the testimony and opinions the defendants plan to elicit from certain of their proposed experts at trial.

## BACKGROUND

Pursuant to the Court's schedule, the defense provided 17 expert disclosures on March 4, 2026.[1]   (Oct. 2, 2025 Sched. Order.)   Most of the disclosures, however, were cursory. The disclosures primarily listed the general topics about which their proposed experts might testify but largely failed to disclose the specific opinions they intend to elicit from the witnesses at trial and the bases and reasons for the opinions.   For some proposed experts, the defendants also failed to disclose relevant qualifications.

On March 13, 2026, the government wrote to the defense seeking information required by Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) for ███████████████ ███████████, and ██████ (Ex. B-1); ██████████ (Ex. B-2); ███████████ and ████████ (Ex. B-3); ████████ (Ex. B-4); and █████████ (Ex. B-5).   For some of the proposed experts, the government also asked the defendants to explain the relevance of the proposed testimony.   (*Id.*)

To date, the defense has not provided any additional information.   (Ex. C.)   In a letter dated March 18, 2026, the defense mischaracterized the government's requests as improper "contention interrogator[ies]".   (*Id.*)   The defense argued that its disclosures "comply with Federal Rule of Criminal Procedure 16 and match the government's own disclosures" and that

---

[1]     The expert disclosures for the defendants' proposed experts that are the subject of this motion are attached as follows: ████████ (Ex. A-1), ██████████████████ (Ex. A-2), ██ ██████ (Ex. A-3), █████████ (Ex. A-4), ███████████ (Ex. A-5), █████████████████ (Ex. A-6), █████████ (Ex. A-7), █████████ (Ex. A-8), █████████ (Ex. A-9), █████████████ (Ex. A-10), █████████ (Ex. A-11), ████████████████ (Ex. A-12).

2

"[t]he government's demand for more goes beyond Rule 16." (*Id.*) The defendants further argued that they "have no obligation to provide advance argument about relevance, expert fit, and admissibility." (*Id.*)

On March 23, 2026, the government wrote to request supplemental disclosures for ███████████ (Ex. B-6) and ██████████████ (Ex. B-7). Again, the defendants refused to provide any additional information. (Ex. D.) In an email dated March 30, 2026, the defendants reiterated that their expert disclosures "provide the same level of detail as the government's own disclosures and, more importantly, satisfy Rule 16(b)(1)(C)'s requirements." (*Id.*)

On April 23, 2026, the Court held a status conference during which the parties discussed their intentions to call certain expert witnesses at trial. Following the status conference, the Court entered an order directing the parties "to work together to resolve their differences on the subject of expert witnesses, as well as the number of expert witnesses to be called." (Minute Entry and Order dated Apr. 23, 2026.) On April 28, 2026, the parties met and conferred about their respective expert witnesses, but were unable to resolve their differences.

## LEGAL STANDARD

All evidence, including expert testimony, must be relevant to be admissible. Fed. R. Evid. 402. Evidence is relevant if (i) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (ii) "the fact is of consequence in determining the action." Fed. R. Evid. 401. Courts have discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

An expert may be permitted to testify if he or she is qualified, reliable, and helpful. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court charged district courts with a gatekeeping role with respect to expert testimony. 509 U.S. 579, 597 (1993). This inquiry is "guided" by Federal Rule of Evidence 702, *id.* at 598-95, under which courts have discretion to admit expert testimony when: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

The twin requirements for the admissibility of expert testimony are evidentiary reliability and relevance. *See United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert*, 509 U.S. at 597). With respect to reliability, the Court must focus on the methodology or reasoning employed by application of the factors in Rule 702 and the non-exhaustive lists of factors set forth in *Daubert*, namely: "(1) whether a theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." *United States v. Pena*, No. 21-CR-176 (AMD), 2024 WL 4132379, at *2 (E.D.N.Y. Sept. 9, 2024) (quoting *Williams*, 506 F.3d at 160-61) (cleaned up). With respect to relevance, the Court must determine whether the proffered testimony "is sufficiently tied to the facts of the case and whether it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. "The proponent of the expert testimony has the burden of establishing reliability—as well as the other admissibility requirements in Rule 702—

4

by a preponderance of the evidence."  *United States v. Kaufman*, No. 19-CR-504 (LAK), 2021 WL 4084523, at *19 (S.D.N.Y. Sept. 8, 2021), *aff'd*, No. 21-2589, 2023 WL 1871669 (2d Cir. Feb. 10, 2023) (citing *Williams*, 506 F.3d at 160).

Federal Rule of Criminal Procedure 16(b)(1)(C) (i) provides that "the defendant must disclose to the government, in writing, the information required by (iii) for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial."  According to Rule 16(b)(1)(C)(iii) each expert disclosure must contain:

- a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;
- the bases and reasons for them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years; and
- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

*Id.*

Applying Rules 702 and 16(b)(1)(C), courts have repeatedly held that a proper notice will include a summary of anticipated testimony.  "Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions."  *Kaufman*, 2021 WL 4084523, at *19 (quotations omitted) (citing *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) ("The Rule requires a summary of the expected testimony, not a list of topics.").  "[A] general description of possible bases does not meet the requirements of Rule 16(b)(1)(C)."  *United States v. Weiner*, No. 22-CR-19 (PGG), 2024 WL 82729, at *5 (S.D.N.Y. Jan. 8, 2024) (quotations omitted).  "Disclosures must include more than a 'guess as to various opinions' included in the expert's submission." *Id.* at *5 (quoting *United*

5

*States v. Ulbricht*, No. 14-CR-68 KBF, 2015 WL 413318, at *6 (S.D.N.Y. Feb. 1, 2015), *aff'd*, 858 F.3d 71 (2d Cir. 2017)).

Indeed, the Advisory Committee notes to Rule 16 explain that the expert disclosure requirements are intended "to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed," by providing "enforceable deadlines" for the disclosure of specific information about the content of each proposed expert witness's testimony and potential impeachment. Fed. R. Crim. P. 16 Advisory Committee Notes. Where a party has not complied with the disclosure requirements of Rule 16, the court may order the exclusion of evidence. Fed. R. Crim. P. 16(d)(2).

## ARGUMENT

**I.**    ████████    **Testimony Should Be Excluded**

As proffered in the expert notice, ████████ intends to testify regarding whether certain Skycom-related dollar clearing transactions were, or could have been, processed in Hong Kong, rather than the United States. (Ex. A-1.) The defendants' disclosure for ████████ is deficient. According to the disclosure, ████████ "will offer observations and analyses concerning transactions to or from Skycom, including, but not limited to, transactions that involved United States intermediary banks and others that involved or could have involved Hong Kong's U.S. dollar Clearing House Automated Transfer System ('CHATS')." (Ex. A-1.) The proffered "bases" for ████████' unidentified "observations" and "analyses" are limited to ████████ "education, experience, and academic and professional training." (*Id.*)

Notably, the defendants failed to disclose the "observations" they intend to elicit from ████████ concerning transactions to or from Skycom. They also did not disclose any information about the "analyses" ████████ conducted, including the methods he used or his results. And when the government asked the defendants to provide this missing information and

6

to explain how ██████ ' "observations" and "analyses" are relevant and the proper subject of expert testimony (Ex. B-1), the defendants refused.   (Ex. C.)

██████ testimony also should be excluded in its entirety because it is inadmissible under Rule 702.   The jury does not require expert testimony to examine bank records and see where a transaction was processed.   And to the extent the expert is used to construct a factual narrative based on documentary records, it would be improper.

### A.     The Defendants Violated Rule 16(b)(1)(C)(iii) and Failed to Meet Their Burden to Demonstrate Reliability Under *Daubert* and Rule 702

The expert disclosure for ██████ is fatally deficient because the defendants have withheld basic information they are required to disclose pursuant to Rule 16 and the Court's October 2, 2025 scheduling order.   The defendants disclosed that ██████ made "observations" and conducted "analyses."   (Ex. A-1.)   But they have withheld from the government what those observations and analyses *are*—including information about ██████ methodology, the specific data and information he used, his findings, and the opinions he formed.   These deficiencies are clear violations of the applicable rules and of this Court's order.   *See, e.g.*, *United States v. Daskal*, No. 21-CR-110 (NGG) (LB), 2023 WL 9424080, at *17 (E.D.N.Y. July 12, 2023) ("merely list[ing] the topics that [a proposed expert] will testify about without providing the specific opinions that he will render on these topics . . . fails to comply with Rule 16"); *United States v. Baker*, No. 14-CR-356 (ENV), 2016 WL 7176588, at *1 (E.D.N.Y. Dec. 8, 2016) ("[M]erely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions."); *United States v. Tuzman*, No. 15-CR-536 (PGG), 2017 WL 6527261, at *11 (S.D.N.Y. Dec. 18, 2017) ("asserting that [an expert] will provide [an] opinion based on some unspecified method . . . does not suffice") (quotations omitted).

7

The practical effect of the defendants' noncompliance with their disclosure obligations and the Court's order is to prejudice the government's efforts to prepare for trial. The government has no idea what opinions ███████ will offer at trial or how he arrived at his opinions. Consequently, the government cannot prepare a response or proper cross-examination and cannot make an informed decision about whether it should retain a rebuttal expert.

*Daubert* and Rule 702 require advance disclosure so that the Court may play its critical gatekeeping function to ensure the reliability of the proposed expert testimony. There is no excuse for the defendants' failure to timely provide the information required under Rule 16, or to ignore the Court's order. The defendants could easily disclose the requested information because it is known to them. They simply decline to do so. Moreover, when the government pointed out the deficiencies and gave the defendants the opportunity to provide supplemental information (Ex. B-1), the defendants demurred (Ex. C). Under these circumstances, the defendants' failure to comply with Rule 16 and the Court's order serves as an independent basis for excluding the proposed testimony in its entirety. *See United States v. Ornelas*, 906 F.3d 1138, 1150-51 (9th Cir. 2018) (affirming exclusion of expert where the court "simply enforce[d] reasonable deadlines established in a pretrial order setting disclosure deadlines"); *see also Ulbricht*, 2015 WL 413318 at *6 (collecting cases excluding expert witnesses for insufficient disclosures and finding the rule of exclusion for an expert "is sensible because without the appropriate detail, . . . an opposing party cannot prepare a response or for proper cross-examination, and a trial devolves into jungle warfare by ambush"); *id.* (finding Rule 16 disclosures insufficient and stating that "while the defense's response contains additional high-level description of the testimony, and the Court might be able to guess as to various opinions, it contains no real opinions, no bases for opinions, no analysis, no methodology").

8

**B.** ▮▮▮▮▮▮▮▮ **Opinions Are Not a Proper Subject for Expert Testimony**

▮▮▮▮▮▮ opinion that some transactions to or from Skycom did involve, or could have involved, CHATS is inadmissible for multiple reasons. *First*, insofar as ▮▮▮▮ would testify that certain transactions *were* processed by CHATS, that is not a proper subject of expert testimony. Expert testimony cannot be used to "construct a factual narrative based on [documentary] evidence," like bank records. *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005), *vacated in part and remanded on other grounds,* 485 F.3d 690 (2d Cir. 2007). Simply put, the jury does not require expert testimony to examine bank records and see where a transaction was processed. *See United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) ("Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own.").

*Second*, to the extent ▮▮▮▮▮ would testify that certain transactions *could have been* processed by CHATS (but ultimately were not), his testimony would also be improper. The apparent purpose of such testimony would be to furnish the jury with a basis to infer that the defendants may have believed that the transactions would be processed in Hong Kong, rather than the United States. The defendants' beliefs, however, are not proper subjects of expert opinion, particularly where the expert lacks firsthand knowledge on the subject. *Highland*, 379 F. Supp. 2d at 469; *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.").

**II.** ▮▮▮▮▮▮▮▮▮ **Testimony Should Be Excluded**

At trial, the government will prove the defendants willfully violated sanctions through, among other things, (i) expert testimony from a current official of the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") who will educate the jury about the

9

United States's Iran sanctions program and explain how, during the relevant time period, that program prohibited a non-U.S. person from causing a U.S. financial institution to process dollar-clearing transactions on behalf of prohibited parties in Iran; (ii) bank records showing that the defendants caused U.S. financial institutions to process dollar-clearing transactions on behalf of prohibited parties in Iran; and (iii) testimony from employees of a contractor in Iran who will explain that the defendants required them to delete references to "Iran" from their invoices and then subsequently paid those invoices using U.S. dollars, including dollar transactions cleared by U.S. financial institutions.

In response, the defendants propose to call a retained expert, ███████████ █████████, to tell the jury about OFAC's regulatory and enforcement priorities and how foreign companies perceived and responded to those priorities.  (Ex. A-2.)  Specifically, the defendants propose to call ████████████████████ to testify that: (i) OFAC targeted foreign financial institutions, not their foreign customers (*Id.* ¶¶ 6-8); and (ii) as a result, the foreign customers were not focused on the legal risks and implications of causing such dollar-clearing transactions through U.S. correspondent banks (*id.* ¶¶ 3, 10).   The defendants also noticed ██████████████████ as an expert on the sanctions laws and regulations imposed by different foreign countries against Iran, including foreign countries' licensing requirements.   (*Id. ¶ 5.*)

████████████████████ opinions should be excluded for numerous reasons, including because his opinions on how foreign companies – like the defendants – perceived U.S. sanctions against Iran and foreign licensing law—based largely on what appears to be his personal anecdotes—are inadmissible under Rules 401, 402, 403 and 702.   Moreover, ████████████ ██████████ is not qualified to testify as a sanctions expert, and the defendants' notice is insufficient as a matter of law.

**A.**  ████████████████  **Opinions About OFAC's Priorities and How Foreign Companies Perceived Them Should Be Excluded**

To defend against allegations that the defendants willfully violated U.S. sanctions against Iran by causing certain dollar-clearing transactions through U.S. correspondent banks, the defendants propose to call ████████████████ to testify that: (i) OFAC targeted non-U.S. financial institutions, not their non-U.S. customers (Ex. A-2 ¶¶ 6-8); and (ii) as a result, the non-U.S. customers were not focused on the legal risks and implications of causing such dollar-clearing transactions through U.S. correspondent banks (*id.* ¶¶ 3, 10).   These opinions are inadmissible under Rules 401 and 402.

The Second Circuit has directed that "evidence regarding the knowledge of individuals other than the defendant should be admitted only if there is some other evidence in the record—concerning, for example, the nature of the [crime] or the relationship of the parties—from which to conclude that the defendant would have the same knowledge."  *United States v. Kaplan,* 490 F.3d 110, 120 (2d Cir. 2007).   ████████████████ opinions about OFAC's enforcement priorities are not probative of the defendants' knowledge of whether the dollar-clearing transactions were lawful.  Nor is his testimony about how other foreign companies perceived those enforcement priorities.[2]   Absent testimony from the defendants—or other evidence—showing the defendants believed their conduct to be lawful, there is no proper basis from which the jury could (or should) infer from ████████████████ proposed testimony anything about the defendants' state of mind.  *See United States v. Banki*, No. 10-CR-08 (JFK),

---

[2]    For example, ████████████████ plans to opine that it was not until 2017—when OFAC supposedly announced its first such significant enforcement case against CSE TransTel Pte. Ltd., a non-bank foreign company, for apparent violations of U.S. sanctions against Iran—that non-bank foreign companies outside of the financial sector had notice of the need to ensure that transactions with a nexus to Iran were not conducted using the U.S. financial system. (Ex. A-2 ¶ 8.)

2010 WL 1875690, at *2 (S.D.N.Y. May 10, 2010) (requiring demonstration of a factual link between the proposed expert's testimony about OFAC's under-enforcement policy and the defendant's state of mind). His opinions therefore should be excluded as irrelevant. *See, e.g., Kewazinga Corp. v. Microsoft Corp.*, No. 18-CV-4500 (GHW), 2021 WL 4066597, at *15 (S.D.N.Y. Sept. 1, 2021) ("Expert opinions about beliefs, intents, or motives are inadmissible."); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding proposed expert from testifying about the knowledge, motivations, intent, state of mind, or purposes of Merck, its employees, the FDA, or FDA officials because her expertise "does not give her the ability to read minds"); *S.E.C. v. Daifotis*, No. 11-CV-137 (WHA), 2012 WL 2051193, at *2 (N.D. Cal. June 7, 2012) ("[A] retained witness, of course, has no personal knowledge of what really occurred and should never be allowed to pretend to divine for the jury the truth of what actually occurred or what the mental state of an actor was.").

This testimony should also be excluded under Rule 403. The probative value of speculation about how a hypothetical foreign company might have perceived U.S. sanctions against Iran is substantially outweighed by the danger it would "distract the jury's attention from considering the evidence as it applies to the elements of the crimes charged," and instead focus on a comparison of the defendants' actions with those of a hypothetical foreign company. *United States v. Sabir*, No. 05-CR-673 (LAP), 2007 WL 1373184, at *9 (S.D.N.Y. May 10, 2007). The high likelihood of confusion compels exclusion here. *See United States v. Al Fawwaz*, No. 98-CR-1023 (LAK), 2015 WL 13484498, at *2 (S.D.N.Y. Feb. 17, 2015) (excluding expert testimony about the fact that some Saudi Arabians do legitimate business in East Africa because "any probative value of the testimony would be outweighed substantially by the risks of confusing the

12

issues and inviting the jury to base its verdict on whether defendant acted similarly to other Saudi Arabians").

██████████████████ opinion about third parties' knowledge and states of mind should also be excluded because it is not based on sufficient facts.  To the contrary, his opinion is based on "experience," not actual data.  (*See, e.g.*, Ex. A-2 ¶ 10 ("Foreign companies outside of the financial sector, *in my experience*, had little to no discussion about financial sanctions compliance of the sort at issue in this case, *i.e.*, the compliance implications of U.S. dollar transactions between foreign, non-Iranian banks.") (emphasis added).)  It is well settled that "unsupported suppositions," "[a]necdotal evidence and 'generalized assumptions' are inadequate bases for an expert report" under Rule 702.  *In re Zyprexa Prods. Liab. Litigation*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007) (internal citations omitted); *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 638 F. Supp. 3d 227, 242 (E.D.N.Y. 2022) ("Expert testimony should be excluded if it is 'speculative or conjectural.'") (citing *United States v. Jones*, 965 F.3d 149, 162 (2d Cir. 2020)).[3]

In addition, ██████████████ testimony should be excluded because it is not the proper subject of expert testimony under Rule 702.  "[T]he opinions of [proposed expert] witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise."  *Rezulin*, 309 F. Supp. 2d at 546. ██████████████ opinions fall squarely within this prohibition and should be excluded. *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 386, 486 (S.D.N.Y. 2016) ("It is

---

[3]     To the extent ██████████████ plans to testify about statements made to him by clients other than the defendants, such statements would be inadmissible hearsay.  Fed. R. Evid. 801, 802.

impermissible for experts to opine on the state of mind or motives of corporations or regulatory bodies.").

**B.** ███ ███████████████ **Opinions About Foreign Countries' Sanctions Law Should Be Excluded**

According to their expert notice, the defendants intend to use ████████ ███████ to introduce foreign law evidence relating to the sanctions laws and regulations imposed by different foreign countries against Iran.   (Ex. A-2 ¶ 5.)   Among other things, the defendants plan to introduce evidence about foreign countries' licensing requirements.   (*Id.*)   The defendants also intend for ████████████ to present a comparative law analysis, contrasting the similarities and difference between the sanctions laws and regulations of the United States with those of foreign countries.   (*Id.*)   The defendants would then elicit testimony from ██████ ███████ about how hypothetical companies would assess and navigate these risks in light of these differences and similarities.   (*Id.*)   The Court should exclude his opinions relating to foreign sanctions laws and regulations because his speculative and improper opinions are inadmissible under Rules 401, 402 and 403, and the defendants have not provided sufficient expert notice to justify his testimony.

**1.    Foreign Law Evidence Is Irrelevant, Confusing and a Waste of Time**

████████████ opinions about foreign sanctions laws and regulations are irrelevant.   They are not probative of the question of whether the defendants' willfully violated U.S. sanctions.   Indeed, willfully causing a U.S. correspondent banks to clear dollar transactions for the benefit of Iran violates U.S. law regardless of whether such a transaction would violate

another country's laws.   Accordingly, such testimony should be excluded under Rules 401 and 402.[4]

███████████████████████ opinions about foreign countries' sanctions laws and regulations are also inadmissible under Rule 403.   The risk that such testimony would confuse the jury far outweighs any probative value it may have.   Such testimony could mistakenly suggest that if a defendant complied with a foreign jurisdiction's law, then the defendant had a valid excuse for violating U.S. law and thus did not act willfully.   The practical consequence of such a mistake would be that, to find the defendant guilty, the jury would have to decide the defendant violated both foreign law and U.S. law.   The risk that expert testimony on foreign law would likely confuse the jury thus far outweighs its probative value, if any.   *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005) (noting the "uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations").

In addition, introducing foreign law evidence also presents a danger the Court will need to conduct a series of minitrials that will waste time and cause undue delay.   The defendants seek to introduce rebuttal testimony about the legal regimes in multiple foreign countries, which could lead to additional government expert witnesses as well.   The defendants also plan to use ███████████████████ to present a comparative analysis of these foreign countries' respective sanctions laws and regulations.   While the defendants' withholding of basic information unfairly

---

[4]    Opinions about foreign law also are not relevant to the defendants' state of mind or to rebut willfulness in the absence of some link establishing that the defendants were aware of these foreign sanctions against Iran and, as a result of the defendants' understanding of foreign sanctions, believed their actions in connection with the dollar-clearing transactions at issue did not violate U.S. sanctions. *See, e.g., Banki*, 2010 WL 1875690, at *2 (requiring a defendant to establish a factual link between the proposed expert's testimony and defendant's state of mind).

15

prejudices the government's ability to decide whether to retain rebuttal experts (and if so, which ones), the government nevertheless anticipates there will be disputes, and that some such experts are required as a result. The Court therefore should exclude the defendants' foreign law evidence because the risk of waste and undue delay that would result from its introduction far outweighs its probative value, if any. *See, e.g., United States v. Jadusingh*, No. 18-CR-257 (KAM), 2020 WL 207950, at \*4 (E.D.N.Y. Jan. 14, 2020) (excluding evidence under Rule 403 where allowing it would lead to a mini-trial on collateral issues) (collecting cases).

> **2.    The Defendants Did Not Comply with Rule 16(b)(1)(C)(iii), the Court's Order, or Rule 26.1**

The defendants failed to provide proper notice regarding expert testimony on foreign law. Rule 26.1 requires the defendants to provide the government reasonable written notice of their intention to raise issues of foreign law. Fed. R. Crim. P. 26.1. In addition, Rule 16(b)(1)(C)(iii) and this Court's October 2, 2025 scheduling order require the defendants to disclose by March 3, 2026, the specific opinions they intend to elicit from ███████████ █████, which here should include the names of the foreign countries about which he will testify as part of his comparative law analysis. Fed. R. Crim. P. 16(b)(1)(C)(iii); Sched. Order, Oct. 2, 2025. The defendants did not comply with any of these authorities.

When the defendants failed to make the required disclosures, the government followed up in writing asking the defendants to provide more information about the comparative law analysis they intend to introduce through ████████████. (Ex. B-1 at 3.) The defendants declined to identify the foreign countries about whose laws their proposed expert would opine. (Ex. C.) Considering the defendants' repeated refusal to make the necessary disclosures, the Court should exclude this foreign law evidence.

**C.** ███████████████ **Opinion About "U-turn" Authorization Is Irrelevant**

██ ███████████████ opinion about OFAC's so-called "U-turn" authorization[5] is irrelevant.   As he admits, OFAC revoked the U-turn authorization in November 2008.   (Ex. A-2 ¶ 9.)   At the time the defendants provided the expert disclosure for ██ ███████████████ the relevant period for the sanctions-related counts involving financial service began in November 2007; however, the government has since superseded and now the relevant period for the sanctions-related counts involving financial services does not begin until December 2008—*i.e.*, after OFAC revoked the U-turn authorization.   (S-4 Ind. ¶¶ 107-13 (ECF 689).)   Testimony about the U-turn authorization is thus inadmissible under Rules 401 and 402.[6]

**D.** ███████████████ **Is Not a Sanctions Expert**

███████████████ is not qualified to opine as an expert about OFAC's policies and procedures, including its regulatory and enforcement priorities.   He never worked at OFAC.   And he does not appear to have any experience engaging with OFAC.[7] ███████████████

---



[5]    According to ███████████████, the U-turn authorization permitted a U.S. depository institution to process transfers of funds to or from Iran if the transaction was initiated offshore by a non-Iranian, non-U.S. foreign bank and only passed through the U.S. financial system en route to another offshore non-Iranian bank, so long as the transaction did not debit or credit an Iranian account at a U.S. bank and involved no blocked party or property.   (Ex. A-2 ¶ 9.)

[6]    ███████████████ further intends to opine that, "[a]lthough OFAC revoked the U-turn authorization in November 2008, U.S. banks could (until 2012) continue to clear foreign wire transfers if the transfer arose from an underlying transaction that was not otherwise prohibited."   (Ex. A-2 ¶ 9.)   It is entirely unclear what ███████████████ is referencing here.   But to the extent he is suggesting there was some exception or loophole to the sanctions laws and regulations that prohibited causing a U.S. correspondent bank to clear dollar transactions that benefited Iran, such testimony would be irrelevant.   There is simply no factual basis to suggest these exceptions applied to the defendants' business transactions, let alone to suggest the defendants were aware of them.

[7]    ███████████████ expert disclosure states he has "experience working with

17

███████ expert disclosure and CV reflect broad knowledge of many different subjects, but he lacks training and experience specific to U.S. sanctions.  (Ex. A-2 ¶ 12, Ex. A.)  Notably, the defendants demurred after the government sought more information about ██████████ ████████ qualifications.   (*See* Exs. B-1, C.)   Accordingly, his testimony on this subject should be excluded.  *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, No. 12-CV-7372 (AT), 2020 WL 4251229, at *3-4 (S.D.N.Y. Feb. 19, 2020) (holding that a proposed expert was not qualified to express an opinion about how a credit rating agency would have viewed a certain matter when he had never worked at a rating agency); *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015) ("Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702."); *Fernandez v. Cent. Mine Equip. Co.,* 670 F. Supp. 2d 178, 183-84 (E.D.N.Y. 2009) (finding that a proposed expert was not qualified to express an opinion about a drilling accident even though he had a Bachelors and Master's degree in mechanical engineering, was employed with a forensic firm specializing in mechanical engineering, and had taught courses in engineering, because he had little expertise in the geotechnical field, never operated any drilling rigs, and never consulted for a drilling company).

██████████████ also cannot offer expert opinion about U.S. sanctions.   "A witness must demonstrate their knowledge, skill, experience training, or education in order to qualify as an expert in the relevant subject matter."   *See JBrick, LLC v. Chazak Kinder, Inc.*, No. 21-CV-2883 (HG) (CLP), 2023 WL 6372970, at *6 (E.D.N.Y. Sept. 28, 2023).   As detailed below, he has failed to make this showing.

---

regulators and other court-appointed and independent monitors and ha[s] dealt with multiple Iranian sanctions issues as part of my monitorship work."   (Ex. A-2 ¶ 12.)   Critically, it does not say he worked with OFAC.

*First*, ███████████████ lacks meaningful training in U.S. sanctions.   With respect to sanctions, his CV states only that he is a "Certified Global Sanctions Specialist" or "CGSS".   (Ex. A-2 at Ex. A, p. 1.)   However, the course of study required to obtain a CGSS certification is not rigorous: an individual need only complete a four-week online course consisting of four online classes and four hours of homework and pass a 100-question multiple choice exam.[8] And U.S. sanctions is only one of the many topics covered in the online course.[9]

*Second*, ███████████████ lacks practical experience relating to U.S. sanctions.   His expert disclosure states he "previously worked at Daimler Group and DaimlerChrysler, including in senior finance positions in two of Daimler Group's Chinese subsidiaries, where [he] assisted with financial compliance and transactions in foreign currencies and was a critical gatekeeper for the respective Daimler subsidiaries' compliance components." (Ex. A-2 ¶ 12.)   Importantly, he does not indicate whether he handled U.S. sanctions issues, such as issues relating to U.S. sanctions against Iran.

The putative expert also claims that he "advise[s] corporate clients on financial compliance and risk-management issues relating to anti-money laundering and sanctions in the banking sector, with a specific focus on risk and compliance issues stemming from corporate

---

[8] *See* ACAMS, CGSS Certification ("The CGSS Certification program consists of four online courses designed to strengthen sanctions knowledge and support compliance across regions.") (*available at* https://www.acams.org/en/certifications/certified-global-sanctions-specialist-cgss) (last visited May 17, 2026); CGSS ("[T]he CGSS exam . . . contains 100 multiple choice and multiple select questions.") (available at https://www.acams.org/en/media/document/2870) (last visited May 17, 2026; Sanctions Compliance Case Studies (*available at* https://www.acams.org/en/training/certificates/sanctions-compliance-case-studies) (last visited May 17, 2026).

[9] *See* ACAMS, CGSS Certification.   He also lacks any legal training, meaning he is not qualified to offer expert testimony about foreign countries' sanctions laws or regulations or conduct the type of comparative legal analysis the defendants ostensibly intend to elicit through his trial testimony.   (Ex. A-2 ¶ 5.)

engagement in Euro- and U.S.-dollar-denominated transactions." (*Id.*) Missing is the type of information the Court needs to assess his relevant experience, such as details about when he provided sanctions-related advice, the types of corporate clients he advised, the nature of the issues on which he advised, and the amount of time he has spent doing that specific work as opposed to work on other issues. He also does not explain whether or how the advice he provided concerned U.S. sanctions against Iran.[10]

He also claims he has "experience working with regulators and other court-appointed and independent monitors and have dealt with multiple Iranian sanctions issues as part of my monitorship work." (*Id.*) Again, he provides no meaningful information about the nature of this work, including whether he worked with OFAC and dealt with U.S. sanctions against Iran. The only details he provides about his work with monitors are contained in his CV and do not mention U.S. sanctions. (Ex. A-2 at Ex. A.)

*Third*, ███████████████ does not appear to have published any relevant articles. His expert disclosure lists only three publications relating to sanctions, all of which appear to have been published by a group of individuals. (Ex. A-2 at 6-7.) Two of the three publications concern German (not U.S.) sanctions; all three relate to years far outside the relevant time period. (*Id.*)

---

[10] ███ █████████████ anticipated testimony illustrates his lack of qualifications. For example, ██████████████ intends to opine that "[f]oreign companies outside of the financial sector, . . . largely focused on export controls, anti-bribery, and anti-corruption compliance, not U.S. financial sanctions compliance," and that "[f]oreign companies outside of the financial sector, in [his] experience, had little to no discussion about financial sanctions compliance of the sort at issue in this case." (Ex. A-2 ¶ 10.) The suggestion that non-bank foreign companies had "little to no discussion about financial sanctions compliance of the sort at issue in this case" is precisely what someone who has no meaningful experience with U.S. sanctions would say if they were in a role that did not require them to handle U.S. sanctions-related issues or were not retained by clients to specifically provide advice relating to U.S. sanctions.

20

Finally, as far as the government is aware, ███████████████████ has never been qualified by a U.S. court as an expert in U.S. sanctions.   His "Selected Case Experience" lists only two engagements that touch on U.S. sanctions.   (*Id.* at Ex. A at 2.)   The first appears to describe his retention in this case: "Retained as an expert witness in the context of a U.S. criminal proceeding, following a U.S. Department of Justice into alleged OFAC sanctions breaches and other allegations."[11]   (*Id.*)   The second describes a matter in which ███████████████ is "[t]o be appointed" in an Internal Court of Justice arbitration in which the Federal Rules of Evidence and federal law do not apply.

For all these reasons, ███████████████ should not be permitted to testify at trial regarding sanctions.  *See Washington*, 105 F. Supp. 3d at 310 (finding that expert with extensive experience in accounting and business valuation lacked the requisite experience to testify about marketing because he never worked in marketing and had only taken some undescribed marketing courses in graduate school).

### III.    ███████████████ Testimony Should Be Excluded

The government alleges that the defendants lied to the U.S. House of Representatives Permanent Select Committee on Intelligence and certain financial institutions about the nature and extent of their business dealings in Iran.   (S-4 Ind. ¶¶ 57-61.)   At trial, the government will introduce evidence showing the defendants provided surveillance technology (including monitoring technology referred to as "lawful interception" or "LI") to the Government of Iran that it used to monitor, identify, and detain protestors during anti-government demonstrations in Tehran in or about 2009.   Such evidence is relevant to establish the falsity of

---

[11]    Even if this is a reference to another matter, the fact of his retention does not establish he is an expert whose qualifications have survived judicial scrutiny.

statements the defendants made to the House Committee and the victim financial institutions. (*See* Gov't Brief in Opp. to the Defs. Mots. *In Limine* at 9-10 (filed Mar. 13, 2026).)

At trial, ███████ intends to opine that LI involves the legally authorized monitoring of communications by government authorities.  (Ex. A-3 ¶¶ 5-7.)  He would also opine that whatever organization owns and controls the LI infrastructure must comply with the laws of each jurisdiction in which they operate.  (*Id.* ¶ 8.)  He would further testify that LI functionalities are built into "virtually every civilian telecommunications system in the world", including in the United States.  (*Id.*)  Finally, he would "explain the Huawei SIG 9800 series".  (*Id.* ¶ 10.)

In its March 13, 2026 letter, the government asked the defendants why they believed ███████ opinion about LI's legality to be the proper subject of expert testimony, how ███████ (who is an engineer, not a lawyer) is qualified to offer legal opinions, and why such testimony was relevant.  (Ex. B-1 at 2.)  The defendants refused to substantively respond to any of the government's questions.  (Ex. C.)[12]

███████ opinions should be excluded for three reasons:

*First*, ███████ opinions about legal questions relating to LI are inappropriate subjects for expert testimony because they are legal conclusions.  *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts.").

---

[12]    The government also inquired about whether ███████ would offer any opinions specifically relevant to LI in Iran.  (Ex. B-1 at 2.)  The defendants did not substantively respond to that question either.  (Ex. C.)

*Second,* ███████ opinions will not assist the jury in understanding the evidence or resolving any facts in issue. Questions about how LI or Huawei's SIG 9800 series works are not probative of whether the defendants lied to Congress and their banking partners about providing LI-related goods and services to Iran. Similarly irrelevant is testimony whether LI is legal under any country's laws, or whether the organizations that own and control LI infrastructure comply with the laws of the jurisdictions in which they operate.

███████ opinions are not only irrelevant, but misleading and an invitation for nullification. For example, if the jury were to conclude that using LI is legal in Iran under Iranian law, then that juror might also wrongly conclude that it does not matter that the defendants lied under U.S. law about selling LI-related goods and services to the Iranian government. Such testimony should therefore be excluded under Rule 403. *See United States v. Stewart*, 433 F.3d 273, 311-12 & n.10 (2d Cir. 2006) (affirming preclusion of expert testimony because "an issue not relevant to the charges under consideration has the potential to confuse the jury"); *United States v. Brooks*, No. 08 Cr. 35 (PKL) 2008 WL 2332371, at *2 (S.D.N.Y. June 4, 2008) (precluding expert testimony where there was a "substantial risk . . . [it] would confuse the jury").

*Third,* ███████ is not qualified to offer expert opinions about legal issues. "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) (citation omitted). ███████ is an engineer, not a lawyer, and is therefore not qualified to serve as a legal expert. *Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-1540 (VAB), 2016 WL 3248178, at *7 (D.

23

Conn. June 12, 2016) (finding that an expert in valuation, finance, and economics was "unqualified to opine on matter of law" because he had "no legal training whatsoever").[13]

### IV.    ███████████ Testimony Should Be Excluded

The defendants intend to call ████████ to testify about how foreign companies assessed and managed the risks of doing business in Iran in the early 2000s through the early 2010s, including by using certain legal strategies designed to minimize their liability while complying with Iranian law.   Among other things, ████████ proposes to opine that:

- "As a result of [certain] circumstances, certain foreign and multinational companies operating in Iran during this time did so under a different name from that of the parent company."

- "Foreign and multinational companies doing business in Iran were subject to Iranian law and Iranian government enforcement actions, which were often applied by Iranian courts in inconsistent or unpredictable ways at the time, in part because corruption within the Iranian regime was common."

- "Because of [certain] features of Iranian law, some foreign companies were reluctant to open a branch office of the parent company in Iran."

- "Many foreign and multinational companies selling goods in Iran chose to do so through third-party registered distributors rather than through a direct presence in Iran."

(Ex. A-4 ¶¶ 3, 4, 5.a.iv, 5.b.)

████████ opinions should be excluded for three reasons:

*First*, ████████ opinions on foreign corporations' states of mind and Iranian law are inadmissible because they are not the proper subject of expert testimony.   ████████ opinions about how and why foreign businesses took certain actions to manage the risks associated with doing business in Iran (Ex. A-4 ¶¶ 1-5), such as using a different name from that of the parent

---

[13]    Notably, the government does not intend to argue that that LI is unlawful under Iranian law.

company (*id.* ¶ 3), are inadmissible under Rule 702. *See, e.g., Rezulin*, 309 F. Supp. 2d at 546 (testimony about corporations' states of mind and motives is inadmissible as expert opinion); *Mirena*, 169 F. Supp. 3d at 486 (same); *Fosamax*, 645 F. Supp. 2d at 192 (same).

*Second,* ▆▆▆▆▆ opinions should be excluded under Rules 401 and 402 because they are not relevant. Testimony concerning how and why other foreign businesses acted when doing business in Iran may be a fact relevant to sentencing, but it is not relevant to the question of whether the defendants' conduct was lawful. *See United States v. Tomasetta*, No. 10-CR-1205 (PAC), 2011 WL 6382562, at *3 (S.D.N.Y. Dec. 12, 2011) (testimony concerning how other companies generally made decisions is not relevant to determining whether the defendants made intentional and material misstatements). Moreover, even if ▆▆▆▆▆ opinion could serve as the basis for an inference that the defendants' business dealings complied with Iranian law (which would constitute impermissible testimony), compliance with Iranian law is irrelevant to the question before the jury, that is, whether the defendants violated U.S. law by violating sanctions or by intentionally deceiving others about those business dealings. *See, e.g., id.* (whether a defendant complied with specific accounting rules is not relevant to the question of whether it materially misrepresented its financial condition more generally). ▆▆▆▆▆ opinions should also be excluded under Rule 403 because they likely will confuse and mislead the jury to believe it must decide whether the defendants violated Iranian law when the only question before them is whether the defendants violated U.S. law. *See Stewart*, 433 F.3d at 311-12 & n.10.

*Third,* ▆▆▆▆▆ is not qualified to offer expert opinions on the topics about which he intends to testify at trial. While a ▆▆▆ lawyer, he does not proffer any facts suggesting he has similar expertise in Iranian law. Tellingly, ▆▆▆▆▆ law firm biography markets him to potential clients as a ▆▆▆ lawyer with experience in U.S. and U.K. law; it does not hold him out

25

as a lawyer competent to provide advice with respect to Iranian law.[14]  (*Id.* at Ex. A.)  It is ██

██████burden to provide the Court with facts demonstrating his expertise in Iranian law and

business.  *See, e.g.*, *JBrick, LLC*, 2023 WL 6372970, at *6 (explaining the witness bears the

burden of showing they are qualified to serve as an expert).  His testimony should be excluded

because he has failed to meet that burden.[15]

**V.      Most of ██████████████ Testimony Should Be Excluded**

At trial, the government will offer evidence showing that from 2001 to 2003, the

defendants conspired together and with ██████████, a ████████ engineer, to steal ██████████

trade secrets relating to ██████████ wireless products.   Specifically, the government will introduce

evidence proving the defendants identified ████████ as a target who had unique knowledge and

access to ██████████ trade secrets, aggressively recruited ████████, and arranged meetings between

██████ and Huawei's CEO.   The government will also introduce evidence proving that, at the

request of Huawei's CEO, ████████ emailed him technical specifications for ██████████ ██████

██████████████████████████ that were clearly marked "██████ Confidential Proprietary."   At

trial, ████████ witnesses will testify that the company took reasonable steps to protect the

company's technical specifications from being disclosed to the company's competitors because

the company believed them to have economic value.

In response, the defendants noticed ██████████████ to testify as an expert.   ██████

██████████ intends to opine that, at the time that Huawei's CEO asked ██████████ to send him

██████████'s technical specifications for ██████████████████████████████████████████ the

---

[14]     While ██████████ claims 65 foreign companies hired him to provide advice about doing business in Iran (Ex. A-4 ¶ 6), he does not provide any information about the scope or nature of these engagements.

[15]     For the same reasons, ██████████ is not qualified to testify about Iranian government enforcement actions, Iranian courts, or Iranian judicial opinions and orders.

information in the technical specifications "was already available from public sources, or would not otherwise be understood to be proprietary." (Ex. A-5 ¶¶ 9-10.) ██████████ will also opine that, while in October 2001 ██████ made the decision to designate the technical specifications as "██████ Confidential Proprietary," ██████ had already disclosed more detailed technical information to the public when, in January 2001, it had filed with the Federal Communications Commission (FCC) an application relating to the ████████████ ██████████████. (*Id.*)

██████████ further intends to opine that, although Huawei's CEO asked ██████ to send him ██████ technical specifications for ██████████████████ ██████, the technical specifications "contain[ed] no detailed information that would be useful to a [Base Transceiver Sub-System] design engineer". (*Id.* ¶ 10.) ██████████ would then compare ████████████████████████ to one of Huawei's Base Transceiver Sub-System products (the Huawei BTS3601C) and a product later developed by Lemko, a company ██████ founded after leaving ██████, and conclude that, because these products were different, the technical specifications ██████ sent to Huawei's CEO did not actually benefit either party. (*Id.* ¶¶ 12-19.)

These opinions should be excluded because ██████████ opinions are irrelevant to any issue of contested fact and are otherwise inadmissible under Rule 702. Further, the Court should strike the opinions absent sufficient expert notice.[16]

---

[16] Although it ultimately depends on the specific opinions ██████████ intends to offer at trial, the government has no categorical objection to his testifying about the technical background of communications technology. (Ex. A-5 ¶¶ 1-5.)

A.    ██████████    Opinion that the Defendants and Their Co-conspirators Did Not Actually Benefit from the Alleged Theft Is Inadmissible

To find each defendant guilty of conspiring to steal trade secrets, the government must prove, among other things, that the defendant acted with the intent to convert the stolen information to the economic benefit of itself or another, knowing or intending that this would injure the owner of the information.  *See 2 Modern Federal Jury Instructions-Criminal P* 49A.01. "The government is not required to prove that the defendant or any other party actually benefitted from the taking of the trade secret, although [the jury] may take into consideration whether someone benefitted or not in determining whether defendant had this intent."  *Id.*; *see also United States v. Hanjuan Jin*, 833 F. Supp. 2d 977, 1016 (N.D. Ill. 2012), *aff'd*, 733 F.3d 718 (7th Cir. 2013) ("The statutory language and the case law interpreting [Section 1832] establish that the key inquiry is the defendant's intent at the time of the offense, not whether there was an actual benefit to a party other than the owner of the trade secret.").   Expert opinion about whether a trade secret actually benefitted a defendant could be relevant in a case where there is a genuine dispute about whether the defendant sought to obtain the information at issue.   Here, however, ██████████ opinion is not relevant because there is no serious question about whether the defendants wanted the information: Huawei's CEO asked ██████ to send him ██████'s technical specifications for ████████████████████████████████████ – and ██████ abided.   To the extent the defendants wish to admit evidence dispute their intent in requesting such information, they may call lay witnesses with first-hand or personal knowledge to testify to relevant facts, not ██ ██████.  *Daifotis*, 2012 WL 2051193, at *2 ("The retained witness, of course, has no personal knowledge of what really occurred and should never be allowed to pretend to divine for the jury the truth of what actually occurred or what the mental state of an actor was.").

28

**B.** **The Defendants Have Withheld Critical Information About ███ ███████ Opinions**

The defendants have also withheld basic information they are required to disclose pursuant to Rule 16 and the Court's October 2, 2025 scheduling order.  For example, the defendants disclosed that ████████ will opine that certain information contained in the technical specifications was publicly available, including in an application █████ filed with the FCC.  However, the defendants have not identified what specific information ████████ will say was publicly available and how and why the disclosure of that specific information undermines █████'s broader claim that the technical specifications were "confidential" and "proprietary." The defendants—and ██████████—offer no facts or data, just top-line conclusions.  This is clearly the most important aspect of ████████ anticipated testimony, yet defendants have opted to keep it a secret.   On March 13, 2026, the government followed up with the defendants to specifically request that they supplement their disclosure for ████████ to provide this information (Ex. B-2), and the defendants refused (Ex. C).  Because this is a plain violation of Rule 16 and this Court's order, ████████ testimony on this topic should be excluded.  *See, e.g., Daskal*, 2023 WL 9424080, at *17; *Baker*, 2016 WL 7176588, at *1; *Ulbricht*, 2015 WL 413318, at *6.

**VI.** **The Court Should Preclude ████████████ from Offering Certain Opinions**

The government anticipates presenting evidence proving that, between 2013 and 2018, Huawei Tech conspired with ████████ of ████████ and others to misappropriate █████ solid state disk ("SSD") technology.  Among other things, the government intends to introduce evidence establishing that Huawei Tech used ████████ to illicitly gain access to █████ prototype SSD board.  The government also intends to introduce evidence, including expert testimony, showing that when the prototype SSD board was in

29

 possession, certain components of the board were intentionally removed and that the removal of those parts gave ▮▮▮▮▮▮▮▮ (and thus the defendants) access to the board's Application-Specific Integrated Circuit ("ASIC").    Such access enabled ▮▮▮▮▮▮▮▮ (and thus the defendants) to conduct detailed analysis of the ASIC's functionality, including providing the ability to reverse engineer the ASIC's design.    When ▮▮▮▮▮▮▮▮ returned the board to ▮▮▮▮ he claimed a student had accidentally dropped and damaged the board.    ▮▮▮▮▮▮▮▮ further claimed he subsequently repaired the board to restore the board's functionality.    The government intends to introduce evidence, including expert testimony, demonstrating that ▮▮▮▮▮▮▮▮ claims are false.

To rebut the government's evidence, the defendants noticed ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ as an expert.    ▮▮▮▮▮▮▮▮ intends to offer the following opinions:

- "[T]he damage to the [] board is consistent with where circuit boards tend to break with repeated insertion and removal."

- "Removal of [the] components [at issue] would not help with reverse engineering of the board."

- "The damage and repair to the … board are consistent with accidental damage and a subsequent repair, particularly when some of the solder pads had been completely lifted off the board, prohibiting the components from being soldered back in place."

- "The repair only restored the board's original functionality.    [He has] seen no evidence of any attempt by anyone to reverse engineer the … board or otherwise misappropriate ▮▮▮▮▮▮ technology."

(Ex. A-6 ¶¶ 20-21.)

After reviewing the defendants' disclosure for ▮▮▮▮▮▮▮▮, the government requested additional information about ▮▮▮▮▮▮▮▮ anticipated testimony, including the specific opinions about which he expects to testify as well as the bases and reasons for his testimony.    (Ex. B-3 at 4.)    For example, the government sought disclosures

explaining the bases and reasons for ███████████████ opinions that (i) the removal of certain components from the board would not help with reverse engineering the board, and (ii) he saw "no evidence of any attempt by anyone to reverse engineer the . . . [board] or otherwise misappropriate ██████ technology." (*Id.*) The government also requested information required by Rule 16 relating to █████████████ qualifications to testify as an expert about reverse engineering integrated circuits. (*Id.*) The defendants declined to provide a substantive response. (Ex. C.)

Although lacking personal knowledge, █████████████ also intends to recount facts about ████████ interaction with the board. █████████████ essentially intends to speak for ████████ by defending ██████████ claim that █████ did not test the performance of the board. (Ex. A-6 ¶¶ 14-19.) ████████████ further intends to opine that nothing in ██████████ reports or testing reveals ██████ proprietary technology or suggests that ████████ obtained information that would assist in reverse engineering the board. (*Id.*) Once again, the government requested supplemental disclosures for █████████████ to include information about the specific opinions he would offer at trial, as well as the bases and reasons for these opinions. (Ex. B-3 at 4.) For example, the government asked the defendants to disclose the bases and reasons for ████████ opinions about ████████ knowledge, intent, and actions, given that █████████████ opinions otherwise appear to be based on speculation and conjecture. (*Id.*) The government also asked the defendants to disclose █████████████ definition of reverse engineering, the types of actions he believes would be helpful—and unhelpful—when reverse engineering a board, and the bases or reasons for his opinion that ████████ did not intend to reverse engineer the board. (*Id.*) The defendants refused. (Ex. C.)

31

While testimony regarding the manner in which ██████████ broke the board and any efforts at reverse engineering ██████ technology could be the proper subject of expert testimony, ██████████████ opinions on this topic should be precluded because he lacks the requisite qualifications and his proffered testimony is insufficiently reliable.   Further, ██████████████ should not be permitted to testify about Professor Mao's state of mind because such expert testimony is improper under Rule 702.[17]

### A. ██████████████ Is Not Qualified to Offer the Expert Opinions the Defendants Intend to Elicit at Trial

██████████████ is an academic and professional expert witness with experience in the areas of memory technology and design.  (Ex. A-6 at Appendix A.)   Based on his CV, however, he lacks experience with soldering and board rework (*i.e.*, the process of modifying, repairing, or restoring a board after it has been assembled).  (*Id.*)   He also lacks experience working with and reverse engineering integrated circuits.  (*Id.*)   Tellingly, ██████ ██████ CV does not identify any experience in reverse engineering.   For these reasons, ██████████████ is unqualified to offer any opinions relating to the damage and repair of the board, or the reverse engineering of the board (including whether ██████████ interaction with the board could yield information useful to reverse engineering ██████ technology). Accordingly, his testimony on these topics should be excluded.  *See, e.g., Calltrol Corp. v. LoxySoft AB*, No. 18-CV-9026 (NSR), 2025 WL 2720984, at *2 (S.D.N.Y. Sept. 24, 2025) ("If the witness lacks sufficient qualifications, the court need not reach the relevance or reliability analysis.").

---

[17]    While the government reserves the right to object to other aspects of ██████ ██████ testimony if the defendants comply with their disclosure obligations under Rule 16(b)(1)(C)(iii), the government does not have a general objection to ██████████████ testifying at trial about the technical background of data storage technologies.  (Ex. A-6 ¶¶ 2-9.)

**B.      The Defendants Failed to Meet Their Burden to Demonstrate Reliability Under *Daubert* and Rule 702**

The defendants cannot meet their burden to establish that ███████████ opinions are reliable.   They limit their disclosure to his top-line conclusions, such as:

- "[T]here is nothing in ████████████ reports or his testing that reveals ████████ proprietary technology or otherwise would assist in reverse engineering ████████ technology."

- "Removal of [the JTAG connector and level shifter] would not help with reverse engineering of the board."

- "[He has] seen no evidence of any attempt by anyone to reverse engineer the ██████ SSD board or otherwise misappropriate ████████ technology."

(Ex. A-6 ¶¶ 19-21.)   The defendants do not disclose the bases and reasons for ████████ ████████ conclusions.   They also do not identify any scientific principles, methodologies, standards, or data that ████████████ applied to arrive at them.   In fact, when asked to disclose even the most basic building block on which ████████████ opinion is based—namely, his definition of the term "reverse engineering"—the defendants refused.   (Exs. B-3 at 4, C.)

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."   Fed. R. Evid. 702 Advisory Comm. Notes.   The defendants—and ████████████—have failed to provide such an explanation.   ████████████ opinions relating to reverse engineering are classic *ipse dixit* and thus inadmissible under Rule 702.   *See Washington*, 105 F. Supp. 3d at 307 ("Expert testimony must rest on 'more than subjective belief or unsupported speculation.'") (quoting *Daubert,* 509 U.S. at 599); *Riegel v. Medtronic, Inc.,* 451 F.3d 104, 127 (2d Cir. 2006) ("An expert opinion requires some explanation as to how the expert came to his conclusion and what

33

methodologies or evidence substantiate that conclusion."); *Ulbricht*, 2015 WL 413318, at *7 ("When an expert witness fails to identify the objective bases for his opinion, the district court cannot perform a proper assessment; a proffered opinion deficient in this manner fails to meet the basic requirements of the Federal Rules of Evidence.") (citing *United States v. Rea,* 958 F.2d 1206, 1216 (2d Cir. 1992)).

███████████████ opinions about the damage and repair to the board are unreliable for all the same reasons.   The defendants' disclosures for ██████████████ do not set forth the specific opinions about which he will testify, the bases and reasons for his opinions, or the scientific standards and methodologies he applied.   They also do not disclose any relevant experience ██████████████ has with soldering or board rework.   While the defendants were granted access to inspect the board, ██████████████ never availed himself of that opportunity.   His opinions relating to the damage and repair of the board thus appear to be based on conjecture, rather than science.   Accordingly, the Court should also exclude his testimony on this topic.   *See, e.g.*, *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010) (an expert witness's "subjective belief or unsupported speculation" should be excluded pursuant to Rule 702) (citing *Daubert*, 509 U.S. at 590); *id.* at 269 ("For this system to work . . . plaintiff's experts must lay bare the information and assumptions on which they relied.   Here, [plaintiff's experts] have not explained their assumptions with the level of specificity necessary to allow the defendants' counsel and the jury to test their conclusions.   For this reason as well, their testimony on causation should be excluded.").



**C.**    ██████████████ **Opinions Relating to** ██████████ **Are Not the Proper Subject of Expert Testimony**

██████████████ opinions about ██████████ interactions with the board and ██████████ state of mind are also inadmissible.   *See, e.g.*, *In re Keurig Green*

34

*Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2025 WL 354671, at *20 (S.D.N.Y. Jan. 30, 2025) (granting motion to exclude an expert's opinions "on the motive or intent of others); *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL 2307179, at *29 (S.D.N.Y. Mar. 1, 2023) (excluding an expert's opinions on a party's "motivations and state of mind"); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 116 (E.D.N.Y. 2019) ("Interpreting admissible evidence without having personal knowledge or experience is improper."); *Daifotis*, 2012 WL 2051193, at *2 (same).   To the extent defendants seek to admit evidence relating to ████████ motive and intent, they may call ████████ as a witness, or seek to admit other relevant and admissible evidence.   They cannot, however, use ████ as a proxy for ████████ . ████████ opinions about ████ and his subjective motivations should therefore be excluded under Rule 702.

## VII.    ████████ Testimony Should Be Excluded

The defendants noticed a second expert witness—████████—to rebut the government's evidence proving the defendants conspired to steal ████ technology.   At trial, ████████ will opine:

- "There is no reason to remove [certain] components [from the board], and such removal would not assist or improve the ability to reverse engineer or access the ASIC."

- "The damage [to the board] is consistent with accidental damage. When the JTAG connector and level shifter came off with force; some of the solder pads were torn from the board."

- "The repair [to the board] is consistent with the type of work performed when solder pads have been torn from the board.   Wires were used to reconnect the device leads to alternative locations on the board because the leads can no longer be soldered to their original pads."

- He has "not seen any evidence of reverse engineering of the SSD board or attempts to access the internal structure or operation of the ASIC. A person trying to do any of these things would not have removed the JTAG connector or level shifter."

35

(Ex. A-7 ¶¶ 4, 6-8.)

The defendants' disclosure is incomplete.  On March 13, 2026, the government wrote the defendants to request they provide additional information required under Rule 16(b)(1)(C)(iii).  (Ex. B-3 at 2-3.)  For example, the government specifically requested to understand how and why ██████ concluded that there was no evidence that anyone attempted to reverse engineer or access the ASIC.  (*Id.*)  The defendants responded and said they would not provide any such information.  (Ex. C.)

As an initial matter, ██████ anticipated testimony should be excluded because it is duplicative of ██████████ anticipated testimony.  *See* Fed. R. Evid. 403 (the Federal Rules require the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of... needlessly presenting cumulative evidence"); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP,* 232 F. Supp. 3d 558, 577 (S.D.N.Y. 2017) (finding two experts' opinions to be "substantially similar enough to be needlessly cumulative").

Separately, ██████ anticipated testimony concerning damage to the board and any efforts at reverse engineering ██████ technology should be precluded because defendants failed to make a threshold showing that ██████ is qualified to testify about these subjects, and defendants also did not meet their burden to establish that his opinions are reliable.

### A.    ██████ Is Not Qualified to Testify About the Damage and Repair of the Board or Reverse Engineering ASICs

The witness bears the burden of showing he is qualified to serve as an expert. *JBrick, LLC*, 2023 WL 6372970, at *6.  ██████ fails to make this "threshold" showing.  *523 IP LLC v. CureMD.com*, 48 F. Supp. 3d 600, 645 (S.D.N.Y. 2014).  While his 30-page CV details his general experience in electronics and software engineering, he does not point to any specific experience with soldering or board rework—which is the relevant experience required to offer

expert opinions about the damage and repair of the board.    *Id.* (striking proposed expert testimony where the witness had "general expertise in the field of the [patent at issue] . . . but he [had] not demonstrated the knowledge, skill, experience, training, or education to qualify as an expert in related fields including software engineering, computer programming, or systems engineering"); *id.* ("[V]ague proclamations of 'technical' expertise are insufficient to establish any 'specialized knowledge,' particularly because they are unsupported by [the proposed expert's] actual qualifications."); *Fernandez,* 670 F. Supp. 2d at 183-84 (excluding opinions about a drilling accident because, among other things, the proposed expert never operated any drilling rigs).

Indeed, the few opinions ███████ expressed about the damage and repair of the board tie directly to soldering.   (*See* Ex. A-7 ¶ 6 ("When the JTAG connector and level shifter came off with force; some of the solder pads were torn from the board."); *id.* ¶ 7 ("The repair [to the board] is consistent with the type of work performed when solder pads have been torn from the board.")   But ███████ lacks any practical experience with soldering.

Separately, ███████ lists dozens of products and technologies he has apparently reverse-engineered.   Conspicuously absent from his list are integrated circuits.   Because ██ ███████ would be doing for the jury in this case something that he has apparently not done before in his professional experience, he should not be permitted to testify as an expert about reverse engineering ASICs.   *See Washington*, 105 F. Supp. 3d at 304-05 (under Rule 702, an expert's testimony must be restricted to issues or subject matter within his or her area of expertise).

**B.    The Defendants Failed to Meet Their Burden to Demonstrate Reliability Under *Daubert* and Rule 702**

███████ opinions largely mirror ███████ opinions and are unreliable for many of the same reasons.   The defendants do not disclose the bases and reasons for ███████ conclusions relating to reverse engineering.   Further, they do not identify any

37

scientific principles, methodologies, standards, or data that ███████ applied to arrive at them. The defendants also fail to explain how ████████ experience led to or otherwise supports the conclusions he reached about how and why the board could not be used to reverse engineer ███████ technology, or about his general proclamation there was no evidence that anyone attempted to reverse engineer or access the ASIC.   *See 523 IP LLC*, 48 F. Supp. 3d at 643 ("[A]n expert basing his opinion solely on his experience must do more than aver conclusorily that his experience led to his opinion: [i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."). Absent this critical information, the defendants fail to meet the most basic requirements of *Daubert* and Rule 702.   *See, e.g., Ulbricht*, 2015 WL 413318, at *7.

███████ opinions relating to the damage and repair to the board are unreliable for all the same reasons.   The defendants' disclosures for ████████ do not reveal the scientific standards and methodologies he applied, or any relevant experience he has with soldering or board rework.   While the physical board is the primary focus of his opinion, ████████ has never seen it firsthand.   The government previously offered the defendants the opportunity to inspect physical exhibits in person; ████████ did not make the visit.   Consequently, ████████ opinions relating to the damage and repair of the board thus appear to be little more than unsupported speculation, which must be excluded under Rule 702.   *See, e.g., 523 IP LLC*, 48 F. Supp. 3d at 643 ("[A] trial judge should exclude expert testimony if it is speculative or conjectural . . . .") (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009)).

38

**VIII.  The Court Should Preclude ████████████ from Offering Certain Opinions**

As relevant to ████████ proposed expert testimony, the government expects to present evidence at trial showing that between 2009 and 2010, FutureWei, at Huawei Tech's direction, stole trade secrets from ████████████ (formerly ████████████████ ("██████"). These trade secrets included the ████████████ concept and/or technology developed by ██████, simulation results that showed the benefits and utility of PUT, and a block diagram schematic showing how ████ would interact with base station hardware.

On September 21, 2009, ██████ and FutureWei entered into a nondisclosure agreement ("NDA"), after which ██████ employees gave a presentation to FutureWei employees, including ████████████. This written presentation contained, among other things, a description of ████████ antenna technology, which FutureWei misappropriated and converted into an antenna technology it called "User Specific Tilt" ("UST"). To that end, on October 30, 2009, FutureWei filed a provisional patent application with the U.S. Patent and Trademark Office ("USPTO") for its UST technology with ██████ listed as the only inventor. In the application, FutureWei incorporated and relied on ██████ intellectual property, including certain written materials provided by ██████ during the September 21, 2009, meeting and the PUT concept. On October 29, 2010, FutureWei filed a nonprovisional patent application with the USPTO, claiming the benefit of its 2009 provisional patent application. On November 18, 2014, the USPTO issued to FutureWei Patent No. US 8,891,647 B2 ("'647 patent"), titled "System and Method for User Specific Antenna Down Tilt in Wireless Cellular Networks," which embodied its UST antenna technology that is characteristic of ████████ concept.

On August 19, 2011, ██████ filed a provisional patent application relating to its ████ technology, which the USPTO issued to ██████ on May 17, 2016, as Patent No. 9,344,176 B2, entitled "Method and Apparatus for Providing Elevation Plane Spatial Beamforming." On

39

February 14, 2014, ███████ filed European Patent Application No. EP12825400.0 that also related to its ███ technology.  In March 2015, the European Patent Office ("EPO") denied ███████ application, citing FutureWei's '647 patent as prior art, which resulted in ███████ discovery of FutureWei's '647 patent and that it incorporated ████████ antenna technology.

As discussed below, there are several opinions that the Court should preclude ████████ from offering.

**A.      ████████      Expert Disclosure Fails to Comply with Rule 16(b)(1)(C)(iii) and the Court's Order**

According to ████████ expert disclosure, he would testify regarding (i) "fundamentals" related to the U.S. Patent and Trademark system, (ii) patent filings and correspondence with the USPTO, (iii) the role of invention disclosures forms, (iv) the publication of patent and trademark applications and material in the file history and the timing of same, and (v) four specific documents ████████ has reviewed, specifically, an investigation disclosure form and the file history for the '647 and '176 patents and for ██████ European Patent Application No. EP12825400.0.  (Ex. A-10 ¶¶ 1, 2, 4, 5.)  This testimony should be excluded because this section of ████████ expert disclosure constitutes nothing more than a list of topics.  It fails to comply with Rule 16(b)(1)(C)(iii) because it does not specify any opinions that ████████ will offer on these matters or the bases and reasons for such opinions.  As with other defense expert disclosures, the government asked the defendants to supplement this disclosure with the information required by Rule 16, but they declined.  (*See* Exs. B-6 and D.) Accordingly, ████████ testimony regarding these topics should be excluded.  *See, e.g., Ulbricht*, 2015 WL 413318, at *6.

40

**B.**         ██████████ **Is Not Qualified to Offer an Expert Opinion About Trademark Examinations**

██████████ also proposes to offer expert testimony regarding trademark filings and correspondence with the USPTO, "including examination by trademark examining attorneys." (*See* Ex. A-10 ¶ 3.)   This testimony should be excluded, however, because ██████████ lacks any substantive experience with trademark examinations.   ██████████ CV shows that he appears to have experience with *patent* examinations through his various roles at the USPTO as a patent examiner, supervisory patent examiner, and ultimately the Commissioner of Patents.   (Ex. A-10, Ex. A.)   And, while ██████████ also held several senior roles within the USPTO and U.S. Department of Commerce, his CV reveals that he has no substantive experience as a *trademark* examiner.   In fact, ██████████ current employer—the intellectual property law firm, Schwegman Lundberg & Woessner, P.A.—does not list ██████████ as someone with experience in the "Trademarks" field (*see* https://www.slwip.com/our-people/?_sort_by_last_name=ascending&_field=trademark) or reference work on trademark examinations in his law firm biography page (*see* https://www.slwip.com/people/drew-hirshfeld/). ██████████, therefore, is not qualified to provide an expert opinion regarding trademark examinations.   Even if he were, the defendants' disclosure also fails to specify any opinion that ██████████ would offer regarding trademarks, let alone the bases and reasons for any such opinion or how it would be relevant to this case, providing another reason to exclude them.

**C.**         ██████████ **Is Not Qualified to Offer an Expert Opinion About**          ██████████ **Communications with the European Patent Office**

██████████ expert disclosure states that he will explain the meaning of certain statements that █████ made to the EPO in connection with the company's European Patent Application No. EP12825400.0.   (*See* Ex. A-10 ¶ 7.)   ██████ had filed a European patent

41

application in February 2014, seeking to patent its ██ antenna technology. In reviewing the application, the EPO found that, among other things, one claim in ████ patent application was not new when compared to the U.S. patent application for FutureWei's '647 patent. In response to the EPO's finding, ████ European patent counsel provided a detailed, written response to the EPO that stated the '647 patent application was not the same as ████ invention and was "novel under Article 54 EPC." ████ proposed expert testimony would "explain" the meaning of ████ statement that its invention was "novel under Article 45 [European Patent Convention]." (*See id.* ¶ 7.) But ████ CV shows that he has no substantive experience with the European patent system and lacks any qualifications that would provide a basis to offer an expert opinion regarding the European Patent Convention, European patent applications, or an applicant's statement to the EPO. Without the relevant experience or qualifications, ████ testimony regarding the European patent system should be excluded because he possesses no "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

### D.       ████ Proposed Testimony Regarding USPTO Examiners Exceeds the Scope of Proper Expert Testimony and Would Be Unfairly Prejudicial

Finally, ████ expert disclosure states that he expects to testify about what USPTO examiners "looked at or knew" and "considered" with respect to FutureWei's application for '647 patent and to ████ application for the '176 patent. (*See* Ex. A-10 ¶¶ 6, 8.) Specifically, regarding the '647 patent, ████ expects he will "explain" that (i) the USPTO examiner reviewing the '647 nonprovisional application "did not need to evaluate whether the claims of the '647 Nonprovisional Application were supported by the '647 Provisional Application," (ii) "there is no evidence in the file history of the '647 Nonprovisional Application that indicates that the USPTO examiner looked at or knew the contents of the '647 Provisional

42

Application," and (iii) "'647 Nonprovisional Application had no relevant to the examination or issuance of the '647 Patent." (*Id.* ¶ 6.) Regarding the '176 patent, ▇▇▇▇▇▇▇ expects to explain that (i) "the USPTO examiner of the '176 Nonprovisional Application considered the references▇▇▇ submitted in its IDS, which listed the '647 Published Application" and (ii) "the U.S. examiner's issuance of the '176 Nonprovisional Application as the '176 Patent means the examiner considered the claimed invention in the '176 Patent to be patentably distinct from the invention described in Huawei's '647 Published Application." (*Id.* ¶ 8.) ▇▇▇▇▇▇ disclosure, however, fails to specify the bases and reasons for these opinions, including his basis for opining on what a USPTO examiner "looked at or knew" or "considered" for a specific patent application, and therefore should be excluded.

But even if ▇▇▇▇▇▇ disclosure on these topics was sufficient, the proposed expert testimony should be excluded for two additional reasons. *First*, it is not the proper subject of expert testimony under Rule 702 since it seeks to provide expert testimony regarding the state of mind of USPTO examiners. *See Mirena*, 169 F. Supp. 3d at 486 ("It is impermissible for experts to opine on the state of mind or motives of corporations or regulatory bodies."). ▇▇▇▇▇▇ prior experience working at the USPTO does not qualify him to opine on what a particular USPTO examiner did or did not consider or evaluate with respect to a particular patent application. *Second*, the testimony should be excluded under Rule 403 because it would be unfairly prejudicial and confuse the issues for the jury as to whether ▇▇▇▇▇▇ was providing expert testimony or factual statements regarding the '647 and '176 patents. For context, ▇▇▇ ▇▇▇▇▇ held senior roles at the USPTO while the '647 and '176 patents applications were examined. In fact, he was the Commissioner of Patents at the time that the '176 patent was issued in May 2016. But even prior to that position, during the time that the '647 patent was issued in

43

November 2014, ████████ was the Deputy Commissioner for Patent Examination Policy where he, among other things, "established patent examination and documentation policy standards for the Commissioner for Patents."[18]   (Ex. A-10, Ex. A at 5.)   Given these positions, ████████ testimony would be unfairly prejudicial and confuse the issues for the jury because it would blend fact and expert testimony based on his work at the USPTO.   While the same witness is not prohibited from providing both fact and expert testimony, courts exercise particular vigilance to ensure that the witness's dual role does not impair the jury's ability to evaluate the witness's credibility.   *See United States v. Feliciano,* 223 F.3d 102, 121 (2d Cir. 2000); *United States v. Cruz,* 363 F.3d 187, 195 (2d Cir. 2004); *see also United States v. Dukagjini,* 326 F.3d 45, 53 (2d Cir. 2003) ("A court must ensure that the reliability of the witness's expert opinion is not improperly enhanced by a jury's assumption that the witness has knowledge of the case that goes beyond the evidence at trial.").   Here, allowing ████████ to provide testimony that infuses his expert opinions with factual information from his contemporaneous work at the USPTO would be unfairly prejudicial and confuse the issue of whether he is merely providing an opinion, or instead informing the jury as to what actually happened, as a matter of fact, during the review of the '647 and '176 patents.   Accordingly, this testimony from ████████ should be excluded.

## IX.    The Court Should Preclude ████████ from Offering Certain Opinions

The relevant underlying facts regarding ████████ expert disclosure are discussed above in connection with ████████ expert disclosures, relating to ████████ antenna technology that was misappropriated by FutureWei and converted into its UST technology.   As

---

[18]    Based on the information provided to the government in ████████ expert disclosure, to date, the government is not aware that ████████ had any direct role in the examination or consideration of the relevant patent applications.   The government reserves the right to seek to disqualify ████████ under the relevant statutes, rules, and regulations to the extent that understanding changes.

discussed below, there are several opinions that the Court should preclude ██████ from offering.

**A.     ██ ████████ Expert Disclosure Fails to Comply with Rule 16(b)(1)(C)(iii) and the Court's Order**

Several aspects of ████████ expert disclosure fail to comply with the disclosure requirements of Rule 16(b)(1)(C)(iii) and should be excluded.   *First*, ████████ disclosure states that based on his "review of the prior art and [his] extensive research experience in wireless systems," he will opine that the concept of ████████ technology "was known to the industry and discussed in the published literature well before 2009."  (Ex. A-11 ¶ 2; *see also id*. ¶ 10 (stating the information ██████ provided in September 2009 "were mostly generic, high-level material, or already known from prior art at the time."))   This disclosure, however, does not identify the "prior art" or "published literature" that ████████ contends made the ██ technology known before 2009, nor does it explain the basis for his opinion that the technology was "known to the industry."

*Second*, ████████ expert disclosure states that, based on his "review of the case materials," he will opine that "████████ version of ████" was "merely a concept, not a realization that could be practically applied.  (*Id.* ¶ 3.)  ████████ disclosure however fails to identify the "case materials" that form the basis of his opinion or to explain the bases and reasons for his opinion that ████████ is "merely a concept, not a realization."

*Third*, ████████ disclosure states that UST was integrated into a Huawei product, the AAU 3902 antenna, and he asserts that "based on my foregoing opinions and review of AAU 3902 documents, neither UST nor the AAU 3902 antenna incorporates or relies upon ████████ ████."  (Ex. A-11 ¶ 11.)  ████████ does not identify the "AAU 3902 documents," nor explain

the bases and reasons for his opinion that the AAU 3902 antenna does not incorporate or rely on

██ .

As with other disclosures, the government requested that the defendants supplement this disclosure with the information required by Rule 16, but they declined.  ██ ██████ summary disclosure fails to comply with Rule 16(b)(1)(C)(iii) and accordingly should be excluded.  *See, e.g., Ulbricht*, 2015 WL 413318, at *6.

**B.**       **██████          Should Be Precluded From Offering an Expert Opinion About ██████ s Patent Process**

██████ expert disclosure states he expects to testify that, "given ██████ claimed experience with the patent process and possession of 140 patents, there is no logical reason for ██ to wait for such a long time to file for a provisional [patent] application if by late 2009 ██ had ██ in a realizable form."  (Ex. A-11 ¶ 7.)  This testimony should be excluded because ██████ lacks the qualifications to offer such an opinion as his experience is in the electrical engineering field, not the "patent process."  While ██████ may hold a number of patents, that is not a basis for him to opine on ██████ actions with respect to the patent process, including whether a "logical reason" exists for its actions.  ██████ expert testimony on this topic, therefore, should be precluded.

**C.**       **The Court Should Exclude ██████ Purported Expert Opinions Regarding ██**

██████ expert disclosure also includes proposed expert testimony regarding ██ that should be excluded because it is merely a vehicle to present defendants' narrative to the jury without subjecting ██ to cross-examination.  *See Highland*, 379 F. Supp. 2d at 468-69 ("While an expert must of course rely on facts or data in formulating an expert opinion, an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence"); *Rezulin*, 309 F. Supp. 2d at 551 (precluding expert testimony that

46

consisted of a "narrative of the case which a juror is equally capable of constructing") (quotation omitted); *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00-CV-7242 (SAS), 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) ("[T]estimony by fact witnesses familiar with [the relevant] documents would be far more appropriate . . . and renders the expert witness' secondhand knowledge unnecessary for the edification of the jury.") (internal quotation and brackets omitted).

If the defendants want to offer testimony regarding what information "helped' ██████ in his development of the UST technology, when he conceived certain ideas, or what may have been used or beneficial to him, they should call █████ as a witness. (*See* Ex. A-11 ¶¶ 4, 6, 9, 10.) ████████ lacks personal knowledge regarding these topics and cannot be stand-in for ██ ██ under the guise of "expert testimony." *See Keurig Green Mountain*, 2025 WL 354671, at *20; *Accent Delight Int'l Ltd.*, 2023 WL 2307179, at *29; *Jensen*, 372 F. Supp. 3d at 116; *Daifotis*, 2012 WL 2051193, at *2. The defendants also should not be permitted to use ████████ to offer testimony regarding how the jury should understand ████████ actions. *See LinkCo*, 2002 WL 1585551, at *2 (finding that the expert's "report does no more than counsel for plaintiff will do in argument, *i.e.*, propound a particular interpretation of defendant's conduct" and concluding that [t]his is not justification for the admission of expert testimony") (internal quotation and brackets omitted).

**D.     ████████ Should Be Precluded from Offering an Expert Opinion About ████████ Use of NDAs**

████████ expert disclosure states he expects to "explain that █████ discussed its ███ and its simulation results, and shared related slides and material, with many companies without a signed NDA in place at the time of disclosure," and identifies a list of companies. (Ex. A-11 ¶ 8.) The disclosure also states that the materials █████ shared with these companies is "quite similar (sometimes identical) to the material █████ shared with Futurewei in September

47

2009 material," but that ▮▮▮▮ "shared more details" with certain companies than it did with FutureWei. (*Id.*) ▮▮▮▮▮, however, lacks any qualifications to testify regarding the use and scope of NDAs by ▮▮▮▮▮ Nor is it appropriate for ▮▮▮▮▮ to simply provide a factual narrative about actions taken by ▮▮▮▮. *See Highland*, 379 F. Supp. 2d at 469. The jury does not need ▮▮▮▮▮ testimony to construct a factual narrative regarding ▮▮▮▮ use of NDAs, and therefore his proposed expert testimony on this topic should be excluded.

## X. The Court Should Preclude ▮▮▮▮▮ Proposed Testimony in Its Entirety

The defendants propose for ▮▮▮▮▮ to testify about the ▮▮▮▮ "▮▮▮" robot testing device, limitations with ▮▮▮ problems that arose during the testing of Huawei phones on ▮▮▮, and Huawei's development and functionality of a similar phone-testing robot, known as the xDeviceRobot. Once again, this represents an improper effort to backdoor in narrative facts about which the expert has no personal knowledge. And, at any rate, the defendants again have not disclosed the bases and reason for this expert's opinions.

### A. ▮▮ ▮▮▮ Expert Disclosure Fails to Comply with Rule 16(b)(1)(C)(iii) and the Court's Order

As an initial matter, ▮▮▮▮ disclosure largely lists topics and conclusory opinions about which he will testify, without describing how he reached those opinions or the bases or reasons for them. (Ex. A-8.) For example:

- ▮▮▮▮ expects to testify that "Huawei's extensive, structured research, development, and testing approach was used to support the development of its mobile devices," but does not disclose what the "research," "development" or "testing approach" are, or what facts this testimony is based on.

- He expects to testify about "how Huawei's testing confirmed that its capacitive touchscreens were acceptable to users, even though they experienced difficulty passing ▮▮▮ testing," but he fails to identify any of the details of Huawei's testing or the bases or reasons for this opinion.

- His testimony will "explain why the ▮▮▮ tip was not suitable for testing

48

capacitive touchscreens," but does not disclose how he reached this conclusion, or the facts or data that produced it.

- He states he will "explain how ███████ attempted to compensate for this by using excessive forces that were not suitable for testing capacitive touchscreens," but he again fails to explain what method he used to reach this conclusion, or the facts or data that support it.

- He states he will "opine that ██████ was not suitable for testing capacitive touchscreens and caused missed touches," but discloses neither the methodology he used to reach this conclusion nor the facts or data he relied on.

- He expects to describe "automated testing during the period from 2006 to 2014, including ██████, xDeviceRobot, Synaptics robots, commercial systems, and a testing system described in Huawei's 2006 patent application," but fails to disclose what he will say about these topics, what commercial systems he's referring to, or what testing system is described in the patent application.

- He states he will "opine that xDeviceRobot is more similar to Huawei's own prior robots and commercially available systems than it is to ██████," but does not identify "Huawei's own prior robots" or the "commercially available systems," does not explain how he reached this conclusion, and does not disclose what information he relied on.

- Finally, he states that he will "offer [his] opinion that xDeviceRobot is fundamentally different from ██████ and does not include any ████████ confidential or proprietary information," but does not describe his method for reaching this conclusion or the facts or data that led to it.

(Ex. A-8.)   The government sought to obtain this information from the defense (Ex. B-4), but they declined to provide it (Ex. C).   As such, the Court is unable to perform its gatekeeping role, and the government is unable to determine whether or how to rebut the proposed testimony.   Because ████████ disclosure violates Rule 16(b)(1)(C)(iii) and the Court's order and the defendants have refused to cure these deficiencies, ████████' testimony should be precluded.

      **B.**      **████████ Testimony Regarding Facts About Which He Has No Firsthand Knowledge Should Be Precluded**

████████ proposed testimony suffers from the additional problem that it seeks to present a factual narrative without firsthand knowledge.   The defendants seek to have ██

███ to describe "Huawei's extensive, structured research, development, and testing approach" for mobile devices, but ████ has no firsthand knowledge of this topic. (Ex. A-8.) He has never been employed by Huawei, let alone worked on Huawei's mobile device development. And he does not state that he conducted any independent review of Huawei's research, development, or testing. In the absence of such firsthand knowledge, his testimony amounts to pure speculation.

████ similarly plans to testify that ████ purportedly "agreed to allow Huawei to use a more sensitive firmware for Huawei phones to pass ██ testing, while reverting to the prior version of firmware, which was less sensitive, for phones sold to customers." (Ex. A-8.) Again, he has no personal knowledge on this topic. He was not involved ████ testing of Huawei phones, or in the sales of Huawei phones by ████ to customers. He also plans to describe "automated testing during the period from 2006 to 2014, including ███, xDeviceRobot, Synaptics robots, commercial systems, and a testing system described in Huawei's 2006 patent application." (*Id.*) But once again he has no personal knowledge of these topics. Indeed, he does not state that he has worked with or examined *any* of these devices.

The defendants' efforts to present a "factual narrative" about which ████ has no firsthand knowledge should be rejected, and his testimony should be precluded. *Highland*, 379 F. Supp. 2d at 468-69; *see also Rezulin*, 309 F. Supp. 2d at 551; *LinkCo*, 2002 WL 1585551, at *2.

## XI.    The Court Should Preclude ████ Proposed Testimony in its Entirety

The Court should next preclude the proposed testimony of ████. By way of background, ████ was noticed as a rebuttal expert witness for Huawei in the prior civil litigation between Huawei and ████. In that case, ████ produced two lengthy rebuttal expert reports, which recounted factual narratives based largely on deposition testimony

50

and documents produced in civil discovery and responded to the opinions of two experts retained by ███████.     Each rebuttal expert report was tailored to the facts, issues, and state law claims in that case.     Despite the instant criminal trial involving different statutes with different elements—and despite the government noticing neither of ██████ prior experts as experts here—█ ██████ disclosure merely attaches and incorporates his reports from the civil case.     (Ex. A-9.) While there is nothing inherently improper with incorporating another expert report by reference, here ██████ proposed testimony would not be relevant to the issues *in this case*, let alone be a proper subject of expert testimony.

A.     ██████ **Testimony Would Be Irrelevant.**

At the outset, Mr. ██████ testimony should be precluded as irrelevant.     His disclosure—based entirely on rebuttal reports from the civil case—contemplates testimony on numerous topics that have nothing to do with this trial.     (Ex. A-9.)     For example, his July 7, 2016 report begins with a discussion of the definition of "trade secret" and the elements of trade secret theft under the Washington Uniform Trade Secret Act.     (July 7, 2016 Report at 6-9.)     Even if such legal testimony were proper (it is not), it would be irrelevant in this federal criminal case.

Similarly, in the "Summary of Opinions" section, the report states that ██████ has "evaluated the alleged trade secrets and confidential information set forth by ██████ in the report of Mr. Davies and the related opinions of Mr. Davies and Dr. Sullivan."     Neither Mr. Davies nor Dr. Sullivan have been noticed as expert witnesses in this case.     While the government may call Mr. Davies as a lay witness, it does not plan to call either Mr. Davies or Dr. Sullivan as experts, nor does it currently plan to call any other expert who would offer similar testimony.

This is not merely a formality.     ██████ reports contain entire sections offering opinions that merely rebut the testimony of Mr. Davies and Dr. Sullivan, who, again, are not offering any expert opinions in this case.     (*See id.* at 108-113 (section titled "Mr. Davies Has Not

51

Clearly Identified Any Trade Secret"); *id.* at 113-162 (section titled "The Alleged Similarities Described By Mr. Davies Are Not Trade Secrets"); October 5, 2016 Report at 10-18 (section titled "Responses To Mr. Davies' Discovery Allegations"); *id.* at 18-34 (section titled "Responses To Mr. Davies' New Alleged Trade Secrets And New Opinions Regarding XDeviceRobot"); *id.* at 39-42 (section titled "Responses To Mr. Davies' Allegations Regarding The Optofidelity And Putian Robots Purchased By Huawei")).

In addition to responding to strawmen experts, the report addresses numerous topics that simply are not at issue.   For example, the July 7, 2016 Report includes a lengthy discussion of alleged flaws in ███████ damages theory.   (July 7, 2016 Report at 167-181.)   In this criminal trial, however, there is no requirement for the government to prove damages.   Indeed, the defendants could be found guilty of conspiring to steal trade secrets without evidence that their scheme was successful.   (*See* Order Denying Motion to Dismiss, ECF No. 547 at 32 ("[T]he government was not required to prove, for purposes of the conspiracy count, that the stolen materials were actually trade secrets.") (quoting *United States v. Zheng*, 113 F.4th 280, 298 (2d Cir. 2024)).)   As another example, the October 5, 2016 Report includes an entire section addressing alleged civil discovery violations.   (October 5, 2016 Report at 10-18.)   Again, such testimony has no place in at this trial and should be precluded.

**B.       ███████  Testimony Is Improper**

███████ testimony should also be precluded because it is largely a vehicle to present a factual narrative of the evidence.   Throughout his two reports, ███████ cites repeatedly to deposition testimony, witness declarations, and records produced in civil discovery. Although he physically examined both ████ and Huawei's XDeviceRobot, (*see* July 7, 2016 Report at 5-6), he describes many topics on which he has no personal knowledge.   These include, for example, facts about how ████ designed and built ████; ███████ purportedly disclosing

52

its lab to the press and public in 2012; and the timing of when ██████ began allowing original equipment manufacturers to use its testing lab. (*Id.* at 12-16.) None of this is based on his personal knowledge. He similarly describes the history of Huawei's development of the XDeviceRobot—again simply acting as a mouthpiece for the defendant's preferred factual narrative. (*Id.* at 58-68.) For this reason as well, ██████ testimony should be precluded.

**XII.    The Court Should Exclude ██████████████████ Proposed Testimony in Its Entirety**

As relevant to ██████████████ proposed expert testimony, the government expects to introduce evidence at trial that the operating system software for Huawei's Quidway routers, called the Versatile Routing Platform ("VRP"), demonstrated copying from ████████████████████ router operating system, called the ████████████████ ██████ Specifically, as outlined in its expert disclosure for ██████ *see* Ex. F, the government intends to present expert testimony concerning a comparison of the object code from Huawei's VRP version 1.5.6, build 1023d, with the object code from ██████ version ██████ (Ex. F at Ex. A ¶¶ 10-18.) The government expects to introduce evidence and testimony demonstrating many identical and/or substantially similar text strings in identical sequence between the two sets of code related to ██████████████████ a ██████ proprietary routing protocol. (*Id.*)

The government also expects to introduce expert testimony involving comparison of ██████ text strings in ██████ source code with text strings found in the Huawei VRP object code, likewise, demonstrating numerous identical and/or substantially similar text strings in identical sequence between the two sets of code. (Ex. F at Ex. A ¶¶ 19-30.) Additionally, the government expects to introduce evidence demonstrating that Huawei's VRP object code included ██████ related source code file names that were identical to ██████ source code file names.

(*Id.* ¶¶ 31-36.)   Finally, the government expects to introduce evidence demonstrating that a Huawei router running Huawei's VRP operating system had the same unique bug found in a ▮▮▮ router running ▮▮▮▮▮ operating system.   (*Id.* ¶¶ 37-45.)   Based on the above comparisons, the government anticipates that ▮▮▮▮ will opine that Huawei copied at least ▮▮▮▮▮ source code to generate its VRP operating system.   (*Id.* ¶ 56.)

Relatedly, as outlined in its expert disclosure for ▮▮▮▮▮ (*see* Ex. E), the government intends to present testimony explaining how coders write source code before compiling it into machine-readable object code.   The government anticipates that ▮▮▮▮▮ will testify concerning a comparison of Huawei's VRP to ▮▮▮▮▮ source codes, concluding from that comparison that Huawei's VRP copied ▮▮▮▮▮ version ▮▮▮▮.   (*Id.* ¶¶ 5-13.) Additionally, the government anticipates that Mr. Pittelli will testify concerning comments found in VRP version 1.3 contained references to "ocsic", which is an anagram of "▮▮▮▮."   (*Id.* ¶¶ 6-10.)   ▮▮▮▮▮ will opine that, as found in Huawei's VRP code, these "ocsic" comments signified that Huawei coders were trying to keep their code compatible with ▮▮▮▮ code.   (*Id.* ¶ 8.)   Finally, the government expects that ▮▮▮▮▮ will testify concerning a comparison of Huawei's ▮▮▮▮ source code with ▮▮▮▮ source code, concluding that approximately 95% of Huawei's ▮▮▮▮ source code identical to ▮▮▮▮ code in ▮▮▮▮▮ version ▮▮▮▮, including unique comments written by a former ▮▮▮▮ programmer.   (*Id.* ¶¶ 11-12.)   The government anticipates that ▮▮▮▮▮ will opine that, based on the above analyses, including unique comments written by a former ▮▮▮▮ programmer, Huawei copied portions of ▮▮▮▮▮ version ▮▮▮▮ source code and had a copy of the entirety of ▮▮▮▮▮ version ▮▮▮▮ source code. (*Id.*)   Finally, based on his experience and examination of the ▮▮▮▮ and Huawei source codes as well as his examination of entries from the ▮▮▮▮ revision control system, the government expects

█████████ to testify concerning the period in which Huawei obtained a copy of the █████████

version █████ source tree.   (*Id.* ¶ 13.)

To rebut the government's evidence, the defendants noticed █████████████ as

an expert.   As explained below, however, the Court should exclude █████████████ proposed

testimony in its entirety, as it insufficiently supported, irrelevant, and unduly prejudicial under

Rules 401, 402, 403, and 702.

> **A.    The Court Should Exclude █████████████ Proposed Testimony That ██████ Disclosed Substantive Details About Its █████**

█████████████████ disclosure states that █████ disclosed "substantive details"

about its █████ "in publications, patents, and in █████-published books."   (Ex. A-12 ¶ 11.)   But

his disclosure provides no supporting bases for this bare assertion.   In particular, it does not

specify the publications and patents to which █████████████ refers.   In its letter requesting

additional information concerning █████████████ proposed testimony, the government

asked the defendants to specify which details concerning █████████ that █████████████

asserts that █████ disclosed, in which publications, patents, and books that █████ disclosed these

details, and the basis for asserting that █████ publicly disclosed such information.   (*See* Ex. B-7.)

The defendants refused to provide any additional details.   (*See* Ex. D.)   Rule 16(b)(1)(C)(iii)

requires a defense expert disclosure to provide all an expert witness's proposed opinion testimony,

as well as the "bases and reasons" for the expert's opinions.   *See* Fed. R. Crim. P. 16(b)(1)(C)(iii).

Because █████████████ disclosure provides no bases or reasons whatsoever concerning his

assertion that █████ publicized "substantive details" about its █████, the Court should exclude

█████████████ proposed testimony on this topic.   *See Ulbricht*, 2015 WL 413318, at *6.

**B.      The Court Should Exclude ██████████████ Opinion That ██████ Was Not Essential for Router Operations**

Additionally, ████████████ disclosure asserts that, "[a]lthough █████ would facilitate routing interoperability between ████ and Huawei routers for ██████, it was not an essential protocol for router operations or interoperability generally." (Ex. A-12 ¶ 13.) This opinion is vague and irrelevant.

The disclosure provides no explanation concerning what █████████████ means by whether something is "essential for router operations." Nor does it provide any bases or reasons to aid the Court or the government in evaluating the opinion. The government asked the defendants to specify the bases and reasons for this opinion (*see* Ex. B-7), and the defendants refused to provide any additional details (*see* Ex. D). Accordingly, because ██████████████ disclosure fails to provide the basic information required by Rule 16(b)(1)(C)(iii), the Court should exclude █████████████ proposed testimony on this topic. *See Ulbricht*, 2015 WL 413318, at *6.

Moreover, even if █████████████ disclosure provided minimally sufficient bases and reasons for this opinion—which it does not—whether ██████ was essential for router operations does not bear on the elements of conspiring to steal trade secrets. It does not tend to prove, for example, that the defendants did or did not misappropriate source or object code from ████████ routers. The Court should therefore exclude █████████████ opinion on this topic. *Tomasetta*, 2011 WL 6382562, at *2 ("Since [the proposed expert's] testimony is not relevant to any element of the charged offense, it would confuse the jury and waste time."). And to the extent such testimony would have any marginal relevance, any probative value would be outweighed by a significant danger of wasting time in an already lengthy trial, undue prejudice, confusion, and misleading the jury under Rule 403.

**C.      The Court Should Exclude ██████████████ Opinion that There is Not Much Room for Creative Expression in CLI**

The Court should also exclude as irrelevant ██████████████ proposed testimony concerning Command Line Interface ("CLI").   His expert disclosure explains that he will:   (i) provide background on CLI and its use by a variety of companies around the year 2000; (ii) explain that using similar commands and syntax promotes interoperability of routers from different manufacturers; (iii) opine that "[t]here is not much room for creative expression in CLI" because "there are a limited number of terms that can be used to express routing concepts"; and (iv) explain that he "understand[s] that when Huawei removed ██████ from its routers, Huawei also changed its CLI."   (*See* Ex. A-12 ¶¶ 5, 14-15.)   The defendants declined the government's request that they explain the relevance of this testimony, provide more details concerning ██████ ██████ proposed opinion, and provide the basis for ██████████████ understanding that Huawei changed its CLI when it removed ██████ from its routers.   (*See* Exs. B-7, D.)

██████████████ opinion that there "is not much room for creative expression in CLI" does not refute the elements of conspiring to steal trade secrets.   His opinion does not assert, for example, that Huawei did not copy ██████ CLI.   Accordingly, any minimal probative value would be outweighed by a significant danger of undue prejudice and misleading the jury under Rule 403.   ██████████████ statement that he understands that Huawei changed its CLI when it removed ██████ from its routers only exacerbates this concern.   *First*, his disclosure fails to explain where his "understanding" comes from, in violation of Rule 16(b)(1)(C)(iii).   *Second*, this "understanding" similarly does not contradict the charge of conspiring to steal trade secrets. It does not assert that Huawei did not copy ██████ CLI—it merely states that Huawei at some juncture changed its CLI.   But it does not specify when or why.   This proposed testimony offers no probative value, and it is likely to confuse or mislead the jury.   Accordingly, Professor

57

████████ proposed testimony concerning CLI is irrelevant under Rules 401, 402, and 702.   Any marginal relevance would be outweighed by a significant danger of prolonging the trial, promoting confusion and misleading the jury under Rule 403.

      **D.**      **The Court Should Exclude ██████████████ Proposed Testimony Concerning Any Disk Huawei Claims It Received, His Allegation that ████████ Was Leaked, and His Opinion that ███ Code Found in Huawei Code Came from Such Sources**

████████████████ disclosure states that he "understand[s] that in June 1999, Huawei received a disk" that included certain █████ source code files and related files; that by August 2000, VRP version 1.3 included an implementation of █████; and that by March 2003, █████ had been removed from VRP."   (Ex. A-12 ¶ 12.)   His disclosure then states his opinion that "the string.h and the corresponding ANSI string library files listed in string.h were on the same disk that contained the █████ files."   (*Id.* ¶ 16.)   His disclosure states that he bases this opinion "on a review of leaked ███code, the fact that string.h and the corresponding ANSI string library files were needed to comply and run █████; and evidence from the previous litigation that the disk contained █████ files and other files characterized as Linux open source code."   He also opines that "the string library files were inadvertently left in the VRP code when██████ was removed."   (*Id.*)

The government asked for the "leaked ███ code" that he reviewed, including the version of the code, and the circumstances of the purported leak, including the timing of the purported leak, to whom or where the code was purportedly leaked, how the code was purportedly leaked, and how ████████████ obtained the code he reviewed.   (*See* Ex. B-7.)   The government also asked the defendants to specify the "evidence from the previous litigation that the disk contained █████ files and other files characterized as Linux open source code" (*id.*)   and to identify the specific files ████████████ contends were "characterized as Linux open source

58

code," as well as whether he expects to opine that those files were publicly available, and if so, his opinion as to where they were available and when they became available (*id.*); to provide the bases and reasons for █████████ opinions that "the string.h and the corresponding ANSI string library files listed in string.h were on the same disk that contained the █████ files" and that "the string library files were inadvertently left in the VRP code when █████ was removed" (*id.*); and to specify whether █████████ expects to opine that the referenced string.h and the corresponding ANSI string library files were publicly available, and if so, his opinion as to where they were available and when they became available (*id.*).   The defendants refused to provide any additional details.   (*See* Ex. D.)

This proposed testimony fails to provide the proper bases under Rule 16(b)(1)(C)(iii).   As an initial matter, █████████ disclosure does not explain what he means by "string.h."   However, presuming that "string.h" refers to identical █████ code found in Huawei's code, █████████ opinion appears to be that the common code came from a mysterious disk that contained █████████ source code and/or from code available from public library files.   █████████ disclosure provides no explanation concerning the provenance of the mysterious disk.   To the extent the defendants intend to argue that they obtained █████ source code through some purported disk they received in June 1999, a witness with personal knowledge would have to testify to that fact, not an expert who merely "understands" that it happened.   Nor does █████████ disclosure assert that he examined the contents of any such disk.   Similarly, █████████ disclosure fails to explain what "leaked █████ code" he reviewed.   Indeed, the government is unaware of any leak of █████ source code that pre-dated Huawei's misappropriation of █████ code alleged in the indictment.   The complete failure of

██████████████ disclosure to comply with Rule 16(b)(1)(C)(iii) compels exclusion of his proposed testimony.  *See, e.g., Ulbricht*, 2015 WL 413318, at *6.

> **E.      The Court Should Exclude** ████████████████ **Opinion that the Government's Disclosures for Its Expert Witnesses Do Not Establish that Huawei Had Access to** ██████████ **Source Code Beyond What Was Needed to Compile and Run** ██████

Finally, ████████████████ disclosure states his opinion that the government's expert disclosures for ██████████ and ██████████ do not "establish that Huawei had access to ████ source code beyond what was needed to compile and run ██████."  (Ex. A-12 ¶ 18.)   The government asked the defendants to specify his criticisms of ██████████ and ██████████ proposed expert opinions and why ████████████ believes that neither establishes that Huawei had access to ████ source code beyond what was needed to compile and run ██████.  (*See* Ex. B-7.)   The defendants refused to provide any additional details.  (*See* Ex. D.)

████████████████ disclosure again fails to provide any bases or reasons for his opinion.  For example, it does not explain which portions of ██████████ and ██████████ opinions with which ████████████ disagrees, or why.  The government's expert disclosures for ██████████ and ██████████ provided many pages of detailed bases and reasons supporting their opinions (*see* Exs. E, F), whereas ████████████████ most important opinion is a conclusory single sentence (Ex. A-12.).  As such, ████████████████ disclosure is insufficient to meet the requirements of Rule 16(b)(1)(C)(iii), and the Court should exclude his opinion on this basis.  *See, e.g., Ulbricht*, 2015 WL 413318, at *6.

Moreover, this opinion fails to negate any of the elements of conspiring to steal trade secrets.  It does not even contest the indictment's allegation—and the government's substantial evidence—that Huawei misappropriated ██████████ source code.  Indeed, ██████████ ████████████ opinion would be entirely consistent with Huawei stealing ████████████████ source

60

code.   Accordingly, this proposed testimony is irrelevant under Rules 401, 402, and 702.   Any marginal relevance would be outweighed by a significant danger of undue delay, confusion and misleading the jury under Rule 403.

> **F.** **Because the Court Should Exclude All of ▉▉▉▉▉▉▉▉ Proposed Opinions, the Court Should Exclude the Proposed Background Testimony**

Apart from ▉▉▉▉▉▉▉ proposed testimony discussed above—which the Court should exclude for the reasons explained—his disclosure proposes testimony:   (i) providing background on how routers function, the Internet Engineering Task Force ("IETF"), source code used for open-standard routing protocols, CLI, and library functions; (ii) providing explanation of the design and functionality of Huawei's VRP and ▉▉▉▉▉ and (iii) explaining HSRP, including that it was published by the IETF as RFC 2281 and was described in U.S. Patent No. 5,473,599.   (*See* Ex. A-12 ¶¶ 2-10, 17.)   With respect to ▉▉▉▉▉▉▉▉ proposed testimony concerning HSRP, the government asked the defendants to specify the relevance of this testimony, any opinion concerning HSRP that ▉▉▉▉▉▉ proposes to offer, and the bases and reasons for any such opinion.   (*See* Ex. B-7.)   The defendants refused to provide any additional details.   (*See* Ex. D.)

Because the Court should exclude all of ▉▉▉▉▉▉ opinions and other proposed testimony, the Court should likewise exclude this proposed background testimony. *Kaufman*, 2021 WL 4084523, at *19; *Weiner*, 2024 WL 82729, at *5.

## REQUEST FOR SEALING

The government respectfully requests leave to file this brief and the exhibits under seal, with a redacted version of the brief filed on the public docket.   The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal.   *See, e.g., United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district

courts avoid sealing judicial documents in their entirety unless necessary"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored"). However, sealing is warranted in order to protect the privacy interests of third parties. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). Under the circumstances, the interest in safeguarding the privacy of these individuals outweighs the public's qualified right to access such information. Because the facts set forth herein provide a sufficient basis for the "specific, on the record findings" necessary to support sealing, *Lugosch*, 435 F.3d at 120, the government respectfully requests that the Court permit the government to file this brief under seal.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court grant the government's motion.

Dated:      Brooklyn, New York
            May 18, 2026


                                    JOSEPH NOCELLA, JR.
                                    United States Attorney
                                    Eastern District of New York

                            By:     /s/
                                    Alexander A. Solomon
                                    Meredith A. Arfa
                                    Robert M. Pollack
                                    Matthew Skurnik
                                    Matthew F. Sullivan
                                    Assistant United States Attorneys
                                    (718) 254-7000

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and
Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan Cohen
Jasmin Salehi Fashami
Trial Attorneys

CHRISTIAN NAUVEL
Acting Chief, Counterintelligence and Export
Control Section,
National Security Division,
U.S. Department of Justice

Christopher Fenton
Trial Attorney

63