SIDLEY JENNER&BLOCK LLP Steptoe

August 14, 2026

**Via ECF**

The Honorable Joseph A. Marutollo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**REDACTED VERSION**

**Re: *United States v. Huawei Technologies Co., Ltd. et al.*, No. 18-cr-457 (S-4) <u>(AMD) (JAM); Opposition to the Government's Motion to Quash (ECF No. 773)</u>**

Dear Judge Marutollo:

Defendants Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc. (collectively, "Huawei") respectfully submit this opposition to the government's motion to quash the trial subpoenas that Huawei served on three non-party banks (the "Bank Subpoenas") and for related disclosures. ECF No. 773.

The government seeks to prevent Huawei from obtaining targeted, relevant, and admissible evidence that tends to contradict a central premise of the government's fraud case. The government alleges that Huawei made materially false statements in order to receive the benefit of several banks' dollar-clearing services. The subpoenaed records will show that even after those banks were undisputedly on notice of Huawei's alleged misrepresentations, they continued to provide the same dollar-clearing services to Huawei. In other words, although the government must prove that any misstatement by Huawei was material to obtaining dollar-clearing services, the subpoenaed evidence will tend to show that it was not. Huawei is legally entitled to obtain and present evidence in its defense that tends to rebut the government's allegations.

The government moves to quash primarily on grounds that Huawei's requests are insufficiently specific and do not seek admissible evidence. The government is wrong on both counts. On specificity: there is no need to speculate about whether the Bank Subpoenas are sufficiently tailored. [redacted] has already produced responsive materials and [redacted] represented that it intends to do so. [redacted] advised Huawei that the government would move to quash but has never complained about the specificity (or any other aspect) of its Bank Subpoena. The government alone asserts that the requests are overbroad, and mischaracterizes the scope of the Bank Subpoenas when it does so.[1]

[1] In addition to [redacted] Defendants served a fourth, materially identical trial subpoena on [redacted] has communicated its intention to produce responsive documents and has not objected to the subpoena's scope or the burden of production.

And on admissibility: the government is wrong that the subpoenaed documents do not bear on materiality. At the outset, the government's motion to quash is not the appropriate vehicle to litigate the details of admissibility, which is a determination that must be made in the context of the trial and the government's evidence. Indeed, just two days ago Judge Donnelly rejected the government's request that the Court make a pretrial ruling on the same question, that is, whether to "[p]reclude evidence, argument, or questioning regarding banking transactions post-dating the charged fraud." Huawei respectfully submits that this Court ought not exclude evidence at this stage when the District Court has already ruled that it will decide the issue at trial.

In any event, at this stage, Huawei need make at most a prima facie showing of admissibility under *United States v. Nixon*, 418 U.S. 683, 700 (1974), which it can easily do. As the government correctly acknowledges, an assessment of materiality requires an objective inquiry. The course of action *actually* taken by three global banks is admissible—and strong—evidence of what a reasonable bank considers material. Certainly it is at least as probative as testimony from witnesses about what they *hypothetically* would have considered material a decade ago. And beyond that, the government has already stated that it intends to prove objective materiality in part by introducing testimony that the bank witnesses *actually relied on* the alleged misrepresentations at issue. The government cannot have it every which way—at a minimum the subpoenaed records would directly rebut that proffered testimony.

Finally, the government's separate request that Huawei disclose every Rule 17 subpoena it has served and turn over all materials received in response is unsupported by Rule 17's text and improperly circumvents the Rule 16 discovery process. Courts have repeatedly refused to grant the government precisely this sort of blanket disclosure order, and the government's right to "inspect" productions under Rule 17(c)(1) is not triggered where, as here, no subpoena has directed court-ordered pretrial production. The Court should deny the government's motion in its entirety.

## I. Background.

At multiple points in this case, the government has indicated that its bank fraud theory against Huawei turns on evidence that the banks cared about Huawei's alleged misrepresentations. The operative indictment alleges that "[h]ad the Victim Institutions known about HUAWEI's repeated violations of the ITSR, they would have reevaluated their banking relationships with HUAWEI, including their provision of U.S.-dollar and Euro clearing services to HUAWEI," S-4 Indictment ¶ 68; that Huawei's public denials "were relied on by the Victim Institutions in determining whether to continue their banking relationships with HUAWEI"; and that "[b]ased in part on these false representations, the Victim Institutions continued their banking relationships with HUAWEI and its subsidiaries and affiliates," *id.* ¶¶ 71–72; *see also* ECF No. 589 at 13 (government asserting that "[i]t would have been material *to* [redacted] to know that Huawei Tech controlled Skycom") (emphasis added).

The government's motion practice confirms how it intends to prove that theory at trial: it has told the Court that it "intends to present testimony from current and former employees of the . . . victim financial institutions" to establish materiality, and has asked for leave to elicit that testimony "through hypothetical questions" about how they would have responded had they been aware of the alleged false statements. ECF No. 629 at 27–28. And at the Rule 15 deposition of

[redacted], the government did exactly that, eliciting testimony about how the reputational risk committee's "decision making [would] have been affected if it determined that a client provided false information." [redacted] Dep. Tr. 22:15–18; *see also id.* at 221:5–8 ([redacted] testifying that he personally viewed the alleged misrepresentations as material). In short, the government intends to ask the jury to find that the alleged misstatements were objectively material *because they actually mattered* to the banks' alleged decisions to discontinue providing services to Huawei.

In order to obtain evidence to counter the government's theory, Huawei served materially identical trial subpoenas on [redacted] in April and May 2026. Each Bank Subpoena commands the recipient bank to appear at trial and to produce five narrowly drawn categories of documents. The requests are bounded in every relevant dimension. They define a closed "Relevant Time Period" (January 1, 2018 through March 31, 2026 for [redacted]; January 1, 2019 through March 31, 2026 for [redacted]); a closed universe of thirteen named Huawei Entities; and a defined transaction type—U.S.-dollar "Funds Transfers" processed through specified payment systems (e.g., Fedwire, SWIFT, and CHIPS).

Request No. 1 seeks documents "sufficient to show" the Funds Transfers processed by the recipient bank during the Relevant Time Period in which a Huawei Entity was the originator or beneficiary—and expressly permits the bank to comply by producing a single extract from its core banking systems containing seven enumerated data fields. Request Nos. 2, 3, and 5 are tethered to the specific transactions identified in response to Request No. 1: they seek, respectively, the fees the bank received for processing those transfers, the correspondent banking agreements between the bank and the non-U.S. originating and beneficiary banks identified in response to Request No. 1, and the settlement instructions or agreements among the banks for those same transfers. Request No. 4 is a bounded "documents sufficient to show" request for the bank's standard fees for processing funds transfers during the Relevant Time Period. Combined, the Requests will show the jury how the relevant banks received transfer requests, decided how to process those requests, and in fact processed those requests notwithstanding knowledge of allegedly withheld information.

The recipient banks' responses confirm that compliance is straightforward. [redacted] produced responsive materials to the first request, subject to ongoing negotiations about narrowing the remaining requests. [redacted] has represented that it intends to make a production as well. [redacted] advised Huawei that the government would move to quash and it would thus not make any productions at present, but has never complained about the scope of its Bank Subpoena, let alone moved to quash it. Indeed, by the government's own telling, it filed this motion knowing that Bank Subpoena recipients "have . . . provided materials" to the defense, ECF No. 773 at 7—that is, the government waited until *after* [redacted] had produced records the government claims are not specifically defined, and until less than a month before trial, to claim that the Bank Subpoenas are defective.

## II. The Bank Subpoenas Satisfy Rule 17.

The government challenges the Bank Subpoenas under the standards set out in *United States v. Nixon*, 418 U.S. 683, 700 (1974). *Nixon*, however, did not involve a third-party subpoena

issued by a defendant, and the Second Circuit has never decided whether *Nixon*'s standards apply in that scenario. *See United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (declining to address the issue). Huawei submits that the proper framework for evaluating a defendant's Rule 17 third-party subpoena is set out in *United States v. Weigand*, which held that those subpoenas are governed by the standards set out in Rule 17 itself: namely, whether the subpoena is "unreasonable or oppressive," and not whether the sought materials are admissible. 520 F. Supp. 3d 609, 611–13 (S.D.N.Y. 2021) (quoting Fed. R. Crim. P. 17(c)). The Bank Subpoenas are not unreasonable or oppressive. As explained further herein, the actual recipients of the Bank Subpoenas have not even objected to their scope, and the Bank Subpoenas themselves seek relevant information.

In any case, the Bank Subpoenas also easily satisfy the *Nixon* factors: (1) relevancy; (2) admissibility; and (3) specificity. *Nixon*, 418 U.S. at 700.

### A. The Bank Subpoenas Are Sufficiently Tailored.

The government's specificity objection is belied by the conduct of the Bank Subpoenas' actual recipients. No actual recipient of the Bank Subpoenas has made any complaint that the Bank Subpoenas are insufficiently tailored or specific. [redacted] promptly produced responsive transactional records subject to negotiations about narrowing the remaining requests; [redacted] has likewise promised a forthcoming production; and [redacted] has never objected to the Bank Subpoena's scope. Only the government—which bears none of the burden of complying with the Bank Subpoenas—perceives a specificity problem.

Nor could the banks have credibly objected. "A request is generally sufficiently specific where it limits documents to a reasonable period of time and states with reasonable particularity the subjects to which the documents relate." *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005). Judged against that standard, the Bank Subpoenas are models of restraint: they are targeted requests that identify specific kinds of documents over a specific time period. Contrary to the government's assertion, several of the requests are tied to specific transactions: Request Nos. 2, 3, and 5 are keyed to the transactions identified in response to Request No. 1, and the remaining requests are bounded "documents sufficient to show" formulations, an inherently self-limiting construction that invites a single system extract rather than a document sweep. Indeed, Request No. 1 expressly authorizes compliance by producing an extract from the bank's core banking systems with seven enumerated fields—data the banks maintain in searchable electronic form in the ordinary course of business.

Courts have enforced materially similar third-party subpoenas, including requests seeking "any" or "all" documents described with reasonable particularity. *See United States v. Rajaratnam*, 753 F. Supp. 2d 317, 322–23 (S.D.N.Y. 2011); *United States v. Weisberg*, No. 08-CR-347 (NGG) (RML), 2011 WL 1327689, at *8 (E.D.N.Y. Apr. 5, 2011); *United States v. Vasquez*, 258 F.R.D. 68, 72 (E.D.N.Y. 2009). As those cases recognize, an "any" or "all" formulation does not entail an overbroad subpoena where the request seeks documents regarding a well-defined subject, such as the specific bank transactions at issue here. Meanwhile, the government's contrary authorities are inapposite: each involved open-ended demands for entire categories of unidentified documents, not a defined universe of transactional data. *See United*

*States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513–15 (S.D.N.Y. 2013) (subpoena for "any and all writings and records" of the NYPD's contacts with a confidential witness, sweeping in even witness statements protected from pretrial disclosure); *RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. at 163–64 (requests for "all documents relating to" broad subject-matter categories with "no restriction on the time period," requiring a "massive search for countless documents"); *United States v. Lopez*, No. 15-CR-252 (PKC), 2021 WL 4033886, at *2 (E.D.N.Y. Sept. 3, 2021) (subpoena for the entirety of a cooperating witness's iPhone and BlackBerry sweeping in "personal or business communications that have no connection to th[e] case"); *United States v. Barnes*, No. S9-04-CR-186 (SCR), 2008 U.S. Dist. LEXIS 125298, at *11–12 (S.D.N.Y. Apr. 1, 2008) (subpoena "blindly" demanding "all" prison records and telephone recordings, including categories of records that turned out not to exist). The Bank Subpoenas are the opposite: they seek a defined extract of identified transaction data, and documents keyed to the transactions in that extract, from institutions that maintain precisely this data as a matter of course.

### B. The Subpoenaed Records Are Not Otherwise Procurable.

The government next argues that Huawei "presumably" could obtain these documents from its own files. ECF No. 773 at 5. That presumption is incorrect. A party to a funds transfer does not automatically have visibility into every intermediary bank that clears its dollar transactions, much less into the fees those banks collected, the correspondent banking agreements among those banks, or the settlement instructions governing the transfers. That information resides with the banks, and only the banks can provide it—as [redacted] again, already has done without complaint.

Nor does the government's production of Rule 16 discovery mean that the subpoenaed records are otherwise procurable. The government has not produced the subpoenaed records to Huawei; indeed, it incorrectly insists that the records are irrelevant. A defendant "is entitled to seek these third-party records from the third parties, who are the proprietors of those records": the government "does not and cannot represent that it has produced all of the records called for." *United States v. Nachamie*, 91 F. Supp. 2d 552, 563–64 (S.D.N.Y. 2000).

### C. The Subpoenaed Records Are Relevant and Admissible.

The government claims that the subpoenaed records are irrelevant and inadmissible. As an initial matter, a motion to quash is not the forum to litigate ultimate admissibility—particularly the government's Rule 403 objections, which necessarily depend on further record development during trial. Indeed, Judge Donnelly recently rejected the government's request for a pretrial determination on this precise issue, that is, whether the Court should "[p]reclude evidence, argument, or questioning regarding banking transactions post-dating the charged fraud." Aug. 12, 2026 Order Denying Motion for Leave to File. This Court should not accept the government's invitation (made prior to Judge Donnelly's rejection of its request) to rule on a question that the District Court already declined to decide before trial.

In any case, for purposes of this opposition to a motion to quash, Huawei need only make at most a "preliminary" showing of admissibility. *See Nixon*, 418 U.S. at 700; *see also United States v. Orena*, 883 F. Supp. 849, 868 (E.D.N.Y. 1995) (holding that "potentially admissible"

evidence sufficed for a *Nixon* showing). To the extent the Court decides to address this issue, Huawei has easily made that showing.

The government's primary argument is that the Bank Subpoenas seek irrelevant information. The government is wrong. A false statement under the bank fraud or wire fraud statutes is material if it "has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (internal quotation marks and alterations omitted). The government is correct that materiality is assessed under an objective standard. ECF No. 773 at 6. But it ignores the fact that objective materiality is typically—in fact, usually— addressed at trial through evidence of decisionmakers' real-world opinions and conduct. *See, e.g.*, *United States v. Calderon*, 944 F.3d 72, 87–88 (2d Cir. 2019) (bank employees' testimony regarding real-world bank policies was relevant evidence of objective materiality). The Supreme Court has said exactly that in the analogous context of the False Claims Act, which incorporates the same materiality standard: the government's real-world decision to continue paying claims *after an alleged misrepresentation was exposed* is "very strong evidence" that the misrepresentation was not material. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 (2016); *see also United States ex rel. Am. Sys. Consulting, Inc. v. ManTech Advanced Sys. Int'l*, 600 F. App'x 969, 976 (6th Cir. 2015) (evidence from actual decisionmakers remains "highly relevant to any objective inquiry" and "may be (and often [is]) the best available evidence" of objective materiality).

Evidence that three global banks continued to process U.S.-dollar fund transfers for the Huawei Entities—after the Indictment placed them on notice of everything the government contends was concealed by Huawei—is evidence from which a reasonable jury could conclude that the alleged misstatements were not material to a reasonable bank's dollar-clearing decisions. *Cf. United States v. Binday*, No. 12 Cr. 152 (CM), 2017 WL 4326063, at *3 (S.D.N.Y. Aug. 29, 2017) (observing that a victim-insurer's acceptance of a premium payment in the face of red flags about the charged scheme would have given the defendant "the material to make" the argument that the insurer "did not really care" about the alleged misconduct).

*United States v. Weigand* is directly on point. There, the alleged bank fraud consisted of misstatements designed to induce banks to process transactions for an online marijuana marketplace. The defense subpoenaed evidence showing that the issuing banks already possessed information connecting the transactions to marijuana, yet processed them anyway. 520 F. Supp. 3d at 613–14. Judge Rakoff held that the evidence was relevant to materiality: "[t]he fact that banks nevertheless process such transactions . . . could arguably support an inference that the banks would not have cared about the misrepresentations that the defendants allegedly made." *Id.* at 614. "[A] jury [was] free to make or reject" those inferences, of course, but "a juror might find that the alleged misstatements did not have a natural tendency to influence or a reasonable likelihood of influencing a bank's decision" to process the transactions. *Id.* So too here.

The government's authorities do not hold otherwise. *United States v. Corsey*, 723 F.3d 366 (2d Cir. 2013), and *United States v. Litvak*, 889 F.3d 56 (2d Cir. 2018), hold, respectively, that materiality is not defeated by a showing of the counterparty's ability to detect falsity or by a lack of actual reliance. Neither case holds that a decisionmaker's actual conduct is categorically irrelevant to the objective inquiry. Nor does this Court's prior ruling regarding the relevance of

prior enforcement proceedings (ECF No. 559) assist the government. The Court's ruling there held that evidence of banks' past compliance failures—with respect to different dealings and different customers—was inadmissible because such failures "ha[d] little relevance to Huawei" and could only speak to banks' considerations "dependent upon the specific customers involved." ECF No. 559 at 16–17. By contrast, the evidence at issue here relates to the banks' provision of dollar-clearing services related specifically to Huawei transactions.

The government finally argues that this evidence is not *conclusive* of immateriality because the banks may have had other reasons for continuing to transact. That is a jury argument, and no basis to exclude evidence, particularly at this stage. *See Weigand*, 520 F. Supp. 3d at 614–15. Nor is there any Rule 403 problem: the jury can be instructed that materiality is an objective standard, and the records themselves—the banks' own business records, admissible under Federal Rule of Evidence 803(6) and self-authenticating with a certification under Rule 902(11)—present no risk of unfair prejudice, confusion, or delay.

## III. The Court Should Deny the Government's Request for Wholesale Disclosure of Huawei's Rule 17 Subpoenas and All Responsive Materials.

The government closes with a sweeping request that the Court order Huawei to disclose every Rule 17(c) subpoena it has served in this case and to turn over all materials received in response, all within three business days. The Court should deny that request.

To begin with, a defendant is entitled to issue Rule 17(c) subpoenas without notice to the government. Courts in this Circuit have long recognized "strong policy reasons in favor of an *ex parte* procedure," especially given the reality that "it is often defendants who seek a subpoena *duces tecum* on an *ex parte* basis in order to avoid disclosing their trial strategy to the Government." *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995); *see also United States v. Ray*, 337 F.R.D. 561, 571–72 (S.D.N.Y. 2020). In other words, the government is not entitled to a standing window into the defense's trial preparation.

It is no surprise, then, that courts have repeatedly rejected precisely the kind of blanket disclosure the government demands here. *See, e.g.*, *United States v. Sun*, No. 24-CR-346 (BMC), 2025 WL 2841646, at *3 (E.D.N.Y. Oct. 7, 2025) ("[T]he Court will not grant the Government a blanket ruling that defendants disclose all issued Rule 17(c) subpoenas and any responses received to date."); *United States v. Gogic*, No. 22-CR-493 (JMA), 2025 WL 2371008, at *3 (E.D.N.Y. Aug. 14, 2025) ("[T]he Government's requested blanket ruling [to disclose any additional Rule 17(c) subpoenas that Defendant has served and the materials obtained thereby] would be overbroad."); *Ray*, 337 F.R.D. at 571 ("[T]he Government is not entitled to be informed of the complete universe of subpoenas requested by the defense…."). Whatever interest the government asserts in policing Rule 17(c) practice is fully protected by the Court's own supervisory authority over its subpoenas. *See Gogic*, 2025 WL 2371008, at *3.

The government pins its demand on the fact that Rule 17(c)(1) says "the court may permit the parties . . . to inspect" designated productions. Fed. R. Crim. P. 17(c)(1). The government misreads the Rule. The preceding sentence in the Rule provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in

evidence." *Id.* Only "[w]hen the items arrive"—that is, the court-directed pretrial productions—the court may permit inspection by the adverse party. *Id.* By its terms, the discretionary inspection contemplated by the second sentence is triggered by the court-directed pretrial production described in the first. *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538 (S.D.N.Y. May 17, 2018), on which the government relies, confirms as much. The court there ordered the disclosure of materials only after bringing the subpoenaed materials within a court-supervised, pretrial-return production process. *Id.* at *8–9.

Reading the inspection clause more broadly would transform Rule 17(c) into precisely what it is not: a discovery device that undermines the requirements of Rule 16. For example, where a defendant receives materials informally shared by a subpoena recipient and has not yet determined which if any of those materials to put into evidence, such materials plainly fall outside the scope of the discovery obligation pursuant to Rule 16. Just as a defendant may not use Rule 17 as a "work around" to obtain discovery beyond the bounds of Rule 16, *United States v. Peterman*, No. 24-CR-489 (JMA) (AYS), 2026 WL 1436667, at *5 (E.D.N.Y. Apr. 9, 2026), the government may not invoke inspection under Rule 17(c)(1) to extract from the defense materials to which it is not entitled under Rule 16. The defense will produce the Bank Subpoena materials to the government under Rule 16 in the normal course should it decide to use them in its case-in-chief at trial.[2]

The text of Rule 17(c)(1) thus disposes of the government's request here. The Bank Subpoenas command the recipient banks to appear and produce documents *at trial*, and the Court has not directed the pretrial production of any subpoenaed items. Even if the Court's authority to permit inspection under Rule 17(c)(1) were triggered in this case, the government's demand for "all issued Rule 17(c) subpoenas and any responses received to date" is overbroad and should be denied. To the extent the government believes particular defense trial evidence must be disclosed to it or precluded, its remedy lies in the ordinary operation of the reciprocal-discovery provisions of Rule 16 and, as it has already been doing, filing motions to quash or exclude.

## IV. Conclusion.

For the foregoing reasons, the Court should deny the government's motion to quash in its entirety, together with its request that Huawei disclose all Rule 17 subpoenas and produce all materials received in response.

---

[2] To the extent the government is concerned about late production, it has only its own apparent role in delaying (at least) [redacted] production to blame.

*/s/ David Bitkower*
David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

*/s/ Douglas A. Axel*
Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

*/s/ Brian M. Heberlig*
Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*