NJM:AAS
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

HUAWEI TECHNOLOGIES CO., LTD., ET AL.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

[redacted]

18-CR-457 (S-4) (AMD)

**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO ADMIT AND EXCLUDE TESTIMONY AND EXHIBITS FROM THE RULE 15 DEPOSITION OF [redacted]**

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

MARGARET A. MOESER
Chief
Money Laundering, Narcotics and Forfeiture Section
Criminal Division
U.S. Department of Justice

CHRISTIAN NAUVEL
Acting Chief
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice

ALEXANDER A. SOLOMON
MEREDITH A. ARFA
ROBERT M. POLLACK
MATTHEW SKURNIK
MATTHEW F. SULLIVAN
Assistant U.S. Attorneys

TAYLOR G. STOUT
MORGAN J. COHEN
JASMIN SALEHI FASHAMI
Trial Attorneys

CHRISTOPHER FENTON
Trial Attorney

(Of Counsel)

# TABLE OF CONTENTS


TABLE OF AUTHORITIES……………………………..………………………………ii

BACKGROUND………………………………………………...…………………………..1

LEGAL STANDARD……………………………………….………...……………….……2

ARGUMENT………………………………………………….…………...……….……..8

A. HYPOTHETHICAL QUESTIONS………..….…………………...……….……8

B. STATEMENTS ATTRIBUTED TO HUAWEI COOPERATIEF EMPLOYEES……………………………………..………………....9

C. TESTIMONY PERTAINING TO RELATIONSHIP MANAGER [redacted] ……………………………………………………………………….10

D. REFRESHED RECOLLECTION ……………………………………....……11

E. CAC MATERIALS…………………………………………………..…………12

F. COMMUNICATIONS BETWEEN MR. [redacted] COUNSEL AND THE GOVERNMENT……………………………………………..………....…14

G. ELICITING LEGAL CONCLUSION ……………………………..………...…15

H. IMPERMISSIBLE IMPEACHMENT OF [redacted] …………………..……..……15

I. PRIOR ENFORCEMENT PROCEEDINGS AGAINST VICTIM BANKS..…16

J. STATE-OF-MIND EVIDENCE ..……………………………..……………..…16

REQUEST FOR SEALING……………………………………………………..……..……16

CONCLUSION………………………………………………………………………..17

# TABLE OF AUTHORITIES

**Cases** ............................................................ **Page(s)**

*Bank of Am., Nat'l Ass'n v. Kamico, Inc.*,
No. 11-CV-5255 (MHD), 2012 WL 1449185 (S.D.N.Y. Apr. 24, 2012) .................................. 4

*Boniel v. U.S. Bank N.A.*,
No. 12-CV-3809 (ERK), 2013 WL 1687709 (E.D.N.Y. Apr. 18, 2013) .................................. 5

*Borukh v. Experian Info. Sols., Inc.*,
No. 24-CV-6022 (NRM) (JRC), 2025 WL 1220042 (E.D.N.Y. Apr. 28, 2025)................ 3, 4, 5

*Giallanzo v. City of New York*,
630 F. Supp. 3d 439 (S.D.N.Y. 2022) .................................................................................... 4

*HM Compounding Servs., LLC v. Express Scripts, Inc.*,
349 F. Supp. 3d 781 (E.D. Mo. 2018) .................................................................................... 4

*Jordan v. United Cerebral Palsy of N.Y.C., Inc.*,
No. 12-CV-5715 (DLI), 2016 WL 9022502 (E.D.N.Y. Mar. 31, 2016) .................................. 3

*Kansas City Power & Light Co. v. Ford Motor Credit Co.*,
995 F.2d 1422 (8th Cir. 1993) ................................................................................................ 4

*Lugosch v. Pyramid Co.*,
435 F.3d 110 (2d Cir. 2006) ........................................................................................... 16, 17

*Quinton v. Am. Express Co.*,
No. 19-CV-566 (NGG) (JRC), 2025 WL 1994848 (E.D.N.Y. July 17, 2025)...................... 3, 5

*SCR Joint Venture L.P. v. Warshawsky*,
559 F.3d 133 (2d Cir. 2009)......................................................................................................3

*Searles v. First Fortis Life Ins. Co.*,
98 F. Supp. 2d 456 (S.D.N.Y. 2000) ...................................................................................... 4

*United States v. Al-Moayad*,
545 F.3d 139 (2d Cir. 2008) .................................................................................................. 5

*United States v. Amodeo*,
44 F.3d 141 (2d Cir. 1995). ................................................................................................ 16

*United States v. Aref*,
533 F.3d 72 (2d Cir. 2008) .................................................................................................. 16

*United States v. Birney*,
686 F.2d 102 (2d Cir. 1982). .................................................................................... 3

*United States v. Blake*,
195 F. Supp. 3d 605 (S.D.N.Y. 2016) ........................................................................ 8

*United States v. Conde*,
134 F.4th 82 (2d Cir. 2025) ................................................................................ 6, 12

*United States v. Cuti*,
720 F.3d 453 (2d Cir. 2013) ...................................................................................... 9

*United States v. Davidson*,
308 F. Supp. 2d 461 (S.D.N.Y. 2004) ........................................................................ 7

*United States v. Dhinsa*,
243 F.3d 635 (2d Cir. 2001) ...................................................................................... 6

*United States v. Dupree*,
706 F.3d 131 (2d Cir. 2013) ...................................................................................... 7

*United States v. Fox*,
No. 23-CR-227 (NGG), 2025 WL 2076664 (E.D.N.Y. July 23, 2025)........................................ 7

*United States v. Gagliardi*,
506 F.3d 140 (2d Cir. 2007) ...................................................................................... 6

*United States v. Jackson*,
180 F.3d 55 (2d Cir. 1999) ........................................................................................ 8

*United States v. Komasa*,
767 F.3d 156 (2d Cir. 2014) ...................................................................................... 6

*United States v. Mahaffy*,
No. 05-CR-613 (ILG), 2007 WL 1094153 (E.D.N.Y. Apr. 10, 2007). ...................................... 8

*United States v. Marin*,
669 F.2d 73 (2d Cir. 1982) ........................................................................................ 8

*United States v. Mermelstein*,
487 F. Supp. 2d 242 (E.D.N.Y. 2007) ...................................................................... 10

*United States v. Mitchell*,
502 F.3d 931 (9th Cir. 2007) ..................................................................................... 7

*United States v. Pedroza*,
750 F.2d 187 (2d Cir. 1984 .......... 7

*United States v. Rigas*
490 F.3d 208 (2d Cir. 2007) .......... 5

*United States v. Tin Yat Chin*,
371 F.3d 31 (2d Cir. 2004). .......... 6

*United States v. Vallee*,
304 F. App'x 916 (2d Cir. 2008) .......... 7

*United States v. Watts*,
934 F. Supp. 2d 451 (E.D.N.Y. 2013). .......... 3

**<u>Rules</u>**

Fed. R. Evid. 401 .......... 2

Fed. R. Evid. 402 .......... 2

Fed. R. Evid. 403 .......... 3, 12, 14

Fed. R. Evid. 602 .......... 3

Fed. R. Evid. 801 .......... 7

Fed. R. Evid. 801(c) .......... 7

Fed. R. Evid. 801(d) .......... 7, 10, 12

Fed. R. Evid. 802 .......... 7

Fed. R. Evid. 803 .......... 7

Fed. R. Evid. 803(3) .......... 13

Fed. R. Evid. 803(5) .......... 11

Fed. R. Evid. 803(6) .......... 6, 12

Fed. R. Evid. 804 .......... 7

Fed. R. Evid. 805 .......... 7

Fed. R. Evid. 901(a) .......... 5

Fed. R. Evid. 902(11) .......... 6

Pursuant to the Court's order dated June 15, 2026, the parties conducted a video-recorded deposition of [redacted] on July 16, 2026. The parties subsequently designated the deposition testimony and corresponding exhibits they seek to introduce at trial. *See* Ex. A (Government Designations); Ex. B (Defendants' Designations). For the reasons set forth below, the government respectfully requests that the Court: (1) admit the portions of the deposition testimony and corresponding exhibits designated by the government; and (2) preclude the portions of the deposition testimony and corresponding exhibits to which the government objects.

## I. BACKGROUND

Mr. [redacted] previously served as a Multinational Corporate ("MNC") Manager at [redacted] ("[redacted]"), the victim financial institution identified as "Financial Institution 3" in the Fourth Superseding Indictment (the "Indictment"). As alleged in the Indictment, between approximately August 2010 and May 2018, Huawei Technologies Co. Ltd. ("Huawei Tech.") conspired to, and did, devise a scheme to defraud [redacted] and other victim financial institutions of money and property through a series of misrepresentations about, among other things, its relationship with Skycom Technologies Co. Ltd. ("Skycom"), a Hong Kong corporation controlled by Huawei Tech. that provided telecommunications infrastructure and services in Iran, as well as Huawei Tech.'s and its subsidiaries' compliance with U.S. laws and regulations. During the relevant period, Mr. [redacted] acted as the local relationship manager for Huawei's affiliate in [redacted] Huawei Technologies Cooperatief U.A. ("Huawei Cooperatief"). Huawei Cooperatief is the parent of all U.S.-based Huawei affiliates. Mr. [redacted] regularly communicated with Huawei Cooperatief employees in person, telephonically, and via e-mail, and was a direct recipient of certain of its compliance-related misrepresentations.

During his deposition, Mr. [redacted] testified, among other things, regarding: (i) [redacted] banking relationship with Huawei Tech., Huawei Cooperatief, and Huawei Tech.'s

affiliates (collectively, "Huawei"); (ii) the banking services Huawei sought and obtained from [redacted] including but not limited to credit and cash management, such as syndicated loans; (iii) representations made by Huawei to access such services, including Huawei's representations to [redacted] concerning Huawei's business operations and legal compliance; and, (iv) the significance of those representations to [redacted] More specifically, Mr. [redacted] testified about information he helped gather from Huawei in advance of review by [redacted] Client Acceptance Committee ("CAC") in 2014 of the overall Huawei relationship. Additionally, Mr. [redacted] was the primary author of materials prepared for the CAC's review in 2015 of the Huawei Cooperatief relationship. In preparing the 2015 materials, he relied on and incorporated materials submitted to the CAC in 2014 regarding the overall Huawei relationship.

This memorandum of law attaches as Exhibit C a business records certification from [redacted] pursuant to Rule 902 authenticating as business records each of the exhibits the government offered during the direct examination of Mr. [redacted]. (*See* Ex. C).

## II. LEGAL STANDARD

Below, the government outlines the legal standards applicable to the objections offered by both parties concerning the [redacted] deposition.

### A. Relevance

"Relevant evidence is admissible unless" the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court "provides otherwise." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

B. Federal Rule of Evidence 403

Relevant evidence is subject to the probative-prejudice balancing test of Federal Rule of Evidence 403. *See United States v. Watts*, 934 F. Supp. 2d 451, 462-63 (E.D.N.Y. 2013). Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." The "district court is obviously in the best position to do the balancing mandated by Rule 403, and, accordingly, [courts are afforded] 'broad discretion' . . . to admit or exclude evidence pursuant to Rule 403." *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982).

C. Foundation for Personal Knowledge

Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." "Evidence to prove personal knowledge may consist of the witness's own testimony." *Id.*

"[T]he personal knowledge of a witness may be inferred based on her position with a company." *Borukh v. Experian Info. Sols., Inc.*, No. 24-CV-6022 (NRM) (JRC), 2025 WL 1220042, at *5-6 (E.D.N.Y. Apr. 28, 2025) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138-39 (2d Cir. 2009)); *see also Quinton v. Am. Express Co.*, No. 19-CV-566 (NGG) (JRC), 2025 WL 1994848, at *8 (E.D.N.Y. July 17, 2025) (permitting testimony of corporate employee based on her experience with her employer and her review of the company's business records) (citing *Borukh*, 2025 WL 1220042, at *6-7 (collecting cases)); *Jordan v. United Cerebral Palsy of N.Y.C., Inc.*, No. 12-CV-5715 (DLI), 2016 WL 9022502, at *4 (E.D.N.Y. Mar. 31, 2016) (admitting affidavit where affiant did not swear to personal knowledge, on the basis that his role as "Acting Director" of program gave him "primary knowledge" of the information in his

declaration), *aff'd*, 682 F. App'x 48 (2d Cir. 2017); *Bank of Am., Nat'l Ass'n v. Kamico, Inc.*, No. 11-CV-5255 (MHD), 2012 WL 1449185, at *6 (S.D.N.Y. Apr. 24, 2012) (holding that there was no question as to the competence of a declaration by the vice president of the plaintiff-company because as a vice president, the witness was both qualified, and duty-bound, to review the relevant business records of the plaintiff before making his affidavit).

An employee's experience with his or her company also provides sufficient personal knowledge for the employee to testify concerning the company's likely reaction to certain circumstances. *See Kansas City Power & Light Co. v. Ford Motor Credit Co.*, 995 F.2d 1422 (8th Cir. 1993) (upholding admission under Rule 602 of testimony of utility employees regarding likely action that state regulatory agency would take with regard to utility's proposed redemption of preferred stock, explaining that employees had personal knowledge as to agency's likely reaction based on their experience working for the agency); *cf. HM Compounding Servs., LLC v. Express Scripts, Inc.*, 349 F. Supp. 3d 781, 792 (E.D. Mo. 2018) ("Personal knowledge acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for . . . testimony.").

Additionally, "a witness may establish personal knowledge based on a review of business records." *Borukh*, 2025 WL 1220042, at *5-6 (internal citations omitted). And, as discussed above, the Court may infer a witness's personal knowledge based on his position and role within a company. *See, e.g.*, *Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 458 (S.D.N.Y. 2022) ("Goldberg's senior position with DOT was enough of a basis on which, for purposes of summary judgment, to conclude that he had the familiarity with quotidian payroll records of his agency to explain what the codes thereon signified."); *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) ("Ms. Duvall's position with Fortis qualified

her to review the relevant business materials in an official capacity and make sworn statements based upon those materials."). "It is axiomatic that a corporate representative may testify . . . based on knowledge gained from a review of corporate books and records." *Boniel v. U.S. Bank N.A.*, No. 12-CV-3809 (ERK), 2013 WL 1687709, at *1 (E.D.N.Y. Apr. 18, 2013); *see Quinton*, 2025 WL 1994848, at *8.

For example, in *United States v. Rigas*, a witness possessed personal knowledge of a company's books and records by conducting a thorough review of those records, despite the fact that the records were prepared before he started working at the company. 490 F.3d 208, 223 (2d Cir. 2007) ("In the course of nearly twenty months at [the company], [the witness] developed what he characterized as fairly extensive knowledge of the debt area of [the company] by reviewing the Co-Borrowing Agreements, and other documents within the company . . . [and] familiariz[ing] himself with [the company's] accounting system and the soft-ware used to generate reports.").

Thus, a corporate employee may testify about the company's policies and procedures based on his or her experience with the company and a review of company's business records. *See, e.g.*, *Borukh*, 2025 WL 1220042, at *5-6 (internal citations omitted) (finding witness possessed sufficient personal knowledge where he described the process the plaintiff took to enroll in a program, including the forms the plaintiff completed, and based his declaration on a review of his company's relevant business records concerning same); *Quinton*, 2025 WL 1994848, at *8 (same).

D. <u>Authentication of Business Records</u>

Federal Rule of Evidence 901 provides that to properly authenticate or identify an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The bar for authentication is "not particularly high." *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008). It does not

require ruling out "all possibilities inconsistent with authenticity," or "prov[ing] beyond any doubt that the evidence is what it purports to be." *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001). Rather, all that is required is "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification." *Id.* This "minimal" standard can be satisfied by the "testimony of a witness with knowledge that a matter is what it is claimed to be." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). Once this "minimal" standard is met, "the other party then remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence—not to its *admissibility*." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004).

"Rule 902(11), referred to in Rule 803(6)(D), provides, as relevant here, that '[t]he original or a copy of a domestic record *that meets the requirements of Rule 803(6)(A)-(C)*, as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court,' is 'self-authenticating,' meaning that it '*require[s] no extrinsic evidence of authenticity in order to be admitted*.'" *United States v. Conde*, 134 F.4th 82, 88 (2d Cir. 2025) (quoting and adding emphasis to Fed. R. Evid. 902(11)). "Accordingly, Rules 803(6) and 902(11) create a framework for the authentication and admission of business records 'without the expense and inconvenience of producing time-consuming foundation witnesses.'" *Id.* (internal quotations and citations omitted). "The custodian need not have personal knowledge of the actual creation of the document' to lay a proper foundation." *Id.* (quoting *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014)).

E. Hearsay

Any statement that is made by a declarant not testifying at trial, offered in evidence to prove the truth of the matter asserted, is excluded as hearsay absent the applicability of one of

the hearsay exceptions provided in the Federal Rules of Evidence. *See* Fed. R. Evid. 801, 802, 803, 804. A document that contains two levels of hearsay—*i.e.*, the first level being the document itself, and the second level being the hearsay statements in the document—is admissible only if each level of hearsay satisfies a hearsay exception. *See* Fed. R. Evid. 805. Where a party offers an out-of-court statement *not* for its truth, but for some other purpose, such as demonstrating that a party made the statement, the falsity of the statement, or the effect on the listener, the statement is not hearsay. *See* Fed. R. Evid. 801(c); *see also* Fed. R. Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); *United States v. Fox*, No. 23-CR-227 (NGG), 2025 WL 2076664, at *9 (E.D.N.Y. July 23, 2025) (citing *United States v. Pedroza*, 750 F.2d 187, 203 (2d Cir. 1984) (a statement offered "for its patent falsity" is not hearsay)); *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("a statement offered to show its effect on the listener is not hearsay"); *United States v. Vallee*, 304 F. App'x 916, 919 (2d Cir. 2008) ("The testimony at issue was not hearsay because it was not admitted for the truth . . . but rather as evidence of [the defendant's] state of mind.").

The government may introduce a defendant's statements because such statements are not hearsay. A statement is not hearsay if it is "offered against a party and is [ ] the party's own statement." Fed. R. Evid. 801(d)(2)(A). However, while the government may introduce a defendant's statements, a defendant may not do the same in an "attempt to get [his] side of the [ ] story in front of the jury without him testifying and opening him up to cross-examination." *United States v. Davidson*, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004); *see United States v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007) (defendant was properly precluded from eliciting, on cross-

examination of government agents, exculpatory statements that he had made during interviews with agents, because those statements were inadmissible hearsay).

Conversely, a defendant generally is prohibited from introducing its own out-of-court statements at trial. *See United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("[W]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (no abuse of discretion where district court omitted portions of statements which "consisted largely of [defendant's] self-serving statements, which, as offered by him, are inadmissible hearsay"). Therefore, a "court may . . . exclude any portion that consists largely of a defendant's own self-serving statements, which, as offered by him, are inadmissible hearsay." *United States v. Mahaffy*, No. 05-CR-613 (ILG), 2007 WL 1094153, at *2 (E.D.N.Y. Apr. 10, 2007).

## III. ARGUMENT[1]

### A. Hypothetical Questions

The defendants objected to various hypothetical questions posed to Mr. [redacted] regarding the materiality of Huawei's representations to [redacted] as well as related questions regarding what sanction-related issues the bank cared about. (Tr. 33:20; 34:22; 35:8; 43:22; 44:14; 53:12; 62:13). The questions generally concerned whether the bank relied on its customers to provide accurate information and what the bank would do if it discovered that customers were

[1] The government is not addressing the designated portions of the direct examinations to which the defendants do not object, or the designated portions of the cross-examinations to which the government does not object. To the extent that any of the government's objections raised during the deposition are not asserted herein, the government withdraws such objections.

intentionally providing inaccurate information. Mr. [redacted] confirmations that [redacted] did rely on the accuracy of its clients' representations and that representations about sanctions compliance were important to the bank directly pertain to the core element of materiality for the charged financial fraud. As discussed in the government's motion *in limine*, (ECF No. 629), that the Court granted "to the extent the proper foundation is established for each question and that the questions are posed as hypotheticals without requiring the jury to assume the guilt of the defendant," (ECF No. 790), which the government has done so here, the Second Circuit has broadly permitted the use of hypothetical questions to inquire into the effect of a fraud on the victim. *See United States v. Cuti*, 720 F.3d 453, 458-59 (2d Cir. 2013). Accordingly, the Court should reject the defendants' objections to these questions.

B. Statements Attributed to Huawei Cooperatief Employees

The defense repeatedly objected to questions that sought to elicit the statements of Huawei Cooperatief employees [redacted] and [redacted], who were Mr. [redacted] direct contacts at Huawei. (Tr. 48:20; 49:18; 50:1; 50:4; 51:7; 51:13; 51:16; 51:19; 52:11; 52:14; 53:2; 90:2; 90:5). The questions at issue concerned representations made by [redacted] and [redacted] to Mr. [redacted] concerning Huawei's compliance with U.S. and international sanctions laws, highlighted by the following details: (1) the representations were authorized by Huawei's headquarters in China; (2) Huawei's headquarters shared information with [redacted] and [redacted] on a need-to-know basis; (3) other banks were similarly frustrated in their inability to get information from Huawei; (4) [redacted] advised Mr. [redacted] to contact Huawei's headquarters directly if he wanted additional information; and (5) two of the individuals from Huawei's headquarters that [redacted] met with in this context were named "[redacted]" and "Cathy"—a likely reference to Huawei Treasurer [redacted] and Huawei CFO Wanzhou "Cathy" Meng. Even though Huawei Cooperatief is not a charged defendant in this prosecution, [redacted] and [redacted] acted as

agents of Huawei Tech.(which *is* a charged defendant) and were authorized by Huawei Tech. to make representations regarding Huawei's sanctions compliance to [redacted] Moreover, Huawei Cooperatief is a co-conspirator in relation to the charged fraud conspiracies, and in addition to being statements of an agent, [redacted] and [redacted] representations to one of Huawei's victim banks in an effort to ensure access to the U.S. financial system were statements of a co-conspirator in furtherance of the conspiracy. The representations at issue were considered by [redacted] in connection with the CAC's review of the overall relationship with Huawei in 2014 and of the relationship with Huawei Cooperatief in 2015. Indeed, Mr. [redacted] confirmed that [redacted] had "made an official statement or repeated an official statement by Huawei about whether Huawei complied with sanctions laws in the EU, US and UN." (Tr. 49:22-50:2); *see* Fed. R. Evid. 801(d)(2)(C) & (D); *United States v. Mermelstein*, 487 F. Supp. 2d 242, 264–65 (E.D.N.Y. 2007) ("It is certainly clear that a statement made by an adverse party, whether directly or through an agent, co-conspirator or anyone else authorized by the party to make a statement concerning the subject, is not hearsay when offered against that party."). As such, the testimony at issue is not hearsay, and the defendants' objections should be overruled.

C. <u>Testimony Pertaining to Relationship Manager</u> [redacted]

On two occasions, the defense improperly objected to questions pertaining to [redacted] global relationship manager for Huawei, [redacted].

In one instance, the defense objected to a question about which banker had direct contact with Huawei Tech. in China. (Tr. 41:10). First, there was sufficient foundation in the record for this question, given that Mr. [redacted] had already testified about his role and experience as [redacted] local relationship manager in [redacted] for Huawei. Second, Mr. [redacted] answer that [redacted] had such contact with Huawei Tech. did not constitute hearsay, as [redacted] duties and responsibilities as the global relationship manager for Huawei required direct contact with the

client. (Tr. 30:9-10; 170:15-19). In other words, there is no reason to think Mr. [redacted] answer—about [redacted] having direct contact with Huawei Tech. in China—was based on any hearsay statement from [redacted]

Also without merit was the defense's objection to a question about whether Huawei's headquarters provided information about sanctions compliance to [redacted] after [redacted] had directed [redacted] to engage directly with Huawei's headquarters on sanctions issues. (Tr. 62:7). Mr. [redacted] answered that he believed Huawei was not being forthcoming. (Tr. 62:8). This answer was not based on hearsay but rather on Mr. [redacted] direct experience in dealing with Huawei's headquarters; Mr. [redacted] explained that he consistently failed to receive new information regarding his questions on sanctions compliance whenever he contacted [redacted] or Huawei's headquarters to solicit such information. (Tr. 170:15-19).

D. <u>Refreshed Recollection</u>

During his testimony, Mr. [redacted] could not remember the names of the individuals at Huawei with whom [redacted] was meeting in London. After being shown an email that he had contemporaneously drafted detailing [redacted] statement about "[redacted]" and "Cathy," Mr. [redacted] indicated his recollection was refreshed and testified that recalled the names "[redacted]" and "Cathy." The defense objected that Mr. [redacted] was reading from the document, but Mr. [redacted] then indicated that he now recollected the names as "[redacted]" and "Cathy." The defense's objection to improper refreshment should be denied, where Mr. [redacted] testified that his memory of the names had returned to him. As the deposition is videotaped, the jury can make its own assessment as to the credibility of this testimony.[2]

---

[2] Indeed, had Mr. [redacted] not testified credibly that his memory was refreshed, the names from the email would almost certainly have been admissible as a past recollection recorded, under Rule 803(5).

E. CAC Materials

Much of Mr. [redacted] testimony focused on the materials prepared for the 2014 and 2015 CAC review of the relationship with Huawei and Huawei Cooperatief (the "2014 Materials" and the "2015 Materials," and, together, the "Materials"). The Materials and their attachments were each produced by [redacted] bearing consecutively numbered Bates stamps and are both subject to the [redacted] business records certification attached hereto as Exhibit C. Each of the Materials contains statements attributed to Huawei regarding Huawei's compliance with sanctions laws, which Mr. [redacted] read into the record.

The defense broadly objected to introduction of the Materials on hearsay grounds and because of unfair prejudice under Rule 403. (Tr. 66:2-7; 82:11-14; 85:21-24). Additionally, the defense repeatedly objected to the introduction of various attachments to the Materials based on purportedly improper or speculative authentication. As discussed below, these objections should all be denied.

*First*, the Materials are business records compiled to assist the CAC in its review of the business relationships with Huawei and Huawei Cooperatief. Information attributed to Huawei in these forms was gathered by [redacted] personnel, including Mr. [redacted], directly from the client. (*See* Tr. 47:24-53:5). The [redacted] certification describes the Materials as records of a regularly conducted activity, and meets the requirements of Federal Rule of Evidence 803(6); nothing more is needed for their introduction into evidence. *See Conde*, 134 F.4th at 88.

*Second*, while portions of the Materials contain hearsay statements of non-testifying [redacted] personnel, the government only read into the record statements attributed to Huawei or establishing [redacted] state of mind in response to such statements attributed to Huawei. Huawei's statements constitute an opposing party's statement under Rule 801(d)(2), while [redacted] reaction to Huawei's statements, contained in a record of regularly conducted activity of [redacted]

are admissible both because they are not being offered for their truth and because they constitute state-of-mind evidence under Rule 803(3). Moreover, in addition to being statements of a party opponent, the government is not offering Huawei's statements about its compliance with sanctions laws or its relationship with Skycom for their truth, as the government contends that these statements generally were false. Indeed, the significance of the statements lies in the fact that they were made, not that they were true. Finally, the portions of the documents other than Huawei's statements and [redacted] reaction to these statements can be largely redacted before presentation to the jury to lessen any remaining concerns about inadmissible second-level hearsay.

*Third*, the defense's authentication objections regarding the attachments to the Materials lack merit. As outlined above, Mr. [redacted] authored the 2015 Materials for the CAC's review of the relationship with Huawei Cooperatief, relying on the 2014 Materials for the CAC's review of the global relationship with Huawei. The 2015 Materials attach many of the same documents that were attached to the 2014 Materials, including the 2013 *Reuters* article alleging Huawei CFO Wanzhou Meng's involvement in overseeing Skycom and Huawei's official statement on its Iranian operations. Mr. [redacted] testified that he believed he did "review carefully the 2014 form and its attachments" and "utilize exhibits that were appended to the 2014 form for the 2015 form." (Tr. 62:25-63:8). There is no plausible reason to disbelieve this testimony. As reflected in the Materials, the file names for these attachments reflect titles and dates broadly correlating to the documents' actual titles and dates. (Tr. 74:21-76:20; 80:5-83:8).

*Fourth*, the defense objections on hearsay grounds to admission of the 2013 *Reuters* article, which was appended to both sets of Materials, misses the mark where the government is offering the article into evidence to prove impact on the listener, here [redacted] Indeed, in the 2014 Materials, [redacted] wrote that "Skycom . . . is not in the counterparties list provided by [senior

banking officer]," (Tr. 82:22-83:4), indicating that, as a result of Huawei's misrepresentations—including the statements about its relations to Skycom, like those attributed to it in the *Reuters* article—[redacted] wrongly believed that Skycom was a third-party business partner rather than a Huawei affiliate. The article, appended to these two sets of decision materials, provides essential context for understanding Huawei's misrepresentations to the bank.

*Finally*, the Court should deny the defense's objection under Rule 403 to the reading in of a passage from the 2014 Materials in which [redacted] noted the allegations from the 2013 *Reuters* article and detailed Huawei's response, including through direct representations to bank personnel. (Tr. 79:2-80-82:8). Huawei's representations to [redacted] coupled with the bank's state of mind in reaction to such representations, constitute admissible non-hearsay evidence of the alleged financial fraud. Nor can there be any serious contention that Huawei's representations about its Iran-based business are unfairly prejudicial, as they are squarely implicated by the charged fraud counts. Those statements may be prejudicial to Huawei in the sense that they are highly inculpatory, but they are not unfairly so.

F. Communications Between Mr. [redacted] Counsel and the Government

The Court should sustain the government's objection to the defense's questioning of Mr. [redacted] regarding whether his counsel had prior substantive communications with the government. (Tr. 102:19-24). Whether Mr. [redacted] counsel engaged in any substantive factual discussions with the government has no bearing on Mr. [redacted] credibility as a witness, much less any relevance to any disputed issue of material fact. Moreover, allowing the questioning would unnecessarily and unfairly lead the jury into believing that there is something inappropriate or unusual about substantive contact between government and witness counsel.

G. Eliciting Legal Conclusion

The Court should sustain the government's objection to questioning in which the defense sought to inquire of Mr. [redacted] whether [redacted] understanding that Huawei already conducted minimal business in sanctioned countries such as Iran was a question of "materiality" to the bank. (Tr. 118:5-8). Any such testimony would be improper, as Mr. [redacted] was seemingly called upon to provide an ultimate conclusion of fact that is the sole province of the jury. The Court will provide the jury with a definition of "materiality," and Mr. [redacted] explanation that a specific item was "a question of materiality" for the bank—especially where the item at issue is collateral to the core charged misrepresentations of whether Skycom was a Huawei affiliate and whether Huawei would ring-fence its Iran-based transactions from the U.S. financial system—would needlessly confuse the jury.

H. Impermissible Impeachment of [redacted]

Throughout the cross-examination, defense counsel repeatedly sought to elicit testimony regarding whether documents shown to Mr. [redacted] had been originally produced by [redacted] rather than Huawei, culminating in a question as to whether the bank had, in fact, collected Mr. [redacted] documents in connection with this prosecution. (Tr. 121:13-21; 134:25-135:4; 141:25-142:5; 151:6-11; 167:16-23; 175:3-18). Any question impugning the integrity of [redacted] production of records to the government, which was sought through a mutual legal assistance request to [redacted] has no relevance to Mr. [redacted] credibility as a witness and would needlessly confuse the jury. This is particularly true where the production of documents involved the direct participation of the [redacted] government, which repeatedly sought to narrow the scope of the U.S. government's mutual legal assistance request, and the only documents ultimately produced pursuant to that request were found on [redacted] servers—rather than servers located outside of [redacted]

I. Prior Enforcement Proceedings Against Victim Banks

Notwithstanding the Court's ruling that the defense may not cross-examine victim bank witnesses as to prior enforcement proceedings against victim banks, (ECF No. 730 at 3-8), the defense asked a series of questions regarding [redacted] agreements with U.S. regulators and prosecutors (Tr. 156-65). Defense counsel acknowledged her awareness of the Court's ruling but nonetheless availed herself of the opportunity to ask Mr. [redacted] questions about the bank's prior enforcement history in the event of "adjustments" to the Court's ruling. (Tr. 158:3-8). As the ruling still stands, the Court should sustain the government's objections to this line of questioning.

J. State-of-Mind Evidence

On cross-examination, the defense sought to introduce an internal [redacted] email in which Mr. [redacted] and others discuss language in the draft 2015 Materials as evidence regarding the bank's state-of-mind. (Tr. 166:19-170:6). The government does not object to the specific language from the email chain read into the record at the request of defense counsel, but much of the remainder of the email chain constitutes impermissible hearsay and should thus be redacted before publication to the jury.

REQUEST FOR SEALING

The government respectfully requests leave to file this brief and the exhibits under seal, with a redacted version of the brief filed on the public docket. The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal. *See, e.g.*, *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored"). However, sealing is warranted to protect the privacy interests of third parties. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). Under the circumstances, the interest

in safeguarding the privacy of these individuals outweighs the public's qualified right to access such information. Because the facts set forth herein provide a sufficient basis for the "specific, on the record findings" necessary to support sealing, *Lugosch*, 435 F.3d at 120, the government respectfully requests that the Court permit the government to file this brief under seal.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court: (1) admit the portions of the deposition testimony and corresponding exhibits designated by the government; and (2) preclude the portions of the deposition testimony and corresponding exhibits to which the government objects.

Dated: Brooklyn, New York
August 20, 2026

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By: /s/
Alexander A. Solomon
Meredith A. Arfa
Robert M. Pollack
Matthew Skurnik
Matthew F. Sullivan
Assistant United States Attorneys
(718) 254-7000

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan J. Cohen
Jasmin Salehi Fashami
Trial Attorneys

CHRISTIAN NAUVEL
Acting Chief, Counterintelligence and Export Control Section,
National Security Division,
U.S. Department of Justice

Christopher Fenton
Trial Attorney