UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

**UNITED STATES OF AMERICA,**

– against –

**HUAWEI TECHNOLOGIES CO., LTD.**, *et al.*,

Defendants.

------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

18-CR-457 (AMD) (JAM)

**ANN M. DONNELLY**, United States District Judge:

Before the Court are the parties' motions *in limine*. The government filed twenty-five motions *in limine* (ECF Nos. 629 (sealed), 646 (redacted)); ECF Nos. 691 (sealed), 693 (redacted)), which the defendants largely oppose (ECF Nos. 668 (sealed), 686 (redacted); ECF Nos. 697 (sealed), 710 (redacted)). The defendants' motions *in limine* (ECF No. 631), and the government's nineteenth motion in *limine* (ECF Nos. 678, 711), are discussed in sealed HSD submissions.[1, 2] Jury selection is scheduled to begin on September 8, 2026. (*ECF Minute Entry and Order dated Apr. 23, 2026*.) As explained below and in the Court's Highly Sensitive Supplemental Memorandum and Order, the Court grants in part the government's motions in *limine* and denies the defendants' motions *in limine*.

---

[1] The moving defendants are Huawei Technologies Co., Ltd. ("Huawei Tech"), Huawei Device Co., Ltd. ("Huawei Device"), Huawei Device USA, Inc. ("Huawei Device USA"), and Futurewei Technologies, Inc. ("Futurewei") (collectively, "Huawei"). Unless otherwise specified, the term "defendants" refers to these four entities.

[2] The parties filed public redacted and sealed unredacted versions of their briefs and exhibits. Where possible, this memorandum cites to the public redacted version of the parties' filings. The Court grants all of the requests to seal the parties' submissions related to the motions *in limine nunc pro tunc*.

The parties should propose redactions for a version of this order to be filed on the public docket.

## LEGAL STANDARD

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, trial." *McLeod v. Llano*, No. 17-CV-606, 2021 WL 1669732, at *2 (E.D.N.Y. Apr. 28, 2021) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). "*In limine* rulings are 'subject to change when the case unfolds.'" *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

Evidence is admissible if it is relevant — if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401; Fed. R. Evid. 402. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A court making a Rule 403 determination "conscientiously balance[s] the proffered evidence's probative value with the risk" of the enumerated dangers. *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

As a general matter, evidence of a defendant's prior crimes or bad acts is not admissible to prove propensity or to show bad character. Fed. R. Evid. 404(b). Bad acts and other crimes evidence may, however, "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* Courts in the Second Circuit follow the "inclusionary" approach to Rule 404(b) and admit evidence of bad acts "unless it is introduced for the sole purpose of showing the defendant's bad character, . . . is overly prejudicial under Fed. R. Evid. 403[,] or not relevant

under Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996). "In ruling on the admissibility of evidence under Rule 404(b), the Court must consider whether: '(1) it was offered for a proper purpose; (2) it was relevant to a disputed trial issue; (3) its probative value is substantially outweighed by its possible prejudice; and (4) the trial court administered an appropriate limiting instruction.'" *United States v. Segui*, 19-CR-188, 2019 WL 8587291, at *7 (E.D.N.Y. Dec. 2, 2019) (quoting *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003)). Moreover, evidence of other acts is admissible as direct evidence, and is not subject to Rule 404(b), "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997)).

Finally, hearsay — an out-of-court statement offered for the truth of the matter it asserts — is inadmissible unless it falls within an enumerated carveout or exception. Fed. R. Evid. 801; Fed. R. Evid. 802; Fed. R. Evid. 803.

## DISCUSSION

### I. Requests to Preclude Certain Evidence

#### a. Government's Motion to Preclude Evidence, Argument, or Questioning About the Propriety of Seizures of Personal Property

The government moves to "preclude evidence, argument, or questioning, including questioning on cross-examination of government witnesses, regarding the propriety of the government's seizures of personal property." (ECF No. 646 at 17.) When the government filed its motions *in limine*, the defendants' motion to suppress (ECF No. 542) was pending before the Court. The government argued that "[i]f the Court resolves the pending motion in the government's favor, then there is nothing improper about the seizures and the defendants should

not be permitted to suggest otherwise;" "if the Court resolves the pending motion in the defendants' favor and suppresses any of the seizures at issue, the alleged impropriety would not be probative, and any arguable probative value would be substantially outweighed by the risk that the jury would be misled." (*Id.* at 18.) The defendants argue that "the Court should not preemptively prohibit questioning of unidentified witnesses about unidentified topics without regard to whether and how the Court has ruled on those topics." (ECF No. 686 at 16.) Most of the defendants' argument on this subject assumed that the Court would suppress the evidence. (*See* ECF No. 686 at 16–17.) On June 18, 2026, however, the Court denied the defendants' motion to suppress. (*See* ECF No. 756.) For that reason, the defendants' arguments are largely moot.[3]

There is, moreover, no other basis to permit cross examination on the propriety of the searches conducted in this case, including the searches of laptops seized from a Huawei employee in February 2018 and April 2018, which the Court concluded were lawful. (*See* ECF No. 756.) "As illustrated by the Court's order denying [the defendants'] motion to suppress evidence, this issue has been litigated and decided. Therefore, [the defendants are] prohibited from introducing or attempting to introduce any testimony or argument regarding the alleged unlawfulness of the search at issue." *United States v. Brown*, No. 25-CR-81, 2026 WL 1020643, at *4 (D. Conn. Apr. 15, 2026). The propriety of searches and seizures of evidence is a matter for the Court to decide, not the jury. That is true whether the defense moves to suppress evidence or not. Thus, the Court will charge the jury, as it does in every case, that "the evidence

[3] The defendants also argue that "[i]f the Court were to deny Huawei's motion to suppress under [the] theory [of inevitable discovery], that would hardly suggest that the officers' underlying conduct was beyond reproach." (ECF No. 686 at 16–17.) The Court did not decide the motion to suppress on an inevitable discovery theory. (*See* ECF No. 756.)

presented to [the jury] was obtained legally," that the jury can consider that evidence, and that "the methods used to collect evidence or investigate should not enter into [the jurors'] deliberations in any respect." *United States v. Kelly*, No. 19-CR-286, ECF No. 303, at 18 (E.D.N.Y. Sept. 27, 2021).

Accordingly, the government's motion to preclude the defendants from questioning witnesses, introducing evidence, or arguing about the propriety of searches and seizures is granted.[4]

**b. Government's Motion to Preclude Argument or Questioning Regarding Civil Litigation Resolutions or Judicial Rulings**

According to the government, "several of the corporate victims engaged in civil litigation with one or more of the defendants regarding the defendants' alleged intellectual property thefts." (ECF No. 646 at 19.) The government "anticipates introducing evidence at trial of the existence of certain of these prior cases for the purpose of authenticating evidence or proving the defendants' obstructive acts," but moves to preclude "introduction of evidence, argument, or questioning concerning the resolutions of the cases, including any settlement agreements, findings of liability, or awards of damages, or other judicial rulings issued during the civil matters." (*Id.*)

The defendants maintain that the motion is "overbroad and premature." (ECF No. 686 at 18.) The defendants "do[] not presently intend to introduce any civil litigation jury verdicts," but say that "certain of the orders and settlement agreements may be directly relevant to rebut the government's evidence and assertions in this case." (*Id.*) It is difficult to see how the resolutions

[4] The defendants argue that since they "did not move to suppress most government searches at issue in this case, based on standing and other considerations[,] [t]he absence of any judicial finding with respect to those searches plainly does not insulate the searching agents from cross-examination." (ECF No. 686 at 17.) The defendants do not identify the searches to which they refer, or explain how cross-examination on the propriety of a search would not run afoul of the rule described above.

in civil cases are probative at a criminal trial. Given the obvious differences between civil and criminal trials, including the nature of the charges and the standards of proof, the potential for misleading the jury is significant. *See Manko v. United States*, 63 F. App'x 570, 572–73 (2d Cir. 2003) (summary order); Fed. R. Evid. 403. Accordingly, the Court will not permit this evidence as a general matter. If there is a scenario that that makes the terms of a particular resolution relevant, the Court will consider it at the appropriate time.

The defendants also argue that joint statements or other public statements associated with the settlement agreements may be admissible at trial. (ECF No. 686 at 20–21.) But the defendants do not explain how these statements are admissible. As out of court statements presumably offered for their truth, they are hearsay. Fed. R. Evid. 801(c); Fed. R. Evid. 802; *United States v. Cardascia*, 951 F.2d 474, 486 (2d Cir. 1991). The defendants have not identified any exceptions that apply to these statements and concede that "[t]he admission of any such statements would of course need to comply with the hearsay rules and other applicable rules of evidence." (ECF No. 686 at 20.) Accordingly, the Court grants the government's motion to preclude the defendants from introducing the statements, unless there is a hearsay exception that applies.

Finally, the defendants argue that "[r]eferences to these litigations without any mention of the *fact* of resolution — as the government would have it — risks confusing the jury and unfairly prejudicing Huawei." (ECF No. 686 at 21.) The parties may elicit the fact that the lawsuits have been resolved. *See United States v. Johnson*, 469 F. Supp. 3d 193, 226 (S.D.N.Y. 2019). The Court will give the jury a limiting instruction on how it should consider evidence of the civil litigations. The parties are directed to confer and propose a limiting instruction by September 1, 2026.

**c. Government's Motion to Preclude Evidence, Argument, or Questioning Regarding Victim Institutions' Alleged Negligence or Lack of Financial Harm**

The fourth superseding indictment charges the defendants with bank fraud, conspiracy to commit bank fraud, wire fraud, and conspiracy to commit wire fraud, as well as racketeering conspiracy. (*See generally* ECF No. 689.) The government asserts that the Court should not permit the defense to argue that the victim banks knew or should have known about the extent of Huawei Tech's relationship with Skycom Tech. Co., Ltd. ("Skycom") or to offer "evidence or argument about the victim companies' or financial institutions' lack of financial harm" (ECF No. 646 at 33–34), because negligence and the absence of financial harm are not defenses to fraud (*id.* (first citing *United States v. Isola*, No. 10-CR-833, 2012 WL 243083, at *1 (S.D.N.Y. Jan. 11, 2012); and then citing *Kousisis v. United States*, 605 U.S. 114, 124 (2025)).

*i. Victim Institutions' Alleged Negligence*

The defendants respond that they will not argue that bank negligence excuses fraud. (ECF No. 686 at 24.) Rather, "Huawei intends to argue that it did not defraud the banks about its relationship with Skycom in part because it *told the banks* about its relationship with Skycom." (*Id.* at 23 (emphasis in original).) For example, the defendants say that [redacted] knew that Huawei Tech and Skycom were related, because Huawei Tech told the [redacted] employees who managed the bank's relationship with Huawei and serviced Huawei's accounts that [redacted] was facilitating "Iran-related transactions for Skycom" on Huawei's behalf; this knowledge, according to the defendants, is attributable to [redacted] (ECF No. 668 at 23–24.) The fact that employees at [redacted] knew about the relationship, the defendants contend, tends to prove that the defendants did not intend to defraud [redacted] (ECF No. 686 at 24.) They argue that even if [redacted] Chief Financial and Risk Officer — whom the government intends to call as a witness — "did not know about Huawei's relationship with Skycom, the reason for that knowledge gap is not any fraud by

Huawei, but rather the failure" of [redacted] Huawei relationship managers "to provide complete information to the bank's risk and compliance functions." (*Id.* at 23–24.)

Relevance is a "low threshold, easily satisfied." *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019). To prove the bank fraud and wire fraud charges, the government must show that the defendants lied about their relationship with Skycom, among other things, with the intent to trick the victims into giving the defendants money or property. (ECF No. 689 at 36–38.) 18 U.S.C. §§ 1343, 1344; *see also Shaw v. United States*, 580 U.S. 63, 67 (2016) (bank fraud); *Kousisis*, 605 U.S. at 118 (wire fraud). In this context, evidence that the defendants told [redacted] representatives the truth about their relationship with Skycom is relevant because it makes the fact that the defendants had this fraudulent intent "less probable than it would be without the evidence." Fed. R. Evid. 401. This is an issue of weight, not admissibility. Accordingly, the defendants may argue that the fact that Huawei employees told the bank relationship managers about Huawei Tech's connection to Skycom tends to prove that they did not intend to defraud the victim banks.

On the other hand, the defendants may not argue that "any ignorance on the part of [redacted] risk and compliance witnesses was attributable to [redacted] internal processes" (ECF No. 686 at 24), because that is tantamount to arguing that [redacted] negligence excuses fraud. "The Second Circuit follows the well settled rule that a defendant charged with a fraudulent scheme may not assert as a defense the victim's negligent failure to discover the fraud." *United States v. Ahmed*, No. 14-CR-277, 2016 WL 8732355, at *3 (E.D.N.Y. June 24, 2016); *see also United States v. Thomas*, 377 F.3d 232, 242–43 (2d Cir. 2004) (rejecting "unreasonable victim" argument "that there can be no fraud if the victim did not act as a person of ordinary prudence and comprehension would"); *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007)

(upholding trial court's decision to preclude the defendant from arguing "that it is a defense to mail fraud to demonstrate that the victim could have discovered based on external sources that the representation was false"); *United States v. Frenkel*, 682 F. App'x 20, 21–22 (2d Cir. 2017) (summary order) (concluding that the trial court did not err in precluding the defendant "from introducing evidence of Citigroup's alleged negligence in conducting due diligence on the loan transactions," "because a victim's negligence is not a defense under the federal fraud statutes"). The Court will instruct the jury accordingly. *See United States v. Kaufman*, 617 F. App'x 50, 52 (2d Cir. 2015) (summary order) (rejecting challenge to jury instruction that "[v]ictim negligence, carelessness or gullibility is no defense" to bank and loan fraud charges).

The fourth superseding indictment alleges that on August 22, 2013, Wanzhou Meng — Huawei Tech's Chief Financial Officer ("CFO") — gave a presentation to an [redacted] executive, in which she lied about Huawei's "ownership and control of Skycom" and "compliance with applicable U.S. law." (ECF No. 689 ¶¶ 76–77; *see also* ECF No. 646 at 49.) As part of a deferred prosecution agreement, Meng admitted that her statements were false. (*See* ECF No. 590-1 at 4.) The defendants propose introducing evidence that "[redacted] Global Relationship Manager for Huawei admitted to the government that he omitted information pertaining to Skycom from the report provided" to [redacted] Chief Financial and Risk Officer and others and "similarly chose not to reveal that [redacted] had facilitated Iran-related transactions for Skycom." (ECF No. 668 at 24 n.3.) As explained above, the defendants may argue that they lacked fraudulent intent. The Court will not permit them to mount a "blame the victim" defense — to argue that Huawei gave [redacted] the information it needed to evaluate misrepresentations like Meng's, which should have enabled the banks to discover the fraud. *See United States v. James*, 607 F. Supp. 3d 246, 255 (E.D.N.Y. 2022) (precluding argument that the fact that the defendant

provided the victim insurance companies with "all of the information that they needed to evaluate" his claims negated intent to defraud); *Ahmed*, 2016 WL 8732355, at *3–4 (precluding argument that Medicare's negligent approval of fraudulent claims led the defendant "to believe his claims were proper, and this innocent belief evidences a lack of criminal intent").

Accordingly, the government's motion is granted in part and denied in part.[5] The Court grants the government's request to preclude the defendants from arguing that the victim banks acted negligently or unreasonably. (*See* ECF No. 646 at 34.) The Court will permit evidence that the victim banks knew about Huawei Tech's relationship with Skycom. (*See id.*)

*ii. Absence of Financial Harm*

According to the defendants, evidence that the victim banks did not suffer financial harm "tends to rebut the core elements of fraud like intent and materiality." (ECF No. 686 at 25.) Whether the banks suffered financial losses is irrelevant to the defendants' intent or the materiality of their alleged misstatements. *See* Fed. R. Evid. 401; Fed. R. Evid. 402.

Indeed, the federal fraud statutes are "agnostic about economic loss." *Kousisis*, 605 U.S. at 124, 132. "To prove a scheme to defraud, the government must prove that the defendant made misrepresentations that were material, and that the defendant acted with fraudulent intent."

---

[5] The defendants also ask the Court to admit evidence of the victim banks' knowledge and conduct for impeachment purposes. (ECF No. 686 at 25.) They assert that the government will likely use "hearsay statements by bank employees purporting to represent assurances provided by Huawei . . . that none of its [redacted] transactions related to Iran." (*Id.*) The defendants want to show "that the way [redacted] handled the relevant transactions provided the declarant[s] with a motive to fabricate." (*Id.*) "A criminal defendant must 'be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony.'" *United States v. Lee*, 660 F. App'x 8, 18 (2d Cir. 2016) (summary order) (quoting *Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008)). That is because "[a] defendant's major weapon when faced with the inculpatory testimony of an accusing witness often is to discredit such testimony by proof of bias or motive to falsify." *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir. 1972). As the defendants note, the admissibility of their proposed impeachment evidence depends on the witness or declarant, as well as the statement at issue. (*See* ECF No. 686 at 25.) Therefore, the Court will rule on the admissibility of this evidence for impeachment purposes in context at trial.

*United States v. Runner*, 143 F.4th 146, 154 (2d Cir. 2025) (citation modified). The intent element requires that the defendants "schem[ed] to 'obtain' the victim's 'money or property,' regardless of whether [they] seek[] to leave the victim economically worse off." *Kousisis*, 605 U.S. at 124 (quoting 18 U.S.C. § 1343); *see also id.* at 132 (discussing that *Shaw*, 580 U.S. at 67, "rejected the argument that a [bank] fraud conviction depends on economic loss"). And materiality is an objective test based on whether "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Frenkel*, 682 F. App'x at 22–23 (summary order). Based on these standards, evidence that the individual victim banks did not suffer net financial harm because of their dealings with Huawei has no bearing on Huawei's intent or whether Huawei's statements were material. Therefore, the government's motion to preclude evidence or argument about the victim banks' lack of financial harm is granted.

**d. Government's Motion to Preclude Evidence Related to the Defendants' Lack of Economic Benefit from Allegedly Stolen Intellectual Property**

Count Two of the fourth superseding indictment alleges that the defendants conspired to steal numerous trade secrets from victim companies, in violation of 18 U.S.C. § 1832. (ECF No. 689 ¶¶ 92–93; *see also* ECF No. 646 at 34.) The government moves to preclude the defendants from "introducing evidence, arguing, or otherwise suggesting to the jury that a lack of use or economic benefit from a stolen trade secret is a defense to the charges." (ECF No. 646 at 35.) The government argues that economic benefit is not an element of conspiracy to steal trade secrets. (*Id.* at 34–35 (first citing 18 U.S.C. § 1832; and then citing 2 Modern Federal Jury Instructions-Criminal 4.18.1832).) The defendants respond that this evidence is relevant to their lack of criminal intent to steal trade secrets. (*See* ECF No. 686 at 26–28.)

Evidence that the defendants did not use or benefit economically from stolen trade secrets is admissible under Federal Rules of Evidence 401, 402, and 403. First, it is generally relevant. To prove that the defendants are guilty of conspiracy, "the government must demonstrate that [they] possessed the specific intent to commit the offenses that were its objects." *United States v. Roldan*, 167 F.4th 569, 577 (2d Cir. 2026) (quoting *United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014)). Here, the government must show that the defendants acted "with [the] intent to convert a trade secret . . . to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret." 18 U.S.C. § 1832(a). If the jury concludes that the defendants acquired other companies' trade secrets, but did not intend to do anything with them, the defendants "would lack the criminal intent required for conviction — even if [they] were acting improperly, unethically, or even illegally in some other respect." *Roldan*, 167 F.4th at 577. Thus, evidence that the defendants did not use or economically benefit from stolen trade secrets tends to make it more probable that they did not have the criminal intent to convert the trade secret for the benefit of someone other than the owner of the trade secret. *See* Fed. R. Evid. 401; *Roldan*, 167 F. 4th at 577–78 (holding that the district court improperly excluded evidence that a co-defendant had previously facilitated drug seizures by law enforcement, because the evidence bore on the defendant's intent, made "it more probable that [the defendant] believed he was assisting a law-enforcement seizure rather than participating in a drug-trafficking conspiracy," and "tend[ed] to corroborate [the defendant's] testimony," ultimately "rendering it relevant under Rule 401"); *see also United States v. Sing*, No. 14-CR-212, 2016 WL 54906, at *15–16 (C.D. Cal. Jan. 4, 2016) (concluding that the government did not prove all of the elements of unauthorized possession and attempted possession of trade secrets, in violation of 18 U.S.C. §§ 1832(a)(3), (a)(4), because "the evidence

presented at trial showed that the . . . trade secret sat idle on defendant's computer for two years"), *aff'd*, 736 F. App'x 184 (9th Cir. 2018).

To the extent that the government claims that the Court should exclude this evidence in any event, because its probative value is substantially outweighed by the risk of confusing the jury, that argument is unpersuasive. (ECF No. 646 at 34–35.) The government suggests that jurors may conclude that use or economic benefit from stolen trade secrets is an element of the offense that the government must prove beyond a reasonable doubt. *Id.* However, because criminal intent "may be only inferentially proven, . . . no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh any relevancy it might have." *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952). And the risk of confusion is low. First, the defense will not be permitted to argue in summation that the government must prove that the defendants used or benefitted from stolen trade secrets. *Cf. United States v. Livak*, 808 F.3d 160, 189–90 (2d Cir. 2015) (concluding that the trial court improperly excluded circumstantial evidence of the defendant's lack of intent to defraud, and noting that the trial court could have "properly proscribed" any argument in summation "suggesting that everybody did it and therefore it isn't illegal" (citation modified)). Second, the Court will instruct the jury on the elements of the offense, and "it is axiomatic that jurors are presumed to follow their instructions." *United States v. Beverly*, 5 F.3d 633, 641 (2d Cir. 1993) (citing *Zafiro v. United States*, 506 U.S. 534, 540 (1993)).

Accordingly, the government's motion to preclude the defendants from introducing evidence or making arguments regarding the defendants' lack of use or economic benefit from allegedly stolen trade secrets is denied.

**e. Government's Motion to Preclude Evidence Related to Defendants' Prior Commission of "Good Acts" or Non-Commission of Other "Bad Acts"**

The government moves to preclude the defendants from "presenting evidence or argument concerning their prior commission of 'good acts' — including their creation of jobs, sale of quality products, charitable giving, or positive role in the global economy — or to offer proof of their noncriminal activities to seek to disprove their guilt of the crimes charged." (ECF No. 646 at 35.) The government argues that this evidence is inadmissible under Rule 404(b)(1) if offered to suggest that the defendants "acted in conformity with those prior good acts." (*Id.* (citation omitted).) The defendants respond that they "do[] not intend to introduce character evidence prohibited by the rules," such as "evidence regarding [Huawei's] job creation, charitable giving, or positive role in the global economy to prove that Huawei has good character inconsistent with the charged offenses." (ECF No. 686 at 29.) However, they argue that the Court should not categorically exclude "evidence regarding [Huawei's] corporate formation, development, and operations to negate the government's prosecution theory." (*Id.* at 29–30.)

As explained above, "[e]vidence of any other crime, wrong, or act" is not admissible to show a defendant's character, but it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Moreover, while "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions," *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir.1990), a defendant's good acts are relevant in narrow circumstances: where "a defendant is alleged to have always or continuously committed bad acts . . . or where the evidence of good acts would undermine the underlying theory of a criminal prosecution," *United States v. Damti*, 109 Fed. App'x 456 (2d Cir. 2004) (summary order) (citation modified) (first citing *Scarpa*, 913 F.2d at 1010; and then citing *United States v. Santos*,

201 F.3d 953, 962 (7th Cir. 2000)). *See also James*, 607 F. Supp. at 256–58 (refusing to categorically preclude evidence of "good acts" because "[e]vidence to show that not all of Defendant's billing practices were fraudulent may be relevant" where the government identified as fraudulent "nearly all" of the defendant's claims during the relevant time period).

The fourth superseding indictment charges that the defendants committed multiple crimes over many years. It charges that they "executed a scheme to operate and grow the worldwide business of HUAWEI and its parents, global affiliates and subsidiaries through the deliberate and repeated misappropriation of intellectual property of companies headquartered or with offices in the United States . . . for commercial use." (ECF No. 689 ¶ 6.) It further alleges that the defendants "launched a formal policy instituting a bonus program to reward employees who obtained confidential information from competitors." (*Id.* ¶ 11.) Resolving this dispute will depend on what the evidence is and what the government argues. For example, evidence that not all of the defendants' technology was stolen "may be relevant to disprove the Government's theory that Defendant's business was almost entirely fraudulent." *James*, 607 F. Supp. 3d at 258.

The defendants have not proffered any specific "good acts" evidence they seek to introduce; accordingly, the Court will determine the admissibility of specific evidence at trial. *See James*, 607 F. Supp. 3d at 258.

**f. Government's Motion to Preclude Evidence, Argument, or Questioning Regarding [redacted] alleged Prior Wrongdoing**

As discussed above, the defendants and some of the corporate victims engaged in civil litigation over the theft of intellectual property. (*See* ECF No. 646 at 19.) For example, in 2017, Huawei Tech and Futurewei sued [redacted] and one of [redacted] founders, [redacted]. (*See id.* at 26.) The government moves to "preclude evidence, argument, or questioning regarding [redacted] alleged wrongdoing involving FutureWei," including alleged violations of his

"employment contract with FutureWei and misappropriation of FutureWei's trade secrets." (*Id.* at 38.) It argues that these claims "were rejected by the civil jury" and should be excluded under Rules 401 and 403. (*Id.*) The defendants respond that "there are myriad ways in which the history between Huawei and [redacted] may be relevant." (ECF No. 686 at 34.) The defendants explain that the fourth superseding indictment refers to an internal Huawei presentation that "'articulated the countermeasures planned' against [redacted] (*id.* (quoting ECF No. 126 ¶ 46); *see also* ECF No. 689 ¶ 44), and [redacted] actions explain why Huawei needed to take "countermeasures," (ECF No. 686 at 34).

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Chang*, No. 18-CR-681, 2024 WL 3303717, at *3 (E.D.N.Y. July 3, 2024) (quoting *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001)). Evidence of [redacted] alleged wrongdoing is not categorically irrelevant, so its admissibility under Rule 403 depends on the context in which it is offered. Accordingly, the Court will rule on the admissibility of specific evidence at trial.

**g. Government's Motion to Preclude Evidence, Argument, or Questioning Regarding [redacted] Continued Relationship with Huawei Tech**

Counts Five and Eight of the third superseding indictment charged the defendants with bank fraud and conspiracy to commit bank fraud based on false statements made to [redacted] and its U.S. subsidiary. (ECF No. 126 ¶¶ 67, 84–86, 101–02, 107–08.)[6] The fourth superseding indictment does not include these charges. (*See* ECF No. 689.) In a different motion, the government asserts that it intends "to introduce Huawei Tech's misrepresentations regarding its separation from [redacted] made to" [redacted] among other banks "as direct evidence

---

[6] The third superseding indictment refers to [redacted] as "Financial Institution 4" and its subsidiary as "U.S. Subsidiary 4." (*See generally* ECF No. 126.)

of the RICO conspiracy and under Rule 404(b) as evidence of motive, intent, preparation, plan, knowledge, absence of mistake, or lack of accident." (ECF No. 629 at 56.) The government states that it "recently learned' that [redacted] "elected to continue its banking relationship with Huawei Tech and other Huawei entities, notwithstanding the unsealing of charges in this case in early 2019." (*Id.* at 38.) It moves to "preclude evidence, argument, or questioning about [redacted] decision to maintain its banking relationship with the defendants." (*Id.* at 38–39.)

In the government's view, [redacted] continued relationship with Huawei is irrelevant to materiality, because "a victim can be defrauded and then continue its relationship with the fraudster for reasons entirely separate from the fraud;" [redacted] decision does not have anything to do with "whether an objectively reasonable decisionmaker would have viewed the defendants' misrepresentations to the other victim financial institutions as material." (*Id.* at 39.) But the government addresses only what conclusions a jury could draw from the evidence, not whether the evidence is admissible. *Cf. United States v. Akhavan*, No. 20-CR-188, 2021 WL 2776648, at *4 (S.D.N.Y. July 2, 2021) ("[T]he Government was only required to prove that a reasonable banker was reasonably likely <u>to consider</u> the fact that these were marijuana transaction [sic], not that this consideration would have been dispositive." (emphasis in original)); *see also Frenkel*, 682 F. App'x at 22.

In *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), the Supreme Court addressed the materiality requirement of the False Claims Act, which uses the same definition of materiality, drawn from common law, that the Supreme Court has applied to other federal fraud statutes. *See Escobar*, 579 U.S. at 192–93 ("Section 3729(b)(4) defines materiality using language that we have employed to define materiality in other federal fraud statutes: '[T]he term material means having a natural tendency to influence, or be capable of

influencing, the payment or receipt of money or property.'" (citing *Neder v. United States*, 527 U.S. 1, 16 (1999)) (other citations omitted)); *see also Frenkel*, 682 F. App'x at 22 (explaining that materiality is assessed "from the objective perspective," as "*Neder* itself makes clear that the definition of materiality for purposes of wire fraud, mail fraud, and bank fraud, was incorporated from the common law, and that, at common law, a matter is material if '*a reasonable man* would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question,'" (quoting *Neder*, 527 U.S. at 22 n.5)). Applying this definition, the Supreme Court held that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Escobar*, 579 U.S. at 195. Judged by that standard, [redacted] decision to continue doing business with Huawei, even though it was aware that Huawei lied about Huawei Tech's relationship with [redacted] is relevant, admissible evidence. *See* Fed. R. Evid. 402; *see also Akhavan*, 2021 WL 2776648, at *3–4 (explaining that the court allowed the defendants to argue and introduce evidence that "even after the indictment in this case, U.S. issuing banks and credit unions continued to authorize tens of millions of dollars of marijuana transactions" to show that their misrepresentations were not material).

The government's motion to preclude evidence that [redacted] continued its relationship with Huawei is denied.[7]

---

[7] If the government does not introduce evidence that Huawei Tech lied to [redacted] about its separation from [redacted] decision to continue its relationship with the defendants does not appear to be relevant. *See* Fed. R. Evid. 403. Therefore, the government may renew this motion, if necessary, at trial.

**h. Government's Motion to Preclude Argument that Futurewei's Application for a Provisional U.S. Patent Negates Criminal Intent**

Count Two of the fourth superseding indictment charges that on October 30, 2009, Futurewei "filed a provisional patent application with the U.S. Patent and Trademark Office that used and relied upon in large part" on trade secret information that the defendants stole from [redacted] in late-September 2009. (ECF No. 689 at 33; ECF No. 646 at 55.)[8] The government asks the Court to preclude the defense from arguing that the provisional patent application shows that Huawei Tech and Futurewei did not intend to steal [redacted] trade secrets. (ECF No. 646 at 55.) According to the government, provisional patents "are not publicly filed and are not required to have a formal patent claim or an oath or declaration," so "any argument that the filing of the provisional patent either reflected the defendants' lack of criminal intent or put [redacted] on notice of the trade secrets theft should be precluded as factually wrong, misleading, and irrelevant." (*Id.*) The defendants respond that "[w]hether [redacted] was 'on notice' of any trade secret theft is not at issue, but Huawei's lack of criminal intent is," that they are "entitled to present evidence and urge any reasonable inference from admitted evidence that negates these criminal intent elements," and "[p]ublic disclosure is inconsistent with a criminal intent to convert another's trade secret, and intent to further an unlawful purpose." (ECF No. 686 at 59–60.)

The defendants can argue that submitting a provisional patent is inconsistent with criminal intent, and the government can respond that provisional patent applications are not available to the general public and that submitting one does not negate criminal intent, because filing the application would not alert the victim of the wrongdoing. It is up to the jury to decide

---

[8] The fourth superseding indictment refers to [redacted] as "Company 4." (*Compare* ECF No. 629 at 23 *with* ECF No. 689 at 33.)

which inferences to draw from the evidence. *See United States v. Gatien*, 18 F. App'x 37, 40 (2d Cir. 2001) (summary order); *see also United States v. Sabhnani*, 599 F.3d 215, 241–42 (2d Cir. 2010) ("'[J]urors are entitled, and routinely encouraged, to rely on their common sense and experience in drawing inferences' of a defendant's knowledge and his criminal intent." (quoting *United States v. Huezo*, 546 F.3d 174, 182 (2d Cir. 2008))). "Counsel for both prosecution and defense are entitled to argue the inferences to be drawn from the evidence." *United States v. De Fillo*, 257 F.2d 835, 840 (2d Cir. 1958). "The responsibility for resolving the ultimate conclusions from these arguments rests upon the jury." *Id.* The Court is confident that the lawyers in this case will not make factually incorrect statements or mischaracterize the extent to which provisional patents are publicly filed. *See also* N.Y. R. Prof. Conduct 3.3(a). Therefore, the Court denies the government's motion to preclude the defense from arguing that Futurewei's provisional patent application is evidence that the defendants did not have criminal intent.

## II. Requests to Admit Certain Evidence

### a. Government's Motion to Establish Reasonable Procedures to Preserve the Confidentiality of any Trade Secrets Presented During Trial

The government asks the Court to "enter an order establishing reasonable procedures to preserve the confidentiality of any trade secrets that will be at issue during trial." (ECF No. 646 at 36 (citing 18 U.S.C. § 1835(a)).) In particular, the government "proposes that: (1) any exhibit containing a trade secret not be published to the public gallery; (2) at a party's request, an exhibit containing a trade secret that is admitted into evidence be submitted under seal; and (3) any testimony taken about a trade secret, either on direct or by cross-examination, be kept to a sufficient level of generality that would prevent the public from discerning the substance of the trade secret, either by listening in the gallery or reading trial transcripts." (*Id.* at 37.) If any

testimony "exceeds this level of generality, the government requests that either party be permitted to move to seal that portion of the transcript." (*Id.*)

The defendants "do[] not oppose withholding trade secrets from the public gallery and sealing such evidence on the public docket, so long as the government identifies any trade secrets early enough for Huawei to contest overdesignation." (ECF No. 686 at 31.)[9] The parties are to work together to designate the exhibits containing trade secrets, and to make a renewed motion for a protective order prior to trial.

The defendants do, however, oppose the government's third request, which they claim would violate their Confrontation Clause rights; they argue that "[e]ven when courts have established procedures to protect trade secrets, they have permitted defendants to conduct robust cross-examination on the topics or information contained in the sealed or unpublished exhibits." (*Id.* at 33.) The government concedes that sealing the transcripts is adequate to protect the trade secrets at issue. (*See* ECF No. 646 at 37.) Accordingly, the Court denies the government's motion to keep testimony regarding trade secrets "to a sufficient level of generality." (*Id.*) The Court will consider sealing portions of the trial transcript if it becomes necessary to protect trade secrets.

---

[9] The defendants also request that "any measure must be invisible and unknown to the jury to avoid the irreparable prejudice that would result if the jury believed that the Court considered the information to be a trade secret." (ECF No. 686 at 33.) The Court will give the jurors a general instruction that some exhibits do not appear on the public monitor, that they should not attach any significance to that fact, that it is done to protect privacy, and is not uncommon in criminal trials. *See United States v. Nosal*, No. 08-CR-237, 2013 WL 11327121, at *6 (N.D. Cal. Mar. 29, 2013) ("[I]f it appears that they [sic] jury has become aware that the monitors are being turned off for certain exhibits, this Court will inform the jury that this is done to protect the privacy of certain individuals, and not because the Court has made any determination as to whether or not the documents involve contain trade secrets.").

**b. Government's Motion to Elicit Testimony Regarding the Issue of Materiality Through Hypothetical Questions**

The government moves to ask hypothetical questions of "current and former employees of the victim technology companies and victim financial institutions . . . regarding the issue of materiality." (ECF No. 646 at 40.) It argues that this kind of testimony is permissible under *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013). (*Id.*) The defendants respond that "[t]he Court should bar the government from asking hypothetical questions that exceed the scope of permissible questioning outlined in *United States v. Cuti*." (ECF No. 686 at 38.)

In *Cuti*, the Second Circuit held that Federal Rules of Evidence 602 and 701 permit the use of "hypothetical questions [that] utilize[ ] facts that ha[ve] been independently established in the record," and that "a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." *Cuti*, 720 F.3d at 458–59. These "'what-if-you-had-known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud." *Id.* at 459.

The Court grants the government's motion "to the extent the proper foundation is established for each question and that the questions are posed as hypotheticals without requiring the jury to assume the guilt of the defendant." *United States v. Peraire-Bueno*, No. 24-CR-293, 2025 WL 2753560, at *4 (S.D.N.Y. Sept. 29, 2025) (citation modified); *see also Chang*, 2024 WL 3303717, at *9. The defendants are free to "challeng[e] the factual accuracy of the disputed testimony" at trial. *Cuti*, 720 F. 3d at 459.

**c. Government's Motion to Admit Contemporaneous Accounts Memorialized in Writing as Recorded Recollections**

The government moves to admit "contemporaneous written accounts of (1) a meeting in August 2013 between then-Huawei Tech CFO Meng and [redacted] principal [redacted];" and (2) a letter from [redacted], [redacted] general counsel, to Huawei Tech about "the incident

at the Supercomm trade show in 2004." (ECF No. 629 at 49.) The government expects the witnesses to testify at trial. (*Id.* at 50.) The first document is [redacted] email to a coworker on August 23, 2013 summarizing his meeting the previous day with Meng. (*Id.* at 49) The second is [redacted] July 21, 2004 letter to principals of Huawei Tech "less than a month after Zhu was caught after hours at the Supercomm trade show improperly examining [redacted] proprietary optical networking device." (*Id.* at 50.) The letter "summarized [redacted] contemporaneous understanding of the events, including her receipt of the memory cards and notebook that were forwarded to her." (*Id.*) The government seeks to admit "the substance of the August 23, 2013 email and the July 21, 2004 letter . . . as recorded recollections," if the witnesses' "memories falter." (*Id.*)

"Rule 803(5) of the Federal Rules of Evidence is an exception to the hearsay rule for past recollection recorded." *Parker v. Reda*, 327 F.3d 211, 213 (2d Cir. 2003). To be admissible under Rule 803(5), the record must (1) concern "a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;" (2) be "made or adopted by the witness when the matter was fresh in the witness's memory;" and (3) "accurately reflects the witness's knowledge." Fed. R. Evid. 803(5). "If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party." *Id.* "Before any document can be read into evidence under Rule 803(5), the proponent of the memorandum must establish that: (i) the witness'[s] 'memory of the events detailed in the memorandum was sufficiently impaired'; (ii) the witness had 'prepared or adopted the memorandum at or near the time of the events' at issue; and (iii) at the time the witness 'prepared or adopted [the memorandum], it correctly reflected his knowledge of the events.'" *United States v. Kortright*, No. 10-CR-937, 2011 WL 4406352, at *11 (S.D.N.Y. Sept. 13, 2011) (quoting *Parker*, 327 F. 3d at 213). The

motion is denied at this point, because the government has not yet laid the proper foundation. The government may renew this motion at trial, if it becomes necessary.

**d. Government's Motion to Introduce Evidence of Huawei Tech's Statements Contained in Media Reports**

The government also seeks to introduce "Huawei Tech's statements disseminated through certain news reports," including in "several articles" published by *Light Reading* in 2004 and by *Reuters* in the fall of 2012 and the winter of 2013. (ECF No. 646 at 41.) In general, "newspaper articles containing quoted remarks are hearsay within hearsay [—] they contain out of court statements by the quoted individual, within a document that is itself an out of court statement." *Mandal v. City of New York*, Nos. 02-CV-1234, 02-CV-1367, 02-CV-6537, 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006). However, "newspaper articles need not be excluded from evidence when they contain admissions by a party opponent under Rule 801, provided the article is a recorded recollection under Rule 803(5), or falls within the 'residual exception' of Rule 807." *Id.* at *2.

The government argues that the statements attributed to Huawei Tech in the *Reuters* articles are admissible as statements of a party opponent. (ECF No. 646 at 47.) It argues that the statements in the *Light Reading* article are not hearsay because the government will not offer them for the truth of the matter asserted; alternatively, it argues that the statements in the *Light Reading* article are admissible as statements in furtherance of a conspiracy. (*Id.* at 45.) The defendants do not deny that the statements attributable to Huawei in the *Reuters* articles are admissible under Rule 801(d)(2). (*See* ECF No. 686 at 42.) They object that the statement attributed to a Huawei employee in the *Light Reading* article is inadmissible because "the government has not established that [the declarant] and the defendants joined such a conspiracy." (*Id.* at 42–44.) "Those portions of the [articles] that contain direct quotations or attribute specific

statements to individual Defendants or their agents are not hearsay because they are admissions by party opponents under Rule 801(d)(2)." *Mandal*, 2006 WL 3405005, at *2. However, even assuming that the first level statements in both articles are admissible under 801(d)(2), or are not hearsay, the government has not established that the articles are admissible under Rule 803(5) or Rule 807.

Under Rule 807, "a hearsay statement is not excluded by the rule against hearsay" if "(1) the statement is supported by sufficient guarantees of trustworthiness — after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a).[10] "[A] district court has considerable discretion in determining admissibility under Rule 807." *Wright v. Undercover Officer #84*, No. 15-CV-4498, 2018 WL 4042101, at *6 (S.D.N.Y. Aug. 22, 2018) (quoting *United States v. James*, No. 02-CR-778, 2007 WL 1579977, at *3 (E.D.N.Y. May 31, 2007)). Courts that have admitted articles under Rule 807 have emphasized that the witness who made the statement is unavailable to testify, *see Kellner v. City of New York*, 811 F. Supp. 3d 325, 364 (E.D.N.Y. 2025), or that there was a "compelling need for the evidence" in the articles because witnesses deposed prior to trial claimed not to have any recollection of the relevant events described in the articles, *Mandal*, 2006 WL 3405005, at *3. *Cf. Miro v. City of Bridgeport*, No. 20-CV-346, 2023 WL 4992877, at *13 (D. Conn. Aug. 3, 2023) (holding that a newspaper article was not admissible under Rule 807 where "[t]he principal parties whose statements and claims are recounted in the article . . . are available to testify as witnesses, and

[10] The defendants acknowledge that the government provided the written notice that Rule 807 requires. (*See* ECF No. 686 at 46.)

[the proponent] has not identified any information contained in the article that could not be presented through live testimony or non-hearsay exhibits instead"). Because the government has not made that showing, the articles are inadmissible under Rule 807.

Like the "contemporaneous written accounts" question, the government has not at this point established that the authors' "memory of the events detailed in the [articles] was sufficiently impaired." *Parker*, 327 F. 3d at 213. Therefore, they are not admissible under Rule 803(5). Accordingly, the Court denies the government's motion *in limine* to admit the *Light Reading* and *Reuters* articles. The government may renew this motion at trial, if necessary.[11]

**e. Government's Motion to Introduce Evidence That Futurewei Paid Attorneys' Fees and Costs for one of Huawei Tech and Futurewei's Alleged Co-Conspirators**

In 2019, [redacted] a professor at Xiamen University, was a visiting professor at the University of Texas. (ECF No. 686 at 52.) He was arrested and pled guilty to making materially false statements to federal agents. (*See* ECF No. 629 at 50–51; ECF No. 686 at 52–53.) The government claims that the prosecution was "related" to [redacted] efforts to "assist[] Huawei Tech's efforts to reverse engineer [redacted] proprietary technology." (ECF No. 629 at 50.) The government moves to admit evidence that Futurewei paid [redacted] attorney's fees "as an act in furtherance of the conspiracies charged in Counts Two (theft of trade secrets conspiracy) and Three (wire fraud conspiracy)." (*Id.* at 51–52.) Huawei concedes that Futurewei paid the fees, but objects to the evidence. (ECF No. 686 at 53.) According to the defendants, "[c]ourts have admitted attorney fee information for other specific purposes in highly fact-specific analyses,

[11] Moreover, admitting these statements would be appropriate only if the government establishes that (1) the declarants do not deny making the statements attributed to them in the articles, and (2) the authors either recall writing the articles and possess "contemporaneous notes that are consistent with them" or are "prepared to offer foundational testimony about [their] routine reporting practices and those of the [relevant publications]." *Mandal*, 2006 WL 3405005, at *4.

none of which aligns with the government's asserted purpose here," that "[t]he payment of Professor [redacted] attorney's fees is not probative of any relevant issue," and that "any probative value is substantially outweighed by the risk of unfair prejudice and jury confusion, as well as the likelihood of delay." (ECF No. 686 at 53–55.)

The Second Circuit has recognized that "payment of another person's legal fees may imply facts about a prior or present relationship with that person." *In re Shargel*, 742 F.2d 61, 64 (2d Cir. 1984). Thus, "evidence of such payments is highly relevant to whether the benefactor is the head of a criminal enterprise as defined by the RICO statute." *United States v. Simmons*, 923 F.2d 934, 949 (2d Cir. 1991). But the evidence was admissible in these cases because it was "probative of concerted activity among the several clients." *Id.* The Second Circuit emphasized that the fees were paid "by one individual on behalf of other suspected members of a criminal enterprise." *Id.*; *see also United States v. Mauro*, No. 92-CR-15S, 1994 WL 55768, at *3 (W.D.N.Y. Feb. 10, 1994) (describing *United States v. Barnes*, 604 F.2d 121, 155 (2d Cir. 1979) as holding "that multiple defendants' decisions to use the same attorney may suggest a conspiracy among them"); *United States v. Castellano*, 610 F. Supp. 1151, 1160 (S.D.N.Y. 1985) ("*Barnes* implicitly stands for the proposition that, when other suspicious circumstances are present, the decision of a number of persons to retain the same lawyer may be probative of an association among them.").

In this case, Futurewei paid the legal fees of one person — [redacted] — in a separate criminal case, with different charges. While the evidence is relevant insofar as it shows a connection between Futurewei and [redacted], it is not sufficient to show that Futurewei led a conspiracy. Moreover, any marginal relevance is substantially outweighed by the risk of

confusing the issues and misleading the jury. Fed. R. Evid. 403. Accordingly, the government's motion *in limine* is denied.

**f. Government's Motion to Admit Evidence of [redacted] Destruction of Evidence**

The fourth superseding indictment alleges that the defendants and [redacted] engineer [redacted] worked together between 2000 and 2003 to misappropriate trade secrets from [redacted] (ECF No. 689 ¶¶ 23, 91–92, 93(b).)[12] The government moves to admit "evidence of [redacted] effort to delete evidence of his relationship with Huawei Tech from his home computers" in 2009. (ECF No. 646 at 53–54.) In its June 8, 2026 order, the Court denied the defendants' motion to exclude this evidence categorically, but observed that "[i]t may be appropriate for the Court to exclude specific pieces of evidence at trial, depending on how the government offers it." (ECF No. 730 at 19–23.) The Court explained that "evidence that [redacted] tampered with his personal computer in an effort to destroy evidence of the conspiracy is generally relevant," because "[a]n act that is alleged to have been done in furtherance of the conspiracy is considered part of the very act charged and may be admissible as direct evidence of the conspiracy itself." (*Id.* at 19–20 (citations and quotation marks omitted).)

The defendants ask the Court to exclude the evidence, because [redacted] was not an active member of an ongoing conspiracy with Huawei in 2009. (ECF No. 686 at 58.) They cite this language from Justice Robert Jackson's concurrence in *United States v. Grunewald*: "[A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and

[12] The fourth superseding indictment refers to [redacted] as "Engineer-1," and to [redacted] as "Company 2." (ECF No. 606 at 4 n.1.)

punishment." 353 U.S. 391, 402 (1957) (Jackson, J. concurring)); *see also United States v. Floyd*, 555 F.2d 45, 48 (2d Cir. 1977) (describing Justice Jackson's reasoning as the "established rule"), *abrogated on other grounds by United States v. Brutus*, 505 F.3d 80, 87 n.5 (2d Cir. 2007). (*See* ECF No. 686 at 58.) To hold otherwise "would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators." *Grunewald*, 353 U.S. at 402.

In *Grunewald* and the cases that follow it, the government was seeking to introduce acts of concealment that took place after the goals of the conspiracy were accomplished; what *Grunewald* established is that concealment alone does not extend the conspiracy period once the conspiracy is complete. *Id.* at 399. In *Floyd*, members of a bank robbery conspiracy burned the getaway car the day after they robbed a bank; the Second Circuit held that the arson, intended to conceal the robbery, was "outside the bounds" of the conspiracy to rob the bank. 555 F.2d at 48. In this case, the fourth superseding indictment charges that the defendants conspired to steal trade secrets from 2000 to February 2020. (ECF No 689 ¶ 92.) [redacted] is alleged to have destroyed evidence in 2009, six years after he gave Huawei [redacted] trade secret information in 2003, but while the conspiracy was ongoing. (ECF No. 646 at 54.) When [redacted] tampered with his computer in 2009, the "central criminal purposes" of the broader conspiracy had not been accomplished. *See Grunewald*, 353 U.S. at 402. It is a "well-established principle" that "absent withdrawal, a conspirator's 'participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators.'" *United States v. Salmonese*, 352 F.3d 608, 615 (2d Cir. 2003) (citation modified) (quoting *United States v. Diaz*, 176 F.3d 52, 98 (2d Cir. 1999)). The defendants do not cite any authority to support applying the *Grunewald* rationale to conduct committed during the conspiracy period, and the Court is not aware of any. The rule is that a co-

conspirator's "participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators," absent "affirmative evidence of withdrawal," meaning "some act that affirmatively establish[es] that he disavowed his criminal association with the conspiracy and that he communicated his withdrawal to the co-conspirators." *Diaz*, 176 F.3d at 98 (first quoting *United States v. Greenfield*, 44 F.3d 1141, 1150 (2d Cir. 1995); and then quoting *United States v. Minicone*, 960 F.2d 1099, 1108 (2d Cir. 1992)).

The Court adheres to its decision permitting the evidence, and "will rule on the admissibility of specific evidence at trial." (ECF No. 730 at 19–23.)[13]

**g. Government's Motion to Permit Evidence of Huawei Tech's Misrepresentations to Victim Financial Institutions About the Reasons for its Commercial Separation from [redacted]**

The government seeks "to introduce Huawei Tech's misrepresentations regarding its separation from [redacted] made to [redacted] and [redacted] as direct evidence of the RICO conspiracy and under Rule 404(b) as evidence of motive, intent, preparation, plan, knowledge, absence of mistake, or lack of accident." (ECF No. 629 at 56.) This evidence, the government says, "constitutes part of Huawei Tech's ongoing scheme to reinvest proceeds of racketeering income to maintain or grow Huawei's operations in the United States." (*Id.* at 58.) Therefore, "this evidence is central to the RICO conspiracy

---

[13] The defendants also argue that the Court should exclude [redacted] "hard drive and data" because the government has had them since 2012, but did not provide them to the defendants until March 3, 2026. (ECF No. 686 at 59.) The defendants do not identify any discovery obligation or deadline that they believe the government has violated. The defendants rely on an out-of-circuit case — *United States v. Davis*, 244 F.3d 666, 669–71 (8th Cir. 2001) — and *United States v. Wang*, No. 98-CR-199, 1999 WL 138930, at *37 (S.D.N.Y. Mar. 15, 1999), but those cases are quite different. In *Davis*, the government turned over the evidence four days before trial, and in *Wang*, seven days before trial. *Davis*, 244 F.3d at 669–71; *Wang*, 1999 WL 138930, at *37. Here, the government disclosed [redacted] hard drive and data about six months before jury selection, which is scheduled to begin on September 8, 2026. (*ECF Minute Entry and Order dated Apr. 23, 2026.*) The defendants do not claim that they need more time to review the evidence and prepare for trial.

charge (Count One), completes the story of the Skycom fraud perpetrated on multiple global financial institutions, and should be admitted as direct evidence of that charge." (*Id.*) Alternatively, the government argues that the evidence "is admissible under Rule 404(b) to demonstrate motive, intent, plan, absence of mistake, or lack of accident regarding the Skycom-related financial fraud charged in Counts Four, Six, and Nine." (*Id.*)

The defendants respond that this evidence is not "inextricably intertwined" with or "necessary to complete the story of" the alleged Skycom scheme because that scheme ended two years earlier, and that the government's claim that the evidence provides background for the Skycom scheme is "chronologically backward." (ECF No. 668 at 62–63.) Even if this evidence were admissible, the defendants contend, "the evidence should still be excluded under Rule 403, because the government could easily establish that Huawei was seeking banking partners without introducing evidence of additional alleged misrepresentations." (*Id.* at 63.) The defendants also assert that the evidence is inadmissible under Rule 404(b) because "it has little to no probative value" and "to the extent the government is relying on a generalized motive to obtain banking services in 2017 as proof of intent to defraud in 2012 and 2013, that is simply propensity evidence by another name," and "if the government really sought only to prove that Huawei was seeking banking partners in 2017, it could do so through entirely nonprejudicial evidence, rather than through allegations of fraud." (*Id.* at 64–65.) Finally, the defendants argue that "[e]ven if this evidence had some limited non-propensity probative value, that value would be substantially outweighed by its potential for unfair prejudice." (*Id.* at 65 (citation modified).)

The fourth superseding indictment charges the defendants with racketeering conspiracy based in part on Huawei's "continued scheme to defraud financial institutions." (*See* ECF No. 689 ¶¶ 80–83; 85–90.) It alleges that "[a]fter learning of Financial Institution 1's decision to

terminate its relationship with HUAWEI, HUAWEI took steps to secure and expand its banking relationships with other financial institutions," and that "[i]n doing so, HUAWEI employees made material misrepresentations to these financial institutions regarding the reason for the termination of its relationship with Financial Institution 1 and the party responsible for the termination, claiming that HUAWEI, not Financial Institution 1, had initiated the termination." (*Id.* ¶ 81.) It further alleges that "[b]ased in part on these false representations and omissions," financial institutions "continued to maintain their existing banking relationship," and that as a result, Huawei "received income indirectly in the form of cost savings and the value of continued banking services, the proceeds of which income were used to operate and grow HUAWEI's business." (*Id.* ¶¶ 82–83.) Evidence that Huawei Tech made misrepresentations about its separation from [redacted] to other financial institutions is direct evidence of the racketeering conspiracy charged in the fourth superseding indictment. Accordingly, the Court grants the government's motion *in limine* to admit this evidence.

**h. Government's Motion to Admit Evidence of Huawei Tech's Misrepresentations in Victim Bank Reports, Emails, and Questionnaires, and Preclude Huawei Tech from Offering Self-Serving or Other Hearsay Contained in Same Documents**

The government moves to admit "statements attributed to Huawei Tech in certain records created by victim banks, namely (1) reports assessing the reputational risk of retaining Huawei as a client, (2) internal emails concerning, among other things, the banks' responses to news reports about Huawei, and (3) sanctions compliance questionnaires reflecting information collected from Huawei Tech." (ECF No. 693 at 6–7.) According to the government, these "types of documents . . . should be admitted because they are records of regularly conducted activity pursuant to Federal Rules of Evidence 803(6)(D) and 902(11)." (*Id.* at 10.) In addition, "[t]he statements therein attributed to Huawei Tech are admissible non-hearsay because they will not be offered

for their truth" — in other words, there is no multiple hearsay issue. (*Id.*) The defendants object that "[t]he government's motion is premature and procedurally defective because the government has disclosed neither the records it seeks to admit nor the certifications it says will establish admissibility." (ECF No. 710 at 12.)

Under Federal Rule of Evidence 803(6), evidence is "not excluded by the rule against hearsay" if it is "[a] record of an act, event, condition, opinion, or diagnosis," and if:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). And under Federal Rule of Evidence 902(11):

> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court [is self-authenticating]. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11). Therefore, Rule 902(11) requires that a party seeking to introduce a self-authenticating record must "make the record and certification available for inspection" before trial. *Id.* It does not appear that the government has given the defendants the certifications for

these records. (See ECF No. 710 at 12.) Accordingly, the Court denies the government's motion *in limine* without prejudice to renew once the government provides the certifications required by Rule 902(11). *See United States v. Weigand*, No. 20-CR-188, 2021 WL 568173, at *2 (S.D.N.Y. Feb. 14, 2021) (denying motion *in limine* "with respect to those exhibits concerning which the Government has not produced a custodian certification without prejudice to being renewed once such a verification is produced").[14]

The government also moves to "preclude Huawei Tech from admitting its own statements or other second-level inadmissible hearsay contained in these same documents." (ECF No. 693 at 7.) "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). The defendants "expect that [they] may offer certain of [Huawei's] own statements that tend to show, for example, Huawei's own transparency with the alleged fraud victims, or its own state of mind; or that tend to show notice to the banks, or bank personnel's state of mind." (ECF No. 710 at 22–23.) "[A] statement offered to show its effect on the listener is not hearsay." *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (citing Fed. R. Evid. 801(c), Advisory Committee's Note). However, "[w]hen the defendant offers his own statement simply to show that it was made, rather than to establish the truth of the matter asserted, the fact that the statement was made must be relevant to the issues in the lawsuit." *Marin*, 669 F.2d at 84. "Under this rubric, self-serving and exculpatory statements are inadmissible hearsay and may not be introduced by the defendant at trial." *United States v. Vrancea*, No. 12-CR-198, 2013 WL 549099, at *4 (E.D.N.Y. Jan. 4, 2013). In any event, neither the government nor the defendants

[14] Some of these documents and statements contained within them are addressed in the parties' briefing in connection with Rule 15 depositions. (*See, e.g.*, ECF No. 758 at 22–23.) The Court will address the admissibility of these documents and statements when it rules on the Rule 15 motions.

have identified the particular exhibits or statements at issue. Accordingly, the Court will rule on the admissibility of particular evidence at trial.

**i. Government's Motion to Admit Prior Trial Testimony**

The government seeks to introduce Futurewei employee Dr. [redacted] testimony in [redacted]. *v. Huawei Technologies USA, Inc. et al.*, No. [redacted] (the "[redacted] case"). (ECF No. 691 at 16.) [redacted] Huawei Tech, Futurewei, and Huawei Technologies USA, Inc. were co-defendants in the [redacted] case, a civil lawsuit that [redacted] brought for misappropriation of trade secrets. (*Id.*) [redacted] testified at the trial, and Huawei's attorneys cross-examined him. (*Id.* at 16–17.) The government argues that his testimony is admissible under Rule 801(d)(2)(D), as a statement of an agent or employee. (*Id.* at 17.) The government also plans to call [redacted] as a witness. (*Id.*)

In the Second Circuit, "[c]ourts are reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or both of the same parties." *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007); *see also Hettiarachchi v. Cnty. of Suffolk*, No. 14-CV-6731, 2023 WL 6283287, at *4 (E.D.N.Y. Sept. 25, 2023) ("Courts in this circuit generally preclude evidence of other lawsuits, both related and unrelated to the case before the court, due to concerns of confusing the jury and unfairly prejudicing defendants." (citation modified)). Any probative value that [redacted] testimony in the [redacted] case might have is substantially outweighed by a danger of confusing the issues and wasting time. *See* Fed. R. Evid. 403. Further, as the defendants note, the Supreme Court has recognized that "former testimony often is only a weaker substitute for live testimony," and "[i]f the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification

for relying on the weaker version." *United States v. Inadi*, 475 U.S. 387, 394 (1986). Accordingly, the government's motion *in limine* to admit [redacted] prior testimony is denied.

**j. Government's Motion to Admit Evidence of Huawei Tech's Failure to Comply with a [redacted] Subpoena**

The government moves to "admit evidence of Huawei Tech's failure to comply with a [redacted] subpoena — notwithstanding the Court's order to comply with the subpoena — as evidence of consciousness of guilt." (ECF No. 691 at 20.) In 2019 and 2020, the government attempted to serve Huawei Tech with a [redacted] subpoena that requested documents in connection with its investigation of this case. (*See id.*) After Huawei Tech argued that it was not properly served, the government moved to compel compliance with the subpoena. (*See id.*) On March 11, 2021, the Court granted the motion to compel. *In Re Motion to Compel Compliance with* [redacted] *Subpoena to Huawei Techs. Co, Ltd.* ("*Motion to Compel*"), No. 19-MC-2228, ECF No. 48 (E.D.N.Y. Mar. 11, 2021). Huawei Tech began producing documents pursuant to the subpoena in May 2021; between then and October 30, 2025, it made over forty productions. (ECF No. 691 at 21.) In November 2025, the government asked Huawei Tech to complete its production of documents responsive to the subpoena. (ECF No. 697 at 31.) Huawei Tech refused to do so, because the [redacted] that issued the subpoena had expired. *See Motion to Compel*, No. 19-MC-2228, ECF No. 54 at 1. The government moved to compel Huawei Tech to comply with the subpoena; the Court denied the motion because it lacked jurisdiction to compel compliance with a subpoena issued by a [redacted] that was no longer sitting. *Id.*, *ECF Order dated Mar. 10, 2026*. The government then issued a new subpoena to Huawei Tech seeking substantially the same documents. *See id.*, ECF No. 63-1 at 3–12. Huawei Tech moved to extend the subpoena's return dates until after the trial, or alternatively to quash it. *See id.*, ECF

No. 63. The Court denied in part the motion to quash. *Id.*, ECF No. 79. Huawei Tech is appealing the Court's decision to the Second Circuit. *See id.*, ECF No. 85.

The government claims that it "has uncovered substantial evidence that inculpatory records responsive [] to the Requests do, in fact, exist, whereas the government's own review suggests that Huawei Tech has largely failed to produce such inculpatory records." (ECF No. 691 at 22.) The government cites documents that the defendants produced in reciprocal discovery, documents that former Huawei Tech employees and other parties provided to the government, and information from witnesses or other documents that suggest the defendants still have certain documents and have not produced them. (*Id.* at 22–25.) The government argues that "Huawei Tech's productions in response to the subpoena and its reciprocal discovery production demonstrate an abuse of the [redacted] process to suppress inculpatory evidence," and seeks to introduce "witness testimony and documentary evidence of Huawei Tech's noncompliance with the [redacted] subpoena as evidence of consciousness of guilt." (*Id.* at 25–26.)

The government relies on *United States v. Mastropieri*, in which Mastropieri instructed his brother-in-law to remove records from his office after he found out that the government was trying to get a search warrant for the records. 685 F.2d 776, 790–91 (2d Cir. 1982). The Second Circuit upheld the district court's decision to introduce evidence of Mastropieri's "connection with the removal of [] records as indicating consciousness of guilt." *Id.* at 790. Courts in this circuit have permitted evidence of defendants' "failure to retain records, in violation of the clear legal requirement to do so," and of a defendant's resulting failure to produce such records, as "probative of consciousness of guilt." *United States v. Baldeo*, No. S-1 13-CR-125, 2014 WL 351638, at *1 (S.D.N.Y. Jan. 31, 2014); *see also United States v. Sprecher*, 783 F. Supp. 133,

155–56 (S.D.N.Y. 1992) (noting that it was "difficult to imagine more compelling evidence of consciousness of guilt than the elaborate efforts of [a defendant] to prevent the production of the [bank] records" where "[h]e deliberately engaged in fabrication and forgery in order to suppress the records"), *aff'd*, 988 F.2d 318 (2d Cir. 1993).

The facts in this case are easily distinguishable. The government concedes that Huawei Tech produced almost 400,000 documents in response to the subpoena. (ECF No. 691 at 22.) In its examination of Huawei Tech's subpoena response in connection with the motion to quash, the Court explained that Huawei Tech "was not acting in bad faith" when it stopped producing documents. *Motion to Compel*, No. 19-MC-2228, ECF No. 79 at 13. And Huawei Tech's response to the subpoena remains outstanding because the parties are still actively litigating the motion to quash. *See id.*, ECF No. 85. Huawei Tech also claims that it offered to meet with the government to narrow the subpoena, but the government "brushed aside that outreach." (ECF No. 697 at 32.) Under these circumstances, Huawei Tech's response to the subpoena is not evidence of consciousness of guilt.[15] Even if this evidence were relevant, any limited probative value it might have is "substantially outweighed" by the risk of confusing the issues, misleading the jury, undue delay, and wasting time. *See* Fed. R. Evid. 403. Accordingly, the Court will not permit the government to admit evidence of Huawei Tech's failure to comply with the [redacted] subpoena.

---

[15] The government also cites *United States v. Roldan-Zapata*, in which one defendant told his co-defendant that "the government would have no case if [the co-defendant] did not talk." 916 F.2d 795 (2d Cir. 1990). The Second Circuit affirmed the district court's decision to admit the statement, because it was "an apparent attempt to suppress evidence of the crime and is plainly relevant to show [the defendant's] consciousness of guilt" and was admissible against the defendant as a statement of a party opponent. *Id.* at 803–04. Nothing like that has happened in this case.

**k. Government's Motion to Admit Evidence of the Government's Efforts to Procure Trial Testimony of Huawei's PRC-based Employees**

The government has sought to call 25 China-based Huawei employees (the "PRC Huawei employees"), including Wanzhou Meng, as trial witnesses. (ECF No. 693 at 26–27.) The defendants, the government asserts, have "refused to accept subpoenas to produce them for testimony at trial," even though they plan to call "numerous other PRC-based Huawei employees." (ECF No. 693 at 26.) The government moves to "introduce evidence of its unsuccessful efforts to procure the trial testimony" of the PRC Huawei employees because "[t]he defendants' efforts to pick and choose which witnesses from the PRC will testify at trial reflects the defendants' consciousness of guilt." (*Id.* at 26–27.)

"Evidence of conduct designed to impede or prevent a witness from testifying is admissible as showing consciousness of guilt." *United States v. Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972). In *Cirillo*, the district judge permitted a witness to testify that Cirillo told him he planned to keep another witness from testifying at trial. *Id.* The Second Circuit affirmed that decision. Similarly, in *United States v. Alberti*, the Second Circuit upheld the district judge's decision to let the government cross-examine one defendant about "alleged threats that she made to [a witness] in order to dissuade him from testifying." 470 F.2d 878, 882 (2d Cir. 1972); *see also Castro v. Sullivan*, 662 F. Supp. 745, 751–52 (S.D.N.Y. 1987) (finding prosecutor's question to a witness about whether she was scared was proper, because the witness "revealed out of the jury's presence that [the defendant] or his family had in fact threatened her").

In February 2026, the government served Huawei Tech's counsel and Meng's personal lawyer with a trial subpoena and "a promise to issue a safe passage letter for Meng upon request." (ECF No. 691 at 28.) In April 2026, the government "served Huawei Tech's counsel with trial subpoenas for the PRC Huawei Employees, including a subpoena for Meng with an

updated trial date (which the government also served on Meng's personal counsel at Steptoe)." (*Id.*) The government "remains willing to issue safe passage letters for any of the subpoenaed parties upon request." (*Id.*) The defendants' lawyers told the government that they do not represent the PRC Huawei employees and were not authorized to accept service of the trial subpoenas; according to the government, counsel "did not provide contact information for the witnesses or their counsel," even though "[i]n the past, the defense team has identified for the government the name and contact information of counsel for current or prior employees based in the United States." (*Id.*) The government also maintains that "Huawei Tech regularly coordinates with the government for Huawei Tech personnel to travel to the United States to review discovery or participate in case-related discussions," and that Huawei Tech has "made PRC-based witnesses available for deposition and trial testimony" in prior, related civil litigations. (*Id.* at 29.)

While counsel have not assisted the government, the evidence falls short of showing that the defendants engaged in "conduct designed to impede or prevent" the PRC Huawei employees from testifying. *Cirillo*, 468 F.2d at 1240. There is no evidence that the defendants threatened the PRC Huawei employees, or that they plan to prevent these witnesses from testifying at trial. *See id.* at 1240; *Alberti*, 470 F.2d at 882. Accordingly, this evidence is inadmissible to show consciousness of guilt. "Evidence demonstrating a defendant's consciousness of guilt is admissible under Fed. R. Evid. 404(b) if the court determines that the evidence is more probative than prejudicial under Fed. R. Evid. 403." *United States v. Bein*, 728 F.2d 107, 114 (2d Cir. 1984). Any limited probative value this evidence may have is substantially outweighed by a danger of confusing the issues, misleading the jury, causing undue delay, and wasting time. *See* Fed. R. Evid. 403.

The government also asks that the Court give the jury a missing witness instruction. (ECF No. 693 at 30–31.) "It is well settled that when a party has it peculiarly within its power to produce witnesses and fails to do so, the jury may infer that the testimony, if produced, would be unfavorable to that party." *United States v. Myerson*, 18 F.3d 153, 158 (2d Cir. 1994) (citation modified). Therefore, "[a] missing witness charge inviting the jury to infer that the testimony of an uncalled witness might have favored a specified party is appropriate if production of that witness is peculiarly within the power of the other party." *United States v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir. 1994) (citation modified); *see also United States v. Caccia*, 122 F.3d 136, 138 (2d Cir. 1997) ("The most appropriate version of a 'missing witness' instruction, where the facts warrant it, permits the jury to draw an adverse inference against a party failing to call a witness when the witness's testimony would be material and the witness is peculiarly within the control of that party."). However, "[n]o instruction is necessary where the unpresented testimony would be merely cumulative." *United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988).

Citing *United States v. Lita*, 800 F. App'x 8 (2d Cir. 2020) (summary order), the defendants argue that a missing witness instruction is not warranted because "the government has failed to pursue established diplomatic and evidentiary processes to obtain the [PRC Huawei employees'] testimony." (ECF No. 710 at 42.) In *Lita*, the district judge denied the defense application for a missing witness instruction based on the government's failure to call a consular officer at trial. *Lita*, 800 F. App'x at 12. The defendants "assert[ed] that the consular officer was peculiarly within the government's control because of the difficulties they would have faced in subpoenaing a State Department employee stationed abroad." *Id.* at 13. However, the defendants "never asked the government to track down the consular officer or to provide them

with any information regarding such officer," and conceded that "the State Department provides a mechanism by which private parties may subpoena consular officers." *Id.* The Second Circuit cited cases in which "a defendant's failure to inquire about a possible missing witness suggests that a witness was not actually unavailable." *Id.* (citing *United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994); *United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990)). The government has not "fail[ed] to inquire about" the PRC Huawei employees, *Lita*, 800 F. App'x at 13; indeed, it has issued trial subpoenas for each of them (*see* ECF No. 693 at 28). This does not appear to be a case in which the government "has no real interest in calling the witness[es] to the stand," or that it "merely is engaged in a form of gamesmanship in an effort to obtain a missing witness charge." *Torres*, 845 F.2d at 1170.

The defendants also argue that "[t]he government has made no showing that Huawei has peculiar control over the [PRC Huawei employees]." (ECF No. 710 at 43.) "Whether a witness is exclusively within the power of one party depends upon all the facts and circumstances bearing on the witness's relationship to both parties." *United States v. Raysor*, Nos. 99-1503, 99-1504, 2001 WL 36037731, at *4 (2d Cir. Apr. 29, 2002) (summary order). Huawei argues that "[t]o the extent that the [PRC Huawei employees] refuse to come to the United States, they are unavailable to Huawei too," and that [t]he willingness of certain Huawei employees to voluntarily testify in this case, or in earlier civil lawsuits, does not establish that Huawei compelled those employees to testify, or that it could compel [the PRC Huawei employees] to testify even if doing so were permitted under Chinese law." (ECF No. 710 at 43.)

A defendant's employee may be peculiarly in his control. *See United States v. Beekman*, 155 F.2d 580, 584 (2d Cir. 1946); *cf. Reynolds v. Am. Airlines, Inc.*, No. 14-CV-2429, 2017 WL 5613115, at *12 (E.D.N.Y. Nov. 21, 2017) ("Mr. DuBreuil retired and is therefore not an

employee of the defendant. He is thus not 'peculiarly within the control' of the defendant."). As for Meng, Huawei's CFO, the Court has previously noted that Huawei Tech "presumably has control over" whether she will comply with the trial subpoena. (ECF No. 730 at 16 n.12.) However, the government has not identified the other presumably missing witnesses, nor has it explained what it expects their testimony to be, or whether their testimony would be cumulative. *See Torres*, 845 F.2d at 1169. At this point, the Court does not have sufficient information to rule on this request. The government may renew this motion if it becomes necessary at trial.

## III. Uncontested Motions

The government moves to preclude the following categories of evidence and argument:

- Argument about "improper prosecutorial motive or purpose," including "[e]vidence, argument, or questioning about the Department of Justice's ('DOJ's') China Initiative, in particular." (ECF No. 646 at 15–16.)
- Evidence, argument, or questioning that suggests the charges "target conduct that is commonplace in the technology industry." (*Id.* at 31.)
- Evidence, argument, or questioning related to a 2004 "cyber intrusion" on [redacted] network that post-dates Huawei's alleged misappropriation of [redacted] source code. (*Id.* at 52–53.)
- "[A]ny evidence, argument, or questioning about classified information during trial outside the scope of the Classified Information Procedures Act ('CIPA')." (*Id.* at 64.)

The defendants do not intend to introduce this evidence or make these arguments at trial. (*See* ECF No. 686 at 15, 22, 56, 66.)[16] Accordingly, the Court denies these motions *in limine* as moot.[17]

## CONCLUSION

For the above reasons, the government's motions *in limine* are granted in part.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
August 19, 2026

[16] The defendants say that the government's CIPA-related motion *in limine* is "unnecessary" and that "Huawei does not intend to ask about or disclose any classified information at trial and will invoke CIPA Section 5 only if the need arises." (ECF No. 686 at 66.) "CIPA § 5(a) requires defendants to provide a timely pretrial notice when they believe that the disclosure of classified information is reasonably likely based on their planned cross examination or case." *United States v. Alshahhi*, 628 F. Supp. 3d 449, 454 (E.D.N.Y. 2022). "When no filing date is specified by the Court, the default definition for 'timely pretrial notice' is thirty days before trial." *Id.* (citing 18 U.S.C. app. 3 § 5(a)). If a defendant "fails to comply with the requirements of subsection (a) the court may preclude disclosure of any classified information not made the subject of notification and may prohibit the examination by the defendant of any witness with respect to any such information." 18 U.S.C. app. 3 § 5(b)). Citing *Alshahhi*, 628 F. Supp. 3d at 545, the defendants also argue that they "retain[] the same rights here to demonstrate through questioning and argument that 'critical evidence is absent from the government's case.'" (ECF No. 686 at 67.) As Judge Cogan held in that case, "[i]f the Government does not introduce a certain type of evidence at trial," the defendants are generally "free to argue that this failure means the Government has not proved its case beyond a reasonable doubt." *Alshahhi*, 628 F. Supp. at 454. They may do this in their closing statements, or "via carefully worded direct and cross examination questions." *Id.*

[17] The government also "seeks a ruling that the defense cannot present evidence or argument that defense counsel knows to be false, including based on the contents of declassified discovery produced pursuant to the Court's CIPA Section 4 ruling." (ECF No. 646 at 67.) Rule 3.3 of the New York Rules of Professional Conduct prohibits a lawyer from knowingly making a false statement of fact or law to a tribunal, and from knowingly offering or using evidence the lawyer knows to be false. *See* N.Y. R. Prof. Conduct 3.3(a). The Court is confident that the lawyers for both sides are familiar with the applicable rules of professional conduct and will abide by them.