UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

USA v. Huawei Technologies Co., Ltd., et al.
No. 1:18-cr-00457 (AMD) (JAM)

**LETTER MOTION OF MATTHEW RUSSELL LEE, A JOURNALIST FOR INNER CITY PRESS APPEARING IN HIS PERSONAL CAPACITY, TO UNSEAL BRIEFING ON THE GOVERNMENT'S MOTION TO CLOSE THE COURTROOM, AND FOR NARROWER CLOSURE**

Dear Judge Donnelly:

Matthew Russell Lee, a journalist for Inner City Press appearing in his personal capacity, respectfully submits this letter motion regarding the Court's handling of the government's motion to close the courtroom during three witnesses' testimony (ECF No. 789).

For the reasons set forth below, the Government's motion, Huawei's response and the Government's reply should be unsealed, and all courtroom closing should be further minimized. Complete closure is not appropriate, under *Waller v. Georgia*, 467 U.S. 39, 48 (1984).

**The record itself illustrates the problem this motion raises.** On September 1, 2026, this Court correctly recognized that "the public and press have a qualified First Amendment right to attend criminal trials," citing *United States v. Alcantara*, 396 F.3d 189, 194-95 (2d Cir. 2005), and scheduled a public hearing for September 4 specifically because that right required one. That hearing was held. What followed it was not: the Court then ordered supplemental briefing, and every piece of that supplemental briefing (ECF Nos. 862, 863), along with the original motion, response, and reply that preceded the public hearing (ECF Nos. 789, 812, 815), has been filed entirely under seal. A public hearing was held on a question whose full legal argument, before and after that hearing, the public has never been permitted to see. The hearing satisfied the letter of *Alcantara*'s requirement without providing the transparency the requirement exists to serve.

Inner City Press did not appear at, or submit anything in connection with, the September 4 hearing, because he did not see the September 1 scheduling order or

the September 4 minute entry in time. He raises this not to excuse a delay in objecting to the closure itself — a delay he acknowledges — but because the two orders he did not see in time are not the only relief this letter seeks. The absence of a timely objection to the September 4 hearing does not resolve, and should not be read to waive, the separate and ongoing question this letter raises: whether the briefing filed under seal, before and after that hearing, should now be unsealed, and whether the closure the Court has ordered comports with the directives in *Waller v. Georgia*.

Those questions remain live regardless of when Mr. Lee became aware of the underlying proceeding, and Inner City Press respectfully asks that they be considered and ruled upon on their own terms.

Inner City Press conducts a daily search of CourtListener for the term "Waller v. Georgia," the seminal Supreme Court case governing courtroom closure, specifically to catch filings of this kind as they are docketed. (Inner City Press has successfully opposed and gotten modified at least three courtroom closures so far this year in the U.S. District Court for the Southern District of New York, where it is in-house press, a status it has requested thus far without direct response in EDNY). That search did not return a hit for either the September 1 scheduling order or the September 4 minute entry, because neither docket text cited *Waller* or any comparable case by name.

A daily search for the phrase "public hearing" instead would not have solved the problem; that term appears in an unmanageable volume of unrelated docket entries across the District. Inner City Press raises this not as a complaint about his own monitoring efforts, but because it illustrates precisely the structural gap addressed further below: a member of the press diligently searching for exactly this kind of proceeding can still miss it, through no fault of the search method, because nothing in the docket's own text signals what the entry concerns unless the reader already knows to look for it.

**First, the sealed briefing should be unsealed.** The public's interest in the legal arguments made for and against closing a courtroom is distinct from, and does not depend upon, access to the testimony the closure would protect. See *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). This is particularly true

where, as here, the Court has already held a public hearing premised on the public's right to observe how the closure question is resolved; sealing every paper filed in connection with that same question after the hearing renders the hearing's own premise incomplete.

**Second, the closure itself should be no broader than necessary.** *Waller v. Georgia*, 467 U.S. 39, 48 (1984), requires that any closure be "no broader than necessary" and that the trial court consider reasonable alternatives. The Court's September 18 order provides for redacted transcripts of the closed testimony "as soon as possible" after each witness testifies — a genuine and appropriate tailoring measure as to the testimony itself.

Inner City Press respectfully asks that the same principle be extended to the closure litigation: that redacted versions of the sealed motion, response, reply, and supplemental briefing be released promptly, on the same "as soon as possible" basis already applied to the testimony, rather than remaining sealed indefinitely pending the Court's forthcoming opinion.

**Third, Inner City Press respectfully requests that the promised opinion be issued publicly, as soon as possible (if it has not already been as of the time of this filing, which followed an email and then submission to the Clerk's Office), in full,** to the maximum extent consistent with whatever specific, narrow information the Court determines must remain protected. The Court's order states that "an opinion setting forth the Court's reasoning in detail" will follow. Given the national attention this case has drawn, that opinion is likely to be the primary vehicle by which the public can ultimately assess whether the closure satisfied the standards Alcantara, Press-Enterprise, and Waller require.

A sealed opinion addressing a public courtroom-closure question would repeat, at the most consequential stage, the same disconnect between process and transparency this letter identifies at the briefing stage.

**Finally, the difficulty Inner City Press describes above in locating this proceeding is precisely why a structural remedy, not just a case-specific one, is warranted.** The District of Colorado maintains a public, continuously updated webpage listing pending motions to seal or close proceedings, with stated windows for public objection, so that members of the press and public are not required to

already know a sealing dispute exists, or to guess the correct search term, in order to participate in it. See https://www.cod.uscourts.gov/Seal.aspx

Inner City Press respectfully suggests that this Court, or the Eastern District more generally, adopt a comparable practice. As this docket illustrates, even diligent, targeted monitoring can fail when nothing in a docket entry's own text signals its subject matter to anyone not already aware of it. This would also have avoided the issues litigated in EDNY in *In Re: Inner City Press*, 1:26-cv-04094 (WFK) https://www.courtlistener.com/docket/73591106/15/in-re-inner-city-press/

In this case, a request to unseal the request(s) for courtroom closure and to narrow any closure was emailed and submitted on September 18-19, yielded on the morning of September 19 this: "Dear Matthew Russell Lee, This email confirms the Court received one file you submitted." Now on the afternoon of September 21 this is being filed by ECF, as is the practice in SDNY (for example in USA v. Eric Adams, 1:24-cr-00556 (DEH), Dkt. 126; USA v. Arkan, 25-cr-13, Dkt 18, and this month USA v. Zhao, 1:26-mj-03587 (District Judge Margaret G. Garnett), Dkt 5).

The stakes of the underlying proceeding bear directly on why transparency here matters. This is not an ordinary commercial dispute; the government's case includes charges of trade secret theft and industrial espionage against American companies, as well as allegations that Huawei provided surveillance technology enabling the government of Iran to monitor its own population — allegations of a kind ordinarily associated with state security apparatus, not consumer electronics manufacturing. Public confidence in how such a case is tried, and in how the government's own conduct and evidence are tested in open court, is not diminished by the seriousness of the charges; if anything, it is heightened by it. President Trump himself remarked on September 18, 2026, ahead of Chinese President Xi Jinping's upcoming state visit on September 24, that whatever espionage China conducts, "we spy on them, too." Given this statement, it is more important, not less, that the specific surveillance allegations at issue in this prosecution be tested in open court, rather than simply asserted behind a sealed record. If the Court is amendable to oral argument on this, I would be honored to do so, any day except September 23-24.

Inner City Press and I appreciate the Court's consideration of these requests.

Respectfully submitted,

/s/

Matthew Russell Lee, Esq.
a journalist for Inner City Press
appearing in his personal capacity
PO Box 130222, Chinatown Station, New York, NY 10013
matthew.lee@innercitypress.com | 718-716-3540