**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MJC
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 22, 2026

By ECF

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Huawei Technologies Co., Ltd., et al.
Criminal Docket No. 18-457 (S-4) (AMD)

Dear Judge Donnelly:

The government respectfully requests that the Court preclude the defense from cross-examining David Barker, the former Chief Technology Officer of Quintel USA Inc. (formerly Quintel Technology Limited) ("Quintel"), about certain patent filings related to technology stolen from Quintel by Huawei. Such cross-examination would inject needless—and irrelevant and prejudicial—complications pertaining to U.S. and European patent law, and would likely draw the jury's attention to related civil litigation between Quintel and Huawei that is an unnecessary detour from this criminal prosecution.

The government expects to present evidence showing that between 2009 and 2010, FutureWei, at Huawei Tech's direction, stole trade secrets from Quintel. These trade secrets included the Per User Tilt ("PUT") concept and/or technology developed by Quintel, simulation results that showed the benefits and utility of PUT, and a block diagram schematic showing how PUT could be implemented in base station hardware.

On September 21, 2009, Quintel and FutureWei entered into a nondisclosure agreement ("NDA"), after which Quintel employees gave a presentation to FutureWei employees, including Dr. Zhengziang Ma. This written presentation contained, among other things, a description of Quintel's PUT antenna technology and detailed simulation results, which FutureWei subsequently misappropriated and converted into an antenna technology it called "User Specific Tilt" ("UST"). To that end, on October 30, 2009, FutureWei filed a provisional patent application with the U.S. Patent and Trademark Office ("USPTO") for its UST technology, which listed Dr. Ma as the only inventor. In the application, FutureWei incorporated and relied on Quintel's intellectual property, including certain written materials provided by Quintel during the September 21, 2009 meeting. On October 29, 2010, FutureWei filed a nonprovisional patent

application with the USPTO, claiming the benefit of its 2009 provisional patent application. On November 18, 2014, the USPTO issued to FutureWei Patent No. US 8,891,647 B2 (the "'647 patent"), titled "System and Method for User Specific Antenna Down Tilt in Wireless Cellular Networks," which embodied its UST antenna technology that is characteristic of Quintel's PUT technology.

On August 19, 2011—nearly two years after Huawei misappropriated the trade secrets Quintel disclosed in late 2009—Quintel filed a provisional patent application relating to its PUT technology, which the USPTO issued on May 17, 2016, as Patent No. 9,344,176 B2 (the "'176 patent"), titled "Method and Apparatus for Providing Elevation Plane Spatial Beamforming." On August 18, 2012, Quintel filed European Patent Application No. EP12825400.0 (the "EPO application"), which related to the same PUT technology at issue in the '176 patent. (DX 892 at 57). On March 16, 2015, the EPO rejected Quintel's application (*id.* at 43-49), stating that the inventorship claims set forth therein were "not new within the meaning of Article 54(1) and (2)" of the European Patent Convention, the law which governs European patents (*id.* at 46). In support of this conclusion, the EPO cited Huawei's '647 patent, which incorporated the misappropriated Quintel trade secrets. (*Id.* at 45-46).

It was partly through this communication from the EPO that Quintel first learned that Huawei had stolen its trade secrets and incorporated them into its own patent—the '647 patent.[1] Shortly thereafter, on May 5, 2015, Quintel sued Huawei for theft of trade secrets, breach of contract, fraud, and other claims. *See Quintel Tech. Ltd. v. Huawei Technologies USA, Inc., et al.*, No. 15-CV-307-ALM (S.D. Tex.) (ECF No. 1). During the pendency of Quintel's lawsuit, in order to salvage its intellectual property and mitigate the damage of Huawei's theft, Quintel's lawyers responded to the EPO in June 2016 that Quintel's invention was "novel under Article 54 EPC" when compared to Huawei's UST in the '647 patent because it relied upon a different method of implementation, notwithstanding their mutual reliance on the misappropriated Quintel trade secrets. (DX 892 at 22). Specifically, while both inventions "feature differentially phased signals or differentially amplitude [weighted] signals across two ports of a beamforming network," Huawei's "phase difference between virtual antennas is simply not the same" as Quintel's "phase difference across two ports of a beamforming network." (*Id.*) When questioned regarding these communications in the civil suit, Mr. Barker offered the same qualification in his testimony.

The Court should preclude the defense from cross-examining Mr. Barker about Quintel's U.S. and European patent filings. As defense counsel stated in a prior filing in this case, "[p]atent inventorship is distinct from, and has no bearing on, the core allegation in the Indictment: whether Huawei conspired to steal Quintel's trade secrets." (ECF No. 706 at 22). The government agrees. Whether or not Huawei conspired in or about 2009 to steal Quintel's trade secrets regarding PUT is entirely irrelevant to the patent inventorship issues pertaining to either the differences between the '647 patent and '176 patent occurring in or about 2016, or whether in early 2015 Quintel's invention was sufficiently "novel" under European patent law when compared to the '647 patent. *See Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18-CV-11386 (VSB),

[1] Contemporaneous with the March 2015 communication from the EPO, Mr. Barker learned from Canadian telecommunications operator Telus that Huawei had purportedly developed UST technology.

2023 WL 4159358, at *9 (S.D.N.Y. June 2, 2023) (explaining that a plaintiff's misappropriation of trade secret claims "did not rest on federal patent law" or "the question of inventorship"). The government is not required to prove that the invention at issue in Quintel's '176 patent and EPO application—which entails far more than the trade secrets misappropriated by Huawei—is meaningfully different from Huawei's UST in the '647 patent, let alone meaningfully different under European patent law. Nor would such proof, or lack thereof, make any fact of consequence regarding the alleged conspiracy to steal trade secrets from Quintel more or less probable, where the alleged misappropriation occurred years earlier. *See* Fed. R. Evid. 401.

Moreover, while the statements of Quintel's attorneys to the EPO were admissible party admissions in the civil litigation, they constitute inadmissible hearsay in this case. And though Mr. Barker testified regarding this same issue, he provided such testimony in response to a line of questioning about his attorney's statements to the EPO. Defense should not be permitted to sidestep the hearsay bar by eliciting testimony from Mr. Barker in this case that is fundamentally premised on inadmissible hearsay.

Finally, permitting Mr. Barker to testify regarding the differences between the '647 patent, on the one hand, and the '176 patent and EPO application, on the other, would require the government to present evidence regarding the civil suit that Quintel filed against Huawei shortly after discovering the misappropriation, lest the jury mistakenly conclude that, in light of such testimony, Quintel did not believe it had been victimized by Huawei. (*See* Order, ECF No. 790 (prohibiting, as a "general matter," evidence regarding the resolutions the corporate victims' civil litigations with Huawei)).

Accordingly, the Court should preclude cross-examination on these subjects.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By: /s/________________________
Alexander A. Solomon
Meredith A. Arfa
Robert Pollack
Matthew Skurnik
Matthew F. Sullivan
Assistant United States Attorneys
(718) 254-7000

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan J. Cohen
Jasmin Salehi Fashami
Trial Attorneys

CHRISTIAN J. NAUVEL
Acting Chief, Counterintelligence and
Export Control Section,
National Security Division,
U.S. Department of Justice

Aaron Jennen
Trial Attorney

cc: Clerk of the Court (by ECF and Email)
Defense counsel of record (by Email)