SIDLEY JENNER&BLOCK LLP Steptoe

September 23, 2026

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Huawei Technologies Co., Ltd.*, No. 18-457 (S-4) (AMD) (JAM)
Response to Government's Letter Motion Regarding David Barker's Testimony

Dear Judge Donnelly:

The Court should deny the government's motion to exclude David Barker's testimony related to Quintel's U.S. and European patent filings. The government seeks to preclude Huawei from cross-examining Barker—the supposed inventor of Quintel's "Per User Tilt" concept allegedly stolen by Huawei—about Quintel's patent filings with the U.S. Patent and Trademark Office ("USPTO") and the European Patent Office ("EPO"). This evidence is admissible and relevant to undercut the government's claim that Huawei stole Quintel's invention. The Court should therefore admit it.

**Background**

The government claims that Huawei stole trade secrets and misappropriated Quintel's "Per User Tilt" concept, which Huawei then relied on in Futurewei's U.S. provisional patent application (filed by Dr. Zhengxiang Ma on October 30, 2009). Huawei expects the evidence to show that (a) Quintel did not have a novel, patentable invention at the time Quintel met with Huawei and Futurewei representatives in September 2009, (b) Futurewei's Dr. Ma independently invented his own technology, for which he obtained a U.S. patent, (c) Quintel did not seek patent protection for any invention until roughly two years after its meeting with Huawei, and (d) after the EPO brought Futurewei's U.S. patent application to its attention, Quintel advocated that its invention was different than Futurewei's invention.

As early as 2008, Quintel considered filing a patent, but it did not have a new, distinct invention upon which to obtain one. It was not until August 19, 2011, that Quintel filed its first patent application related to Per User Tilt. According to Barker, this was the date when Quintel thought it "finally had enough information for a patent." DX-00896-0143 (Mar. 21, 2018 PM Trial Tr. 143:1-13). Barker acknowledged in his civil trial testimony that the information in Quintel's 2011 patent application went beyond the concepts Quintel discussed with Huawei in September 2009. DX-00896-0061 (Mar. 21, 2018 PM Trial Tr. 61:2-7). Quintel obtained a patent, and Barker acknowledged that Quintel's U.S. patent application was necessarily different than Futurewei's. DX-00896-0064 to 0065 (Mar. 21, 2018 PM Trial Tr. 64:24-65:23).

On August 18, 2012, Quintel filed a European Patent Application. DX-00892-0057. On March 16, 2015, the EPO initially rejected Quintel's application, stating that the inventorship

claims set forth therein were "not new" and citing Futurewei's patent application as one of the documents the EPO considered relevant. DX-00892-0045 to 0046. In response to the EPO's rejection, Quintel, through counsel, sent a letter explaining the differences between Quintel's and Futurewei's inventions, arguing that they are "simply not the same" and that Quintel's invention was "novel." DX-00892-0021. In his civil trial testimony, Barker testified that he was aware of Quintel's position with the EPO, and he agreed the two inventions were different. DX-00896-0146 to 0147 (Mar. 21, 2018 PM Trial Tr. 146:18-147:12).

**Argument**

The Court should deny the government's motion to preclude testimony and evidence regarding Quintel's patent applications. Such evidence is relevant because it tends to make a highly consequential allegation—that Huawei stole Quintel's supposed invention—less probable. Fed. R. Evid. 401. Among other things, Barker's testimony shows that: (a) in September 2009, Quintel did not believe it had a novel, patentable invention when it met with Huawei and Futurewei representatives, which supports Huawei's defense that Quintel shared only general information, not trade secrets; (b) Dr. Ma independently invented his own technology, which the U.S. and European patent authorities recognized was different than Quintel's concept; (c) Quintel did not develop any invention that was capable of obtaining patent protection until roughly two years after its meeting with Huawei/Futurewei and the submission of Futurewei's independent invention; and (d) Quintel believed there were significant differences between concepts over which it sought patents and Futurewei's earlier invention, which it said was "simply not the same."

The government's claim that Barker's testimony about the USPTO's and EPO's assessments of Quintel's patent application is the type of "patent inventorship" evidence that is generally inadmissible in a trade-secret case confuses the issues. *See* Dkt. 872 at 2. Barker's testimony that the Quintel invention was "simply not the same" as Futurewei's goes to whether Quintel's claimed invention was novel, i.e., the "uniqueness" of the creation, *M.H. Segan Ltd. P'ship v. Hasbro, Inc.*, 924 F. Supp. 512, 524 (S.D.N.Y. 1996), not "who actually invented the subject matter claimed in a patent," the question at the heart of inventorship, *Faryniarz v. Ramirez*, No. 3:13-CV-01064 (CSH), 2015 WL 6872439, at *19 (D. Conn. Nov. 9, 2015). Although the latter is irrelevant in a criminal trade-secret theft case, *accord Spectrum Dynamics Med. Ltd. v. Gen. Elec., Co.*, No. 18-cv-11386 (VSB), 2023 WL 4159358, at *9 (S.D.N.Y. June 2, 2023), the former is admissible evidence from which a jury can infer whether Huawei misappropriated Quintel's invention in the first place.[1]

---

[1] Nor would Barker's testimony about the relative novelty of Quintel's technology introduce concepts of foreign law. The parties need not introduce the jury to European law to contextualize Quintel's straightforward, non-technical statement that its invention was "simply not the same" as Futurewei's. In any event, U.S. and European patent law include the basic legal principle of novelty, so eliciting testimony about Quintel's statements about the novelty of its invention does not require the jury to consider foreign law. *See e.g.*, Daniel J. Gifford, *Government Policy Towards Innovation in the United States, Canada, and the European Union as Manifested in Patent, Copyright, and Competition Laws*, 57 SMU L. REV. 1339, 1359 (2004) ("European and

Nor would such testimony elicit inadmissible hearsay. Of course, Barker's testimony about his own personal understanding of the uniqueness of Quintel's invention would not elicit any out of court statement at all. Furthermore, Quintel's communications with the EPO are not offered to prove conclusively that Quintel's invention was, in fact, novel or different from Futurewei's. Rather, it is offered to show that, after the EPO rejected its application based on Futurewei's prior art, Quintel responded by taking the position before the EPO that its invention was "novel" and "simply not the same" as Futurewei's. The evidentiary value of the letter therefore derives from the fact that the statements were made, not from the truth of the matters asserted therein. Fed. R. Evid. 801; *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). Moreover, given that two patents cannot be issued for the same invention, the fact that the USPTO granted both Futurewei and Quintel patents for their respective inventions is further evidence that Quintel's invention is distinct from Futurewei's.

Finally, the government claims that Barker's testimony about Quintel's concession to the EPO is improper because it "would require the government to present evidence regarding Quintel's civil suit against Huawei." Dkt. 872 at 3. Not so. The discrete nature of the anticipated testimony would not require the parties to relitigate the civil case or present extensive evidence regarding that separate proceeding. If the government believes Quintel's EPO submissions should be understood in light of positions taken elsewhere, it may present that argument to the jury. But the possibility that the government may wish to offer rebuttal evidence does not render otherwise admissible testimony inadmissible. *C.f. Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("[v]igorous cross-examination [and] presentation of contrary evidence … are the traditional and appropriate means" of challenging admissible evidence). In any event, the government's argument lacks evidentiary support. The government cites no evidence that Quintel was merely attempting to "salvage its intellectual property and mitigate the damage of Huawei's theft" when it represented that its invention differed from Futurewei's. ECF 872 at 2. Nor did Barker offer that explanation during his three days of trial and deposition testimony.

**Conclusion**

For these reasons, the Court should deny the government's motion.

---

American laws governing patents in general . . . employ similar concepts. Both sets of laws require novelty and a substantial advance before providing protection to an invention.").

Respectfully submitted,

/s/ David Bitkower
David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

/s/ Doug A. Axel
Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

/s/ Brian M. Heberlig
Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*