**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NJM:AAS/MAA/MS/MJC
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 30, 2026

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Huawei Technologies Co., Ltd., et al.
Criminal Docket No. 18-457 (S-4) (AMD)

Dear Judge Donnelly:

Consistent with the discussion held at the close of the trial day on Thursday, September 24, 2026, the government respectfully submits this letter to clarify the scope of its intended proof at trial.

I. The False Statements the Government Intends to Prove in its Case in Chief

As part of its case in chief, the government expects to prove that the defendants (collectively "Huawei") made the following categories of false statements to the Victim Financial Institutions and/or the U.S. government:

- Skycom Tech Co. Ltd. ("Skycom") was Huawei's business partner in Iran, as opposed to its subsidiary and alter ego. *See, e.g.*, GX 25601-R at 6; GX 23314-R-1 at 4.

- Huawei divested itself of its shares in Skycom. *See, e.g.*, GX 25601-R at 7.

- Huawei did not offer or provide technology, products, or services to assist with conducting surveillance or censorship in Iran. *See, e.g.*, GX 25601-R at 9.

- Any technology, products, or services Huawei provided in Iran had solely civilian or commercial purposes. *See, e.g.*, GX 21322-3; GX 7600-R at 41; GX 25601-R at 9; 23316-R-10.

- Huawei did not provide any equipment to the Iranian government. GX 7600-R at 41; GX 10600-R at 6-7.[1]

- Huawei did not engage or plan to engage in any business with the Iranian Revolutionary Guards Corp or any of its agents or affiliates. *See*, *e.g.*, GX 23314-R-1.

- Beginning in 2011, Huawei voluntarily restricted its business development in Iran. *See, e.g.*, GX 21322-3; GX 25601-R at 8; GX 23316-R-1 at 13.

- Huawei did not do business in North Korea. *See, e.g.*, GX 10600-R at 6; GX 7602 at 52; GX 22306-3 at 1.

- Huawei did not use the Victim Financial Institutions to process transactions related to Huawei's business in sanctioned jurisdictions. *See, e.g.*, GX 21327 at 1; GX 25601-R at 16; GX 21307 at 4; GX 21614 at 10; GX 22603 at 9.

- Huawei ended its banking relationship with Financial Institution 1 rather than vice-versa. *See, e.g.*, GX 22304-1.

- Huawei's business in Iran has been in full compliance with all applicable laws and regulations including those of the United Nations, United States, and European Union. *See, e.g.*, GX 21322-3; GX 7600-R at 41.

With respect to the last category—that Huawei's business in Iran fully complied with all applicable United States laws and regulations—the government intends to argue, as expressly alleged in the S-4 Indictment, that Huawei violated U.S. sanctions laws prohibiting the export of financial services to Iran. *See* 31 C.F.R. § 560.204; S-4 ¶ 111. As previously stated, the government does not intend to argue, and has not alleged, that Huawei violated U.S. sanctions by exporting or reexporting U.S.-origin goods to Iran. *See, e.g.*, 31 C.F.R. § 560.205 (prohibiting the reexport of U.S.-origin goods from a third country and excepting from the prohibition goods that comply with the *de minimis* exception set forth in § 560.420).

Instead, the government has elicited limited evidence regarding Huawei's use of U.S. technology in Iran consistent with the Court's *in limine* ruling dated September 23, 2026. ECF No. 877. In that ruling, the Court denied a motion by the defense to preclude the government from offering evidence of Huawei exporting telecommunications equipment to Iran. *Id.* at 15-19. The Court reasoned that such evidence was admissible as direct evidence of the charged offenses for multiple reasons.

---

[1] The question of whether Huawei provided equipment to the Iranian government—and thus lied when it represented that it did not—is distinct from the question of whether Huawei violated U.S. export control laws. As explained below, the government does not intend to prove Huawei's compliance or non-compliance with export control regulations, and does not intend to argue that the jury should conclude that Huawei violated such regulations.

First, it provided "background evidence for the IEEPA and money laundering charges, and completes the story of those crimes"—namely, that Huawei and Skycom used intermediary entities in China to purchase, via U.S.-dollar transactions unlawfully processed through the United States, telecommunications equipment, including U.S.-origin goods, for Huawei and Skycom's Iran-based operations. *Id.* at 17-18. Here, the presence of U.S.-origin goods in Huawei's and Skycom's Iran-based project sites is evidence of those very transactions and thus is relevant to the IEEPA and money laundering counts.

Second, such evidence is "relevant to the bank and wire fraud charges." *Id.* at 18. Specifically, in December 2012, Reuters reported that Skycom had offered to sell U.S.-origin Hewlett Packard equipment to Mobile Telecommunications Company of Iran ("MCI"), an Iranian state-owned company. Following that reporting, Huawei faced questions from its banks and the U.S. government about the nature of its relationship with Skycom and the Iranian government. In response, Huawei made repeated false statements about its relationship to Skycom and whether Huawei had provided equipment to the government of Iran (among other false statements, as outlined above). Limited testimony about Huawei's use of U.S. technology in Iran is thus relevant to the bank and wire fraud charges because it helps the jury to understand one of the reasons why Huawei lied about its relationship with Skycom and its interactions with the Iranian government.

Third, evidence of Huawei's use of U.S. technology in Iran is "admissible to prove the existence of the enterprise and its pattern of racketeering activity," including that "Huawei Tech and Skycom used intermediaries in China to purchase U.S. telecommunications equipment for Huawei Tech's and Skycom's Iran-based telecommunications customers." *Id.* at 19.

Accordingly, and for the reasons set forth in the government's response to the defendants' recent motion *in limine*, *see* ECF No. 873, the government's introduction of limited evidence of Huawei's use of U.S.-origin equipment in Iran does not provide a basis to cross examine the government's OFAC expert witness about: (1) the details of export control laws that Huawei is not charged with violating; or (2) an irrelevant voluntary self-disclosure in 2009 by Huawei Symantec, a non-party entity, about which the witness has no personal knowledge and which postdates the time period in which other witnesses—namely, Parham Beheshti and Babak Vahdati—testified to seeing U.S.-origin goods at Huawei project sites in Iran.

## II. Charges and Overt Acts Which the Government Does Not Intend to Prove

As the government stated in its letter dated September 4, 2026, the government does not intend to proceed on Counts Eleven and Twelve of the Fourth Superseding Indictment. ECF No. 839. In addition, as the government explained, it does not intend to present evidence that the defendants conspired to steal trade secrets from Company 2, as alleged in paragraphs 23 to 25 and 93(b) of the Fourth Superseding Indictment, or that the conduct alleged in those paragraphs constituted a predicate racketeering act. *Id.*

The government intends to proceed on all other Counts charged in the Fourth Superseding Indictment. However, the government provides notice that it does not expect to prove

the following additional overt acts in its case-in chief,[2] or that the conduct alleged in these overt acts constituted a predicate racketeering act:

- Paragraph 93(a): In or about March 2002, an employee of FUTUREWEI, an individual whose identity is known to the Grand Jury, contacted an employee of Company 1, an individual whose identity is known to the Grand Jury, regarding potential employment with FUTUREWEI, in an attempt to misappropriate trade secret information of Company 1.

- Paragraph 93(c): On or about July 11, 2007, Individual-1 stated to FBI agents that HUAWEI had "won" the lawsuit with Company 1 and that the CEO of Company 1 would "testify" that HUAWEI did not engage in intellectual property rights violations.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By: /s/
Alexander A. Solomon
Meredith A. Arfa
Robert Pollack
Matthew Skurnik
Matthew F. Sullivan
Assistant United States Attorneys
(718) 254-7000

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and
Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan J. Cohen
Jasmin Salehi Fashami
Trial Attorneys

[2] The government may prove Paragraph 93(c) in its rebuttal case, depending on whether and to what extent the parties elicit testimony or offer evidence concerning litigation between Huawei and Company 1.

CHRISTIAN J. NAUVEL
Acting Chief, Counterintelligence and
Export Control Section,
National Security Division,
U.S. Department of Justice

Aaron Jennen
Trial Attorney

cc: Clerk of the Court (by ECF and Email)
Defense counsel of record (by Email)